# EXHIBIT A

JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 601-6766
(310) 295-2385 (Fax)

*Attorneys for Plaintiff and the Putative Class*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**01/24/2023 at 12:46:55 PM**
By: Angela Linhares,
Deputy Clerk

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF ALAMEDA**

| | |
|---|---|
| **NICOLAS C. SMITH-WASHINGTON**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**TAXACT, INC.**, an Iowa Corporation,<br><br>Defendant. | CASE NO. **23CV026204**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) **Invasion of Privacy—Intrusion into Private Matters;**<br>(2) **Invasion of Privacy and Violation of California Constitution, Art. 1, § 1;**<br>(3) **Violation of Business & Professions Code § 17530.5;**<br>(4) **Violation of Tax Preparation Act, Business & Professions Code §§ 22250,** *et seq.*;<br>(5) **Violation of California Civil Code §§ 1799,** *et seq.* **(in the alternative);**<br>(6) **Violation of California Invasion of Privacy Act (CIPA), Penal Code §§ 630,** *et seq.*; **and,**<br>(7) **Violation of Business & Professions Code §§ 17200** *et seq.* **(UCL).**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nicolas C. Smith-Washington ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys of record, HammondLaw, P.C., complains and alleges the following, based upon personal knowledge, where applicable, information and belief, and the investigation of counsel:

## INTRODUCTION

1.      This is a privacy class action under California Code of Civil Procedure § 382 seeking damages (including but not limited to compensatory, statutory, and punitive damages), civil penalties, restitution, disgorgement of profits, declaratory relief, and reasonable attorney's fees and costs pursuant to California Business & Professions Code §§ 17203, 17535, and 22257, Civil Code § 1799.2, Penal Code § 637.2, and Code of Civil Procedure § 1021.5 on behalf of the members of the class, as defined below.

2.      During the Class Period, Defendant TaxAct, Inc. (hereinafter, "TaxAct" or "Defendant") was one of the largest tax preparation software companies in the United States. Defendant maintained and operated, and continues to maintain and operate, a website – https://www.taxact.com – through which its customers and other visitors can, among other things, learn about Defendant's services, learn about tax law developments, file federal taxes, file state taxes, receive tax filing advice and help, and otherwise interact with Defendant.

3.      Plaintiff brings this class action on behalf of himself and all natural persons residing in California who used Defendant's website's tax preparation services to prepare a tax return (hereinafter, "Class Members") on or prior to November 23, 2022 (the "Class Period").

4.      Since 2000, TaxAct customers have e-filed over 90 million tax returns.[1] In the most recent reported year, 2021, TaxAct "powered approximately 3.2 million consumer e-files [of tax returns] directly through [consumers] and another 2.4 million professional e-files through approximately 21,000 tax professionals who used TaxAct to prepare and file their taxes or those of their clients."[2] In that same year, TaxAct's total revenue was $227 million.[3]

5.      Unbeknownst to Plaintiff, information about Plaintiff's and Class Members' respective activities on TaxAct's website, including confidential personal and financial information that they shared

---

[1] TaxAct Home Page, https://www.taxact.com/?version=011223sft&promo=HT011223TT50 (last visited Jan. 18, 2023).
[2] Blucora, Inc., 2021 Annual Report to Stockholders, Form 10-K, p. 6 (2022) (https://www.blucora.com/static-files/478e03bd-5255-4fd7-8d3a-d9e8224320a5).
[3] Id. at Form 10-K, p. 50.

with TaxAct, was, until on or about November 23, 2022, secretly transmitted to Meta Platforms, Inc. (formerly known as Facebook) ("Meta" or "Facebook"), an unauthorized third party.

6. Through the Meta Pixel, a tracking tool intentionally incorporated by TaxAct in its website source code or otherwise affirmatively permitted on its website by TaxAct, Defendant disclosed personal identifiers, including IP addresses and Facebook IDs for Plaintiff and Class Members in combination with their confidential tax return information, including adjusted gross income (rounded to the nearest thousand dollars), filing status, and the amount of any refund (rounded to the nearest hundred dollars), to Meta, all without Plaintiff's and Class Members' knowledge and/or consent.

7. Thus, through its actions and practices, TaxAct has disclosed and released confidential tax return information to Meta. This massive breach of confidentiality and privacy has, on information and belief, affected hundreds of thousands, if not millions of Class Members in the state of California.

8. TaxAct's actions constitute an extreme invasion of Plaintiff's and Class Members' privacy. They also violated common law, the California Constitution, and numerous state statutes.

## PARTIES

9. Plaintiff, Nicolas C. Smith-Washington, is a citizen of California, residing in Citrus Heights, Sacramento County, California. Plaintiff is a customer of Defendant and used Defendant's website to prepare and file his federal and state income taxes from approximately 2005 to 2022.

10. Defendant TaxAct, Inc., is an Iowa Corporation. TaxAct's home office is 3390 Asbury Rd, Dubuque, Iowa. TaxAct's principal place of business is 1425 60th St. NE, Cedar Rapids, Iowa 52402-1284.

## JURISDICTION

11. This Court has jurisdiction over Plaintiff's and Class Members' claims for compensatory damages, disgorgement of profits, and punitive damages arising from Defendant's invasion of privacy and violation of Article 1, Section 1 of the California Constitution.

12. This Court has jurisdiction over Plaintiff's and Class Members' claims for restitution and disgorgement of profits, pursuant to Cal. Bus. & Prof. Code § 17535, arising from Defendant's violation of Cal. Bus. & Prof. Code § 17530.5.

13. This Court has jurisdiction over Plaintiff's and Class Members' claims for statutory civil penalties of $1,000 per violation and attorneys' fees and costs, pursuant to Cal. Bus. & Prof. Code § 22257, arising from Defendant's violations of Cal. Bus. & Prof. Code §§ 22250 *et seq.*

14.     This Court has jurisdiction over Plaintiff's and Class Members' claims for damages, in no case less than $500 per violation, and attorneys' fees and costs, pursuant to Cal. Civil Code § 1799.2, arising from Defendant's violations of Cal. Civil Code § 1799.1a.

15.     This Court has jurisdiction over Plaintiff's and Class Members' claims for statutory damages of $5,000 per violation, or three times the amount of actual damages, arising from Defendant's violation of the California Invasion of Privacy Act, Penal Code §§ 630 *et seq.*

16.     This Court has jurisdiction over Plaintiff's and Class Members' claims for restitution and declaratory relief arising from Defendant's unlawful, unfair, and fraudulent business practices under Cal. Bus. & Prof. Code §§ 17200 *et seq.*

17.     This Court has jurisdiction over Plaintiff's and Class Members' claims for reasonable attorneys' fees and costs pursuant to § 1021.5 of the California Code of Civil Procedure.

18.     This Court has personal jurisdiction over the parties because Defendant has continuously and systematically conducted business in the State of California. Likewise, Plaintiff is a California resident whose rights were violated in the State of California as a result of his contact with Defendant from and within California.

## VENUE

19.     Venue is proper in this Court pursuant to California Code of Civil Procedure § 395. Defendant is a foreign corporation and has not designated with the California Secretary of State its principal place of business in California or the name of an agent upon whom process directed to Defendant may be served within California. Thus, venue is proper in any county within California.

## FACTUAL ALLEGATIONS

### *Defendant is a provider of Tax Preparation Services*

20.     Throughout the Class Period, Defendant maintained, offered, and operated websites (including www.taxact.com), mobile applications, online and offline tax preparation products, and related services, and electronic filing services (collectively, referred to as the "Services") through which Defendant, for a fee or other consideration, assisted Plaintiff and Class Members in preparing federal and state income tax returns, and e-filing federal and state tax returns.

