Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

James W. Ducayet (*pro hac vice pending*)
jducayet@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Michele L. Aronson (*pro hac vice pending*)
maronson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736 8000
Facsimile: (202) 736 8711

*Attorneys for Defendant Tax Act, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| NICOLAS C. SMITH-WASHINGTON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TAXACT, INC.,<br><br>Defendant. | Case No. 3:23-CV-00830-VC<br><br>Assigned to Hon. Vince Chhabria<br><br>**DEFENDANT TAXACT, INC.'S NOTICE OF MOTION AND MOTION TO STAY UNDER 9 U.S.C. § 3**<br><br>Date:   April 6, 2023<br>Time:  10:00 a.m.<br>Place:  Courtroom 4, 17th Floor<br><br>Case Removed: February 23, 2023<br><br>(Superior Court Of California Alameda County, Case No. 23cv026204) |

TO PLAINTIFF NICOLAS C. SMITH-WASHINGTON AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 6, 2023, at 10:00 a.m., or as soon thereafter as it may be heard, Defendant TaxAct, Inc. ("TaxAct") hereby moves to stay this proceeding pending arbitration with Plaintiff Smith-Washington and then during the pendency of the arbitration. TaxAct's motion will be heard before the Honorable Vince Chhabria of the United States District Court for the Northern District of California in Courtroom 4, located at 450 Golden Gate Avenue, San Francisco, California 94102.

TaxAct moves this Court for an order staying this case pending the outcome of the arbitration proceedings. This motion is brought pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3 *et seq.*, and well-settled law on the grounds that Plaintiff and TaxAct agreed to arbitrate all disputes on an individual basis when Plaintiff agreed to the Terms of Service and License Agreement continued to visit and use TaxAct's website and tax return preparation products. All seven of Plaintiff's Causes of Action in the instant lawsuit fall within the scope of that arbitration provision.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the Declaration of Ian Campbell concurrently herewith, the record in this action, and any oral argument permitted by the Court.

As set forth in the accompanying Declaration of Sheila A.G. Armbrust, TaxAct asked Plaintiff to stipulate to this proposal but Plaintiff did not agree.

Date:  March 2, 2023                                             Respectfully submitted,

By:  */s/ Sheila A.G. Armbrust*
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772 1200
Facsimile: (415) 772 7400

*Attorneys for Defendant TaxAct, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 2

    A.    Plaintiff ............................................................................................................... 2

    B.    Defendant TaxAct ............................................................................................... 2

    C.    The Arbitration Agreement ................................................................................ 2

    D.    This Lawsuit ....................................................................................................... 4

ARGUMENT ............................................................................................................................. 5

    A.    This Action Must Be Stayed Under The Federal Arbitration Act. ..................... 5

        1.    The FAA Embodies the Strong National Policy in Favor of Arbitration. ............ 5

        2.    The Arbitration Agreements Are Valid and Enforceable. ................................... 7

        3.    Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreements. .......... 10

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Safin v. Circuit City Stores, Inc.*,
    394 F.3d 1254 (9th Cir. 2005) ............................................................................................... 7

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    24 Cal. 4th 83 (2000) ............................................................................................................ 7

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .............................................................................................................. 5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ........................................................................................................ 6, 11

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991) .......................................................................................................... 8, 9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ........................................................................................... 6, 7

*Comedy Club, Inc. v. Improv West Assoc.*,
    553 F.3d 1277 (9th Cir. 2009) ............................................................................................... 6

*Cox v. Ocean View Hotel Corp.*,
    533 F.3d 1114 (9th Cir. 2008) ............................................................................................... 6

*Datel Holdings Ltd. v. Microsoft Corp.*,
    712 F. Supp. 2d 974 (N.D. Cal. 2010) .................................................................................. 9

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) .............................................................................................................. 6

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) .......................................................................................................... 5

*Estrella v. Freedom Fin.*,
    No. C 09-03156 SI, 2011 WL 2633643 (N.D. Cal. July 5, 2011) ...................................... 10

