JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Avenue, Suite 600
Tacoma, WA 98402
Tel. (310) 601-6766
Fax (310) 295-2385

JASON SETH HARROW (SBN 308560)
jason@gerstein-harrow.com
GERSTEIN HARROW, LLP
3243b S. La Cienega Blvd.
Los Angeles, CA 90016
(323) 744-5293

EMILY GERRICK (*pro hoc vice pending*)
emily@gerstein-harrow.com
GERSTEIN HARROW, LLP
810 7th St. NE, Ste. 301
Washington, DC 20002
(202) 540-8105

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NICHOLAS C. SMITH-WASHINGTON**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**TAXACT, INC.**,<br><br>Defendant. | Case No. 3:23-cv-830-VC<br><br>Assigned to Hon. Vince Chhabria<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY UNDER 9 U.S.C. § 3**<br><br>Hearing Date: May 18, 2023<br>Time: 10:00 A.M.<br>Court: Courtroom 4, 17th<br><br>Date Action Filed: January 24, 2023<br>Removal Filed: February 23, 2023 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................................ii

I. INTRODUCTION ...............................................................................................................1

II. RELEVANT FACTS............................................................................................................2

III. RELEVANT STANDARDS AND BURDENS..................................................................2

IV. ARGUMENT .......................................................................................................................3

    A. TaxAct Fails to Meet its Burden To Show The Parties Agreed To Arbitrate. ........3

        1. Plaintiff Did Not Agree to Forced Arbitration When He Signed up For TaxAct's Services...........................................................................................3

        2. TaxAct Has Not Shown That Plaintiff Agreed that TaxAct Could Modify its 2005 Agreement With Him to Contain a Forced Arbitration Provision. 4

    B. The Agreement is Procedurally and Substantively Unconscionable........................7

        1. The Arbitration Agreement is Procedurally Unconscionable. .....................7

        2. The Arbitration Agreement is Substantively Unconscionable. ...................9

            a. The Arbitral Forum is Prohibitively Expensive, And It Is Unlikely Plaintiff Could Ever Recover An Amount Greater Than His Costs 9

            b. The Agreement Requires Arbitration in Distant Forum................10

            c. The Statue of Limitations Waiver is Unconscionable...................11

            d. The Limitation on Liability and Type of Damages Is Unconscionable ..............................................................................12

            e. The Lack of Discovery Is Unconscionable. .................................13

        3. The Court Should Refuse to Sever The Unconscionable Provisions ........14

    C. If Plaintiff Agreed to Arbitrate, He Did So Under Economic Duress...................15

    D. If the Court Finds that a Binding Arbitration Agreement Exists, Plaintiff Requests Dismissal Rather than a Stay...............................................................................15

V. CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000) ........................................................................................................... 14

*Bolter v. Superior Court*,
   87 Cal. App. 4th 900 (2001) ................................................................................................ 10

*Comb v. Paypal, Inc.*,
   218 F. Supp. 2d 1165 (N.D. Cal. 2002) ............................................................................... 11

*Dennison v. Rosland Capital LLC*,
   47 Cal. App. 5th 204 (2020) ................................................................................................ 12

*Dougherty v. Roseville Heritage Partners*,
   47 Cal. App. 5th 93 (2020) .................................................................................................. 14

*Douglas v. U.S. Dist. Ct. for Cent. Dist. of California*,
   495 F.3d 1062 (9th Cir. 2007) ....................................................................................... 1, 6, 7

*Duarte v. Mission Fed. Credit Union*,
   No. 3:19-CV-01441-AJB-KSC, 2020 WL 4732058 (S.D. Cal. Aug. 14, 2020) ................... 10

*Felter v. Dell Techs., Inc.*,
   No. 21-CV-04187-VC, 2022 WL 3010173 (N.D. Cal. July 29, 2022) ............................ 8, 15

*Fisher v. MoneyGram International, Inc.*,
   66 Cal. App. 5th 1084 (2021) .............................................................................................. 11

*Fitz v. NCR, Corp.*,
   118 Cal. App. 4th 702 (2004) .............................................................................................. 13

*Goldman, Sachs & Co. v. City of Reno*,
   747 F.3d 733 (9th Cir. 2014) ................................................................................................. 3

*Gostev v. Skillz Platform, Inc.*,
   88 Cal. App. 5th 1035 (2023) .............................................................................................. 12

*Gutierrez v. Autowest, Inc.*,
   114 Cal. App. 4th 77 (2003) .................................................................................................. 9

*Hansen v. LMB Mortg. Servs.*,
   1 F.4th 667 (9th Cir. 2021) .................................................................................................... 3

*Hart v. TWC Prod. & Tech. LLC*,
   526 F. Supp. 3d 592 (N.D. Cal. 2021) ................................................................................. 11

*Johnson v. Walmart Inc.*,
   57 F.4th 677 (9th Cir. 2023) .............................................................................................. 2, 3

*Lhotka v. Geographic Expeditions, Inc.*,
   181 Cal. App. 4th 816 (2010) .............................................................................................. 14

*Lim v. TForce Logistics, LLC*,
    8 F.4th 992 (9th Cir. 2021).................................................................................................9

