Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772 1200
Facsimile: (415) 772 7400

James W. Ducayet (*pro hac vice*)
jducayet@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Michele L. Aronson (*pro hac vice*)
maronson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736 8000
Facsimile: (202) 736 8711

*Attorneys for Defendant TaxAct, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| NICOLAS C. SMITH-WASHINGTON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TAXACT, INC., an Iowa Corporation<br><br>Defendant. | Case No.: 3:23-CV-00830-VC<br>Assigned to: Hon. Vince Chhabria<br><br>**DEFENDANT TAXACT, INC.'S REPLY IN SUPPORT OF MOTION TO STAY UNDER 9 U.S.C. § 3**<br><br>Date: May 18, 2023<br>Time: 10:00 a.m.<br>Place: Courtroom 4, 17th Floor<br><br>Case Removed: February 23, 2023<br>(Superior Court of California Alameda County, Case No. 23cv026204) |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................. 1

I. QUESTIONS OF THE ARBITRATION AGREEMENT'S FORMATION, EXISTENCE, VALIDITY, INTERPRETATION, OR SCOPE HAVE BEEN DELEGATED TO THE ARBITRATOR. ................................ 1

II. PLAINTIFF HAS AGREED TO ARBITRATE HIS DISPUTE WITH TAXACT. ....................................................................................................................... 3

III. THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE. ...................... 4

    A.    Plaintiff Fails to Establish Procedural Unconscionability. ......................... 4

    B.    Plaintiff Fails to Allege Substantive Unconscionability. ............................ 7

IV. PLAINTIFF CANNOT ESTABLISH THAT HE AGREED TO ARBITRATE UNDER DURESS. ................................................................................. 10

V. AN IMMEDIATE APPEAL WOULD CIRCUMVENT THE INTENTION OF THE PARTIES TO ARBITRATE THIS DISPUTE. ...................... 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) ............................................................................................................. 4, 10

*Baltazar v. Forever 21, Inc.*,
  62 Cal. 4th 1237 (2016) ................................................................................................................ 4

*Blau v. AT&T Mobility*,
  No. C 11-00541 CRB, 2012 WL 10546 (N.D. Cal. Jan. 3, 2012) .................................................. 6

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ....................................................................................................... 2

*Douglas v. U.S. Dist. Court for Cent. Dist. of Cal.*,
  495 F.3d 1062 (9th Cir. 2007) ....................................................................................................... 4

*Felter v. Dell Techs., Inc.*,
  No. 21-CV-04187-VC, 2022 WL 3010173 (N.D. Cal. July 29, 2022) ......................................... 6

*Fisher v. MoneyGram Int'l, Inc.*,
  66 Cal. App. 5th 1084, 1104 (2021) ............................................................................................. 9

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ........................................................................................................................ 1

*Lee v. Ticketmaster L.L.C*
  817 Fed.Appx. 393 (9th Cir. 2020) ............................................................................................... 4

*Lim v. TForce Logistics, LLC*,
  8 F.4th 992 (9th Cir. 2021) ........................................................................................................... 3

*Luckert v. Tesla Energy Operations, Inc.*,
  No. 21-CV-03027-VC, 2021 WL 3721967 (N.D. Cal. Aug. 5, 2021) .................................... 2, 10

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) (en banc) .................................................................................. 8, 9

*Newton v. Am. Debt Servs., Inc.*,
  854 F. Supp. 2d 712 (N.D. Cal. 2012) .................................................................................. 4, 7, 9

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ....................................................................................................... 2

*OTO, L.L.C. v. Kho*,
  8 Cal. 5th 111 (2019) .................................................................................................................... 6

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US) LLC*,
    55 Cal. 4th 223 (2012) ................................................................................................................. 3

*Poublon v. C.H. Robinson Co.*,
    846 F.3d (9th Cir. 2017) .......................................................................................................... 4, 7

*Rich & Whillock, Inc. v. Ashton Dev., Inc.*,
    157 Cal. App. 3d 1154 (1984) ................................................................................................... 10

