JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Avenue, Suite 600
Tacoma, WA 98402
Tel. (310) 601-6766
Fax (310) 295-2385

JASON HARROW (SBN 308560)
jason@gerstein-harrow.com
GERSTEIN HARROW, LLP
3243b S. La Cienega Blvd.
Los Angeles, CA 90016
(323) 744-5293

EMILY GERRICK (*pro hac vice*)
emily@gerstein-harrow.com
GERSTEIN HARROW, LLP
810 7th St. NE, Ste. 301
Washington, DC 20002
(202) 540-8105

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NICHOLAS C. SMITH-WASHINGTON**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**TAXACT, INC.**, an Iowa Corporation,<br><br>Defendant. | Case No. 3:23-cv-830-VC<br><br>Before The Hon. Vince Chhabria<br><br>**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**<br><br>Hearing Date: May 25, 2023<br>Time: 10:00 A.M.<br>Court: Courtroom 5, 17th Floor<br><br>Date Action Filed: January 24, 2023<br>Removal Filed: February 23, 2023 |

## I. INTRODUCTION

In its Motion to Stay, Defendant TaxAct raised and submitted to this Court the issue of contract formation and the gateway issues of the validity and scope of any arbitration clause. Defendant asserted that *this Court* must decide "whether a valid arbitration agreement exists," and "whether the arbitration agreement encompasses the dispute at issue." Motion (ECF 12) at 6:11-18; *see also id,* at 7:6-10:4 (arguing that the "arbitration agreements are valid and enforceable"), 10:5-11:5 (arguing that "Plaintiffs' claims fall within the scope of the arbitration agreements"). On reply, Defendant argues <u>for the first time</u> that these same issues of "formation, existence, validity, interpretation, or scope" have been delegated to the arbitrator. Reply (ECF 33) at 1:22-2:8. It is well-established that arguments raised for the first time on reply are waived. Here, Defendant not only waived its delegation argument by failing to raise it in its Motion, but the position it takes on this issue on reply is entirely contrary to its position in its Motion.

Even if the Court considers Defendant's new argument, the issues of formation and arbitrability should not be decided by an arbitrator. First, the Ninth Circuit has explicitly held that "parties cannot delegate issues of formation to the arbitrator." *Ahlstrom v. DHI Mortgage Company, Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021). Second, Defendant is wrong to suggest that "the incorporation of the JAMS Rules into an arbitration agreement delegates the question of arbitrability to the arbitrator." Reply (ECF 33) at 2:8-10. In fact, where, as here, at least one party is unsophisticated, "courts in this district and elsewhere have routinely found that the incorporation of [arbitration] rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability." *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1032 (N.D. Cal. 2022) (citing cases). And, finally, even if the parties had clearly and unmistakably delegated the question of arbitrability to the arbitrator – which they have not – the delegation clause itself is unconscionable and should not be enforced.

## II. ARGUMENT

### A. <u>Defendant Submitted the Issues of Formation, Validity, and Enforceability to the Court</u>

It is well-established that a moving party is not permitted to offer new evidence or arguments in a reply brief. *Graves v. Arpaio,* 623 F.3d 1043, 1048 (9th Cir. 2010). Defendant's Motion expressly raised and submitted the gateway issues of arbitrability (and formation) to this Court. *See, e.g.,* Motion (ECF 12) at 6:11-14 ("A dispute is subject to arbitration when two conditions are satisfied. First, **the court must determine** whether a valid arbitration agreement exists. Second, if a valid arbitration agreement exists, **the court must evaluate** whether the arbitration agreement encompasses the dispute at issue." (emphases added; citations omitted)); 6:22-7:3 ("An arbitration agreement governed by the FAA…is presumed to be *valid and enforceable*, and the party resisting arbitration bears the burden of establishing a defense to the agreement's enforcement by a preponderance of the evidence...Plaintiff cannot meet this heavy burden because: (1) the…agreement is *valid and enforceable*.") (emphasis added); 7:7-18 ("Since 'arbitration is a matter for contract,'…the existence of a valid arbitration agreement…is determined under applicable state law on contract formation…Under…California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract…Such evidence establishes the existence of a valid and enforceable agreement to arbitrate between TaxAct and Plaintiff."); 8:1-3 ("Plaintiff bears the burden of proving the arbitration agreement is not valid and enforceable, and cannot do so here.").Thus, Defendant waived any argument that the issues of contract formation and arbitrability were delegated to the arbitrator and this Court should not consider its newly raised delegation arguments.[1]

