JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
CHRISTINA TUSAN (SBN 192203)
ctusan@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
Tel. (310) 601-6766
Fax (310) 295-2385

JASON SETH HARROW (SBN 308560)
jason@gerstein-harrow.com
GERSTEIN HARROW, LLP
3243b S. La Cienega Blvd.
Los Angeles, CA 90016
(323) 744-5293

[Additional Counsel Listed on the Next Page]

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NICHOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES, and JENNY LEWIS**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**TAXACT, INC.,**<br><br>Defendant. | Case No.: 3:23-CV-00830-VC<br><br>Assigned to Hon. Vince Chhabria<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Hearing Date: September 21, 2023<br>Time: 10:00 A.M.<br>Court: Courtroom 4, 17th Floor<br><br>Date Action Filed: January 24, 2023<br>Motion to Compel Filed: July 12, 2023 |

EMILY GERRICK (*admitted pro hoc vice*)
emily@gerstein-harrow.com
GERSTEIN HARROW, LLP
810 7th St. NE, Ste. 301
Washington, DC 20002
(202) 540-8105

# TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................................................iii

TABLE OF AUTHORITIES ........................................................................................iv

I.      INTRODUCTION ..........................................................................................1

II.     RELEVANT FACTS.......................................................................................1

III.    RELEVANT STANDARDS AND BURDENS ..............................................2

IV.     ARGUMENT ..................................................................................................2

     A.      Plaintiff Lewis Never Agreed to Arbitrate Her Claims.........................2

          1.      Equitable Estoppel Does Not Bind Lewis to Arbitrate Her Claims ...........3

          2.      The Doctrine of Agency Does Not Bind Lewis to Arbitrate Her Claims ...5

          3.      Third-Party Beneficiary Doctrine Does Not Bind Lewis to Arbitrate Her Claims...........................................................................................7

     B.      Plaintiffs Did Not Agree to Arbitrate Their Claims .................................8

          1.      Defendant Failed to Provide Sufficient Evidence to Establish they Agreed to Arbitrate.............................................................................8

         *b.*      *Jaeger is Unqualified to Opine on Plaintiffs' Alleged Agreement to Arbitrate* ......9

          2.      Plaintiffs Cannot be Compelled to Arbitrate Claims Pre-Dating Agreements to Arbitrate ...........................................................................10

     C.      The Delegation Clause is both Procedurally and Substantively Unconscionable. 11

          1.      The Delegation Clause is Procedurally Unconscionable..........................11

          2.      The Delegation Clause is Substantively Unconscionable ........................12

     D.      The Entire Arbitration Agreement is Unconscionable ..........................................14

     E.      This Court Cannot Compel Arbitration in Texas .................................................15

V.      CONCLUSION ..............................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
   24 Cal. 4th 83, 89 (2000). .................................................................................................. 15

*Boucher v. All. Title Co., Inc.,*
   127 Cal.App.4th 262 (2005) .................................................................................................. 3

*Brennan v. Opus Bank,*
   796 F.3d 1125 (9th Cir. 2015) ............................................................................................. 11

*Castillo v. Alere N. Am., Inc.,*
   No. 3:21-cv-01519-RBM-SBC, 2023 WL 4630621 (S.D. Cal. July 19, 2023). ...................... 7

*Comer v. Micor, Inc.,*
   436 F.3d 1098 (9th Cir. 2006) ............................................................................................... 7

*Continental Grain Co. v. Dant & Russell, Inc.,*
   118 F.2d 967 (9th Cir. 1941) ............................................................................................... 15

*Dennison v. Rosland Capital LLC,*
   47 Cal. App. 5th 204 (2020) ............................................................................................... 14

*Fitz v. NCR Corp.,*
   118 Cal.App.4th 702 (2004) ............................................................................................... 13

*Flores v. Evergreen at San Diego, LLC,*
   148 Cal.App.4th 581 (2007) ............................................................................................. 5, 6

*Fox v. Ethicon Endo-Surgery, Inc.,*
   35 Cal.4th 797 (2005) ........................................................................................................ 11

*Goldman, Sachs & Co. v. City of Reno,*
   747 F.3d 733 (9th Cir. 2014) ................................................................................................. 2

*Gostev v. Skillz Platform, Inc.,*
   88 Cal. App. 5th 1035 (2023) ............................................................................................. 15

*Heckman v. Live Nation Ent., Inc.,*
   No. CV 22-0047-GW-GJSx, Dkt. 202 (C.D. Cal. Aug. 10, 2023) ................................... 11, 12

*Hexcel Corp. v. Ineos Polymers, Inc.,*
   681 F.3d 1055 (9th Cir. 2012) ............................................................................................... 8

*Holley-Gallegly v. TA Operating, LLC,*
   74 F.4th 997 (9th Cir. 2023) ............................................................................................... 13

*Homestake Lead Co. v. Missouri v. Doe Run Resources Corp.,*
   282 F. Supp. 2d 1131 (N.D. Cal. 2003) ............................................................................... 15

iv

*Jensen v. U-Haul Co. of California,*
   18 Cal.App.5th 295 (2017) .................................................................................................... 3

*Johnson v. Walmart Inc.,*
   57 F.4th 677 (9th Cir. 2023) ................................................................................................. 2

*JSM Tuscany, LLC v. Superior Ct.,*
   193 Cal. App. 4th 1222 (2011) ............................................................................................. 2

*Nagrampa v. Mailcoups, Inc.,*
   469 F.3d 1257 (2006) .......................................................................................................... 14

*Namisnak v. Uber Techs., Inc.,*
   971 F.3d 1088 (9th Cir. 2020) ............................................................................................. 3

*Newton v. AM. Debt. Servs.,*
   854 F. Supp. 2d 712 (N.D. Cal. 2012) ............................................................................... 15

*Ontiveros v. DHL Express (USA), Inc.,*
   164 Cal. App. 4th 494 (2008) ............................................................................................. 15

*OTO, LLC v. Kho,*
   8 Cal. 5th 111 (2019) ................................................................................................... 11, 12