21.     TaxAct has stated that its mission is: "to help our filers, no matter the complexity of their situation, file their taxes with confidence, helping them get the best possible tax outcome and guiding them on specific, personalized actions to improve their outcome in the future."[4]

---

[4] TaxAct, TaxAct Helps Americans File for Less and Get More with its Tax Software, Jan. 14, 2021,

22.     During the Class Period, Defendant offered to the general public, including Plaintiff and Class Members, through its website, www.taxact.com, various "online tax filing solutions." To give an example, a Class Member visiting Defendant's website could select the "Deluxe" option, which costs $24.95 to assist users to prepare and file their federal and state tax returns online. If a Class Member selected that option, the Class Member was given the option to sign in to their TaxAct account or to create a new account. Creating a new account required the Class Member to provide his or her email, mobile number, and to create a username and password.

23.     Once an account was created, the Class Member had the option to use Defendant's website to prepare and file his or her federal and state income taxes. Throughout the Class Period, once a Class Member had signed into his or her account, and had elected to start preparing a tax return, various pages would be displayed with prepopulated questions and informational requests, which the Class Member was directed and/or requested answer. The information requested of Plaintiff and Class Members included, but was not limited to annual income, number of dependents, and the types and amounts of deductions requested. Thus, in order to use Defendant's online services to prepare and/or file federal or state tax returns, Plaintiff and Class Members were prompted by Defendant's website to enter confidential, private, and sensitive personal and financial information into the website.

24.     Upon Plaintiff or a Class Member answering and/or responding to Defendant's prepopulated questions and/or information requests within the Defendant's online tax preparation portal, Defendant caused to be prepared, through its online tax preparation portal, a draft federal and/or state tax return, for review by Plaintiff or the respective Class Member (hereinafter, the answers to the prepopulated questions and/or information requests, the draft tax returns, and the information contained therein, is collectively referred to as "Confidential Tax Return Information").

25.     Once the returns were prepared and ready to file, Defendant offered, through its website, to Plaintiff and Class Members to e-file their respective returns with the Internal Revenue Service and/or the Franchise Tax Board in California, or Plaintiff and Class Members could print their respective returns and file by mail.

26.     Moreover, during the Class Period, Defendant held itself out to the general public as being a tax preparer. Throughout its website, Defendant referred to itself as being a provider of "tax return preparation products", and as providing services that would permit Class Members to "print or electronically file a tax return *prepared using the Services*" (which are defined as including Defendant's

---

https://www.taxact.com/press/2021/press-releases/taxact-helps-americans-file-for-less-and-get-more.

websites, mobile applications, and online tax return preparation products) (emphasis added). Defendant referred to a "registered user" as "a user from whom TaxAct has received the information necessary to permit such person to print or electronically file a tax return *prepared using the Services* and who complies with the terms and conditions of this agreement." (emphasis added).

27.    Defendant's Privacy Policy also stated, throughout the Class Period, that Defendant would use a customer's "Tax Return Information . . . to prepare, assist in preparing, or obtain or provide services in connection with preparing your tax return."

28.    In addition, in referring to the limited license to its Services, Defendant stated: "You may use the TaxAct tax preparation software (whether online, downloaded, or via mobile application) to prepare one valid and complete tax return per applicable service fee paid and, after proper registration and any applicable payment, to file electronically and/or print such tax return."

29.    In addition, the annual reports of Blucora, Inc. (referred to as "Blucora"), the owner of Defendant during the Class Period, refer to TaxAct as being a "provider of digital tax preparation services," as being a "leading provider of digital tax preparation solutions," and as having enabled "the filing of more 85 million federal tax returns since 2000."

30.    In sum, Defendant is engaged in the business of preparing federal and state income tax returns or assisting taxpayers in the preparation of those returns for the purposes of California Business & Professions Code § 17530.5; is engaged in the business of preparing, or providing services in connection with the preparation of, income tax returns and for compensation prepares such returns for Class Members for the purposes of 26 U.S.C. § 7216; and, is a tax preparer for the purposes of California Business & Professions Code § 22251.

### *Unlawful Conduct under Business & Professions Code § 17530.5*

31.    As stated above, Defendant is engaged in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns. Pursuant to California Business & Professions Code § 17530.5, the California legislative has made it unlawful for any person to "disclose any information obtained in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns, including any instance in which this information is obtained through an electronic medium," unless the disclosure falls within certain specified exclusions.

### *Unlawful Conduct under 26 U.S.C. § 7216*

32.    As stated above, Defendant is engaged in the business of preparing, or providing services in connection with the preparation of income tax returns and for compensation prepared such returns for Plaintiff and Class Members, and, pursuant to 26 U.S.C. § 7216, it is unlawful for any such person to:

"(1) disclose[] any information furnished to him for, or in connection with, the preparation of any such return, or (2) use[] any such information for any purpose other than to prepare, or assist in preparing, any such return," unless the disclosure or use falls within certain specified exclusions.

***Duties Specifically Imposed by the Tax Preparation Act, Business & Professions Code §§ 22250 et seq.***

33.     As stated above, Defendant is a tax preparer within the meaning of California Business & Professions Code § 22251, and, thus, the Tax Preparation Act, Cal. Bus. & Prof. Code §§ 22250 *et seq.*, specifically imposes certain duties upon Defendant including, but not limited to, the following: (i) "No confidential information obtained by a tax preparer, in his or her professional capacity, concerning a client or a prospective client shall be disclosed by the tax preparer without the written permission of the client or prospective client," with certain limited exceptions, § 22252.1(a); (ii) no tax preparer may "Make, or authorize the making of, any statement or representation, oral or written or recorded by any means, which is intended to induce persons to use the tax preparation service of the tax preparer, which statement or representation is fraudulent, untrue, or misleading," § 22253(a)(2); (iii) no tax preparer may "Violate Section 17530.5," § 22253(a)(7); and (iv) no tax preparer may "Violate Section 7216 of Title 26 of the United States Code," § 22253(a)(8).

***Defendant's Privacy Policy***

34.     Defendant's Privacy Policy, posted on its website, and substantively identical in pertinent parts throughout the Class Period, stated that: "If you decide to prepare or file a tax return using the Services, we collect all the information you provide, including your Name, Social Security Number, Driver's License number, and information about your employment, income, deductions, and any other information included in your return. We refer to this information as 'Tax Return Information.'" Defendant's Privacy Policy further stated: "The use and disclosure of Tax Return Information is governed by Section 301-7216 of the Internal Revenue Code and many state codes and regulations. We use your Tax Return Information only in accordance with applicable laws, such as to prepare, assist in preparing, or obtain or provide services in connection with preparing your tax return; to provide you with the products and services you specifically request or consent to and other uses or disclosures as you expressly consent to from time to time; to allow tax professionals to assist you with questions or tax preparation; or as required by law."

35.     Throughout the Class Period, Defendant also posted to its website a "Privacy Notice for California Residents – Supplement to TaxAct's Privacy Policy." This Notice stated: "This Privacy Notice for California Residents . . . supplements the information contained in the Privacy Policy, located on our Website (the 'Site'), of TaxAct, Inc. and its subsidiaries (collectively, 'TaxAct,' 'we,' 'us,' or 'our'), and

applies solely to visitors, users, and others who reside in the State of California ('residents,' 'consumers,' or 'you'). In the event of any conflict between this notice and our privacy policy, this privacy notice shall govern."

36.     With respect to Confidential Tax Return Information, Defendant's "Privacy Notice for California Residents – Supplement to TaxAct's Privacy Policy" was, throughout the Class Period, substantively identical in pertinent parts to Defendant's Privacy Policy. Defendant's Privacy Notice for California Residents stated that: "If you decide to prepare or file a tax return using the Services, we collect all the information you provide, including your Name, Social Security Number, Driver's License number, and information about your employment, income, deductions, and any other information included in your return. We refer to this information as 'Tax Return Information.'" It further stated that: "The use and disclosure of Tax Return Information is governed by Section 301-7216 of the Internal Revenue Code and many state codes and regulations. We use your Tax Return Information only in accordance with applicable laws, such as to prepare, assist in preparing, or obtain or provide services in connection with preparing your tax return; to provide you with the products and services you specifically request or consent to and other uses or disclosures as you expressly consent to from time to time; to allow tax professionals to assist you with questions or tax preparation; or as required by law."