*In re Facebook Biometric Info. Priv. Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................................................................ 9

*Farrow v. Fujitsu Am., Inc.*,
    37 F. Supp. 3d 1115 (N.D. Cal. 2014) .................................................................................. 6

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) .............................................................................................................. 7

*Fontana v. Chefs' Warehouse Inc.*,
  Case No. 16-CV-06521-HSG, 2017 WL 2591872 (N.D. Cal. June 15, 2017) .......................... 6

*Hill v. Gateway 2000, Inc.*,
  105 F.3d 1147 (7th Cir. 1997) .................................................................................................. 9

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
  379 F.3d 159 (5th Cir. 2004) .................................................................................................... 9

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011) (*per curiam*) ............................................................................................. 5

*Lee v. Ticketmaster L.L.C.*,
  817 F. App'x. 393 (9th Cir. 2020) ....................................................................................... 8, 10

*Little v. Auto Stiegler, Inc.*,
  29 Cal. 4th 1064 (2003) ............................................................................................................ 7

*Madden v. Kaiser Found. Hosps.*,
  17 Cal. 3d 699 (1976) ............................................................................................................... 7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) .................................................................................................................. 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ........................................................................................................... 5, 7, 11

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .................................................................................................. 9

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US) LLC*,
  55 Cal. 4th 223 (2012) .............................................................................................................. 8

*Rent–A–Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ................................................................................................................ 5, 6

*Republic of Nicar. v. Standard Fruit Co.*,
  937 F.2d 469 (9th Cir. 1991) .................................................................................................... 6

*Savetsky v. Pre–Paid Legal Servs., Inc.*,
  Case No. 14–03514 SC, 2015 WL 604767 (N.D. Cal. Feb. 12, 2015) ..................................... 9

*Snow v. Eventbrite, Inc.*,
  No. 3:20-CV-03698-WHO, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) ..................... 8, 9, 10

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) .................................................................................................................. 7

*Vianna v. Doctors' Mgmt. Co.*,
  27 Cal. App. 4th 1186 (1994) ............................................................................................... 7, 8

*Wagner Constr. Co. v. Pac. Mech. Corp.*,
  41 Cal. 4th 19 (2007) ..................................................................................................6

**Statutes**

9 U.S.C. § 1, *et seq.* (Federal Arbitration Act or "FAA") ....................................................... *passim*

9 U.S.C. § 2 ..........................................................................................................................................5

9 U.S.C. § 3 ...............................................................................................................................1, 5, 11

9 U.S.C. § 4 ..........................................................................................................................................6

**Other Authorities**

Cal. Bus. & Prof. Code § 17200 *et seq.* (Unfair Competition Law or "UCL") .....................1, 5, 10

Cal. Bus. & Prof. Code § 17530.5 *et seq.* .....................................................................................1, 5

Cal. Bus. & Prof. Code § 22250 *et seq.* (California Tax Preparation Act) ...................................1, 5

Cal. Civil Code § 1799 *et seq.* ........................................................................................................1, 5

Cal. Constitution Art. 1, § 1 .............................................................................................................1, 5

Cal. Penal Code § 630 *et seq.* (California Invastion of Privacy Act or "CIPA") ..........................1, 5

Defendant TaxAct, Inc. ("TaxAct " or "Defendant") respectfully moves pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3 *et seq.*, to stay this proceeding pending the completion of arbitration.

**INTRODUCTION**

This is a putative class action against TaxAct. TaxAct is a tax preparation software company that offers software to individual tax registers and companies. Plaintiff Nicolas C. Smith-Washington ("Plaintiff") alleges that "TaxAct has disclosed and released confidential tax return information to Meta," which was a "massive breach of confidentiality and privacy has, on information and belief, affected hundreds of thousands, if not millions of Class Members in the state of California." Compl. ¶ 7.[1] Plaintiff asserts claims for (1) common law invasion of privacy through intrusion into private matters; (2) violation of Art. 1, § 1 of the California Constitution; (3) violation of California Business and Professions Code § 17530.5 *et seq.*; (4) violation of California Tax Preparation Act, Business & Professions Code § 22250 *et seq.*; (5) violation of California Civil Code § 1799 *et seq.* (in the alternative); (6) violation of California Invasion of Privacy Act (CIPA), California Penal Code § 630 *et seq.*; and (7) violation of California Business & Professions Code § 17200 (UCL). Plaintiff's Complaint asserts claims on behalf of himself and "all natural persons residing in California who used Defendant's website's tax preparation services to prepare a tax return . . . on or prior to November 23, 2022." *Id.* at ¶ 3.