*Mills v. Facility Solutions Group, Inc.*,
    84 Cal. App. 5th 1035 (2022)............................................................................................13

*Moreno v. Sanchez*,
    106 Cal. App. 4th 1415 (2003)..........................................................................................12

*Nagrampa v. Mailcoups, Inc.*,
    469 F.3d 1257 (2006).................................................................................................11, 13

*Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*,
    339 F.2d 440 (2d Cir. 1964)................................................................................................2

*Newton v. AM. Debt. Servs.*,
    854 F. Supp. 2d 712 (N.D. Cal. 2012) ..............................................................................12

*Nguyen v Barnes & Noble.*,
    763 F.3d 1171 (9th Cir. 2014)........................................................................................3, 5

*Ontiveros v. DHL Express (USA), Inc.*,
    164 Cal. App. 4th 494 (2008)............................................................................................14

*OTO, LLC v. Kho*,
    8 Cal. 5th 111 (2019) .....................................................................................................7, 8

*Penilla v. Westmont Corp.*,
    3 Cal. App. 5th 205 (2016)................................................................................................11

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010)......................................................................................10, 13

*Rodman v. Safeway Inc.*,
    No. 11-cv-03003-JST, 2015 WL 604985 (N.D. Cal. Feb. 12, 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) ....................................................................................................................................6

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal. 4th 899 (2015) .......................................................................................................9

*Snow v. Eventbrite, Inc.*,
    No. 3:20-CV-03698-WHO, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) ......................4, 5

*Sparling v. Hoffman Const. Co.*,
    864 F.2d 635 (9th Cir. 1988).............................................................................................15

*Stover v. Experian Holdings, Inc.*,
    978 F.3d 1082 (9th Cir. 2020).............................................................................................7

*Three Valleys Mun. Water Dist. v E.F. Hutton & Co.*,
    925 F.2d 1136 (9th Cir 1991).............................................................................................3

**Statutes**

Cal. Bus. & Prof. Code § 17208..........................................................................................11

Cal. Bus. & Prof. Code § 22257 ................................................................................................ 9, 12

Cal. Civ. Code § 1799.1 ................................................................................................................ 9

Cal. Civ. Proc. Code § 335.1 ....................................................................................................... 11

Cal. Civ. Proc. Code §§ 685.010–020 ........................................................................................... 9

## I. INTRODUCTION

Defendant TaxAct, Inc., seeks a stay of this case pending an arbitration that Plaintiff Nicholas Smith-Washington has not yet sought and does not wish to seek. TaxAct contends that its recent terms of service include a forced arbitration provision and that "individuals who create an account on the TaxAct website are required to affirmatively check the checkbox that reads as follows: 'I agree to the TaxAct Terms of Service & Terms of Use.'" ECF 12 ("Mot. to Stay") at 4:12–14. Remarkably, TaxAct does not mention that Plaintiff created an account on the TaxAct website in 2005, and that at that time the terms of service on TaxAct's website contained no agreement to arbitrate. *See* Declaration of Nathaniel E Frank-White ("Wayback Dec."), Ex. A at pp. 120-123; Declaration of Nicholas C. Smith-Washington ("Pl. Dec.") ¶ 3; *see also* ECF 12-1 ("Campbell Dec."), Exs. A, B (attaching terms of service showing effective date of November 17, 2020 or January 5, 2017). The parties' governing agreement, then, contains no forced arbitration provision.

Nonetheless, TaxAct apparently argues that Plaintiff agreed to modify his agreement with TaxAct when, after having paid for service and long after creating his account, he allegedly clicked a checkbox indicating his supposed intent to agree with revised terms of service before filing his taxes. Mot. to Stay at 9:20–25. But there was no indication that those terms had changed since he first agreed to them. There was thus no new agreement: under clear law, to be found to have agreed to material changes like the addition of a forced arbitration provision, a user must have been notified of them, because "[w]ithout notice [of contract changes], . . . [a plaintiff] would have had to compare every word of the posted contract with his existing contract in order to detect whether it had changed." *Douglas v. U.S. Dist. Ct. for Cent. Dist. of California*, 495 F.3d 1062, 1066 n.1 (9th Cir. 2007). The parties to this matter thus never formed an agreement to arbitrate. *Id*.

Finally, even if the Court finds that Plaintiff agreed to arbitration, the Court should still deny Defendant's Motion, because the agreement is both procedurally and substantively unconscionable. The arbitration agreement, if it existed, was highly procedurally unconscionable because Plaintiff was forced to sign it after he had already completed his tax forms and paid TaxAct a nonrefundable fee. And the arbitration agreement is substantively unconscionable, since it is a complete end-run around any possible liability: the terms would require Plaintiff to pay a $2,000 filing fee, travel to Texas, and potentially pay

Defendant's attorneys' fees and costs, all to recover $100 (the limitation on liability imposed by TaxAct).

## II. RELEVANT FACTS

Plaintiff Nicholas Smith-Washington lives in Citrus Heights, Sacramento County, California. ECF 1-4 ("Complaint") ¶ 9; Pl. Decl. ¶ 1. He first signed up for an account with TaxAct in 2005 and has used TaxAct to prepare and file his state and federal taxes for years 2004 to 2021; his most recent filing as of the date of the Complaint was for tax year 2021. Complaint ¶ 9; Pl. Dec. ¶ 3.