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal. 4th 899 (2015) ................................................................................................................ 6

*Snow v. Eventbrite, Inc.*,
    No. 3:20-CV-03698-WHO, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) .................................. 3

*Tompkins v. 23andMe, Inc.*
    2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) ............... 6, 8

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) ............................................................................................. 4, 8, 9

**Statutes & Rules**

Federal Arbitration Act ...................................................................................................................... 1, 10

Federal Rules of Evidence ...................................................................................................................... 6

Judicial Arbitration and Mediation Services Streamlined Arbitration Rules and Procedures ..... 2, 8, 9

# INTRODUCTION

Plaintiff seeks to avoid being held to the Arbitration Agreement that is plainly visible on TaxAct's website and software, to which he agreed on multiple occasions. According to Plaintiff, he can avoid his agreement because (1) TaxAct has failed to meet its burden to show the parties agreed to arbitrate; (2) the Arbitration Agreement is unconscionable; (3) he only agreed to arbitrate under economic duress; and (4) he is entitled to dismissal rather than a stay if the Court finds that a binding arbitration agreement exists.

All of these arguments fail. Plaintiff's claims regarding enforceability, unconscionability, and economic duress have been delegated under the Arbitration Agreement to an arbitrator, and in any event are without merit. The Arbitration Agreement incorporates by reference the Judicial Arbitration and Mediation Services Streamlined Arbitration Rules and Procedures ("JAMS Rules"), which provide that disputes over the formation, existence, validity, interpretation, or scope of an arbitration agreement shall be submitted to and ruled on by the arbitrator. Even if this Court were to consider the merits, Plaintiff has not met his burden of establishing that the Arbitration Agreement is both procedurally and substantively unconscionable, or that it was entered into under duress.

Finally, Plaintiff's request for dismissal without prejudice so that he may immediately appeal is gamesmanship. The parties delegated issues of arbitrability to the arbitrator, and an immediate appeal would circumvent the parties' agreement to arbitrate this dispute. This Court should stay this case pending arbitration pursuant to Section 3 of the Federal Arbitration Act.

## I. QUESTIONS OF THE ARBITRATION AGREEMENT'S FORMATION, EXISTENCE, VALIDITY, INTERPRETATION, OR SCOPE HAVE BEEN DELEGATED TO THE ARBITRATOR.

Plaintiff contests the validity of the Arbitration Agreement, arguing that (1) Plaintiff did not agree to arbitrate; (2) the Arbitration Agreement is unconscionable; and (3) if he agreed to arbitrate, it was only under economic duress. These threshold issues are for the arbitrator to decide.

In deciding whether to compel arbitration or stay proceedings pending arbitration, a court must determine two threshold issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). These issues can be delegated to the arbitrator where "the parties

clearly and unmistakably provide." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (upholding district court decision that parties' incorporation of the American Arbitration Association ("AAA") rules constituted "clear and unmistakable" evidence of their intent to submit the arbitrability dispute to arbitration) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."). Indeed, this Court has held that the incorporation of the JAMS Rules into an arbitration agreement delegates the question of arbitrability to the arbitrator:

> The applicable [JAMS] rule provides: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought ... shall be submitted to and ruled on by the Arbitrator." That type of language has been held to 'clearly and unmistakably' delegate the question of arbitrability to the arbitrator.

*Luckert v. Tesla Energy Operations, Inc.*, No. 21-CV-03027-VC, 2021 WL 3721967 (N.D. Cal. Aug. 5, 2021).