[1] Waiver aside, the Court should also find that Defendant is estopped from making its new delegation argument because it is entirely inconsistent with Defendant's position in its Motion.

## B. <u>Defendant's Delegation Argument Fails on the Merits</u>

### 1. *The Issue of Contract Formation is not Delegable*

The Ninth Circuit has recently expressly affirmed that "parties cannot delegate issues of formation to the arbitrator." *Ahlstrom*, 21 F. 4th at 635. This makes sense because "[t]he fundamental threshold question of whether there *exists* a binding contract (of which an arbitration clause is a part) cannot be delegated because it cannot be assumed that a delegation clause contained therein must be given effect." *Eiess v. USAA Fed. Sav Bank,* 404 F. Supp. 3d 1240, 1248 (N.D. Cal. 2019); *see also King v. AxleHire, Inc.*, No. 18-cv-01621-JD, 2019 WL 1925493, at *2 (N.D. Cal., Apr. 30, 2019) (stating that "[r]eliance on a delegation clause assumes a binding contract was formed, which simply elides the issue in dispute here."). Thus, Defendant's new and inconsistent argument that the issue of contract formation has been delegated to the arbitrator and cannot be determined by this court fails.

### 2. *There Is No Incorporation by Reference for Consumers*

Defendant argues for the first time in its Reply that the Parties agreed to delegate to the arbitrator the threshold issues of validity and enforceability. The burden for Defendant is high, because "in order for there to be delegation, the parties must have clearly and unmistakably delegated gateway questions of arbitrability to the arbitrator." *Eiess*, 404 F. Supp. 3d, at 1252 (citing *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 79 (2010)); *see also AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

Defendant's attempt to meet this high burden fails. In its reply, Defendant claims the agreement here "clearly and unmistakably delegates any dispute relating to arbitrability to the arbitrator" because it "incorporates the JAMS Rules" by reference, *see* Reply (ECF 33) at 2-3, but this is insufficient because Plaintiff is not a sophisticated party. Defendant relies on *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015), and *Oracle Am., Inc. v. Myriad Grp. A.G.,* 724 F.3d 1069, 1074 (9th Cir. 2013), but both of those cases were expressly limited to commercial disputes between sophisticated parties. *See Oracle*, 724 F. 3d at 1075 ("We hold that as long as an arbitration agreement is between *sophisticated parties to commercial contracts*, those parties shall be expected to understand that incorporation of the UNCITRAL rules delegates questions of arbitrability to the arbitrator." (emphasis added)); *see also Brennan*, 796 F.3d at 1131 ("[A]s in *Oracle America*, we limit our holding to the facts of the present case, which do involve an arbitration agreement 'between sophisticated parties.'").

In fact, the appropriate legal rule is the opposite in cases like this, involving consumer contracts with non-sophisticated counterparties. Namely, "courts in this district and elsewhere have routinely found that the incorporation of [arbitration] rules is *insufficient* to establish a clear and unmistakable agreement to arbitrate arbitrability." *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1031 (N.D. Cal. 2022) (emphasis added) (citing cases); *id*. at 1032 ("Common customers of Verizon, including Plaintiffs, should not be expected to understand that the incorporation by reference of the AAA rules—without spelling out the actual provision—would mean that the validity and enforceability of the arbitration provision would be resolved by an arbitrator rather than a court, a result contrary to common expectation."); *Magill v. Wells Fargo Bank, N.A.,* No. 4:21-cv-01877-YGR, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021) (holding that incorporation of AAA rules does not clearly and unmistakably establish an agreement to delegate questions of arbitrability where one party was unsophisticated); *Ingalls v. Spotify USA, Inc.*, No. 16-cv-03533-WHA, 2016 WL 6679561, at *3-4 (N.D. Cal. Nov. 14, 2016) (noting that "every district court decision in our circuit to address the question since *Brennan* has held that incorporation of the AAA rules was insufficient to establish delegability in consumer contracts involving at least one unsophisticated party" and reasoning that unsophisticated parties to an arbitration agreement "could not be expected to appreciate the significance of incorporation of the AAA rules") (collecting cases).