*Pillar Project AG v. Payward Ventures, Inc.,*
   64 Cal.App.5th 671 (2021), *review denied* (Sept. 1, 2021) .................................... 3, 4, 6, 7

*Rent-A-Center, West, Inc. v. Jackson,*
   561 U.S. 63 (2010) .............................................................................................................. 13

*Sanchez v. Valencia Holding Co., LLC,*
   61 Cal. 4th 899 (2015) ....................................................................................................... 14

*Skillsky v. Lucky Stores, Inc..,*
   893 F.2d 1088 (9th Cir. 1990) .............................................................................................. 8

*Sparling v. Hoffman Const. Co.,*
   864 F.2d 635 (9th Cir. 1988) ............................................................................................. 15

*Textile Unlimited, Inc. v. A BMH and Company, Inc.,*
   240 F.3d 781 (9th Cir 2001) ............................................................................................... 15

*Three Valleys Mun. Water Dist. v E.F. Hutton & Co.,*
   925 F.2d 1136 (9th Cir 1991) ............................................................................................... 2

*Tice v. Amazon.com, Inc.,*
   845 F. App'x 535 (9th Cir. 2021) ......................................................................................... 4

*Tice v. Amazon.com, Inc.,*
   No. 5:19-CV-1311-SVW-KK, 2020 WL 1625782 (C.D. Cal. Mar. 25, 2020), *rev'd and remanded,*
   845 F. App'x 535 (9th Cir. 2021). ........................................................................................ 4

*Tiri v. Lucky Chances, Inc.,*
   226 Cal.App.4th 231 (2014) .......................................................................................... 11, 13

v

*Wanless v. Peloton Interactive, Inc.*,
  No. 2:23-CV-00405-DMC, 2023 WL 4086455 (E.D. Cal. June 20, 2023) .......................................3, 4

*Yerkovich v. MCA Inc.*,
  11 F. Supp. 2d 1167 (C.D. Cal. 1997) ....................................................................................14

*Zullo v. Superior Ct.*,
  197 Cal.App.4th 477 (2011) ....................................................................................................13

**Statutes**

9 U.S.C. § 3 ................................................................................................................................2, 15

9 U.S.C. § 4 ................................................................................................................................2, 15

Cal. Civ. Code § 1670.5 ................................................................................................................14

**Other Authority**

26 CFR § 301.7216-3 ....................................................................................................................11

## I.    INTRODUCTION

Defendant TaxAct, Inc.'s ("TaxAct" or "Defendant") Motion to Compel Arbitration and to Stay Proceedings ("MTC") must be denied just like Defendant's prior motion.

## II.    RELEVANT FACTS

TaxAct runs a tax filing website that disclosed Plaintiffs' confidential information to unauthorized third parties through tracking software, or "pixels," that it incorporated into its website since at least 2014.[1] Plaintiffs Nicholas Smith-Washington ("Washington"), Joyce Mahoney ("Mahoney"), and Jonathan Ames ("Ames") are California residents who used TaxAct to file their taxes from 2005-2020. FAC ¶¶ 12–14. Plaintiff Lewis is a California resident whose husband used TaxAct from 2015 to 2022. FAC ¶ 15. Lewis's husband printed his return in tax years 2018 (calendar year 2019) and 2019 (calendar year 2020). See Jaeger Declaration ("Jaeger Decl."), Exhibit P, at P8-P11; Lewis Decl., ¶ 4, at 2.

Prior to 2017, when Plaintiffs (and Lewis' spouse) created their accounts, TaxAct's Terms and Conditions ("Original Terms") did not contain an arbitration provision. See Brandler Decl., Ex. 2, Tabs 2B-2G.  In early 2017, TaxAct significantly updated its Terms and Conditions ("Terms") by, *inter alia*: adding a forced arbitration agreement; incorporating by reference JAMS Streamlined Rules (which include a waiver of Plaintiffs' rights to claim that the delegation clause and the Streamlined Rules, themselves, are unfair and/or unconscionable); and, adding a limitation of liability and damages clause, a limitation on the statute of limitations for claims, and forum selection and choice of law clauses. MTC at 3:17-26; Jaeger Decl., ¶ 5(b), at 3 (because Defendant represents that the terms of its arbitration

---

[1] FAC ¶¶ 103–104 (allegations, so far uncontradicted with evidence, that TaxAct had tracking as far back as 2014 or earlier); *see also* Request for Judicial Notice, filed herewith, ("RJN") at Exh. 1, at 11, *Attacks on Tax Privacy: How the Tax Prep Industry Enabled Meta to Harvest Millions of Taxpayers' Sensitive Data*, United States Senate (July 2023). The Senate Report revealed that TaxAct has been using Google Analytics since "approximately 2014" and that it used the tool to send information such as "full names, email, country, state, city, zip codes, phone numbers, gender, date of birth, first names of dependents, buttons that were clicked, names of text entry forms that taxpayers navigated to (both of which could indicate, for example, whether taxpayers were eligible for certain deductions or exemptions)…year of the return..." *See* Deposition of Nick Zabokrtsky ("Zabokrtsky Depo") at 199:7-224, attached as Ex. 3 to Declaration of Polina Brandler ("Brandler Decl."), filed herewith (admitting that Defendants had a substantial number of pixels from other companies like SNAP, iheart radio, Crazy Egg, Neilson, AOL, Yahoo and many others in addition to the Google and Meta Pixels on its website; the deponent was unable to definitively confirm the dates and nature of what was collected by these pixels or precisely when each was placed on the website).

agreement in its 2020 and 2017 Terms "contained no material differences" except the location where the arbitration would be conducted, Plaintiffs' brief will focus on the 2020 Terms). Plaintiffs did not receive any notice by email that TaxAct had changed its terms or added an arbitration provision. Lewis Decl., ¶ 11, at 2; Ames Decl. ¶¶ 4-5, at 2; Mahoney Decl., ¶¶ 4-5, at 2; Washington Decl., ¶¶ 4-5, at 2-3. Plaintiff Lewis never agreed to arbitrate her claims because her husband used TaxAct, not her. Lewis Decl., ¶¶ 3-14, at 2-3.