***Defendant Secretly Disclosed and/or Released its Website Users' Confidential Tax Return Information to Meta***

37.     Completely unbeknownst to Plaintiff and other Class Members, until approximately November 23, 2022, some of the Confidential Tax Return Information that they communicated to Defendant through Defendant's website was intercepted by and/or disclosed to at least one unauthorized third party: Meta.

*Meta's Platform and the Meta Pixel*

38.     Meta operates the world's largest social media company.

39.     Meta maintains profiles on users that include users' real names, locations, email addresses, friends, likes, and communications that Meta associates with personal identifiers including IP addresses and cookie identifiers.

40.     Facebook users are allowed only one account and must share the name they go by in everyday life.

41.     Meta also tracks non-users across the web through its widespread Internet marketing products and source code.

42.    Meta's revenue is derived almost entirely from selling targeted advertising to Facebook users on Facebook.com and to all internet users on non-Facebook sites that integrate Meta marketing source code on their websites.

43.    Meta sells advertising space by highlighting its ability to target users. Meta can target users so effectively because it tracks Facebook's users' activity both on and off its site. This allows Meta to draw inferences about users beyond what they explicitly disclose on their Facebook accounts. Meta compiles this information into a generalized dataset called "Core Audiences," to which advertisers can apply specific filters and parameters in order to generate a target audience for their advertisements.

44.    Advertisers are also able to build "Custom Audiences." Advertisers can use "customer lists, website or app traffic, or engagement across Facebook technologies, to create Custom Audiences of people who already know [their] business."[5] Moreover, Advertisers are able to use their Custom Audience to create a Lookalike Audience. To create a Lookalike Audience, Facebook "leverages information such as demographics, interests and behaviors from [the advertiser's source Custom Audience] to find new people who share similar qualities." Using a Lookalike Audience allows an advertiser to deliver its advertisements to an "audience of people who are similar to (or 'look like') [its] existing customers."[6]

45.    One method by which an Advertiser can create a Custom Audience, and consequently a Lookalike Audience, is from the Advertiser's website. In order to create a "website Custom Audience" an Advertiser's website must have an active Meta Pixel.[7]

46.    The Meta Pixel is offered to advertisers, like TaxAct, to integrate into their websites. Once installed on a website, "the [P]ixel will log when someone takes an action on [that] website."[8] As Facebook explains, "[t]he Meta Pixel receives information about the actions, or events, that take place on

---

[5] Facebook, About Customer Audiences,
https://www.facebook.com/business/help/744354708981227?id=2469097953376494 (last visited Jan. 18, 2023).

[6] Facebook, About Lookalike Audiences,
https://www.facebook.com/business/help/164749007013531?id=401668390442328 (last visited Jan. 18, 2023).

[7] Facebook, Create a Website Custom Audience,
https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited Jan. 18, 2023).

[8] Facebook, About Meta Pixel,
https://www.facebook.com/business/help/742478679120153?id=1205376682832142 (last visited Jan. 18, 2023).

[an advertiser's] website."[9] Automatic events are a category of actions that the Meta Pixel collects and transmits from the website where it is installed without the advertiser being required to add any additional code.[10] The collection and transmission of automatic events is sufficient for an Advertiser to create a Custom Audience and, consequently, a Lookalike Audience. Advertisers are also able to select from a set of Standard events, predefined by Facebook, which can also be collected and transmitted by the Meta Pixel, including, for example, what content a visitor views, subscribes to, or purchases.[11] Finally, Advertisers are able to create their own "custom events" to be tracked and transmitted to Facebook by the Meta Pixel.[12]

47.     When a user accesses a website hosting a Meta Pixel, Facebook's software script surreptitiously directs the user's computing device to send a separate message to Facebook's servers. This second transmission, completely invisible and unknown to the user, contains the content of the original request sent to the host website ("GET request"), along with the data that the Meta Pixel was configured to collect ("POST request"). GET and POST requests are communications that contain contents from both the user and from servers associated with the website they are visiting. These transmissions are initiated by Meta code and concurrent with the communications to and from the host website.

48.     The Meta Pixel acts as a conduit of information, sending the information it collects to Meta through scripts running in the user's web browser. The information is sent in data packets labelled with personally identifiable information, including the user's IP address.

49.     Meta associates the information it obtains via Meta Pixel with other information regarding the user, using additional personal identifiers that are transmitted concurrently with other personal information the Pixel is configured to collect. If the user has a Facebook account, these identifiers include the "c_user" IDs, which allow Meta to link data to a particular Facebook account, and "xs" cookies associated with a browsing session. For both Facebook account-holders and users who do not have a

---

[9] Facebook, About Automatic Events, https://www.facebook.com/business/help/1292598407460746?id=1205376682832142 (last visited Jan. 18, 2023).

[10] *Id.*

[11] Facebook, Specifications for Meta Pixel Standard Events, https://www.facebook.com/business/help/402791146561655?id=1205376682832142 (last visited Jan. 18, 2023).

[12] Facebook, About Standard and Custom Website Events, https://www.facebook.com/business/help/964258670337005?id=1205376682832142 (last visited Jan. 18, 2023).

Facebook account, these identifiers also include cookies that Meta ties to their browser, such as "datr" and "fr" cookies.[13]

50. The c-user cookie is a means of identification for Facebook users. The c_user cookie value is the Facebook equivalent of a user identification number. Each Facebook user account has a unique c_user cookie. Facebook uses the c_user cookie to record user activities and communications.

51. Any computer user can find the Facebook account associated with a particular c-user cookie. One simply needs to log-in to Facebook, then type www.facebook.com/[c-user cookie]. For example, the c-user cookie for Mark Zuckerberg is 4. Logging in to Facebook and typing www.facebook.com/4 in the web browser will retrieve Mark Zuckerberg's Facebook page.

52. The _datr cookie identifies the patient's specific web browser from which the patient is sending the communication. It is an identifier that is unique to the patient's specific web browser and is therefore a means of identification for Facebook users and non-users. Facebook keeps a record of every _datr cookie identifier associated with each of its users.

53. The _fr cookie is a Facebook identifier that is an encrypted combination of the c_user and _datr cookies.

54. Meta warns developers and those who incorporate the Meta Pixel into their website that the Meta Pixel is a personal identifier because it "relies on Facebook cookies, which enable us to match your website visitors to their respective Facebook User accounts."[14]

55. The Meta Pixel also automatically captures and discloses the IP address of the user. IP addresses are used to identify and route communications on the Internet. IP addresses of individual Internet users are used by websites and tracking companies to facilitate and track Internet communications. Individual homes and their occupants can be, and are, tracked and targeted with advertising using IP addresses. Thus, IP addresses are personally identifiable, particularly in combination with other information disclosed through the Meta Pixel.

*Defendant Disclosed Plaintiff's and Class Members' Confidential Tax Return Information to Meta and Used Plaintiff's and Class Members' Confidential Tax Return Information for its Own Purposes*

56. Starting on date unknown and until approximately November 23, 2022, Defendant embedded the Meta Pixel on and throughout its website and transmitted Confidential Tax Return

---

[13] Meta, *Cookies Policy* (Oct. 5, 2022), https://www.facebook.com/policy/cookies.
[14] Facebook, Get Started, https://developers.facebook.com/docs/meta-pixel/get-started (last visited Jan. 18, 2023).

Information shared by Plaintiff and Class Members, without their consent, to Meta in accordance with the Meta Pixel's configuration.

57. TaxAct installed the Meta Pixel on its website – www.taxact.com. When Plaintiff or a Class Member visited that website, the Meta Pixel automatically caused Plaintiff or the Class Member's personal identifiers, including IP addresses and the c_user, _fr, _datr, and _fbp cookies, to be transmitted to Meta, attached to the fact that Plaintiff or the Class Member had visited the website and the titles of the webpages Plaintiff or the Class Member visited.