Plaintiff cannot litigate his claims in this Court. That is because when Plaintiff used TaxAct's tax preparation products and services, he agreed to do so pursuant to TaxAct's standard terms and conditions. These standard terms and conditions require that any disputes, apart from disputes involving small claims or intellectual property, must be resolved by confidential binding arbitration, which is to be conducted on an individual (not class-wide) basis. As such, Plaintiff's claims must be arbitrated in confidential binding arbitration, and this action should be stayed pursuant to Section 3 of the Federal Arbitration Act until that arbitration has been completed.

---

[1] *See* Exhibit A to the Decl. of Sheila A.G. Armbrust in Support of Def.'s Not. of Removal (Feb. 23, 2023), ECF No. 1-4.

# FACTUAL BACKGROUND

## A. Plaintiff

Plaintiff Smith-Washington alleges that "TaxAct has disclosed and released confidential tax return information to Meta." Compl. ¶ 7. Plaintiff purports to bring this action on behalf of himself and all natural persons residing in California who used TaxAct's website for tax preparation services to prepare a tax return on or prior to November 23, 2022. *Id.* at ¶ 3. Plaintiff's Complaint alleges that there are "hundreds of thousands, if not millions of Class Members in the state of California." *Id.* at ¶ 7.

## B. Defendant TaxAct

Plaintiff alleges that TaxAct "maintained and operated, and continues to maintain and operate, a website — https://www.taxact.com — through which its customers and other visitors can, among other things, learn about [TaxAct]'s services, learn about tax law developments, file federal taxes, file state taxes, receive tax filing advice and help, and otherwise interact with [TaxAct]." *Id*. at ¶ 2. Plaintiff further alleges that TaxAct "secretly transmitted to Meta Platforms, Inc." his and putative class members' respective activities on TaxAct's website, including confidential personal and financial information shared with TaxAct. *Id*. at ¶ 5.

## C. The Arbitration Agreement

Every visitor or user of TaxAct's websites, mobile applications, online and offline tax return preparation products, and filing services (collectively, the "Services"), is subject to a set of contractual terms and conditions of service called the TaxAct Terms of Service and License Agreement (the "Terms of Service & Terms of Use" or "terms and conditions"), which are publicly available on the TaxAct website.[2] The Terms of Service & Terms of Use include a clause requiring the parties to arbitrate any disputes and to do so on an individual, rather than class-wide, basis (the

---

[2] Decl. of Ian Campbell ("Campbell Decl."), Ex. A (TaxAct Terms of Service & License Agreement, last updated Nov. 16, 2020). The Terms of Service & Terms of Use have been publicly available on the TaxAct website in substantially the same format since at least 2017. Campbell Del., Ex. B (TaxAct Terms of Service & License Agreement, last updated Jan. 5, 2017).

"Arbitration Agreement").[3] The Arbitration Agreement include two exceptions for disputes relating to small claims or intellectual property. The Arbitration Agreement provides, in relevant part:[4]