When Plaintiff created his account in 2005, he agreed to TaxAct's terms of service, which did not contain a forced arbitration provision. Mot. to Stay at 4:12-15; Wayback Dec., Ex. A at pp. 120-123; Pl. Decl. ¶ 3. Instead, it appears that TaxAct added such a provision in approximately 2017. *See* Wayback Dec., Ex. A at pp. 64-68; *see also* Campbell Dec. ¶ 3(b). TaxAct has not offered any evidence regarding what its terms of service said prior to the year 2017.

Since he created his account in 2005, Plaintiff has filed returns using TaxAct both electronically and on paper. Pl. Decl. ¶ 4. He has no specific recollection of agreeing to any specific modifications of the terms of service he agreed to upon creating his account, and he has no recollection of receiving any notice that TaxAct had changed its terms or had attempted to add a forced arbitration provision. Pl. Decl. ¶ 5. Although TaxAct has submitted evidence that TaxAct *currently* requires filers to click a checkbox stating "I agree to the terms and conditions" before either e-filing or paper filing, Campbell Decl., Exs. D–E, those screenshots state at the top left "2022 TAX RETURN" and contain "© 2023 TaxAct, Inc." at the bottom of each page, *see id.* Plaintiff has not used TaxAct to submit any tax filings in calendar year 2023. Pl. Decl. ¶ 3.

## III. RELEVANT STANDARDS AND BURDENS

TaxAct seeks a stay to compel arbitration under the FAA, 9 U.S.C. ¶ 3. As the movant, TaxAct "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023); *see also Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 442 (2d Cir. 1964) ("The defendants have the burden of establishing that a stay [to compel arbitration] is warranted.").

To determine whether a defendant has met this burden, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs.*, 1

F.4th 667, 670 (9th Cir. 2021). "The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Id.* (quotation marks omitted). Thus, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences. *See Three Valleys Mun. Water Dist. v E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir 1991). A court may find an agreement to arbitrate exists as a matter of law "only when there is no genuine issue of fact concerning the formation of the agreement." *Id.* (citation and quotation omitted).

Finally, the FAA's supposed "presumption in favor of arbitrability does not apply" where "the existence of an agreement to arbitrate" is at issue. *Johnson*, 57 F.4th at 681. Instead, this Court must apply "'general state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists.'" *Id.* (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014)). Here, there is no dispute that California is the relevant source of state law this Court applies to determine whether a valid contract to arbitrate exists. Mot. to Stay 2 at 7:19–8:3 (applying California law).

### IV.   ARGUMENT

**A.   TaxAct Fails to Meet its Burden To Show The Parties Agreed To Arbitrate.**

Although the rise of internet-based commerce "has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v Barnes & Noble.*, 763 F.3d 1171, 1175 (9th Cir. 2014). One of those principles is that for an agreement to arbitrate to be formed, there must be mutual consent to arbitrate. Here, TaxAct has not met its burden to show there was a meeting of the minds regarding arbitration. Plaintiff agreed to terms with TaxAct when he created his account in 2005, but those terms did not contain a forced arbitration provision. In the intervening years, Plaintiff continued to use TaxAct's service as he always had and was never notified that TaxAct had apparently changed the terms to include such a provision. TaxAct provides no evidence to the contrary. Instead, by submitting evidence that is manifestly unrelated to Plaintiff's actual use of the website, TaxAct has not even tried to document its supposed meeting of the minds with Plaintiff.

1.   *Plaintiff Did Not Agree to Forced Arbitration When He Signed up For TaxAct's Services*

When Plaintiff signed up for TaxAct in 2005, he agreed to terms of service that did not include a forced arbitration provision. Pl. Decl. ¶ 3; Wayback Dec., Ex. A at pp. 120-123. It is thus indisputable

that, at this meeting of the minds, there was no agreement to arbitrate any disputes.

TaxAct nonetheless seeks to compel arbitration based on his sign-up, noting that "when a customer, such as Plaintiff, clicks to create an account on the TaxAct website, they are required to affirmatively check the checkbox stating 'I agree to the TaxAct Terms of Service & Terms of Use.'" Mot. to Stay at 9:18–20. That is true, but it doesn't get TaxAct anywhere in this case, because that 2005 agreement to which Plaintiff manifested assent did not include an agreement to arbitrate disputes. Indeed, as TaxAct's own authorities reveal, courts force arbitration based on account creation if and only if the terms *at the time of account creation* require it. *Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2021 WL 3931995, at *6 (N.D. Cal. Sept. 2, 2021) (compelling arbitration given conclusive proof that the version of terms to which plaintiffs agreed contained forced arbitration provision).

*Snow* is a good example of why courts must be attentive to the exact version of the website that a named plaintiff used. In that case, the district court initially denied a motion to compel arbitration because "Eventbrite did not demonstrate what online agreements the plaintiffs would have seen" when they signed up. *Id*. at *1. Instead, the defendant "without explanation" provided screenshots from two time periods, "neither of which was when the plaintiffs created accounts." *Id.* Screenshots from the incorrect date were found to be irrelevant. *Id.* The same reasoning applies here, but with even more force: when given another chance, the *Snow* defendant proved that the plaintiffs did in fact agree to a forced arbitration provision upon sign-up, but here there is no argument that the 2005 version of TaxAct's website presented Plaintiff with a forced arbitration provision. Wayback Dec., Ex. A. at pp. 120-123. It thus cannot bind him to forced arbitration.