TaxAct's Arbitration Agreement expressly incorporates the JAMS Rules by providing that "all disputes arising out of or relating to these Terms or our Services will be resolved through confidential binding arbitration held in Dallas County, Texas in accordance with the Streamlined Arbitration Rules and Procedures ("Rules") of [JAMS], which are available on the JAMS website and hereby incorporated by reference." Declaration of Ian Campbell in Support of Motion to Stay ("Campbell Decl."), Ex. A, ECF No. 12-2, at 4. JAMS Rule 11(b) provides:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

Declaration of Mark Jaeger ("Jaeger Decl."), Ex. B, at 8. Just as in *Luckert* and other cases that consider the same issue, the Arbitration Agreement here clearly and unmistakably delegates any

1  dispute relating to arbitrability to an arbitrator. These questions should be determined in the first
2  instance by the arbitrator, not by this Court.

3  **II.   PLAINTIFF HAS AGREED TO ARBITRATE HIS DISPUTE WITH TAXACT.**

4  Should the Court nevertheless consider the merits of Plaintiff's claims, a stay is still
5  appropriate. Plaintiff bears the burden of proving that the Arbitration Agreement is not valid and
6  enforceable. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US) LLC*, 55 Cal. 4th 223,
7  236 (2012); *see also Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021). Plaintiff has not
8  met that burden.

9  TaxAct's Terms of Service and License Agreement (the "Terms of Service & Terms of Use")
10  contain the Arbitration Agreement and are publicly available on its website and on each page of its
11  software, putting users like Plaintiff on notice. A user must agree to the Terms of Service & Terms
12  of Use in order to use TaxAct's software. The Terms of Service & Terms of Use provide: "By using
13  the Services, you indicate your unconditional acceptance of this Agreement." Campbell Decl., Exs.
14  A, B. The Terms of Service & Terms of Use also instruct a user to terminate their use of TaxAct's
15  services if they do not accept the terms of the agreement. Campbell Decl., Exs. A, B.  ("If you do not
16  accept this [a]greement, you must terminate your use of the [s]ervices."). Plaintiff has consented to
17  the Terms of Service & Terms of Use by TaxAct's services. Jaeger Decl. ¶ 3.h. Moreover, Plaintiff
18  agreed to the Terms of Service & Terms of Use by checking a checkbox for at least the most recent
19  tax year at issue and the year prior. Jaeger Decl. ¶¶ 3.h & 3.k.

20  The materials that TaxAct provided to Plaintiff's counsel included screenshots of TaxAct's
21  internal electronic records systems documenting that Plaintiff affirmatively checked the checkbox
22  indicating his acceptance of the Terms of Service & Terms of Use for tax year 2021, the most recent
23  year for which he filed his returns using TaxAct. Those screenshots show that Plaintiff consented to
24  the Terms of Service & Terms of Use and that he filed his tax returns on April 18, 2022. Jaeger
25  Decl., Ex. A. Unlike *Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2021 WL 3931995, at *6
26  (N.D. Cal. Sept. 2, 2021), the operative and current version of the Terms of Service & Terms of Use
27  is not in dispute—it was last updated on November 17, 2020, and it was in force when Plaintiff
28

1    consented on April 18, 2022 for tax year 2021, and in 2021 for tax year 2020.

2          Plaintiff's checking of the checkbox created a legally binding contract "for the Services

3    related to *the then-current* tax filing year at the time this Agreement is accepted or amended."

4    Campbell Decl., Ex. A at 4 (emphasis added). For example, in *Lee v. Ticketmaster L.L.C.*, the Ninth

5    Circuit held that a customer assented to Ticketmaster's terms of use, including its arbitration

6    provision, where the Ticketmaster website included language next to the "Place Order" button that

7    stated, "By clicking 'Place Order,' you agree to our Terms of Use." 817 Fed.Appx. 393 (9th Cir.

8    2020). *Lee* distinguished *Douglas v. U.S. Dist. Court for Cent. Dist. of Cal.,* 495 F.3d 1062, 1066

9    (9th Cir. 2007), upon which Plaintiff relies, where the plaintiff had assented to the terms only once,

10   before the terms were then modified without notice. Nothing of the sort is alleged here. To the

11   contrary, Plaintiff unambiguously agreed to the Terms of Service & Terms of Use that contain the

12   Arbitration Agreement. Jaeger Decl., Ex. A.

13   **III.   THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE.**

14         As the "party asserting that a contractual provision is unconscionable," Plaintiff "bears the

15   burden of proof." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016); *see also*

16   *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). To invalidate an

17   agreement as unconscionable, "*[b]oth* procedural and substantive unconscionability must be

18   present." *Tompkins,* 840 F.3d at 1023 (emphasis added). This question is assessed on a "sliding

19   scale," *i.e.*, the less procedurally unconscionable a contract is, the "more substantively oppressive"

20   its terms must be "and vice versa." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016).