Defendant has not shown that Plaintiff is anything other than a common customer of TaxAct. It has not shown, nor could it, that he is a sophisticated party such that it is reasonable to assume that he would understand the significance of the TaxAct's Arbitration Agreement's incorporation by reference of "the Streamlined Arbitration Rules and Procedures ("Rules") of [JAMS]," Reply (ECF 33), 2:17-21, and he can be said to have "clearly and unmistakably" intended to delegate the issue of arbitration to the arbitrator. *See Ingalls*, 2016 WL 6679561, at *4.[2]

3. *The Delegation Clause Itself is Unconscionable and Should Not Be Enforced*

Even assuming the contract validly attempts to delegate these questions to the arbitrator (and it does not), such a provision would be unenforceable because it is unconscionable. *See* Opposition (ECF 27) 7:20-11:12. The delegation provision was particularly difficult to locate as it was incorporated by reference to an entire set of JAMS Rules. The arguments raised in the Opposition concerning procedural unconscionability of the entire contract thus apply with equal force to the delegation clause. Here, a customer would have to find the arbitration agreement, follow the reference to the 17 pages of JAMS Rules, and comb through and understand those Rules to appreciate there was a delegation clause. The arbitration agreement's unconscionable requirement that Plaintiff pursue his claims in a prohibitively expensive forum applies equally to the delegation clause in that Plaintiff would be required to file the JAMS "filing fee" before receiving the arbitrator's decision on arbitrability. *Id.* at 9:12-13. Moreover, the arbitrator's unfettered discretion to award attorneys' fees and expenses, as applied to the delegation clause, is substantively unconscionable. It could allow Defendant to collect attorneys' fees arising from the arbitrator's initial arbitrability decision. *See Lim v. TForce Logistics, LLC*, 8 F. 4th 992, 1003-04 (2021). In contrast, federal courts provide for one-way fee and cost shifting to the prevailing Plaintiff. The forum selection clause—requiring this California Plaintiff to pursue arbitration in Texas—also is substantively unconscionable as it renders the delegation provisions prohibitively costly. Opposition (ECF 27) 10:4-11:12. Thus, the delegation clause is substantively unconscionable because it "'puts [plaintiffs] who demand arbitration at risk of incurring greater costs than they would bear if they were to litigate their claims in federal court.'" *Id.* at 1003 (quoting *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010)). Finally, the delegation clause provides, contrary to clear and binding legal authority, that "disputes over the formation . . . of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator," Decl. of Mark Jaeger (ECF 33-1), Ex. B, at 8, an additional ground on which it is unconscionable.

## III. CONCLUSION

This Court should decline to consider Defendant's argument regarding delegation, or, in the alternative, find that the issue of formation cannot be delegated, find that Defendant has failed to show that the Parties agreed to delegate arbitrability, and find that the delegation provision cannot be enforced.

Dated: May 18, 2023

Respectfully submitted,
HAMMONDLAW, P.C.

s/ Julian Hammond
Julian Hammond (SBN 268489)
*Attorneys for Plaintiff*

---

[2] The fact that Defendant, represented by counsel, has taken contradictory positions on the proper body to determine the issues of formation, validity, and scope, is further evidence that there was no clear and unmistakable agreement that such issues should be delegated to an arbitrator. Defendant, apparently, failed to notice the purportedly "clear and unmistakable" delegation provision until drafting its Reply.