## III.    RELEVANT STANDARDS AND BURDENS

TaxAct seeks to compel Plaintiffs to arbitrate their claims in Dallas, Texas, and stay these proceedings pursuant to 9 U.S.C. §§ 3 and 4.[2] As the movant, TaxAct "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). To determine whether a defendant has met this burden, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences. *See Three Valleys Mun. Water Dist. v E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir 1991). A court may find an agreement to arbitrate exists as a matter of law "only when there is no genuine issue of fact concerning the formation of the agreement." *Id.* (citation and quotation omitted).

The FAA's supposed "presumption in favor of arbitrability does not apply" where "the existence of an agreement to arbitrate" is at issue. *Johnson*, 57 F.4th at 681. Instead, this Court must apply "'general state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists.'" *Id.* (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014)). Thus, California law must be applied to determine whether a valid contract to arbitrate exists. MTC at 2.

## IV.    ARGUMENT

### A.    Plaintiff Lewis Never Agreed to Arbitrate Her Claims

"Generally speaking, one must be a party to an arbitration agreement to be bound by it or invoke it." *JSM Tuscany, LLC v. Superior Ct.*, 193 Cal.App.4th 1222, 1236 (2011) (internal citations omitted). TaxAct does not and cannot argue that Plaintiff Lewis is a party to its Agreement. Instead, TaxAct posits that Lewis is bound to its Agreement because *her husband* used TaxAct's website and allegedly agreed to TaxAct's terms and conditions. Lewis Decl. ¶¶ 4-11, at 2. But even if Lewis's spouse is bound to the

---

[2] Campbell Decl., Ex. A., Dkt. 12-1.

Agreement, that is insufficient to bind Lewis to the Agreement under any of the legal principles—equitable estoppel, agency, and third-party beneficiary theory—invoked by TaxAct. MTC 2 at 10:9–12. Moreover, to the extent that there is any ambiguity regarding whether Plaintiff Lewis can be bound by her husband's arbitration agreement, the question should be resolved in her favor. *See Pillar Project AG v. Payward Ventures, Inc.*, 64 Cal.App.5th 671, 680 (2021), *review denied* (Sept. 1, 2021) (ambiguities regarding whether a nonsignatory plaintiff could be bound by the terms of an arbitration agreement should be resolved in a manner that upholds the "constitutional nature of a right to a jury trial").

### 1. *Equitable Estoppel Does Not Bind Lewis to Arbitrate Her Claims*

"The application of equitable estoppel principles to arbitrability questions arises in a variety of circumstances," *Boucher v. All. Title Co.*, *Inc.*, 127 Cal.App.4th 262, 268 (2005), including (1) when a "nonsignatory plaintiff . . . asserts claims that are dependent upon . . . the underlying contractual obligations of the agreement containing the arbitration clause" *Jensen v. U-Haul Co. of California*, 18 Cal.App.5th 295, 306 (2017) (citation omitted)), and (2) "'when [the nonsignatory plaintiff] receives a 'direct benefit' from a contract containing an arbitration clause,'" *Boucher*, 127 Cal.App.4th at 269.

Plaintiff Lewis's claims are not dependent on the Terms. In fact, the Terms are not even referenced in the Amended Complaint's causes of actions. In *Pillar*, the plaintiff hired a nonparty company to use the defendant's website to exchange cryptocurrency, and the company signed an arbitration agreement with the defendant. 64 Cal.App.5th at 676. The court held that the plaintiff was not bound to the arbitration agreement under principles of equitable estoppel because the plaintiff's claims "do not expressly rely on or refer to the Terms of Service or any of its provisions." *Id*. at 678. Unlike breach of contract claims that are "based upon the obligations created by the [contracts]," the claims here are not "intimately founded in and intertwined" with the terms of use. *Id*. (citation omitted). Instead, they are statutory and common law violations regarding unlawful data disclosure. As in *Pillar*, TaxAct has "provide[d] no evidence or authority establishing that Plaintiff's claims cannot survive absent reliance on the Terms of Service." *Id. See also Wanless v. Peloton Interactive, Inc.*, 2:23-CV-00405-DMC, 2023 WL 4086455, at *5 (E.D. Cal. June 20, 2023) (plaintiff not bound by wife's arbitration agreement under principles of equitable estoppel because his claim was not "based on any allegation related to the Terms of the Agreement."); *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1091 (9th Cir. 2020) (rejecting Uber's

equitable estoppel theory asserted against plaintiffs who never downloaded the app and therefore never agreed to its arbitration provision because their claims were based in the ADA and not in the terms and conditions).

TaxAct also argues that the principles of equitable estoppel apply because Lewis somehow benefitted from her husband's alleged contract with TaxAct. But any benefit received by Lewis was at most indirect. Like the plaintiff in *Pillar* who asked another entity to perform a service for him, Plaintiff Lewis similarly received, at best, an indirect benefit from her husband filling out her taxes for her—a service she was happy to have him do by hand or with another preparer. *Pillar*, 64 Cal.App.5th at 680; Lewis Decl. at ¶¶ 3-5, at 2.  Lewis's husband contracted with TaxAct and she, at best, received a remote benefit by saving time on filling out taxes, just as the nonparty company in *Pillar* benefitted by contracting with the defendant in that case. Lewis, in fact, didn't care if her husband used an online service or filled them out by hand. *Id*. at ¶ 5, at 2. The *Pillar* court held that any benefit conferred on the plaintiff by the company's contract with the defendant was "indirect or remote," and so too here. *Id*.