58. Rather than merely transmit the "automatic events" that the Meta Pixel automatically collects and transmits from a website without the website owner or developer being required to add any additional code, on information and belief, Defendant intentionally configured the Meta Pixel on its website to track, collect, and disclose "custom events" such as Plaintiff's or Class Members' adjusted gross income, filing status, number of dependents, and refund amounts, all entered into or submitted to Defendant's website as Plaintiff and Class Members used Defendant's website to prepare and/or file their taxes.

59. Moreover, the Meta Pixel on Defendant's website was also intentionally configured or authorized to use a feature called "automatic advanced matching." That feature scans forms on a website looking for fields that may contain personally identifiable information like a first name, last name, or email address, and then causes that information to be disclosed to Meta. On Defendant's website this feature collected the names of dependents claimed by Plaintiff and Class Members.

60. The data collected by the automatic advanced matching feature is disclosed to Meta in an obfuscated form know as a "hash." But Meta is able to determine the pre-obfuscated version of the data. Indeed, Meta uses the hashed information to link other data collected and disclosed by the Meta Pixel to Plaintiff's and Class Members' Facebook and Instagram profiles.

61. Thus, on information and belief, when Plaintiff and Class Members used Defendant's website to prepare and/or assist them in the preparation of their respective tax returns and/or to file their respective tax returns, the Meta Pixel on Defendant's website caused the Plaintiff's and Class Member's personal identifiers, including the c_user, fr, and datr cookies, to be disclosed to Meta along with Confidential Tax Return Information, including, but not limited to, adjusted gross income, refund amounts, number of dependents, names of dependents, and filing status.

62. Put simply, TaxAct disclosed Plaintiff's and Class Members' Confidential Tax Return Information to Meta.

63.     On information and belief, some of the Confidential Tax Return Information disclosed to Meta was disclosed after Plaintiff's and Class Members' respective tax returns had been prepared by Defendant's software. This Confidential Tax Return Information, which was disclosed to Meta, was obtained from Plaintiff's and Class Members' prepared tax returns.

64.     On information and belief, Defendant disclosed Plaintiff's and Class Members' Confidential Tax Return Information to Meta in order to permit Defendant to improve its marketing and advertising. Thus, Defendant used Plaintiff's and Class Members' Confidential Tax Return Information for its own marketing and advertising purposes.

*The Markup Investigation*

65.     On or about November 21, 2022, having been contacted by the Markup, a nonprofit newsroom that investigates how powerful institutions are using technology to change society, for comment on a soon-to-be-published article regarding the use of tracking tools by tax preparation software websites, Defendant modified or reconfigured the Meta Pixel on its site to no longer send to Meta certain financial details such as refund amounts and adjusted gross income. At that time, however, the Meta Pixel on Defendant's website continued to disclose the names of Class Members' dependents to Meta.

66.     On or about November 22, 2022, the Markup published its article titled: "Tax Filing Websites Have Been Sending Users' Financial Information to Facebook."[15] The article disclosed that the Markup had conducted an investigation into the use of tracking tools by tax preparation software websites including Defendant's.

67.     On or about November 23, 2022, TaxAct removed the Meta Pixel from its website.

***Defendant Used and Disclosed Plaintiff's and Class Members' Confidential Tax Return Information Without Plaintiff's or Class Members' Knowledge, Consent, Authorization, or Further Action***

68.     The tracking tools incorporated into, embedded in, or otherwise permitted on Defendant's website were invisible to Plaintiff and Class Members while using that website. The Meta Pixels on Defendant's website were seamlessly integrated into the website such that there was no reason for Plaintiff or any Class Member to be aware of or to discover their presence.

69.     Plaintiff and Class Members were shown no disclaimer or warning that their Confidential Tax Return Information would be disclosed to any unauthorized third party without their express consent.

---

[15] Simon Fondrie-Teitler, Angie Waller, & Colin Lecher, *Tax Filing Websites Have Been Sending Users' Financial Information to Facebook*, THE MARKUP (Nov. 22, 2022, 8.00 AM) https://themarkup.org/pixel-hunt/2022/11/22/tax-filing-websites-have-been-sending-users-financial-information-to-facebook.

70. Plaintiff and Class Members had no idea that their Confidential Tax Return Information was being collected and transmitted to an unauthorized third party.

71. Because Plaintiff and Class Members had no idea of the presence of Meta Pixels on Defendant's website, or that their Confidential Tax Return Information would be collected and transmitted to Meta, they could not and did not consent to TaxAct's conduct.

72. Plaintiff and Class Members did not give consent or authorization for Defendant to disclose their Confidential Tax Return Information to any third party other than government entities necessary for Defendant to file Plaintiff's and Class Members' taxes.

73. Moreover, Defendant's Privacy Policy and Defendant's Privacy Notice for California Residents – Supplement to TaxAct's Privacy Policy, as described above, provided no indication to Plaintiff or Class Members that their Confidential Tax Return Information would be disclosed to Meta or any unauthorized third party.

**_Plaintiff and Class Members Had a Reasonable Expectation of Privacy_**

74. Plaintiff and Class Members had a reasonable expectation of privacy in their Confidential Tax Return Information.

75. Confidential information submitted in order to prepare taxes is protected by California law under the Tax Preparation Act. Cal. Bus. & Prof. Code §§ 22250, *et seq.*

76. 26 U.S.C. § 7431 provides for civil damages for the unauthorized inspection or disclosure of tax returns or tax return information by, *inter alia*, officers and employees of the United States.

77. 26 U.S.C. § 7216 imposes criminal liability on any person "engaged in the business of preparing or providing services in connection with the preparation of [income tax returns]" who knowingly or recklessly discloses "any information furnished to him for, or in connection with, the preparation of any such return, or . . . uses any such information for any purposes other than to prepare, or assist in preparing, any such return."

78. The National Society of Tax Professionals ("NSTP") is a non-profit organization dedicated to serving tax professionals. The NSTP's Code of Ethics and Rules explicitly states that its members shall not: "**violate the confidential relationship** between client and practitioner and shall not **disclose confidential information** without the consent of the client or pursuant to a court subpoena."[16]

---

[16] *Code of Ethics and Rules*, NATIONAL SOCIETY OF TAX PROFESSIONALS, https://www.nstp.org/about/code-of-ethics (emphasis added).

79.     Thus, state and federal laws, and general standards in the industry, reinforce the social norm and general expectation that financial information associated with the preparation of tax returns is to be kept private and confidential.

80.     Privacy polls and studies also uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares that individual's data.

81.     For example, a recent study by *Consumer Reports* shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[17] Moreover, according to a study by *Pew Research Center*, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.[18]

82.     Accordingly, Plaintiff and Class Members had a reasonable expectation of privacy regarding their Confidential Tax Return Information.

***The Confidential Tax Return Information that Defendant Disclosed to Meta is Plaintiff's and Class Members' Property, Has Economic Value, and its Unauthorized Disclosure Caused Economic Harm***

83.     It is common knowledge that there is an economic market for consumers' personal data – including the financial information that was disclosed by Defendant to Meta.

84.     Indeed, within the tax preparation software industry, some relatively recent market entrants, including Credit Karma and Cash App Taxes, offer or offered free tax preparation to all of their users in exchange for the ability to use the details of their tax returns to target them with financial advertising.[19]

85.     As the Department of Justice explained, with respect to Credit Karma: "Through Credit Karma's personal finance platform, Credit Karma offers its more than 100 million members free personal

---

[17] Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumerreports/ consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[18] Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information, PEW RESEARCH CENTER, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confusedand-feeling-lack-of-control-over-their-personal-information/.