> **Dispute Resolution; Binding Arbitration**
>
> **Please read the following section carefully because it requires you to arbitrate certain disputes and claims with TaxAct and limits the manner in which you can seek relief from us.** Except for small claims disputes in which you or TaxAct seek to bring an individual action in small claims court located in the county of the defendant's billing address or disputes in which you or TaxAct seeks injunctive or other equitable relief for the alleged unlawful use of intellectual property, you and TaxAct waive your rights to a jury trial and to have any dispute arising out of or related to these Terms or our Services resolved in court. Instead, all disputes arising out of or relating to these Terms or our Services will be resolved through confidential binding arbitration held in Dallas County, Texas in accordance with the Streamlined Arbitration Rules and Procedures ("Rules") of the Judicial Arbitration and Mediation Services ("JAMS"), which are available on the JAMS website and hereby incorporated by reference. You either acknowledge and agree that you have read and understand the rules of JAMS or waive your opportunity to read the rules of JAMS and any claim that the rules of JAMS are unfair or should not apply for any reason.
>
> **You and TaxAct agree that any dispute arising out of or related to these Terms or our Services is personal to you and TaxAct and that any dispute will be resolved solely through individual arbitration and will not be brought as a class arbitration, class action or any other type of representative proceeding.**
>
> You and TaxAct agree that these Terms affect interstate commerce and that the enforceability of this Section will be substantively and procedurally governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA"), to the maximum extent permitted by applicable law. As limited by the FAA, these Terms and the JAMS Rules, the arbitrator will have exclusive authority to make all procedural and substantive decisions regarding any dispute and to grant any remedy that would otherwise be available in court; provided, however, that the arbitrator does not have the authority to conduct a class arbitration or a representative action, which is prohibited by these Terms. The arbitrator may only conduct an individual arbitration and may not consolidate more than one individual's claims, preside over any type of class or representative proceeding or preside over any proceeding involving more than one individual. Every Visit and Use of TaxAct's TaxAct's Websites, Mobile Applications, Online and Offline Tax Return Preparation Products, and Related Services, and Filing Services Are Subject to the Applicable Terms of Service and License Agreement.

---

[3] The Terms of Service & Terms of Use also provide that the agreements are governed by Texas law without regard to choice of law principles, and contain severability provisions. Campbell Decl., Ex. A at p. 4.

[4] Campbell Decl., Ex. A at p. 4; *see also*, Campbell Del., Ex. B at p. 5.

> ANY CLAIM ARISING OUT OF OR RELATED TO THIS AGREEMENT OR OUR SERVICES OR CONTENT MUST BE FILED WITHIN ONE YEAR AFTER SUCH CLAIM AROSE; OTHERWISE, THE CLAIM IS PERMANENTLY BARRED, WHICH MEANS THAT YOU AND TAXACT WILL NOT HAVE THE RIGHT TO ASSERT THE CLAIM.
>
> You have the right to opt out of binding arbitration within thirty (30) days of the date you first accepted the terms of this Section by sending an email to arbitration@taxact.com. In order to be effective, the opt-out notice must include your full name and clearly indicate your intent to opt out of binding arbitration. By opting out of binding arbitration, you are agreeing to resolve Disputes in accordance with the following Section (Jurisdiction and Venue).

As noted above, all visitors and users of TaxAct's Services, which include, but are not limited to, its website, as well as online and offline tax return preparation products, were subject to the Terms of Service and License Agreement, which included the Arbitration Agreement.

Importantly, individuals who create an account on the TaxAct website are required to affirmatively check the checkbox that reads as follows: "I agree to the TaxAct Terms of Service & Terms of Use, I have read and acknowledge the Privacy Statement, and I agree to receive SMS codes from TaxAct for the purpose of two-factor authentication during Sign-In."[5]

Additionally, TaxAct customers who electronically file their tax returns on the TaxAct website ("e-filing") must affirmatively check the checkbox that reads as follows: "I agree to the terms and conditions" prior to e-filing.[6] TaxAct customers who print their tax returns from the TaxAct website in order to file physical copies ("paper filing") must affirmatively check the checkbox that reads as follows: "I agree to the terms and conditions" prior to printing their tax returns.[7]

**D.  This Lawsuit**

Plaintiff Smith-Washington filed this putative class action lawsuit in the Superior Court for the State of California, County of Alameda on January 24, 2023. Case was removed to the current district February 23, 2023. Plaintiff alleges that he and putative class members were harmed when

---

[5] Campbell Decl., Ex. C.