2. *TaxAct Has Not Shown That Plaintiff Agreed that TaxAct Could Modify its 2005 Agreement With Him to Contain a Forced Arbitration Provision*

Given that the parties in 2005 had an agreement that did not contain a forced arbitration provision, the actual question for this Court is how a forced arbitration term could have been added after Plaintiff's initial sign-up. TaxAct offers two theories: (i) that he "entered into a binding arbitration agreement when he visited TaxAct's website," presumably at some date after the arbitration term had been added, and (ii) that he did so when he "filed his state and federal tax returns through TaxAct." Mot. to Stay at 8:4–5. TaxAct has not met its burden to show an agreement to arbitrate through either of these methods.

*First*, Plaintiff's mere use of the website can be easily dismissed as a way to amend the 2005 agreement to add a forced arbitration provision. TaxAct states that its Terms are publicly available on its website, and the "use of TaxAct's website is subject to the Terms of Service & Terms of Use, which contains the Arbitration Agreement." Mot. to Stay at 8:6–8. But the hyperlink to the Terms is located at the very bottom of each webpage, in a hyperlink reading "Legal Notice" in small regular font, *see* Wayback Dec., Ex. A; *see also* Campbell Dec., Exs. B-E, and the TaxAct website does not prompt Plaintiff (or other individuals using the website) to scroll down to see the Terms. It is black-letter law that these so-called browsewrap agreements, which are inherently passive, do not provide evidence of mutual assent. *See Nguyen,* 763 F.3d at 1178 ("[W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent," no contract is imputed).

*Second*, TaxAct contends that Plaintiff agreed to a modified agreement containing a forced arbitration provision when he allegedly "affirmatively check[ed] a box agreeing to the TaxAct Terms of Service & Terms of Use prior to e-filing or prior to printing [his] tax returns if [he] elect[ed] to paper file." Mot. to Stay 9:20–22. But it introduces no evidence in support of its allegation that Plaintiff ever clicked such a box. And even if TaxAct had introduced such evidence, its argument would fail.

It is TaxAct's burden to prove the existence of a valid agreement to arbitrate, but TaxAct has failed to produce any evidence of such an agreement. Instead, it presents only two screenshots of check boxes that appear at the end of the current filing process, both of which say "2022 TAX RETURN" and "© 2023 TaxAct, Inc.", showing they are from the current version of the website. Campbell Decl., Exs. D, E. Plaintiff has not used TaxAct's website in 2023, Pl. Dec. ¶ 3, and Defendant has presented no evidence that similar screens existed during any prior years.[1] TaxAct's motion can be denied on that basis alone. *See Snow*, 2021 WL 3931995 at *1 (describing denial of motion to compel arbitration where evidence of account creation process did not match up exactly with time of sign-up of named plaintiffs).

Even if TaxAct could provide evidence in some renewed motion that such check boxes existed in

---

[1] Counsel for TaxAct has shared with Plaintiff's counsel additional documents purporting to show that Plaintiff clicked a checkbox in prior years upon filing of a return. For reasons that TaxAct has not explained, those documents are not in the record, and Plaintiff does not address them here. Anyway, as explained, that evidence would not change the legal analysis.

prior years and that Plaintiff checked those boxes, that would not show that Plaintiff agreed to modify the parties' prior agreement to add a forced arbitration provision. Under clear California law, "a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so," *Douglas*, 495 F.3d at 1066, and TaxAct never obtained that consent. Indeed, in *Douglas*, the Ninth Circuit expressly held that companies may not modify consumer contracts without putting consumers on notice of changed terms in some way. That principle applies directly here.

In *Douglas*, as here, the plaintiff was a longstanding customer of the defendant company, and the plaintiff had agreed to a consumer contract that contained no arbitration or class waiver provision. *Id*. at 1065. Years into their ongoing relationship, the company modified its terms to add each of those provisions and posted the revised terms online. *Id*. The Ninth Circuit held that even if the plaintiff had used the website, that wasn't good enough to conclude there was a *new* agreement. The court reasoned that "[p]arties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side." *Id.* at 1066. The court observed that "[w]ithout notice [of a material change in terms], an examination [of the revised terms] would be fairly cumbersome, as [plaintiff] would have had to compare every word of the posted contract with his existing contract in order to detect whether it had changed." *Id.* at 1066 n.1.