21   Plaintiff has established neither.

22         **A.  Plaintiff Fails to Establish Procedural Unconscionability.**

23         Procedural unconscionability focuses on "oppression" and "surprise." *Newton v. Am. Debt*

24   *Servs., Inc.*, 854 F. Supp. 2d 712, 722 (N.D. Cal. 2012). Absent some "other indication of oppression

25   or surprise," the purported adhesive nature of the contract establishes only "some [relatively low]

26   degree of procedural unconscionability," and the contract is "enforceable unless the degree of

27   substantive unconscionability is high." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir.

28

2017) (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704, *as modified* (Apr. 19 & 26, 2013)).

Here, Plaintiff cannot claim surprise. He was notified of the Arbitration Agreement at every stage before he filed his tax returns, and acceptance of the Terms of Service & Terms of Use was an express condition for continued use of TaxAct's services. Hyperlinks to the Terms of Service & Terms of Use and the TaxAct Privacy Notice appear in the footer of each webpage contained in the Products and throughout the TaxAct website. Jaeger Decl. ¶¶ 3.c, 3.g. Moreover, users of TaxAct services must affirmatively check the checkbox agreeing to the Terms of Service & Terms of Use at account creation and prior to filing their tax returns, Jaeger Decl., and Plaintiff in fact *did* check that checkbox prior to filing his tax returns for at least tax year 2021. Jaeger Decl., ¶¶ 3.h & 3.k.

Plaintiff also cannot claim oppression. Although Plaintiff claims that he consented to the Terms of Service & Terms of Use only after he paid to file his tax returns, this is a red herring. Even if he chose to ignore the Terms of Service & Terms of Use prior to submitting payment, he was not trapped or oppressed by them after submitting payment. The Arbitration Agreement contains an express **opt-out provision** that provides: "You have the right to opt out of binding arbitration within thirty (30) days of the date you first accepted the terms of this Section by sending an email to arbitration@taxact.com." Campbell Decl., Ex. A, at 4.

Critically, Plaintiff does not allege that he chose to opt out. Instead, he argues that the opt-out provision "is effectively useless, because choosing to opt out would result in termination of the account without a refund." Opp. Brief at 8. That is wholly unsupported by the pleadings and is factually inaccurate. Nothing in the Arbitration Agreement or in the broader Terms of Service & Terms of Use suggests that opting out of arbitration would result in termination of Plaintiff's account without a refund. And aside from the opt-out alternative, if a taxpayer has already paid the TaxAct product fee but decides that they do not want to accept the Terms of Service & Terms of Use at all, they can call the TaxAct Support telephone number. Jaeger Decl. ¶ 3.u. TaxAct Support would then evaluate the situation and issue a refund of the TaxAct product fee to the taxpayer as appropriate. *Id.* Plaintiff does not allege that he contacted TaxAct Support or otherwise attempted to receive a

1  refund.

2  As such, this is not a case where the circumstances "of the contract's formation created such
3  oppression or surprise that closer scrutiny of its overall fairness is required." *OTO, L.L.C. v. Kho*, 8
4  Cal. 5th 111, 126 (2019). Plaintiff would not have been penalized for rejecting the Terms of Service
5  & Terms of Use, as was the plaintiff in *Felter v. Dell Techs., Inc.*, who was forced to pay a 15%
6  restocking fee for later opting out of the arbitration agreement. No. 21-CV-04187-VC, 2022 WL
7  3010173, at *2 (N.D. Cal. July 29, 2022). Nor does TaxAct's website permit customers to enter their
8  payment information and complete purchase of the product without ever seeing the Terms of Service
9  & Terms of Use, as was the case in *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752 (N.D. Cal. June
10  25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016).