TaxAct's reliance on the unpublished case of *Tice v. Amazon.com, Inc.*, 845 F. App'x 535, 537 (9th Cir. 2021), is misplaced and improper. In that case, the plaintiff used the defendant's services directly and of her own volition. The *Tice* court upheld the district court's reasoning that the plaintiff "must adhere to the [terms of use] for claims directly related to her voluntary usage" of Amazon's services, which was separate from her husband's usage. *Tice v. Amazon.com, Inc.*, 5:19-CV-1311-SVW-KK, 2020 WL 1625782, at *3 (C.D. Cal. Mar. 25, 2020), *rev'd and remanded*, 845 F. App'x 535 (9th Cir. 2021). But here, Plaintiff Lewis never used TaxAct's website, never created an account, never logged into the TaxAct website, never created a self-generated PIN,[3] never used or logged into her husband's TaxAct account, and never viewed or saw TaxAct's Terms. Lewis Decl. ¶¶ 3-11, at 2. She, therefore, is not bound by her husband's alleged agreement to arbitrate. *See Wanless,* 2023 WL 4086455, at *5 (plaintiff not bound by

---

[3] TaxAct's produced evidence regarding the "Self-Select" PINs is not specific to Lewis or even to a particular tax year. Jaeger Decl. Ex. Q. Plaintiff Lewis has submitted testimony that she, in fact, doesn't recall giving a PIN or ever using the website. Lewis Decl., ¶ 10, at 2. Additionally, her husband did not file their joint taxes electronically for tax years 2018 and 2019, thereby eliminating any possible claim for those years that she somehow agreed to arbitration by entering a PIN associated with signing her tax return. Lewis Decl., ¶¶ 4, 5 ,11, at 2; Jaeger Decl., Ex. P, at P-8 to P-11. As explained *infra*, the "Self-Select PIN" was used to sign a separate agreement with TaxAct that did not contain an arbitration agreement.

his wife's arbitration agreement with defendant because he did not use defendant's services himself, even though claims arose from his wife's use of the service).

Finally, as if to make explicit what is already provided for in law, the Terms allegedly agreed to by Lewis's husband explicitly state that "any dispute arising out of or related to these Terms or [TaxAct's] Services is personal to [the signatory]." Jaeger Decl., Ex. C, at C-4. TaxAct fails to explain how an agreement it clearly states is "personal to" the spouse of a Plaintiff can be interpreted to be its opposite.

### 2.   The Doctrine of Agency Does Not Bind Lewis to Arbitrate Her Claims

TaxAct argues, without basis, that because Lewis's husband filed a joint return, her husband was authorized as her agent to enter into arbitration agreements on her behalf. TaxAct cites *Flores v. Evergreen at San Diego, LLC* in support of this argument, but, in *Flores*, the court held that a "spousal relationship alone is insufficient to confer authority to agree to an arbitration provision." 148 Cal.App.4th 581, 587 (2007). The *Flores* court held that, while the plaintiff's husband did have the authority as his wife's agent to admit her into a nursing home, he did not have the authority as her agent to bind her to an arbitration agreement relating to claims involving her care at the facility. *Id*. Similarly, while Lewis's husband had her permission to file their joint taxes, he did not have permission to bind her to an arbitration agreement for claims involving a third party's misuse of her information. Lewis Decl., ¶¶ 12-13, at 3.

In *Flores*, the court rejected the defendant's agency argument and noted that the arbitration agreement signed by the plaintiff's husband was "separate" from the admissions agreement for her care at the defendant's facility. 148 Cal.App.4th at 592. TaxAct also claims that Lewis may have "signed" a separate agreement with a PIN she selected herself, or had her husband sign the separate agreement as her agent, in some unknown[4] tax years by relying on a sample document that it says was used for online efiling during some unknown time period (but would not have any relevance to tax years 2018 and 2019, when her husband printed their returns). *See* Jaeger Decl., Ex. Q (page asking for "Self-Select PINs" for both the filer and the spouse, with a text box above the PINs providing that "by signing with my Self-Select PIN. . . I declare that I have examined this return and the accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and accurate[]" and that "I consent to allow [TaxAct] to send my return to the IRS."); *see* Lewis Decl., at ¶ 10, at 2 (disputing unsupported

---

[4] The exhibit does not specify which years the webpage in question appeared on their website.

claims that she provided TaxAct a self-selected PIN). This separate agreement, which is offered as something that may have been used on TaxAct's website during an unknown time period, contained a "signature" line for both the filer and the filer's spouse, in direct contrast to the terms and conditions document which did not contain any indicators that the agreement applied to anyone but the filer (and in fact contained a provision stating that the terms and conditions were "personal to [the signatory]." (Jaeger Decl., Ex. B, at B-5)). Crucially, the separate PIN-signed agreement does not contain an arbitration agreement and is separate from the terms and conditions, just as the admissions agreement was separate from the arbitration agreement in *Flores*. The plain language in the separate PIN-signed agreement relates directly to an agreement to submit documents to the IRS, not to an agreement to any of TaxAct's terms or conditions or any agreement to arbitrate as Defendant now claims. *See* Jaeger Decl., Ex. Q. Additionally, despite providing other documents suggesting specific sign-offs by Plaintiffs, Defendant failed to produce any evidence of specific documents it claimed Plaintiff Lewis signed off on.

Also as in *Flores*, TaxAct provides no evidence that Lewis's husband acted as her agent when he allegedly agreed to the separate Terms. Instead, TaxAct argues that "Plaintiff Lewis's husband would not have been able to successfully file joint federal and state tax returns without Plaintiff Lewis's approval and her providing to him her tax return information." MTC at 11:20–22. This is a non sequitur: it is evidence that her husband had permission to file their joint taxes, but it does not show that Plaintiff Lewis authorized her husband to enter into an agreement, on her behalf, forcing her to arbitrate her own dispute about the misuse of her own data with the company that her husband chose to prepare and file taxes with. And Lewis' testimony and the complaint allege the opposite – namely that she did not authorize her husband to enter into a contract with TaxAct on her behalf or to bind her to an arbitration agreement. Lewis Decl., ¶¶ 12-13, at 3; FAC at ¶¶ 163-165. TaxAct's argument, here, again parallels the defendant's failed arguments in *Pillar*. In that case, the defendant argued that because the plaintiff had contracted with a nonparty company to convert cryptocurrency for him, that company acted as the plaintiff's agent when it signed the defendant's arbitration agreement in order to use the defendant's website to perform services for the plaintiff. The *Pillar* court disagreed, reasoning that the plaintiff's contract with the nonparty company to convert cryptocurrency was "not evidence that [the company] had the authority to enter into arbitration agreements (or other contracts) on Plaintiff's behalf." *Pillar*, 64 Cal.App.5th at 676.