[19] Geoffrey A. Fowler, When tax prep is free, you may be paying with your privacy, Washington Post (Mar. 7, 2019, 11:37 a.m.), https://www.washingtonpost.com/technology/2019/03/07/when-tax-prep-is-free-you-may-be-paying-with-your-privacy/;

finance tools, such as free credit scores and monitoring, and tailored, third-party financial offers, including credit card, personal loan, and refinancing opportunities. Credit Karma is paid only by the third parties, and only when consumers take advantage of these customized offers. Credit Karma can take the data gathered from tax filings, with the filers' consent, to improve Credit Karma's offerings to its members. This, in turn, improves the likelihood that a consumer will take advantage of the offer. This process enables Credit Karma to provide a DDIY tax preparation product for free regardless of the U.S. federal or state tax forms used and complexity of the tax return."[20]

86.     Thus, the right to disclose Confidential Tax Return Information and/or use it for purposes other than the preparation and filing of taxes has a determinable value that is sufficiently high that certain tax preparation software companies have forgone all fees associated with preparing and filing tax returns in order to secure that right.

87.     Given the existence of a market for the financial data disclosed by Defendant, Defendant has deprived Plaintiff and Class Members of the economic value of their Confidential Tax Return Information by disclosing such data without authorization and without providing proper consideration for Plaintiff's and Class Members' property.

## TOLLING, CONCEALMENT, AND ESTOPPEL

88.     Any applicable statutes of limitation have been tolled by Defendant's knowing and active concealment of its incorporation of the Meta Pixel into its website.

89.     The Meta Pixel and other tracking tools on Defendant's website were and are entirely invisible to a website visitor.

90.     Through no fault or lack of diligence, Plaintiff and Class Members were deceived and could not reasonably discover Defendant's deception and unlawful conduct.

91.     Plaintiff was ignorant of the information essential to pursue his claims, without any fault or lack of diligence on his part.

92.     Defendant had exclusive knowledge that its website incorporated the Meta Pixel and other tracking tools and yet failed to disclose to website visitors, including Plaintiff and Class Members, that by interacting with Defendant's website their Confidential Tax Return Information would be disclosed or released to Meta.

---

[20] *United States of America v. Intuit, Inc. and Credit Karma, Inc.*, No. 1:20-cv-03441, Complaint, ¶ 3 (D.D.C. Nov. 25, 2020), (available at https://www.justice.gov/opa/press-release/file/1339846/download).

93.     Under the circumstances, Defendant was under a duty to disclose the nature, significance, and consequences of its collection and treatment of visitor's and customer's Confidential Tax Return Information. In fact, to the present Defendant has not conceded, acknowledged, or otherwise indicated to its customers and other website visitors that it has disclosed or released their Confidential Tax Return Information to unauthorized third parties. Accordingly, Defendant is estopped from relying on any statute of limitations.

94.     Moreover, all applicable statutes of limitation have also been tolled pursuant to the discovery rule.

95.     The earliest that Plaintiff and Class Members, acting with due diligence, could have reasonably discovered Defendant's conduct would have been on November 22, 2022, following the publication of the article describing the Markup's investigation.

## ALLEGATIONS SPECIFIC TO PLAINTIFF

96.     Between approximately 2005 and 2022, Plaintiff visited TaxAct's website in order to prepare and file his federal and state taxes.

97.     From approximately August 15, 2017, onwards, Plaintiff has been resident in California. During that time, Plaintiff has accessed Defendant's website, while in California, in order to file his federal and state tax returns for the tax years 2017, 2018, 2019, 2020, and 2021.

98.     On information and belief, Plaintiff's Confidential Tax Return Information, including his adjusted gross income, filing status, number of dependents, names of dependents, and the amount of any refunds he received, was disclosed to Meta.

99.     Plaintiff would not have used TaxAct's website had Plaintiff known that his Confidential Tax Return Information would be disclosed to unauthorized third parties.

100.    Plaintiff believed that because he was on the website of a tax preparer and provider of tax filing services, his personal and financial data would be protected and kept confidential.

101.    Plaintiff did not see anything on Defendant's website that suggested to him that his Confidential Tax Return Information would be disclosed or released to an unauthorized third party.

102.    Plaintiff did not authorize, consent to, or otherwise encourage or permit the release of his Confidential Tax Return Information to Meta or any other third party.

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this action, on behalf of himself and all others similarly situated, as a class action pursuant to Code of Civil Procedure § 382. Plaintiff seeks to represent a Class (whose members are "Class Members") composed of and defined as:

"All natural persons residing in California who used Defendant's website's tax preparation services to prepare a tax return (hereinafter, "Class Members") on or prior to November 23, 2022 (the "Class Period")."

104. Plaintiff reserves the right to revise or amend the above Class definition and to add Subclasses based on facts learned in discovery.

105. This action has been brought and may be properly maintained as a class action under the Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation, the proposed Class is easily ascertainable, and Plaintiff is a proper representative of the Class:

106. <u>Numerosity</u>. The potential members of the proposed Class, as defined, are more than two hundred thousand, and so numerous that joinder of all members of the Class is impracticable.

107. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class. Plaintiff is a customer of Defendant who used Defendant's website's tax preparation services to prepare a tax return prior to November 23, 2022, and, on information and belief, whose Confidential Tax Return Information was, as a result, disclosed to an unauthorized third party or unauthorized third parties.

108. <u>Commonality</u>. Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members of the Class. These common questions include but are not limited to:

a. Whether Defendant's acts and practices violated Plaintiff's and Class Members' privacy rights;

b. Whether Defendant's acts and practices violated California's Constitution, Art. 1, § 1;

c. Whether Plaintiff and Class Members had a reasonable expectation that their Confidential Tax Return Information would not be disclosed to third parties without authorization;

d. Whether Defendant's acts and practices violated the Tax Preparation Act, Business & Professions Code §§ 22250 *et seq.*;

e. Whether the Confidential Tax Return Information disclosed by Defendant constitutes "confidential information" within the meaning of Business and Professions Code § 22252.1;

f. Whether Defendant obtained written consent to or permission for its conduct;

g. Whether Defendant's acts and practices violated the California Invasion of Privacy Act, Penal Code §§ 630, *et seq.*;

h. Whether Defendant obtained express consent to or authorization for its conduct;

i.      Whether the Confidential Tax Return Information disclosed by Defendant constitutes "information obtained in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns" within the meaning of Business and Professions Code § 17530.5;

j.      Whether Defendant's acts and practices violated Business and Professions Code §§ 17200, *et seq.*;

k.      Whether Defendant's acts and practices harmed Plaintiff and Class Members;

l.      Whether Plaintiff and the Class Members are entitled to equitable relief, including but not limited to, restitution and disgorgement;

m.      Whether Plaintiff and the Class Members are entitled to damages and other monetary relief; and

n.      Whether Plaintiff and Class Members are entitled to reasonable attorneys' fees and costs.

109.    Adequacy of Representation. Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class. Plaintiff's interests do not conflict with those of Class Members, he has no conflict of interest with other Class Members, is not subject to any unique defenses, and has retained competent and experienced counsel.

110.    Superiority of Class Action. Class action treatment is superior to any alternative to ensure the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. If this action is not certified as a class action, it will be impossible as a practical matter for many or most Class Members to bring individual actions to recover money from Defendant, due to the relatively small amounts of such individual recoveries relative to the costs and burdens of litigation. Moreover, individual Class Members do not have a significant interest in controlling the prosecution of separate actions. Plaintiff anticipates no difficulty in the management of this action which would preclude its maintenance as a class action.

111.    Plaintiff reserves the right to add representatives for the Class, provided Defendant is afforded an opportunity to conduct discovery as to those representatives.

## FIRST CAUSE OF ACTION

### Common Law Invasion of Privacy – Intrusion into Private Matters

112.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

113.   TaxAct's secret disclosure of Plaintiff's and Class Members' Confidential Tax Return Information, such as each respective user's adjusted gross income, filing status, number of dependents, and refund amounts – constitutes an intentional intrusion upon Plaintiff's and Class Members' private matters that were intended to stay private from third parties.

114.   Plaintiff and Class Members had a reasonable expectation of privacy in their Confidential Tax Return Information. Plaintiff and Class Members did not consent to, authorize, or have any reason to know about TaxAct's intrusion into their privacy at the time it occurred.