[6] Campbell Decl., Ex. D.

[7] Campbell Decl., Ex. E.

TaxAct allegedly shared confidential tax return information with Meta. As noted, Plaintiff asserts claims for alleged violations of (1) the common law invasion of privacy through intrusion into private matters; (2) Art. 1, § 1 of the California Constitution; (3) violation of California Business and Professions Code § 17530.5 et seq.; (4) California Tax Preparation Act, Business & Professions Code § 22250 *et seq.*; (5) California Civil Code § 1799 et seq. (in the alternative); (6) California Invasion of Privacy Act (CIPA), California Penal Code § 630 et seq.; and (7) California Business & Professions Code § 17200 (UCL).

## ARGUMENT

**A.   This Action Must Be Stayed Under The Federal Arbitration Act.**

**1.   The FAA Embodies the Strong National Policy in Favor of Arbitration.**

Section 2 of the FAA mandates that arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court recently reiterated, the FAA establishes a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (*per curiam*) (The FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms.") (internal quotation marks omitted).

Pursuant to Section 3 of the FAA, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *See Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) ("Under § 3 [of the FAA], a party may apply to a federal court for a stay of the trial of an

5

action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'"). Accordingly, if all of Plaintiff's claims are subject to a valid arbitration agreement, the Court may dismiss or stay the case. *Farrow v. Fujitsu Am., Inc.*, 37 F. Supp. 3d 1115, 1118 (N.D. Cal. 2014). "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). An order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Comedy Club, Inc. v. Improv West Assoc.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

A dispute is subject to arbitration when two conditions are satisfied. *First*, the court must determine whether a valid arbitration agreement exists. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). *Second*, if a valid arbitration agreement exists, the court must evaluate whether the arbitration agreement encompasses the dispute at issue. *Id.* If these two conditions are satisfied, arbitration is required. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration."). The arbitrability of a claim relies on the existence of a valid contract; a motion to enforce an arbitration clause "is in essence a suit in equity to compel specific performance of [that contract]." *Cox*, 533 F.3d at 1125 (citing *Wagner Constr. Co. v. Pac. Mech. Corp.*, 41 Cal. 4th 19, 58 (2007)).

An arbitration agreement governed by the FAA, such as the Arbitration Agreement here, is presumed to be valid and enforceable, and the party resisting arbitration bears the burden of establishing a defense to the agreement's enforcement by a preponderance of the evidence. *See Fontana v. Chefs' Warehouse Inc.*, Case No. 16-CV-06521-HSG, 2017 WL 2591872, at *2 (N.D. Cal. June 15, 2017). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic*

1  *Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (quoting *Moses*, 460 U.S. at 24-25). As set forth
2  below, Plaintiff cannot meet this heavy burden because: (1) the Arbitration Agreement is valid and
3  enforceable; and (2) Plaintiff's claims fall squarely within the Arbitration Agreement, which broadly
4  encompass all disputes, apart from those related to small claims and intellectual property (which are
5  not at issue here), relating to or arising from the visitation and use of TaxAct's services.

6  **2. The Arbitration Agreements Are Valid and Enforceable.**

7  Since "arbitration is a matter of contract," *United Steelworkers of Am. v. Warrior & Gulf
8  Navigation Co.*, 363 U.S. 574, 582 (1960), the existence of a valid arbitration agreement is
9  determined under applicable state law on contract formation. *See First Options of Chi., Inc. v.
10 Kaplan*, 514 U.S. 938, 944 (1995); *see also Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1257
11 (9th Cir. 2005); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 98 (2000)
12 ("[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and
13 enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.")
14 (citations omitted). Pursuant to TaxAct's standard required business practice, Plaintiff and each
15 putative class member would have been provided and been required to accept TaxAct's standard
16 Terms of Service & Terms of Use, which includes the Arbitration Agreement, before proceeding
17 with their use of TaxAct's services. Such evidence establishes the existence of a valid and
18 enforceable agreement to arbitrate between TaxAct and Plaintiff.