That applies directly here. Even if Plaintiff did check a box agreeing to terms when he filed returns in 2022 and prior years, he would have had no reason to know that the terms had changed since he first agreed to them upon sign-up. The text next to the check box gave users no indication of when the terms were last changed (or, indeed, if they had ever been changed); it just said "I agree to the terms and conditions," in small print. This is insufficient, because it is "impractical[]" to "expect[] consumers to spend time inspecting a contract they have no reason to believe has been changed." *Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2015 WL 604985, at *11 (N.D. Cal. Feb. 12, 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017). Rather, it is the company that "is aware that it has—or has not—made changes to the Terms and is the party to the contract that wishes for the new terms to govern," so the onus is on it to ensure that a consumer has at least some form of notice that its terms have changed, especially when those changes drastically alter a consumer's ability to obtain any relief against the company, as here. *See id*. (noting that, to ensure assent to new terms, a company "could ask customers to click to indicate that they

agree to the *new* [Terms] or send all existing . . . customers an email" about the changes (emphasis added)). Here, TaxAct never asked Plaintiff whether he agreed to *new* "terms and conditions."[2]

It makes particularly good sense here to require express notice of changes to terms because Plaintiff had already completed his taxes on the website (which is not an enjoyable task), and TaxAct had already taken his money. After having completed both the accounting work and having paid for the service, and right before filing, TaxAct allegedly asked him to check a box confirming his agreement to, as TaxAct says without further explanation, "the terms and conditions." Neither Plaintiff nor anyone else in his position would have had any reason to review the terms and conditions again (and then run a redline) to see what had changed since sign-up, especially after *already paying for the service*. *See* Pl. Decl. ¶ 5; *see also Douglas*, 495 F.3d at 1066 n.1 (holding that consumers need not redline consumer contracts). It is thus impossible to conclude he agreed to the new terms that contained a forced arbitration provision.

**B.    The Agreement is Procedurally and Substantively Unconscionable.**

Under California law, "[a] contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, LLC v. Kho*, 8 Cal. 5th 111, 125 (2019). "[T]he unconscionability doctrine has both a procedural and a substantive element," and they must be evaluated together by this Court "on a sliding scale." *Id.* at 125 (internal quotations omitted). Even assuming that Plaintiff somehow agreed to arbitrate this dispute (though he did not), the forced arbitration provision is invalid and unenforceable because the agreement is both procedurally and substantively unconscionable to a high degree.

1.    *The Arbitration Agreement is Procedurally Unconscionable.*

"A procedural unconscionability analysis begins with an inquiry into whether the contract is one of adhesion" that is offered "on a take-it-or-leave-it basis." *Id.* (citation omitted). This is the case here, where Plaintiff was apparently asked to agree to the terms only after completing his tax return and paying non-refundable fees to Defendant.  (Ex. A, Campbell Dec. (providing that "all fees and charges are non-

---

[2] Even if the original contract upon sign-up had included a provision allegedly permitting the unilateral alteration of terms, TaxAct would still have been required to notify Plaintiff of any material changes. *See Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020) ("[I]n order for changes in terms to be binding pursuant to a change-of-terms provision in the original contract, both parties to the contract—not just the drafting party—must have notice of the change in contract terms.").

refundable" and that "[i]f you do not accept this Agreement, you must terminate your use of the Services . . . . TaxAct shall have the right to immediately terminate your access to or use of the Services in the event of . . . your failure to consent to these terms.")). While the contract contains a purported 30-day "opt out" provision, this provision is effectively useless, because choosing to opt out would result in termination of the account without a refund.

The next step in a procedural unconscionability analysis is to determine whether the circumstances "of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *OTO*, 8 Cal. 5th at 126. Here, that criterion is met, since failure to agree to the terms would result in forgoing the opportunity to file taxes with TaxAct after already completing the preparation process and after paying the nonrefundable fees. In that sense, the circumstances around the presentation of the contract evoke the doctrine of economic duress: the pressure to agree after one has already paid for and actually prepared one's taxes (which is even less pleasant than forking over money, for many people) is substantial. *Felter v. Dell Techs., Inc.*, No. 21-CV-04187-VC, 2022 WL 3010173, at *2 (N.D. Cal. July 29, 2022) (noting that an addition of an arbitration agreement after purchase, while permitting returns only if customers pay a 15% restocking fee, supports an argument for economic duress). While this alone is enough to establish procedural unconscionability, the facts in this case also support a finding of surprise because Plaintiff had no reason to suspect that any of the terms and conditions had changed since he had created his account, and therefore had no reason to attempt to find, read, and understand the arbitration agreement, which was buried in a lengthy list of terms and conditions and was "dense" and "filled with statutory references and legal jargon." *Id.* at 128.

Finally, the agreement requires taxpayers to have a strong understanding of relevant case law to understand its terms. The agreement states that, "to the fullest extent permitted by applicable law," damages are limited to the filing fee paid by taxpayers and that TaxAct shall not be liable for any "indirect, special, or consequential damages." Campbell Decl., Ex. A. "Applicable law" does not allow TaxAct to simply waive liability for any illegal wrongdoing via a contract, but taxpayers without legal training would have no way to know this. This supports a finding of procedural unconscionability. *OTO*, 8 Cal. 5th at 128-29 (an agreement containing terms that would be "nearly impossible to understand . . . without legal training" supports a finding of procedural unconscionability because such terms illustrate that the

contract "appears to have been drafted with an aim to thwart, rather than promote, understanding").