11  Plaintiff nevertheless argues that he "had no reason to suspect that any of the terms and
12  conditions had changed since he had created his account, and therefore had no reason to attempt to
13  find, read, and understand the arbitration agreement." Opp. Brief at 8. Courts have resoundingly
14  rejected such arguments. Under California law, "even when a customer is assured it is not necessary
15  to read a standard form contract with an arbitration clause, 'it is generally unreasonable, in reliance
16  on such assurances, to neglect to read a written contract before signing it.'" *Sanchez v. Valencia
17  Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015) (quotation omitted). "If a party could get out of a
18  contract by arguing that he did not recall making it, contracts would be meaningless." *Blau v. AT&T
19  Mobility*, No. C 11-00541 CRB, 2012 WL 10546, at *4 (N.D. Cal. Jan. 3, 2012).

20  Equally unavailing is Plaintiff's assertion that the Arbitration Agreement is somehow
21  "buried" and filled with "legal jargon" (Opp. Brief at 8) and that taxpayers must have a strong
22  understanding of relevant case law to understand the Arbitration Agreement. These arguments are
23  directly rebutted by the contractual document itself, which is the best evidence of its content. Fed. R.
24  Evid. 1002. The Arbitration Agreement is plainly visible, conspicuous, and straightforward to
25  understand. First, the Arbitration Agreement is clearly denoted in the Terms of Service & Terms of
26  Use with a large font-sized and bolded heading, stating: "**Dispute Resolution; Binding
27  Arbitration.**" Campbell Decl., Ex. A, at 4. Second, it begins with the plain-English language, in

28

bold: "**Please read the following section carefully because it requires you to arbitrate certain disputes and claims with TaxAct and limits the manner in which you can seek relief from us.**" *Id.* Third, the Arbitration Agreement also states, in bold: "**You and TaxAct agree that any dispute arising out of or related to these Terms or our Services is personal to you and TaxAct and that any dispute will be resolved solely through individual arbitration and will not be brought as a class arbitration, class action or any other type of representative proceeding.**" *Id.* Fourth, the Arbitration Agreement contains only one statutory reference—the FAA—not more like Plaintiff falsely alleges. *Id.* Finally, the Arbitration Agreement contains a link under the large font-sized and bolded "Contact" sub-heading that directs users to TaxAct Support to the extent they "would like to contact [TaxAct] regarding this Agreement or the Services or Content." *Id.* In short, Plaintiff has failed to meet his burden to demonstrate procedural unconscionability.

### B. Plaintiff Fails to Allege Substantive Unconscionability.

"Substantive unconscionability focuses on 'the effects of the contractual terms and whether they are overly harsh or one-sided.'" *Newton*, 854 F. Supp. 2d at 724 (quoting *Flores v. Transam. HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). Because Plaintiff has not shown procedural unconscionability, the amount of substantive unconscionability here must be "high"—that is, Plaintiffs' agreement must be "'overly harsh'" or "'shock the conscience.'" *Poublon*, 846 F.3d at 1261 (quoting *Sanchez*, 61 Cal. 4th at 911). Plaintiff does not meet this burden either. Plaintiff fails to identify any provision of the Arbitration Agreement that is overly harsh or one-sided.