To the extent that TaxAct argues that Plaintiff Lewis's acceptance of TaxAct's filing of the joint taxes constitutes ratification of her husband's agreement to the terms of service, this argument also fails. "The fundamental test of ratification by conduct is whether the releasor, *with full knowledge of the material facts entitling him to rescind*, has engaged in some unequivocal conduct giving rise to a reasonable inference that he intended the conduct to amount to a ratification." *Pillar*, 64 Cal.App.5th at 676–77 (citations omitted) (emphasis in original). Because TaxAct presents no evidence that Lewis had such knowledge and because Lewis herself confirms that she did not have that knowledge, "no ratification has occurred." *Id*.; see Lewis Decl., ¶¶ 3-13, at 2-3.

### 3.   *Third-Party Beneficiary Doctrine Does Not Bind Lewis to Arbitrate Her Claims*

Finally, TaxAct does not meet its "burden of proving" that Lewis is a "third-party beneficiar[y] of the Arbitration Agreement" because the agreement was not made "expressly" for her benefit. *Castillo v. Alere N. Am., Inc.*, 3:21-cv-01519-RBM-SBC, 2023 WL 4630621, at *6 (S.D. Cal. July 19, 2023). Plaintiff Lewis did not benefit from her husband's alleged contract with TaxAct. Plaintiff Lewis did not save any of her own time, since her husband was the person in charge of filing their taxes and she would get the same benefit if he filed them without using TaxAct's software or used another service. *See Pillar* 64 Cal. App. 5th at 677 (deriving "no intent to benefit Plaintiff or similar parties from the Terms of Service" that a nonparty signed when it used the defendant's website in order to provide agreed-upon services to the plaintiff). TaxAct's terms and conditions were intended to benefit the signatory only, and, as such, they state that all claims arising from them "are personal to [the signatory]." Jaeger Decl., Exh. C, at C-4; Lewis Decl., ¶ 5, at 2.

In *Comer v. Micor, Inc.*, the Ninth Circuit held that a nonsignatory third-party could not be bound to arbitration under a third-party beneficiary theory because the defendant had not produced evidence that the agreement intended to give beneficiaries "the right to sue under the agreements. It follows that [the plaintiff] cannot be bound to the terms of a contract he didn't sign and is not even entitled to enforce." 436 F.3d 1098, 1102 (9th Cir. 2006) (footnoted omitted). The court reasoned that while a "third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be *bound* to a contract it did not sign or otherwise assent to." *Id*. Here, too, the agreement does not give

1    Lewis the right to sue to  enforce her husband's agreement—in fact, it explicitly disallows this.[5] And as

2    in *Comer*, Lewis's claims are "not based on contract law, but on . . . statutory provision[s]." *Id.* at n. 6.

3    **B.      Plaintiffs Did Not Agree to Arbitrate Their Claims**

4          **1.      *Defendant Failed to Provide Sufficient Evidence to Establish they Agreed to Arbitrate***

5          Defendant's MTC must be denied as it exclusively relies on the Jaeger Declaration—a declaration

6    that comprises unsupported, unreliable, and inadmissible evidence.[6] This declaration must be rejected as

7    it was written entirely by counsel[7] and contains claims under penalty of perjury about matters Mr. Jaeger

8    admitted he lacked a basis to make. It is inadmissible because it is not based upon Mr. Jaeger's personal

9    knowledge, contains double hearsay for which no exception exists, does not provide evidence for which

10   there is or could be a proper foundation laid, and has no indicia of reliability. See *Hexcel Corp. v. Ineos*

11   *Polymers, Inc.,* 681 F.3d 1055, 1063 (9th Cir. 2012) ("declarations not based on personal knowledge are

12   inadmissible . . .") (citing *Skillsky v. Lucky Stores, Inc.*., 893 F.2d 1088, 1091 (9th Cir. 1990) and Fed. R.

13   Civ. P. 56(c)(4)).

14          *a.      Jaeger Admitted that He is Unqualified to Opine on TaxAct's Use of Pixels*

15         Defendant's Motion relies solely upon Mr. Jaeger's Declaration to support its claims that pixels

16   were first installed on its website in 2018[8]—even though he admits he lacked any basis to make such

17   statements.[9] Mr. Jaeger admitted that despite his declaration's claims about TaxAct's use of the Meta

18   Pixel and similar technologies including the Google Campaign Manager, he, in fact, had "no experience

19   with data analytics with respect to TaxAct," had no experience with "Google Tag Manager," and, had no

20   independent knowledge about the information contained in paragraph 7. Deposition of Mark Jaeger

21   ("Jaeger Depo") at 66:15-68:4, attached as Exh. 4 to Brandler Decl.; Jaeger Decl. ¶ 7, at 4-5. When Mr.

22   Jaeger was shown an exhibit that comprised what he testified (in a previously filed declaration) was

23   Defendant's Google Tag manager "through which it deploys tracking technologies to the tax act

24
_____

25   [5] Jaeger Decl., Exh. C, at C-3 ("You and TaxAct agree that any dispute arising out of or related to these
     Terms or our Services is personal to you and TaxAct and that any dispute will be resolved solely through
26   individual arbitration and will not be brought as a class arbitration, class action or any other type of
     representative proceeding")
27   [6] Jager Depo at 37:11-19; 39:13-25.
     [7] Jaeger Depo. at 37:11-19; 38:23-39:6.
28   [8] Jaeger Decl. ¶ 7, at 4; MTC at 9:9–10.
     [9] Jaeger Depo at 66:15-68:2.

website"—he admitted he had no idea what it was or what it represented. Jaeger Depo at 86:14-87:2; Jaeger Depo Ex. 2 at J1-J2; pp. 3-4, attached as Exh. 4 to Brandler Decl.