115.   Defendant's intrusion into Plaintiff's and Class Members' private affairs, seclusion, and solitude, would be highly offensive to a reasonable person.

116.   Plaintiff and Class Members expected that the Confidential Tax Return Information they shared with a tax preparer would not be disclosed to an unauthorized third party. Social norms and industry standards inform the understanding that private personal and financial information is highly protected and that disclosure of that information to third parties requires consent and authorization. The secret disclosure of Confidential Tax Return Information would be highly offensive to a reasonable person.

117.   Plaintiff and Class Members have been harmed as a result of Defendant's actions, including by, but not limited to, an invasion of their privacy rights.

118.   Plaintiff and Class Members seek appropriate relief for their injuries, including, but not limited to, monetary damages to compensate for the harm to their privacy interests and disgorgement of profits made by TaxAct as a result of its intrusions into Plaintiff's and Class Members' private matters.

119.   Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions which were directed at invading Plaintiff's and Class Members' privacy rights in conscious disregard of those rights. Such damages are necessary to deter TaxAct from engaging in such conduct in the future.

120.   This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit on a large class of persons and/or the general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seeks the recovery of attorneys' fees and costs in prosecuting this action against Defendant under Code of Civil Procedure § 1021.5 and other applicable law.

121.   Plaintiff, on behalf of himself and the Class, requests relief as further described below.

///

## SECOND CAUSE OF ACTION

### Invasion of Privacy and Violation of California Constitution, Art. 1, § 1

122.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

123.    The right to privacy is enshrined in the California Constitution. Article 1, Section 1, provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

124.    Plaintiff and Class Members did not consent to or authorize TaxAct to disclose their Confidential Tax Return Information to unauthorized third parties. Indeed, Plaintiff and Class Members had no knowledge that such information was being so disclosed and, consequently, had no opportunity to deny consent or authorization.

125.    Plaintiff and Class Members had a reasonable expectation of privacy in their personal information, identities, and financial information pursuant to Article 1, Section 1, of the California Constitution, social norms, and the expectations of privacy that attach to relationships and communications with tax preparers.

126.    TaxAct's disclosure of Plaintiff's and Class Members' Confidential Tax Return Information constitutes an intentional invasion of private communications, information, and matters, and an egregious breach of social norms.

127.    TaxAct's conduct would be highly offensive to a reasonable person because the data disclosed was highly sensitive and personal, as protected by the California Constitution, and TaxAct lacked consent or authorization to disclose such information.

128.    TaxAct's violation of the privacy rights of thousands of Class Members, including Plaintiff, without authorization or consent, constitutes an egregious breach of social norms.

129.    Plaintiff and Class Members have sustained damages and will continue to suffer damages as a result of Defendant's invasion of their privacy.

130.    Plaintiff and Class Members seek appropriate relief for their injuries, including, but not limited to, monetary damages to compensate for the harm to their privacy interests and disgorgement of profits made by TaxAct as a result of its intrusions into Plaintiff's and Class Members' private matters.

131.    Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions which were directed at invading

Plaintiff's and Class Members' privacy rights in conscious disregard of those rights. Such damages are necessary to deter TaxAct from engaging in such conduct in the future.

132.     This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit on a large class of persons and/or the general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seeks the recovery of attorneys' fees and costs in prosecuting this action against Defendant under Code of Civil Procedure § 1021.5 and other applicable law.

133.     Plaintiff, on behalf of himself and the Class, seeks relief as further described below.

### THIRD CAUSE OF ACTION

**Violation of California Business and Professions Code §§ 17530.5, *et seq*.**

134.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

135.     Cal. Bus. & Prof. Code § 17530.5(a) provides:

It is a misdemeanor for any person, including an individual, firm, corporation, association, partnership, or joint venture, or any employee or agent thereof, to disclose any information obtained in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns, including any instance in which this information is obtained through an electronic medium, unless the disclosure is within any of the following:

(1) Consented to in writing by the taxpayer in a separate document that states to whom the disclosure will be made and how the information will be used. If the taxpayer agrees, this separate consent document may be in the form of an electronic record, executed by an electronic signature as provided by Title 2.5 (commencing with Section 1633.1) of Part 2 of Division 3 of the Civil Code.

(2) Expressly authorized by state or federal law.

(3) Necessary to the preparation of the return.

(4) Pursuant to court order.

136.     Section 17530.5(b) further provides:

For the purposes of this section, a person is engaged in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns if the person does any of the following:

(1) Advertises or gives publicity to the effect that the person prepares or assists others in the preparation of state or federal income tax returns.

(2) Prepares or assists others in the preparation of state or federal income tax returns for compensation.

(3) Files a state or federal income tax return by electronic transmittal of return data directly to the Franchise Tax Board or to the Internal Revenue Service.

137.    TaxAct is, and at all relevant times has been, a "person . . . engaged in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns" within the meaning of § 17530.5(b).

138.    And, TaxAct has, as alleged above, routinely disclosed information obtained in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns to Meta without written consent to that disclosure from its customers, without that disclosure being expressly authorized by state or federal law, without that disclosure being necessary to the preparation of any tax return, and without that disclosure being made pursuant to court order. As a result, Defendant has violated a provision of Chapter 1, Part 3, Division 7, of the California Business & Professions Code.

139.    As a result of Defendant's unlawful conduct alleged herein, Plaintiff suffered injury in fact and has lost money and/or property. Had Plaintiff known of Defendant's unlawful conduct he would not have paid money to Defendant and used it to prepare his tax returns.

140.    As a direct and proximate result of Defendant's conduct, Defendant has received and continues to hold unlawfully obtained property and money, and has profited from its unlawful acts as alleged herein.

141.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the Class, seeks restitution and disgorgement of all earnings, profits, compensation, and benefit obtained by Defendant as a result of the unlawful practices described herein in violation of Bus. & Prof. Code § 17530.5.

142.    Plaintiff has assumed the responsibility of enforcing the laws and public policies specified herein by suing on his own behalf and on behalf of other similarly-situated class members. Plaintiff's action will enforce important rights affecting the public interest, including the Legislature's express intent in enacting Bus. & Prof Code §§ 17530.5 and 17535. Plaintiff will incur a financial burden in pursuing this action in furtherance of the public interest. Thus, an award of attorneys' fees to Plaintiff is appropriate pursuant to Code of Civil Procedure § 1021.5.

143.    Plaintiff, on behalf of himself and the Class, seeks relief as further described below.

## FOURTH CAUSE OF ACTION

**Violation of Tax Preparation Act, Business and Professions Code §§ 22250, *et seq*.**

144.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

145.    Cal. Bus. & Prof. Code § 22252.1(a) provides, in pertinent part: "No confidential information obtained by a tax preparer, in his or her professional capacity, concerning a client or a

prospective client shall be disclosed by the tax preparer without the written permission of the client or prospective client. . ."

146. Defendant is a "tax preparer" within the meaning of Cal. Bus. & Prof. Code § 22251(a)(1).

147. Despite not having written permission from Plaintiff or Class Members, Defendant disclosed Plaintiff's and Class Members' Confidential Tax Return Information – including, on information and belief, each respective user's adjusted gross income, filing status, number of dependents, and refund amounts – to Meta, in violation of Cal. Bus. & Prof. Code § 22252.1.

148. Cal. Bus & Prof. Code § 22253(a) provides, in pertinent part: "It is a violation of this chapter for a tax preparer to do or commit . . . any of the following: . . .(2) Make, or authorize the making of, any statement or representation, oral or written or recorded by any means, which is intended to induce persons to use the tax preparation service of the tax preparer, which statement or representation is fraudulent, untrue, or misleading."