19 The general rule in California is that "one who assents to a contract is bound by its provisions
20 and cannot complain of unfamiliarity with the language of the instrument." *Madden v. Kaiser
21 Found. Hosps.*, 17 Cal. 3d 699, 710 (1976). California's public policy, like federal policy under the
22 FAA, is strongly in favor of arbitration agreements. *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064,
23 1079 (2003); *Madden*, 17 Cal. 3d at 706-07 ("[A]rbitration has become an accepted and favored
24 method of resolving disputes . . . praised by the courts as an expeditious and economical method of
25 relieving overburdened civil calendars.") (citations omitted). Under California law, "arbitration
26 agreements should be liberally interpreted, and arbitration should be ordered unless the agreement
27 clearly does not apply to the dispute in question." *Vianna v. Doctors' Mgmt. Co.*, 27 Cal. App. 4th
28 1186, 1189 (1994) (citations omitted). Any "[d]oubts as to whether an arbitration clause applies to a

particular dispute are to be resolved in favor of sending the parties to arbitration." *Id.* Plaintiff bears the burden of proving the Arbitration Agreement is not valid and enforceable, and cannot do so here. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US) LLC*, 55 Cal. 4th 223, 236 (2012).

Here, Plaintiff entered into a binding arbitration agreement when he visited TaxAct's website, created a TaxAct account, and filed his state and federal tax returns through TaxAct. When a customer uses the TaxAct website, even before the creation of an account or the purchase of a product, their use of TaxAct's website is subject to the Terms of Service & Terms of Use, which contains the Arbitration Agreement.[8] Then, when a customer clicks to create an account on the TaxAct website, they are required to affirmatively check the checkbox that says, "I agree to the TaxAct Terms of Service & Terms of Use, I have read and acknowledge the Privacy Statement, and I agree to receive SMS codes from TaxAct for the purpose of two-factor authentication during Sign-In."[9] Further, a customer must affirmatively check a box agreeing to the TaxAct Terms of Service & Terms of Use upon electronically filing their tax returns on the TaxAct website must affirmatively check the checkbox that reads as follows:, "I agree to the terms and conditions" prior to e-filing.[10] If the customer prints their tax returns from the TaxAct website for paper filings, as opposed to e-filing, they must affirmatively check the checkbox that reads as follows: "I agree to the terms and conditions" prior to printing their tax returns.[11]

Importantly, courts consistently enforce arbitration provisions when consumers register an account or complete a purchase knowing the transaction is subject to terms and conditions. *See Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x. 393, 394-95 (9th Cir. 2020) (enforcing agreement where website provided "sufficient notice for constructive assent" by displaying the advisory, "[b]y continuing past this page, you agree to our Terms of Use") (citations omitted); *cf. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 593-95 (1991) (enforcing forum selection clause consumers would not

---

[8] Campbell Decl., ¶ 3(a).
[9] Campbell Decl., Ex. B.
[10] Campbell Decl., Ex. D.
[11] Campbell Decl., Ex. E.

have seen unless the consumer obtained a copy of terms and conditions referenced on the back of tickets); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 164 (5th Cir. 2004) (enforcing arbitration provisions contained in "its Terms and Conditions in the box with the handset that the customer purchases"); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148-51 (7th Cir. 1997) (enforcing arbitration terms contained within product packaging); *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 989 (N.D. Cal. 2010) (enforcing terms of an agreement contained within product packaging).

Similarly, courts also consistently enforce the type of "clickwrap" agreement used by TaxAct. *See In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1164-65 (N.D. Cal. 2016). A clickwrap agreement is one in which the website user is "presented with a list of terms and conditions of use" before being asked to agree to them. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). Users are "required to click on an 'I agree' box"; they must expressly manifest assent to the terms and conditions. *Id.* at 1175–76. "[C]ourts generally find that clickwrap agreements are enforceable." *Savetsky v. Pre–Paid Legal Servs., Inc.*, Case No. 14–03514 SC, 2015 WL 604767, at *3 (N.D. Cal. Feb. 12, 2015). The Ninth Circuit has recognized that the more closely digital agreements resemble clickwrap agreements, the more often they have been upheld as valid and enforceable. *Facebook*, 185 F. Supp. at 1165; *Nguyen*, 763 F.3d at 1176.