2.  *The Arbitration Agreement is Substantively Unconscionable.*

Arbitration agreements are highly substantively unconscionable where, as here, they contain terms that are "overly harsh, unduly oppressive, . . . or unfairly one-sided." *Sanchez v. Valencia Holding Co., LLC,* 61 Cal. 4th 899, 910 (2015) (citations and quotations omitted). Here, the arbitration agreement is so unfairly one-sided that it operates as a get-out-of-liability free card: the combination of a $100 limitation on liability with oppressively high fees to arbitrate renders the provision useless to even the most determined of litigant. It is thus invalid under straightforward California law.

      a. <u>The Arbitral Forum is Prohibitively Expensive, And It Is Unlikely Plaintiff Could Ever Recover An Amount Greater Than His Costs</u>

The arbitration agreement provides for a prohibitively expensive forum for Plaintiff to pursue his claims. Plaintiff must pay the $2,000 JAMS "filing fee," which is more than four times what he had to pay in court for a filing fee. Declaration of Polina Brandler ("Brandler Dec.") ¶ 5. Worse, the filing fee alone is *ten times* the maximum amount that Plaintiff could recover under the agreement, which is only $100 Since no rational person would pay $2,000 for a chance at recovering $100, this provision clearly has a "substantial deterrent effect" and is therefore unconscionable. *Sanchez,* 61 Cal. 4th at 920 (fees provisions are unconscionable if plaintiff shows that they are unaffordable or "would have a substantial deterrent effect"); *Gutierrez v. Autowest, Inc.,* 114 Cal. App. 4th 77, 89 n.9 (2003) (the "arbitration clause should not impose excessive costs relative to the recovery sought.").

This would be difficult to justify even if Plaintiff were guaranteed that he would eventually recover these costs if he prevailed and recovered the $100 in damages. But the Agreement provides no such assurance. To the contrary: the Arbitration Agreement provides the Arbitrator unfettered discretion to award attorneys' fees, expenses, as well as interest to Defendant no matter the circumstances—even against a prevailing plaintiff. *See* Ex. 1, Brandler Dec. (Rule 19(f)). This is, not surprisingly, the exact opposite of the applicable statutory provisions, which provide for one-way shifting of attorneys' fees and costs to the prevailing Plaintiff, plus post-judgment interest. *See* Cal. Civ. Code § 1799.1; Cal. Bus. & Prof. Code § 22257; *see also* Cal. Civ. Proc. Code §§ 685.010–020 (post-judgment interest). This combination is therefore substantively unconscionable. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1002

(9th Cir. 2021) ("[S]ubstantive unconscionability exists when a fee-shifting clause creates for employees a greater financial risk in arbitrating claims than they would face if they were to litigate those same claims in federal court." (citation omitted)); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010) (same).[3]

What is more, the Agreement requires the arbitration be conducted in Dallas, Texas. Campbell Decl., Ex. A ("the state or federal courts of the State of Texas and the United States sitting in Dallas County, Texas have exclusive jurisdiction over any appeals and enforcement of an arbitration award."). While this far-off venue is independently problematic, *see infra* § b, the costs to travel to Texas are almost certainly non-recoverable, even for a prevailing plaintiff. This means that any user outside of Dallas who incurs any more than nominal travel costs is certain to lose money pursuing arbitration, even if that plaintiff prevails, and even if the Arbitrator decides (in his or her sole discretion) to award recovery of such taxable costs as the filing fee. This contract cannot have been a mutual meeting of the minds; it is an attempt at immunity from all liability.

b. The Agreement Requires Arbitration in Distant Forum

As mentioned, the Agreement requires Plaintiff, a California consumer, to pursue all of his claims in arbitration or small claims court, as well any appeals and enforcement of arbitration award, in Dallas, Texas (where TaxAct is headquartered).[4] A forum selection clause is unconscionable where it imposes significant hardships on the weaker party and has "no justification other than as a means of maximizing an advantage." *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 910 (2001). Following *Bolter,* the Ninth Circuit in *Nagrampa v. Mailcoups, Inc.*, found that a provision designating Boston as the arbitral forum was unconscionable under California law because it required arbitration "only a few miles from [the employer's] headquarters, but three thousand miles away from [plaintiff's] home." 469 F.3d 1257, 1289

---

[3] While some superficially similar arrangements have been upheld, the agreements in those cases required Arbitrators to use their discretion "in accordance with" applicable law. *See Duarte v. Mission Fed. Credit Union*, No. 3:19-CV01441-AJB-KSC, 2020 WL 4732058, at *5 (S.D. Cal. Aug. 14, 2020) (noting that the arbitration rules there "award[] fees and costs in accordance with the law(s) that applies to the case"). That is a key distinction, because applicable law would provide an assurance that costs could be recovered if Plaintiff prevailed. Here, though, the Rules place no such limitation on the Arbitrator's discretion, leaving the Arbitrator with unfettered discretion to ignore fee-shifting statutes and make it yet more expensive for the plaintiff to attempt to vindicate rights. This is unconscionable.

[4] See Campbell Decl., Ex. A ("the state or federal courts of the State of Texas and the United States sitting in Dallas County, Texas have exclusive jurisdiction over any appeals and enforcement of an arbitration award."); *id.* (listing TaxAct's address as 3200 Olympus Blvd, Suite 150, Dallas, Texas 75019).

(2006) (en banc). Courts have also found that forum selection clauses are substantively unconscionable when they require "individual consumers from throughout the country to travel to one locale to arbitrate claims involving minimal sums." *Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002).