1. *The Arbitral Forum is Not Unduly Expensive.*

Plaintiff misrepresents the cost of arbitration. He repeatedly points to the $2,000 JAMS filing fee, but by Plaintiff's own admission, "[f]or matters involving consumers, the consumer is only required to pay $250." Brandler Decl., Ex. 2. Not coincidentally, that is the difference between the $2,000 total filing fee required to file a demand for arbitration with JAMS and the filing fee amount listed in the two general fee schedules for Judge David E. Hunter's (Ret.) arbitration services, Brandler Decl., Exs. 3 & 4, which Plaintiff's counsel had on hand from prior matters. Brandler Decl. ¶ 7. The fees summarized in the two fee schedules provided by Plaintiff and attached to the Brandler

declaration are irrelevant to the Plaintiff's expenses to arbitration. TaxAct's terms plainly state that "[y]ou and TaxAct agree that for any arbitration you initiate, you will pay the filing fee and TaxAct will pay the remaining JAMS fees and costs." Campbell Decl., Ex. A, at 4.

Nor is there any merit to Plaintiff's complaint about proceeding in Texas. The Ninth Circuit has held that forum selection clauses are "valid and may be given effect, in the court's discretion, in the absence of a showing that enforcement of such a clause would be unreasonable." *Tompkins* 840 F.3d at 1027 (quotation omitted). To be "unreasonable," it is not sufficient to merely point to "inconvenience" or "additional expense." *Id.* (quotation omitted). Plaintiff claims that the arbitration forum of Dallas County, Texas is expensive due to the costs of travel. Yet Plaintiff has not shown how the required arbitral forum run by JAMS—a widely-used and streamlined arbitration process—is any more expensive than litigation. In any case, any marginal expenses is at best a mere inconvenience or an additional expense, which does not meet the high standard elevated of being "unavailable or unable to accomplish substantial justice." *Id.* (quotation omitted).

2. *The Arbitral Forum is Otherwise Reasonable and Valid.*

"[R]equiring arbitration 'at the location of a defendant's principal place of business' is 'presumptively enforceable.'" *Tompkins*, 2014 WL 2903752, at *16 (citation omitted). Dallas County, Texas—where TaxAct is headquartered—is Defendant's principal place of business, and is thus presumptively enforceable. Plaintiff has failed to meet the heavy burden that the forum is unreasonable and that this presumption of enforceability should be overturned. Plaintiff instead speculates that he would have to pay travel expenses and hire local counsel to participate in JAMS arbitration, both of which are unnecessary under JAMS Rules. In fact, JAMS Rule 22(g) provides that if some or all of the participants are located remotely, the arbitrator may set forth procedures to conduct hearings virtually by videoconference or other means. Jaeger Decl., Ex. B, at 13. Plaintiff also cites *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1293 (9th Cir. 2006) (en banc), which held that an arbitral forum in Boston for a franchise owner in California was unconscionable. Unlike here, where the Arbitration Agreement plainly states that Dallas County, Texas is the arbitral forum, the plaintiff in *Nagrampa* had no reason to believe that arbitration would occur in Boston.

3. *The Statute of Limitations Period is Permissible Under California Law.*

A "one-year statute of limitations [period] does not make the arbitration provision itself unconscionable under California law." *Tompkins*, 840 F.3d at 1032. In *Fisher v. MoneyGram Int'l, Inc.*—cited by Plaintiff—the statute of limitations was only one of three elements that supported a finding of substantive unconscionability, which also included "hefty" filing fees and a provision requiring that each party "'bear its own costs and fees for experts and attorneys,'" which "'effectively prevented Fisher's recovery of attorney fees.'" 66 Cal. App. 5th 1084, 1104 (2021) (quoting applicable contract provision). No such factors are present here.

4. *The Arbitration Agreement Appropriately Limits Liability and Type of Damages.*

In challenging the Arbitration Agreement's limitation of liability and types of damages, Plaintiff relies on *Newton*, 854 F. Supp. 2d at 725. But *Newton* involved a debt relief organization and terms that capped the defendant's liability at fees paid despite a specific statute providing for the *greater* of actual damages or the amount paid by the customer to the defendant. *Id.* at 725. Additionally, the relevant terms in *Newton* allowed either party to recover reasonable litigation costs and attorney's fees and expenses. *Id.* at 726. Neither is present here.