### b.   Jaeger is Unqualified to Opine on Plaintiffs' Alleged Agreement to Arbitrate

Because the Jaeger Decl. cannot be relied upon to prove which terms and conditions, hyperlinks, and arbitration agreements were on TaxAct's website during the relevant time period[10] (let alone that Plaintiffs agreed to specific terms), Defendant's MTC must be denied. Mr. Jaeger also doesn't know if Plaintiffs were given notice or agreed to those terms and was confused about when TaxAct began using an arbitration agreement.[11] He also did not know: where the website screenshots attached to his declaration came from (let alone if or when they appeared on the website); or if TaxAct kept older versions of its website.[12] He had no direct personal knowledge about what was in the hyperlinks connected to the terms and conditions,[13] and he failed to submit evidence that the JAMS hyperlink led to a document that contained a delegation clause during the relevant time. Jaeger Decl., Exh. R, 1-21 (JAMS 2021 terms).[14]

Jaeger admitted he had no independent knowledge to support his statement that "TaxAct's practice was to require acceptance of the Terms upon account creation throughout and before the relevant time period."[15] He had no independent knowledge about the sign-in process that was used;[16] the terms of the account sign-in process between 2019 and 2023;[17] the individual exhibits that allegedly "showed" that Plaintiff's checked various checkboxes came from TaxAct's official business records – in fact he couldn't say exactly who gave him the information other than "subject matter experts." Jaeger Depo at 68:19-74:22; 77:23-79:20; 81:21-84:24. Jaeger also makes unsupported claims that customers were required to

---

[10] Jaeger Depo at 55:24-58:5 (Jaeger unable to explain why TaxAct had a set of terms and conditions with a "last updated" date of 2018 when he testified that there were only two sets of terms and conditions with last updated dates of 2017 and 2020).

[11] Jaeger Depo at 78:16-25

[12] Jaeger Depo at 47:10-48:5.

[13] Jaeger Depo at 73:23-74:22; 78:7-20; and 79:2-20.

[14] The JAMS Rules attached as Exh. R to the Jaeger Decl. are the JAMS Comprehensive Arbitration Rules & Procedures and not the Streamlined Arbitration Rules and Procedures referred to in the 2020 Terms, Exh. C, at C-4.

[15] Jaeger Depo at 68:19-69:12; Jaeger Decl. at ¶ 8(c); Jaeger Depo at 71:19-72:19, 73:10-74:9.

[16] Jaeger Depo at 42:11-13, 42:21-44:13.

[17] Jaeger Depo at 42:21-43:16.

check boxes agreeing to terms and conditions before continuing on TaxAct's website.[18]

Furthermore, Mr. Jaeger admitted he failed to verify the accuracy of exhibits to his declaration and that he was unable to lay a foundation for their introduction since he could not confirm where they came from.[19]  Additionally, the exhibits contain unsupported testimonial language written by counsel.

2. *Plaintiffs Cannot be Compelled to Arbitrate Claims Pre-Dating Agreements to Arbitrate*

Even if Plaintiffs did enter into valid arbitration agreements with TaxAct beginning in 2017 (when TaxAct claims it first incorporated an arbitration agreement into its terms and conditions), they must still be allowed to litigate all claims arising from TaxAct's pre-2017 conduct. TaxAct's own claimed Terms clearly state that each agreement applies to the "then-current tax filing year" and, therefore, cannot be applied retroactively. Jaeger Decl., Exh. C, at C-1; see also Brandler Decl., Exh. 5A, at 5.

TaxAct argues that its MTC should be granted because it "first associated defined variables with the Meta Pixel and other similar auxiliary service provider technologies . . . on January 4, 2018," which is after TaxAct claims it began incorporating an arbitration agreement into its Terms, and possibly before TaxAct began requiring Plaintiffs to check a box affirming consent to those terms. Jaeger Decl. ¶ 7a; MTC at 9:9–10; Jaeger Depo at 68:5-71:23. This is an attempt to smuggle the merits into a motion to compel and, as such, should be rejected. Factual questions about exactly when and what TaxAct disclosed without Plaintiffs' consent go to the heart of Plaintiffs' claims; they are not the proper subject of a motion to compel, and TaxAct does not explain how they are related to arbitration. Instead, relevant evidence should be disclosed through the normal discovery process and not shared piecemeal at Defendant's discretion. Even if this argument could be considered, the facts appear to be the opposite. TaxAct has incorporated pixels into its website and collected taxpayers' information since at least 2014.[20] If  the Court finds valid each year's provision compelling arbitration, beginning in 2017, it would merely mean that part of the case would be compelled to arbitration while claims related to the earlier years would

---

[18] See, e.g., Jaeger Decl. at 43:6-16 (Admitting that he "wasn't responsible for the sign-in page for the TaxAct product" and didn't have direct knowledge about the account sign-in process.) Jaeger Depo at 88:2-13; Jaeger Depo at 82:5-84:24; Jaeger Depo at 48:8-49:12.

[19] Jaeger Depo at 37:11-19; 38:23-39:3; 39:13-25; and 40:11-35 (admitting that he did not create Exh. A, he did not look at underlying data referenced in the table to confirm its accuracy, and did not review any of the source material to confirm the accuracy of the footnotes) Jaeger Depo at 89:16-90:8; See, e.g., Jaeger Depo at 43:17-46:12, 46:20-47:20.

[20] Supra at fn. 1; *see* RJN, Exh. 1, at 1.

10

1    not.[21]

2        Defendant further, incredulously, argues that its privacy policy from 2005 somehow allows them

3    to circumvent federal law prohibiting the sharing of confidential taxpayer information without express

4    written consent in a specified format.[22] 26 CFR § 301.7216-3.

5    **C.    The Delegation Clause is both Procedurally and Substantively Unconscionable.**

6        To the extent that the Court finds any Plaintiff formed an agreement to arbitrate claims arising

7    from any year, that agreement should not be enforced because it is unconscionable, as explained *infra*

8    Section D. TaxAct argues that a delegation clause incorporated by reference prohibits this Court from

9    ruling on issues of unconscionability. MTC at 3–4. However, the delegation clause at issue in this case is

10   itself unconscionable and unenforceable–an issue that this Court undoubtedly has authority to determine.