149. As alleged above, throughout the Class Period, Defendant's Privacy Policy, as supplemented by its Privacy Notice for California Residents, assured Plaintiff, Class Members, and other users and prospective users of Defendant tax preparation software and other Services that the "use and disclosure" of their Confidential Tax Return Information would be "governed by Section 301-7216 of the Internal Revenue Code and many state codes and regulations." And, that: "We use your Tax Return Information only in accordance with applicable laws, such as to prepare, assist in preparing, or obtain or provide services in connection with preparing your tax return; to provide you with the products and services you specifically request or consent to and other uses or disclosures as you expressly consent to from time to time; to allow tax professionals to assist you with questions or tax preparation; or as required by law."

150. As alleged above, consumers consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares that individual's data.

151. Defendant's statements and representations regarding restrictions on its use and disclosure of its customers' Confidential Tax Return Information were clearly intended to assure potential customers that their Confidential Tax Return Information would be protected and that their express consent would be required for any other use or disclosure of their information, and, thus, to induce them to use Defendant's tax preparation service.

152. Defendant's statements and representations were, however, fraudulent, untrue, and/or misleading. As detailed above, Defendant did not use Plaintiff's and Class Members' Confidential Tax Return Information "in accordance with applicable laws." Rather, its use of Plaintiff's and Class

Members' Confidential Tax Return Information violated, *inter alia*, as described above, the California Constitution, California Bus. & Prof. Code §§ 17530.5, *et seq*,, California Bus. & Prof. Code § 22252.1, and, as described below, California Bus & Prof. Code § 22253(a)(7) & (8), and 26 U.S.C. § 7216.

153.    Moreover, rather than limiting its uses and disclosures of Plaintiff's and Class Members' Confidential Tax Return Information to those set out in the statements and representations in its Privacy Policy, Defendant disclosed Plaintiff's and Class Members' Confidential Tax Return Information to Meta for Defendant's own purposes. Defendant represented in its Privacy Policy that this "other use[] or disclosure[]" of Plaintiff's and Class Members' Confidential Tax Return Information required "express[] consent." But, Defendant disclosed the information without seeking or receiving any express consent from Plaintiff or Class Members.

154.    Accordingly, Defendant violated Cal. Bus. & Prof. Code § 22253(a).

155.    Cal. Bus & Prof. Code § 22253(a) also provides, in pertinent part: "It is a violation of this chapter for a tax preparer to do or commit . . . any of the following: . . . (7) Violate Section 17530.5."

156.    Thus, each time Defendant violated Cal. Bus. & Prof. Code § 17530.5, as alleged above, it also violated § 22253(a).

157.    Cal. Bus & Prof. Code § 22253(a) further provides, in pertinent part: "It is a violation of this chapter for a tax preparer to . . . (8) Violate Section 7216 of Title 26 of the United States Code." That section of the United States Code is titled "Disclosure or use of information by preparers of returns" and provides, in pertinent part:

(a) General rule. Any person who is engaged in the business of preparing, or providing services in connection with the preparation of, [income tax returns], or any person who for compensation prepares any such return for any other person, and who knowingly or recklessly—

(1) discloses any information furnished to him for, or in connection with, the preparation of any such return, or

(2) uses any such information for any purpose other than to prepare, or assist in preparing, any such return,

shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than $1,000 ($100,000 in the case of a disclosure or use to which section 6713(b) [26 USCS § 6713(b)] applies), or imprisoned not more than 1 year, or both together with the costs of prosecution.

(b) Exceptions.

(1) Disclosure. Subsection (a) shall not apply to a disclosure of information if such disclosure is made—

(A) pursuant to any other provision of this title, or

(B) pursuant to an order of a court.

(2) Use. Subsection (a) shall not apply to the use of information in the preparation of, or in connection with the preparation of, State and local tax returns and declarations of estimated tax of the person to whom the information relates.

158.    Defendant is a person engaged in the business of preparing, or providing services in connection with the preparation of, income tax returns, within the meaning of 26 U.S.C. § 7216.

159.    And, Defendant violated 27 U.S.C. § 7216, because, as alleged above, it disclosed information furnished to it in connection with the preparation of tax returns and because it used such information for purposes other than the preparation of, or to assist in the preparation of, an income tax return.

160.    Each time Defendant disclosed Confidential Tax Return Information to Meta or it used Confidential Tax Return Information for a purpose other than to prepare or assist in preparing a tax return it violated 27 U.S.C. § 7216. And, each time Defendant violated 27 U.S.C. § 7216, it also violated Cal. Bus & Prof. Code § 22253.

161.    Pursuant to Cal. Bus. & Prof. Code § 22257, Plaintiff and Class Members seek civil penalties of $1,000 for each violation of § 22252.1 or § 22253, injunctive relief, and attorney's fees and costs.

162.    Plaintiff, on behalf of himself and the Class, seeks relief as further described below.

### FIFTH CAUSE OF ACTION

### Violation of California Civil Code §§ 1799, *et seq.* (in the alternative)

163.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

164.    California Civil Code § 1799.1a(f) provides that: "The treatment of tax returns by tax preparers, as defined in Section 22251 of the Business and Professions Code, shall be governed by Section 17530.5 of the Business and Professions Code." Accordingly, because Defendant is a tax preparer within the meaning of § 22251 of the Business and Professions Code, Civil Code § 1799.1a is inapplicable.

165.    Should this Court find that Defendant is not a tax preparer within the meaning of § 22251 of the Business and Professions Code, Civil Code § 1799.1a would apply and, as described below, Defendant's disclosure of Plaintiff's and Class Members' Confidential Tax Return Information constitutes a violation of that section.

166.    Section 1799.1a provides, in pertinent part:

**(a)** No person, including an individual, firm, corporation, association, partnership, or joint venture, or any employee or agent thereof, shall disclose information obtained from a federal or state income tax return or any information obtained from a tax schedule submitted with the return by a consumer in connection with a financial or other business-related transaction unless the disclosure is within any of the following:

**(1)** Consented to in writing by the consumer in a separate document that states to whom the disclosure will be made and how the information will be used. If the consumer agrees, this separate consent document may be in the form of an electronic record, executed by an electronic signature as provided by Title 2.5 (commencing with Section 1633.1) of Part 2 of Division 3 of the Civil Code.

**(2)** Authorized or required by state or federal law.

**(3)** Necessary to complete or service the financial or business-related transaction or to effect, administer, or enforce a financial or business-related transaction requested by the consumer.

**(4)** Pursuant to court order.

**(5)** Required to complete any of the transactions described in subparagraphs (A) to (D), inclusive, by a person, including an individual, firm, corporation, association, partnership or joint venture, if the disclosure is made solely for that purpose. The provisions of this section apply to any person, including an individual, firm, corporation, association, partnership, or joint venture, and any employee or agent thereof, receiving information as a result of a disclosure authorized by this paragraph.

    **(A)** A proposed or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit.

    **(B)** A proposed or actual securitization or secondary market sale, including the sale of servicing rights.

    **(C)** To provide information to insurance rate advisory organizations, guaranty funds or agencies, rating agencies, and other persons assessing compliance with industry standards.

    **(D)** To protect against or to prevent actual or potential fraud and unauthorized transactions and claims and for institutional risk control activities.

**(b)** No unrelated use shall be made of a federal or state tax return or any information obtained therefrom or any information submitted with the return by a consumer in connection with a financial or other business-related transaction. "Unrelated use" means any use that is not necessary to effect, administer, or enforce the financial or other business-related transaction with the consumer or that is beyond the scope of the stated purpose to which the consumer consented for the use of the return or any other information he or she submitted.

167.    And, § 1799.1a(c)(1)(B) defines "Consumer" as "an individual who requests or obtains financial or other business-related services."

168.    Plaintiff and Class Members are consumers, within the meaning of § 1799.1a(c)(1)(B) because they requested and obtained financial and business-related services from Defendant when they provided information and/or paid money to Defendant so that Defendant could use its tax preparation software to prepare their respective tax returns.

169.    Plaintiff and Class Members entered into a "financial or other business-related transaction" with Defendant when they used Defendant's tax preparation software, entered their personal and financial information on Defendant's website, and/or paid money for Defendant's tax preparation services.