Here, when a customer, such as Plaintiff, clicks to create an account on the TaxAct website, they are required to affirmatively check the checkbox stating "I agree to the TaxAct Terms of Service & Terms of Use."[12] A TaxAct customer must also affirmatively check a box agreeing to the TaxAct Terms of Service & Terms of Use prior to e-filing or prior to printing their tax returns if they elect to paper file.[13] The repeated notices of the Terms of Service and License Agreement, which contained the Arbitration Agreement, was unavoidable, and yet Plaintiff—according to TaxAct's records—continued to use TaxAct's Services at least seven times since 2015. Therefore, Plaintiff accepted the Terms of Service & Terms of Use, and as such, he has agreed to be bound by those terms, including the arbitration provision compelling individual binding arbitration. *Snow v.*

---

[12] Campbell Decl., Ex. C.

[13] Campbell Decl., Exs. D-E.

*Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021); *Ticketmaster*, 817 F. App'x. at 394 (noting that the fact that plaintiff used his account roughly twenty times during the relevant period "only reinforces that he had many such opportunities" to read the Terms of Use). Thus, the Arbitration Agreement is binding on both Plaintiff and TaxAct.

### 3. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreements.

Where a valid and enforceable arbitration agreement exists, as here, the Court must next determine whether the dispute at issue falls within the scope of that agreement. Here, Plaintiff's claims based upon TaxAct's alleged sharing of confidential tax return information with a third party, fall squarely within the scope of the Arbitration Agreement, and therefore are subject to binding arbitration.

The Complaint alleges that TaxAct's alleged practice of sharing confidential tax return information was unlawful pursuant to California common law, the California Constitution and various California statutes; and Plaintiff seeks monetary remedies in the form of form of compensatory damages, disgorgement of profits, restitution, punitive damages, attorneys' fees, and statutory civil penalties. Pursuant to the Arbitration Agreement, Plaintiff agreed that, except for small claims individual actions or disputes regarding the alleged unlawful use of intellectual property, "any dispute will be resolved solely through individual arbitration and will not be brought as a class arbitration, class action or any other type of representative proceeding."[14] None of Plaintiff's claims fall into the categories of a small claims dispute or disputes in which Plaintiff or TaxAct "seek[] injunctive or other equitable relief for the alleged unlawful use of intellectual property."

As such, each of Plaintiff's claims squarely falls within the scope of the Arbitration Agreement. *See, e.g.*, *Estrella v. Freedom Fin.*, No. C 09-03156 SI, 2011 WL 2633643, at *5 (N.D. Cal. July 5, 2011) (ordering plaintiffs to arbitrate their UCL and CLRA claims where the arbitration clause covered "any controversy, claim or dispute . . . arising out of or relating to" the contract) (citation and internal quotation marks omitted). Even if there could be any doubt as to this point—

---

[14] Campbell Decl., Ex. A at p. 4; Ex. B at p. 5.

and there is not—such doubt must be resolved in favor of arbitration. *AT&T*, 475 U.S. at 650 (holding that doubts as to whether an asserted dispute is covered by an arbitration clause "should be resolved in favor of coverage") (citation and internal quotation marks omitted); *Moses*, 460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

## CONCLUSION

For the foregoing reasons, Defendant respectfully request that this Court grant its Motion to Stay Proceedings Pending Arbitration Pursuant to Section 3 of the Federal Arbitration Act.

Date:  March 2, 2023

Respectfully submitted,

By:  /s/ Sheila A.G. Armbrust
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772 1200
Facsimile: (415) 772 7400

James W. Ducayet (*pro hac vice pending*)
jducayet@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Michele L. Aronson (*pro hac vice pending*)
maronson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736 8000
Facsimile: (202) 736 8711

*Attorneys for Defendant TaxAct, Inc.*