Here, the Agreement requires Plaintiff, a California consumer, to pursue all of his claims in arbitration or small claims court, as well any appeals and enforcement of arbitration award, in Dallas, Texas, where TaxAct is headquartered. Not only would Plaintiff have to pay prohibitive travel and lodging expenses to pursue his claims, as explained above, but he would also have to give up time, travel out of town and somehow hire local counsel in Texas, all for a maximum recovery of $100, with no guarantee of cost recovery even if he wins. Pl. Dec. ¶ 8. As in *Bolter* and *Nagrampa,* it is clear that Defendant "understood [the forum selection clause] would effectively preclude its [customers] from ever raising claims against it knowing the increased costs and burden on [them] would be prohibitive." *Nagrampa,* 469 F.3d at 1290 (quotation marks omitted).[5]

### c. The Statue of Limitations Waiver is Unconscionable

By statute, the limitations period on a UCL claim is four years. Cal. Bus. & Prof. Code § 17208. The limitations period on Plaintiff's constitutional privacy claims and all Plaintiff's claims for compensatory damages is two years. Cal. Civ. Proc. Code § 335.1; *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 598 (N.D. Cal. 2021) (noting that a "two-year statute of limitations governs Plaintiffs' California constitutional privacy claim"). However, the Agreement in this case limits all claims to a one-year statute of limitations. Such an end-run around a limitations period set by a legislature is substantively unconscionable. *See e.g. Fisher v. MoneyGram International, Inc.,* 66 Cal. App. 5th 1084, 1105 (2021) (finding substantively unconscionable an arbitration provision's one-year limitations periods, which was "considerably shorter than the otherwise applicable four-year limitations period [for plaintiff's UCL claim] and wa[s] inherently one-sided against complaining consumers."); *Penilla v. Westmont Corp.*, 3 Cal. App. 5th 205, 222 (2016) (a one-year limitations period that was "significantly shorter than those for most of the claims in the FAC" supported a finding of substantive unconscionability); *Dennison v.*

---

[5] Further, lest Plaintiff wish to challenge this or any rules of the forum, the agreement attempts to have Plaintiff agree that either "agree that [he had] read and understood the governing rules" (a questionable proposition for a lay user) or "waive . . . any claim that the rules of JAMS are unfair . . ." Ex. A, Campbell Dec.

11

*Rosland Capital LLC*, 47 Cal. App. 5th 204, 212 (2020) (one-year statute of limitations, compared with four years under the applicable statute, "severely shorten[ed]" the time for plaintiff to bring his claims and supported a finding of substantive unconscionability).

Moreover, this provision is particularly unconscionable here because it waives the benefit of the discovery rule. Plaintiff did not discover the unlawful conduct that forms the entire basis of his Complaint until the very end of 2022, which was several years after the conduct began. Complaint ¶¶ 65–66. The law is clear that TaxAct's attempt to waive the discovery rule is unconscionable. In *Moreno v. Sanchez*, for instance, the court refused to enforce a contractual provision that required any lawsuit to be filed within one year of the date of a home inspection, rather than the date any wrong was discovered. 106 Cal. App. 4th 1415, 1419, 1434 (2003). The *Moreno* court noted that "such a provision blatantly substitutes a straight one-year statute of limitations for the delayed discovery rule" and "runs afoul of important policy considerations." *Id.* at 1434. Here, as in *Moreno,* the Agreement, if enforced, would bar all of Plaintiff's claims, except for those that occurred in 2022, before he had any reasonable opportunity to discover Defendant's unlawful conduct.

### d.  The Limitation on Liability and Type of Damages Is Unconscionable

TaxAct limits its liability to the amount paid by the consumer (typically approximately $100) and exempts itself from "any indirect, special, incidental, or consequential damages." Ex. A, Campbell Decl. These provisions deprive Plaintiff of his statutory rights for restitution and disgorgement of profits under the UCL and other causes of action, civil penalties under the Cal. Bus. & Prof. Code § 22257 of $1,000 per violation, punitive/consequential damages for invasion of privacy, as well as injunctive relief. These limitations are substantively unconscionable because they deprive Plaintiff of the relief he is entitled to. *See Newton v. AM. Debt. Servs.,* 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012) (finding substantively unconscionable a provision limiting plaintiff to amount of fees paid for the service under the agreement because he was entitled to greater recovery under relevant statutes); *Gostev v. Skillz Platform, Inc.*, 88 Cal. App. 5th 1035 (2023) (finding that a $50 cap on liability and waiver of liability for injury due to hacking supported the court's assessment of substantive unconscionability.). The limitation on liability is even more egregious when combined with the onerous fees required to attempt to seek the maximum $100 recovery, as discussed above.

Further, the damages and relief limitations are also non-mutual and unfairly one-sided because there is no provision limiting TaxAct from pursuing full damages or even requiring arbitration if it believes a consumer is violating the terms and conditions, such as by misusing TaxAct's intellectual property. This is a "paradigmatic" example of unconscionable one-sidedness because it is a contract that "[r]equir[es] one party to arbitrate its claims but not the other." *Pokorny,* 601 F.3d at 1001; *see also Nagrampa,* 469 F.3d at 1286–87. In *Nagrampa,* the *en banc* Ninth Circuit found a lack of mutuality where the arbitration agreement required the franchisee to adjudicate all disputes in arbitration, but exempted disputes related to the franchiser's intellectual property or proprietary information. 469 F.3d at 1286–87; *see also Fitz v. NCR, Corp.,* 118 Cal. App. 4th 702, 725 (2004) (finding provision exempting IP claims from arbitration substantively unconscionable because "it compels arbitration of the claims more likely to be brought by [the plaintiff], the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by [the Defendant], the stronger party.").