Plaintiff also states that "the IP carveout [in the Arbitration Agreement at issue in the present case] is the same as the carve-out the Ninth Circuit found was unconscionable" in *Nagrampa*. Opp. Brief at 13. That is not accurate. The IP carve-out at issue in *Nagrampa*—which provided the defendant with access to "*any provisional remedy*, including, without limitation, injunctive relief" 469 F.3d at 1295 (emphasis added)—was substantially broader than the carve-out for "injunctive or equitable relief for alleged unlawful use of intellectual property" included in TaxAct's Arbitration Agreement.

5. *JAMS Arbitration Permits Discovery.*

Plaintiff's assertion that the Arbitration Agreement does not provide for discovery is simply wrong. The JAMS Rules provide limited discovery and a process by which discovery disputes may be resolved. *See* Jaeger Decl., Ex. B, at 11-12 (JAMS Rule 17 providing for good-faith, voluntary and informal exchange of documents and information, a process involving the arbitrator to resolve

discovery disputes, and a means for discovery of third parties with the approval of the arbitrator). To the extent that Plaintiff is requesting the Court to hold that such a discovery framework is unconscionable, Plaintiff is in effect asking the Court to invalidate the JAMS Rules themselves, which are a widely used and recognized arbitration standard. *See generally Luckert*, 2021 WL 3721967.[1]

## IV. PLAINTIFF CANNOT ESTABLISH THAT HE AGREED TO ARBITRATE UNDER DURESS.

Economic duress "may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1158 (1984) (citations omitted). The doctrine "serves as a last resort to correct these aberrations when conventional alternatives and remedies are unavailing." *Id.* at 1159. Accordingly, the standards for economic duress are substantial, and are met only in cases like those where a party signed the contract "only because he had to in order to survive." *Id.* at 1157. No extreme circumstances of the sort are alleged here, where Plaintiff could have, with no fees or penalties, opted out of the Arbitration Agreement.

## V. AN IMMEDIATE APPEAL WOULD CIRCUMVENT THE INTENTION OF THE PARTIES TO ARBITRATE THIS DISPUTE.

Finally, the parties agreed to arbitrate and to delegate threshold arbitrability questions to the arbitrator. This Court should not allow Plaintiff to waste judicial resources and delay arbitration any further by dragging TaxAct through a meritless appeal that will end up in arbitration, just as the parties agreed. As TaxAct has only requested that this Court stay proceedings pending arbitration, the Court should stay this action rather than dismiss it without prejudice.

## CONCLUSION

For the foregoing reasons, TaxAct requests that the Court stay proceedings pursuant to Section 3 of the Federal Arbitration Act.

---

[1] The Arbitration Agreement is not "permeated" by unconscionability as in *Armendariz*, 24 Cal. 4th at 89. Thus, even if this Court did find a particular provision of the Arbitration Agreement to be unconscionable, it could sever it and leave the remainder of the Arbitration Agreement intact.

| | |
|---|---|
| Date: May 4, 2023 | Respectfully submitted, |
| | By: /s/ Sheila A.G. Armbrust |
| | Sheila A.G. Armbrust (SBN 265998) |
| | sarmbrust@sidley.com |
| | SIDLEY AUSTIN LLP |
| | 555 California Street, Suite 2000 |
| | San Francisco, CA 94104 |
| | Telephone: (415) 772 1200 |
| | Facsimile: (415) 772 7400 |
| | |
| | James W. Ducayet (*pro hac vice*) |
| | jducayet@sidley.com |
| | SIDLEY AUSTIN LLP |
| | One South Dearborn |
| | Chicago, IL 60603 |
| | Telephone: (312) 853 7000 |
| | Facsimile: (312) 853 7036 |
| | |
| | Michele L. Aronson (*pro hac vice*) |
| | maronson@sidley.com |
| | SIDLEY AUSTIN LLP |
| | 1501 K Street NW |
| | Washington, DC 20005 |
| | Telephone: (202) 736 8000 |
| | Facsimile: (202) 736 8711 |
| | |
| | *Attorneys for Defendant TaxAct, Inc.* |