11   *Heckman v. Live Nation Ent., Inc.*, CV 22-0047-GW-GJSx, Dkt. 202 (C.D. Cal. Aug. 10, 2023) ("A court

12   must determine whether the underlying agreement 'clearly and unmistakably' delegated the questions of

13   arbitrability to the arbitrator.") (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)).

14       Like any contract, a delegation clause is unconscionable and unenforceable if it is both

15   procedurally and substantively unconscionable. *Tiri v. Lucky Chances, Inc.*, 226 Cal.App.4th 231, 244

16   (2014). Unconscionability is determined on a "sliding scale," such that "a greater showing of procedural

17   or substantive unconscionability will require less of a showing of the other." *Id.* (citation omitted).

18                    **1.    *The Delegation Clause is Procedurally Unconscionable***

19       "A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one

20   of adhesion' that is offered 'on a take-it-or-leave-it basis.'" *OTO, LLC v. Kho*, 8 Cal. 5th 111, 126 (2019)

21   (citation omitted). Here, the agreement provides "[i]f you do not accept this Agreement, you must

22   terminate your use of the Services . . . . TaxAct shall have the right to immediately terminate your access

23   to or use of the Services in the event of . . . your failure to consent to these terms."; "You may not use

24   these Services until you have read and agreed to this Agreement." Jaeger Decl., Exh. C, at C-1, C-3. The

25   adhesion contract in this case is sufficient to establish procedural unconscionability.

26

27   _____
     [21] Additionally, Plaintiffs are entitled to the benefit of the discovery rule and their claims are not time
     barred. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 803 (2005).

28   [22] MTC at p. 15, fn. 1. This is especially disingenuous given Defendant's explicit claims on its website
     that it will comply with federal law. FAC at ¶¶ 6, 35-37, 115, 216, 220.

There is also unfair surprise because at the time Plaintiffs created their accounts, the Terms did not contain an arbitration agreement. Years later, without notice to the Plaintiffs, TaxAct changed its Terms to include an arbitration agreement that, in turn, supposedly incorporates a delegation clause by reference. In *Heckman v. Live Nation Ent., Inc.*, the court recently held that a delegation clause contained in a contract of adhesion was "procedurally unconscionable to an extreme degree . . . far above and beyond a run-of-the-mill contract-of-adhesion case" because the defendant had imposed a "significant change in the [terms of use] without giving any notice to customers." CV 22-0047-GW-GJS, ECF 202, at 9-10. Here, the Original Terms to which the Plaintiffs were subject to, did not contain an arbitration agreement, nor did it contain a change of terms provision. Instead, in January 2017, without notice to the Plaintiffs (by email otherwise), Defendant changed its terms by including a forced arbitration agreement and delegation clause that was allegedly incorporated by reference into the arbitration agreement. This significant change to the Original Notice makes the delegation clause (and in fact the entire arbitration agreement) unconscionable.

The delegation clause is also procedurally unconscionable because it required Plaintiffs to determine the contours of a complicated and difficult-to-find delegation clause in a long and complex set of terms, which required a level of legal understanding beyond a typical class member's. *OTO*, 8 Cal. 5th at 129 (an agreement containing terms that would be "nearly impossible to understand . . . without legal training" supports a finding of procedural unconscionability because such terms illustrate that the contract "appears to have been drafted with an aim to thwart, rather than promote, understanding"). Indeed, Defendant's own Vice President (and counsel who he said prepared the declaration) couldn't even locate and attach the correct set of JAMS Rules to his declaration.[23]

### 2. The Delegation Clause is Substantively Unconscionable

As the Ninth Circuit has explained, a party may "cite[] provisions outside of the delegation clause in making an unconscionability challenge" so long as the party "explain[s] how those provisions make *the fact of an arbitrator deciding arbitrability* unconscionable." *Holley-Gallegly v. TA Operating, LLC*,

---

[23] The JAMS Streamlined Arbitration Rules and Procedures incorporated by reference are extremely difficult to find as they are not directly linked to the Terms. Cf. Jaeger Decl., Exh. R, at R-1 (attaching the "JAMS Comprehensive Arbitration Rules & Procedures") with Exh. C, at C-4 (referring to the applicable terms as the JAMS "Streamlined Arbitration Rules and Procedures"); Brandler Decl. at ¶ 2.

74 F.4th 997, 1002 (9th Cir. 2023) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 74 (2010) (emphasis original)). Here, there are many provisions that unconscionably "implicate . . . [Plaintiffs'] ability to arbitrate the delegated gateway issues" and therefore render the delegation clause substantively unconscionable. *Id.* at 1003 (citation omitted).

First, the delegation clause is unconscionable because lacks mutuality. In *Tiri*, the court noted that a delegation clause is substantively unconscionable if it "lacks basic fairness and mutuality" because it is part of a contract that "requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." *Tiri*, 226 Cal.App.4th at 246 (2014) (citation omitted). The *Tiri* court held that the delegation clause at issue in that case was not substantively unconscionable because both parties were "bound by it equally." *Id.* at 247. The *Tiri* court stated that it would have reached a different conclusion if the facts had been similar to those in *Zullo v. Superior Ct.*, 197 Cal.App.4th 477 (2011) (agreement lacked mutuality because the arbitration provision applied only to claims that were likely to be brought be employees, not the employer) and *Fitz v. NCR Corp.*, 118 Cal.App.4th 702 (2004) (agreement lacked mutuality because it did not require arbitration for disputes relating to intellectual property and confidentiality agreements). The *Tiri* court noted that "[i]n contrast [to *Zullo* and *Fitz*], the delegation clause here does not lack mutuality" because "[t]he agreement requires arbitration for 'any and all differences and/or legal disputes.'" *Tiri*, 226 Cal.App.4th at 247. The arbitration agreement in this case requires delegation of issues of arbitrability for consumers, but the arbitration agreement and the delegation clause do not apply to claims by TaxAct against consumers for violations of terms relating to TaxAct's intellectual property, mirroring exactly the lack of mutuality in *Fitz*. Jaeger Decl., Ex. C, at C-4. In addition, TaxAct's terms and conditions contain a related provision requiring Plaintiffs—*but not TaxAct*—to "waive any claim that the rules of JAMS are unfair or should not apply for any reason." *Id.*

This waiver provision also renders the delegation clause unconscionable because it would bar Plaintiffs from presenting to that arbitrator many of the reasons why the agreement is unconscionable (i.e., those reasons based on the JAMS Streamlined Rules). Put simply, if this court enforces the delegation clause and this related provision, many of Plaintiffs' threshold arguments regarding unconscionability would be completely waived – instead of being delegated. This constitutes an unlawful

and unconscionable waiver of Plaintiffs' rights, including statutory rights under Cal. Civ. Code § 1670.5.