170.    As alleged above, some of the Confidential Tax Return Information that Defendant disclosed to Meta and, on information and belief, used for its own purposes to improve its marketing and

advertising, was obtained from Plaintiff's and Class Members' tax returns after those tax returns had been prepared by Defendant's tax preparation software.

171.    When Defendant <u>disclosed</u> this Confidential Tax Return Information, obtained from Plaintiff's and Class Members' prepared tax returns, to Meta, without written consent, it violated § 1799.1a(a) because that disclosure did not fall within the specific exceptions set out in § 1799.1a(a)(1)-(5).

172.    When Defendant <u>used</u> this Confidential Tax Return Information, obtained from Plaintiff's and Class Members' prepared tax returns, for its own purposes to improve its marketing and advertising, it violated § 1799.1a(b) because that use of information obtained from Plaintiff's and Class Members' tax returns was an "unrelated use" within the meaning of § 1799.1a(b).

173.    Plaintiff, on behalf of himself and the Class, seeks relief as further described below.

## SIXTH CAUSE OF ACTION

**Violation of California Invasion of Privacy Act (CIPA), California Penal Code §§ 630, *et seq.***

174.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

175.    The California Invasion of Privacy Act begins with its statement of purpose: "The legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society. The Legislature by this chapter intends to protect the right of privacy of the people of this state." Cal. Penal Code § 630.

176.    Cal. Penal Code § 631(a) provides, in pertinent part: "Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or

cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500) . . ."

177.   Defendant is a "person" within the meaning of Cal. Penal Code § 631.

178.   Plaintiff's and Class Members' communications of Confidential Tax Return Information with Defendant on and through Defendant's website were intended to be confined to the parties. Plaintiff and Class Members were using what they understood to be Defendant's secure website and no indication was given that their identities and Confidential Tax Return Information would be shared with or viewed by any unauthorized third party. The circumstances reasonably indicate that Plaintiff and Class Members desired their communications with Defendant to be confined to the parties thereto.

179.   Despite not having any authorization from Plaintiff or Class Members, Defendant aided, agreed with, or conspired with Meta, to permit them to intercept these communications and to learn the content of those communications while in transit or in the process of being sent or received.

180.   Defendant's conduct, as described above, violated Penal Code § 631. Under Penal Code § 637.2, Plaintiff and Class Members are entitled to recover the greater of: (1) five thousand dollars ($5,000) per violation; or (2) three times the amount of actual damages according to proof at trial.

181.   Plaintiff, on behalf of himself and the Class, seeks relief as further described below.

### SEVENTH CAUSE OF ACTION

**Violation of California Business & Professions Code §§ 17200 *et seq.* (UCL)**

182.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

183.   The UCL prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice. Cal. Bus. & Prof. Code § 17204 allows "any person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Such a person may bring such an action on behalf of themselves and others similarly situated, who are affected by the unlawful, unfair, or fraudulent business practice or practices."

184.   TaxAct's acts, omissions, practices, and non-disclosures as alleged herein constituted unlawful, unfair, and fraudulent business acts and practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.* (UCL).

185.   Defendant engaged in "unlawful" business acts and practices, as set forth above: in violation of the common law; in violation of the California Constitution; in violation of California statutes, including the Tax Preparation Act, the California Invasion of Privacy Act, and Cal. Bus. & Prof. Code § 17530.5; and in violation of 26 U.S.C. 7216.

186.     Plaintiff reserves the right to allege other violations of law committed by Defendant that constitute unlawful business acts or practices within the meaning of the UCL.

187.     Defendant has also engaged in "unfair" business acts and practices. California has a strong public policy of protecting consumers' privacy interests, including consumers' personal data. TaxAct violated this strong public policy by, among other things, surreptitiously disclosing, releasing, and otherwise misusing Plaintiff's and Class Members' Confidential Tax Return Information without Plaintiff's and Class Members' consent. TaxAct's acts and practices violate the policies underlying the statutes and the article of the California Constitution referenced herein.

188.     Defendant's acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. Defendant secretly disclosed, released, and otherwise misused their Confidential Tax Return Information, with no corresponding benefit to its customers and other website visitors. And, because consumers were unaware of Defendant's incorporation of tracking tools into its website and that Defendant would disclose and release their Confidential Tax Return Information to unauthorized third parties, they could not have avoided the harm.

189.     Had Plaintiff and Class Members known that their Confidential Tax Return Information would be disclosed or released by Defendant to unauthorized third parties, they would not have shared personal and financial information with Defendant's website or would not have used Defendant's website.

190.     The UCL also prohibits any "fraudulent business act or practice." Defendant's above-described nondisclosures and misleading statements were false, misleading, and likely to deceive the consuming public in violation of the UCL.

191.     Plaintiff and Class Members suffered injury in fact and lost money or property as a result of Defendant's acts and practices in that a portion of any money Plaintiff and Class Members paid for Defendant's services went to fulfill Defendant's obligations with respect to the confidentiality and security of Plaintiff's and Class Members' Confidential Tax Return Information, and Defendant failed to fulfill those obligations.

192.     Plaintiff and Class Members also suffered injury in fact as a result of Defendant's acts and practices because they paid more for Defendant's services than they otherwise would have had they known Defendant was disclosing their Confidential Tax Return Information to unauthorized third parties in violation of its legal obligations, social norms, and reasonable consumer expectations.

193.     Plaintiff and Class Members have also suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) invasion of privacy; (ii) breach of the confidentiality of their Confidential Tax Return Information; and/or (iii) deprivation of the value of

their Confidential Tax Return Information for which there is a well-established national and international market.

194.     Plaintiff also seeks restitution on behalf of himself and the Class.

195.     This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit on a large class of persons and/or the general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seeks the recovery of attorneys' fees and costs in prosecuting this action against Defendant under Code of Civil Procedure § 1021.5 and other applicable law.

196.     Plaintiff, on behalf of himself and the Class, seeks relief as further described below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class prays for judgment against Defendant as follows:

197.     Ordering that this action may proceed and be maintained as a class action under § 382 of the Code of Civil Procedure; and defining the Class as specified above and appointing Plaintiff as Representative of the Class and his attorneys as Counsel for the Class;

198.     Awarding Plaintiff and Class Members compensatory damages, disgorgement of profits, and punitive damages for Defendant's invasion of privacy and violation of Article 1, Section 1 of the California Constitution;

199.     Awarding Plaintiff and Class Members restitution and disgorgement of profits, pursuant to Cal. Bus. & Prof. Code § 17535, for Defendant's violations of Cal. Bus. & Prof. Code § 17530.5;

200.     Awarding Plaintiff and Class Members statutory civil penalties of $1,000 per violation and attorneys' fees and costs, pursuant to Cal. Bus. & Prof. Code § 22257, for Defendant's violations of the Tax Preparation Act, Cal. Bus. & Prof. Code §§ 22250 *et seq.*;

201.     Awarding Plaintiff and Class Members actual damages, in no case less than $500 per violation, and attorneys' fees and costs, pursuant to Cal. Civil Code § 1799.2, for Defendant's violations of Cal. Civil Code § 1799.1a.

202.     Awarding Plaintiff and Class Members statutory damages of $5,000 per violation, or three times the amount of actual damages, for Defendant's violations of California's Invasion of Privacy Act, Penal Code §§ 630 *et seq.*;

203.     Declaring that Defendant's conduct alleged herein constitutes a violation of Bus. & Prof. Code §§ 17200 *et seq.* under the unlawful, unfair, and fraudulent prongs of the UCL;

204.    Awarding Plaintiff and Class Members restitution for Defendant's violations of the UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq.*;

205.    Awarding attorneys' fees and costs as authorized by statute and governing law, including Code of Civil Procedure § 1021.5; and

206.    Awarding such other and further relief, at law and in equity, as the nature of this case may require or as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and members of the Class hereby demands a jury trial on all issues so triable.

DATED:   January 23, 2023                Respectfully submitted,


_____
Julian Hammond
*Attorneys for Plaintiff and the Putative Class*