Here, the IP carveout is the same as the carve-out the Ninth Circuit found was unconscionable in *Nagrampa* and the other cases cited above: it provides TaxAct with access to a judicial forum for claims that *only* TaxAct can bring (claims for "injunctive or other equitable relief for the alleged misuse of intellectual property"), while requiring Plaintiff to arbitrate all his claims or seek the very limited relief available in small claims court. The fact that the agreement uses bilateral language ("disputes in which *you or TaxAct* seeks injunctive or other equitable relief…") is meaningfulness as there is no possible claim that a taxpayers can bring against TaxAct for unlawful use of intellectual property. This asymmetry reveals that the arbitration and limitation of liability provisions are just an attempt to escape liability, not a genuine private agreement meant to benefit both parties and make transacting easier.

e. <u>The Lack of Discovery Is Unconscionable.</u>

Finally, the arbitration agreement provides for no discovery, only a voluntary exchange of information. Thus, the rules allow TaxAct to decide what documents and information are relevant, and provide no discretion for the Arbitrator to order any formal discovery or to compel any discovery of Defendant. Courts have found discovery limitations less severe than these to be substantively unconscionable. *See Mills v. Facility Solutions Group, Inc.*, 84 Cal. App. 5th 1035, 1058–59 (2022) (finding substantively unconscionable an employment arbitration agreement that provided for depositions

and witness subpoenas, but did not expressly allow for formal written discovery except based on arbitrator's discretion based on a showing of substantial need); *Ontiveros v. DHL Express (USA), Inc.*, 164 Cal. App. 4th 494, 511–14 (2008) (finding discovery limits substantively unconscionable where each party was allowed one deposition, in addition to expert depositions and documents requests, with additional discovery available upon a showing of substantial need); *Dougherty v. Roseville Heritage Partners*, 47 Cal. App. 5th 93, 107 (2020) (finding that an elder care facility's arbitration agreement with consumers was substantively unconscionable due to discovery limitations).

   3.  *The Court Should Refuse to Sever The Unconscionable Provisions*

Courts may "refuse to enforce" arbitration agreements that are "permeated" by unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 89 (2000). An arbitration agreement can be considered permeated by unconscionability if it "contains more than one unlawful provision," because "multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage." *Id.* at 88–89 (finding that an arbitration agreement "was not subject to the court's severing the unconscionable portions" where the agreement contained "multiple defects," namely an "unlawful damages provision" and an "unconscionably unilateral arbitration clause."); *see also Dougherty,* 47 Cal. App. 5th at 107 (2020) (finding that an agreement was permeated by unconscionability because it suffered "multiple defects rendering it procedurally and substantively unconscionable"); *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 826 (2010) (same). In deciding whether to sever unconscionable provisions, the "overarching inquiry is whether the interests of justice would be furthered by severance." *Armendariz,* 24 Cal. 4th at 124. In addition, courts do not have discretion to cure contracts permeated by unconscionability through severance if "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement," since courts are not authorized "to reform the agreement to make it lawful." *Id.* at 124-25.

As explained, the arbitration agreement at issue in this case is permeated by unconscionability. There are *at least five* defects in the agreement, and together they demonstrate that TaxAct's effort to impose arbitration was made for the purpose of immunizing itself from liability through the use of an "inferior forum that works to [its own] advantage." *Id.* at 124 *Armendariz*. The interests of justice would

not be furthered by severance, and the court cannot remove the unconscionable taint that permeates the contract through severance. Therefore, severance is inappropriate in this case.

### C. If Plaintiff Agreed to Arbitrate, He Did So Under Economic Duress

As shown above, any agreement to arbitrate was a contract of adhesion and was oppressive because it was allegedly presented only after Plaintiff had completed his tax forms and paid a nonrefundable fee to TaxAct. For these same reasons, any agreement to arbitrate would have been entered into under economic duress, and is therefore unenforceable. *Felter* 2022 WL 3010173 at *2 (noting that an addition of an arbitration agreement after purchase, while permitting returns only if customers pay a 15% restocking fee, supports an argument for economic duress).

### D. If the Court Finds that a Binding Arbitration Agreement Exists, Plaintiff Requests Dismissal Rather than a Stay

If the Court finds that there was a valid agreement to arbitrate in this case that would bar Plaintiff from bringing claims in this Court, Plaintiff respectfully requests that, rather than granting TaxAct's Motion to Stay, this Court instead dismiss this action without prejudice so that Plaintiffs may immediately appeal. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (upholding the district court's decision to dismiss a case after the defendant requested a stay pending arbitration).

## V. CONCLUSION

The Motion to Stay should be denied.

Dated: April 20, 2023                                        Respectfully submitted,


                                                              /s/ Julian Hammond
                                                             Julian Hammond
                                                             Attorneys for Plaintiff