In addition, the arbitration agreement in this case limits claims relating to unconscionability to one year. Under California law, claims of unconscionability are subject to a four-year statute of limitations. *Yerkovich v. MCA Inc.,* 11 F. Supp. 2d 1167, 1174-75 (C.D. Cal. 1997). Limiting Plaintiffs' ability to bring threshold challenges to the arbitrator in this way is substantively unconscionable. *See, e.g.*, *Dennison v. Rosland Capital LLC*, 47 Cal.App.5th 204, 212 (2020) (one-year statute of limitations, compared with four years under the applicable statute, "severely shorten[ed]" the time for plaintiff to bring his claims and supported a finding of substantive unconscionability).

The delegation clause is also substantively unconscionable because Plaintiffs must pay an unreasonably high filing fee and travel to a distant forum in order to challenge the unconscionability of the delegation clause in front of an arbitrator. No reasonable Plaintiff would pay $2,000[24] and travel over a thousand miles from their home in California[25] all to challenge a delegation clause that, by the arbitration agreement's own terms, cannot be challenged.[26] *See Sanchez v. Valencia Holding Co., LLC,* 61 Cal.4th 899, 920 (2015) (fees provisions are unconscionable if they are unaffordable or "would have a substantial deterrent effect"); *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1289 (2006) (en banc) (a provision designating Boston as the arbitral forum was unconscionable under California law because it was "only a few miles from [the employer's] headquarters, but three thousand miles away from [plaintiff's] home.").

## D.     The Entire Arbitration Agreement is Unconscionable

For the same reasons that the delegation clause is unconscionable (discussed *supra*), the entire arbitration agreement is also unconscionable. In addition to the unconscionable provisions that also affect the delegation clause, the arbitration agreement as a whole is unconscionable because it limits TaxAct's liability to the amount paid by the consumer (typically approximately $100) and exempts TaxAct from

---

[24] Even if Defendant's previous argument that fees might only be a few hundred dollars were true, the fees would still exceed what Defendant claims it is legally required to pay Plaintiffs making it ostensibly impossible for consumers to have their rights vindicated without losing substantial money and time.

[25] *See* Campbell Decl., Ex. A., Dkt. 12-1 ("the state or federal courts of the State of Texas and the United States sitting in Dallas County, Texas have exclusive jurisdiction over any appeals and enforcement of an arbitration award"); *id.* (listing TaxAct's address as 3200 Olympus Blvd, Suite 150, Dallas, TX 75019).

[26] As mentioned *supra*, the agreement states that Plaintiffs "waive any claim that the rules of JAMS are unfair or should not apply for any reason." Jaeger Decl., Ex. C.

"any indirect, special, incidental, or consequential damages." Jaeger Decl., Exh. A, at 3;  *See Newton v. AM. Debt. Servs.,* 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012) (finding substantively unconscionable a provision limiting plaintiff to amount of fees paid for the service under the agreement because he was entitled to greater recovery under relevant statutes); *Gostev v. Skillz Platform, Inc.*, 88 Cal.App.5th 1035, 1058 (2023) (finding that a $50 cap on liability and waiver of liability for injury due to hacking supported the court's assessment of substantive unconscionability). The limitation on liability is even more egregious when combined with the onerous fees required to attempt to seek the maximum $100 recovery.

Finally, the agreement unconscionably limits discovery to a voluntary exchange of information. Courts have found less severe discovery limitations to be substantively unconscionable. *See Ontiveros v. DHL Express (USA), Inc.,* 164 Cal.App.4th 494, 511–14 (2008) (finding discovery limits substantively unconscionable where each party was allowed one deposition, in addition to expert depositions and documents requests, with additional discovery available upon a showing of substantial need).

Because "multiple defects" "permeate" the arbitration agreement, this Court should find the entire agreement unenforceable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 89 (2000).

**E.      This Court Cannot Compel Arbitration in Texas**

TaxAct moves to compel Plaintiffs' claims to arbitration pursuant to 9 U.S.C. § 4 and to stay the case pursuant to 9 U.S.C. § 3. Tax Act has specifically asked this court to compel arbitration in Texas,[27] but this Court does not have the power to do so. *Textile Unlimited, Inc. v. A BMH and Company, Inc.,* 240 F.3d 781, 785 (9th Cir 2001) ("[B]y its terms, § 4 only confines the arbitration to the district in which the petition to compel is filed."); *See also*, *Continental Grain Co. v. Dant & Russell, Inc.,* 118 F.2d 967 (9th Cir. 1941); and *Homestake Lead Co. v. Missouri v. Doe Run Resources Corp.,* 282 F. Supp. 3d 1131, 1143 (N.D. Cal. 2003) (holding that *Continental Grain Co.* remains controlling authority).

If the Court finds that Plaintiffs are barred from bringing claims in this Court, Plaintiffs respectfully request that this Court instead dismiss this action without prejudice so that Plaintiffs may immediately appeal. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (upholding the court's decision to dismiss after the defendant requested a stay pending arbitration).

**V.      CONCLUSION**

---

[27] Tax Act Reply, Dkt. 33, at 8.

1          The Motion to Compel and Stay should be denied.

2   Dated: August 29, 2023                                    Respectfully submitted,

3

4                                                             Julian Hammond
                                                              Attorneys for Plaintiff

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28