JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
CHRISTINA TUSAN (SBN 192203)
ctusan@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlaw.com
HAMMONDLAW, P.C.
1201 Pacific Ave., Suite 600
Tacoma, WA 98402
(310) 601-6766
(310) 295-2385 (Fax)

*Attorneys for Plaintiffs and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **NICHOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES** and **JENNY LEWIS,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**TAXACT, INC.,** an Iowa Corporation,<br><br>Defendant. | **CASE NO. 3:23-cv-00830-VC**<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFFS' EVIDENTIARY OBJECTIONS TO THE DECLARATION OF MARK JAEGER SUBMITTED BY DEFENDANT IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

Plaintiffs Nicholas C. Smith-Washington, Joyce Mahoney, Jonathan Ames, and Jenny Lewis ("Plaintiffs") respectfully object to the declaration of Mark Jaeger ("Jaeger Declaration"), filed on July 12, 2023, in support of Defendant TaxAct, Inc.'s Motion to Compel Arbitration and Stay Proceedings (ECF 68-1). Plaintiffs request that the Court disregard Mr. Jaeger's declaration in its entirety or, in the alternative, portions of that declaration.

The relevant standard for determining the admissibility of evidence for Defendant's Motion to Compel is the same as the standard applicable to a motion for summary judgment. *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 926 (N.D. Cal. 2019) (citing *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804) (N.D. Cal. 2004)); *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022). Pursuant to Federal Rule of Civil Procedure 56(c)(4), which governs summary judgment motions, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) ("Declarations must be made with personal knowledge; declarations not based on personal knowledge are inadmissible and cannot raise a genuine issue of material fact."); *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008); *cf. Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991) (holding that a declaration, not based on personal knowledge but on information and belief, does not satisfy the requirements of Rule 56).

"At the summary judgment stage – and thus on a motion to compel arbitration – the Court 'does not 'focus on the admissibility of the evidence's form,'' so long as the contents are capable of presentation in an admissible form at trial." *Lomeli v. Midland Funding, LLC*, 19-CV-01141-LHK, 2019 WL 4695279, at *7 (N.D. Cal. Sept. 26, 2019) (quoting *McKee v. Audible, Inc.,* No. CV 17-1941-GW (EX), 2017 WL 7388530, at *4 (C.D. Cal. Oct. 26, 2017) (internal citation omitted)). Thus, in some instances, "[o]bjections on the basis of a failure to comply with the technicalities of authentication requirements or the best evidence rule" may be found to be inappropriate. *See, e.g., McKee*, 2017 WL 7388530, at *4. With respect to Mr. Jaeger's declaration, however, Plaintiffs offer no such technical objections. The flaws in Mr. Jaeger's declaration go to the very heart of its evidentiary value and reliability, or lack thereof,

rather than technical issues regarding its admissibility. Put simply, the Court cannot find that the material "facts" stated by Mr. Jaeger are accurate or could ever be properly proven in court.

Mr. Jaeger makes a conclusory claim to have personal knowledge of the facts set forth in his declaration or knowledge of such facts based on his review and knowledge of TaxAct's business records and files—a claim that is directly contradicted by his deposition testimony where he admitted his lack of personal knowledge about the contents of his declaration. Jaeger Decl. ¶ 1.

Jaeger's assertion of personal knowledge in his declaration lacks the detail necessary for this Court to conclude that Mr. Jaeger actually has personal knowledge of the facts asserted therein. *See Casey v. Lewis*, 4 F.3d 1516, 1527 (9th Cir. 1993) ("Conclusory [declarations] that do not affirmatively show personal knowledge of specific facts are insufficient"); *Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1121 (C.D. Cal. 2016) (finding that statement in a declaration that it was "based upon [declarant's] 'personal knowledge and was obtained from the personnel data records kept in the ordinary course of business,'" did not "describe sufficiently the source of [declarant's] personal knowledge." (citation omitted)). On this basis, alone, the Court should refuse to consider each of the substantive assertions made in Mr. Jaeger's declaration.

In addition to offering a declaration that lacks the required detail necessary to establish personal knowledge, in his deposition, taken after his declaration was filed, as set out in detail in the chart below, Mr. Jaeger repeatedly demonstrated and testified that he had no actual knowledge of the facts asserted in his declaration or the attached Exhibits. Indeed, Mr. Jaeger's own testimony, given at his deposition, that he relied on unspecified "subject matter experts" to confirm the accuracy of his declaration—which he admits his counsel wrote in its entirety—confirms the Court cannot accept this speculatory declaration. See, e.g., Deposition of Mark Jaeger in Chicago, Illinois, on Aug. 10, 2023 ("Jaeger Deposition" or "Jaeger Depo.") 54:4-25, 55:2-16 64; 18-25, 65:2-9, 66:24-25, 67:2-25, 68:2-4, 80:17-25, 82:16-19. As another example, Mr. Jaeger's admission that he did not confirm that TaxAct's website code requires an acknowledgement of terms at filing and he did not do anything to independently verify if Plaintiffs had opted out of arbitration terms at the time of filing, shows how this declarant lacked personal knowledge to opine on key issues in this case. Jaeger Depo 48:8-15; 51:17-25. As a further example, with respect to

paragraph 7 of his declaration, Mr. Jaeger, makes a number of statements regarding: TaxAct's use of data analytics, including its use of the Meta Pixel; the Google Tag Manager; and, TaxAct's use of a "data layer" in the Google Tag Manager. Jaeger Decl. ¶ 7. However, at his deposition, Mr. Jaeger testified that he has no "experience with Google Tag Manager," has no "experience with data analytics with respect to TaxAct at all," has never "reviewed any Google Tag Manager documents from TaxAct," has no "experience with the data layer that TaxAct utilizes," and has no "independent knowledge about the information contained in paragraph 7" other than what unnamed "subject matter experts" gave him. Jaeger Depo., 66:24-25, 67:2-25, 68:2-4.

In these examples, and many other instances set out below, it is apparent from Mr. Jaeger's deposition, that he lacks the personal knowledge required to be competent to testify to the "facts" he asserts in his declaration. To the extent he offers a description in his declaration of how he became aware of the facts recited therein, even that limited and insufficient description is undercut by his own deposition testimony. And, to the extent Mr. Jaeger relies upon "experts," this Court cannot know anything about how those "experts" obtained their own knowledge or where they obtained the attached exhibits from, including if they were actually TaxAct's business records. Accepting this declaration would require reliance on double hearsay (for which no exception has been offered), testimony for which no foundation has been laid, and pure speculation from a witness with no personal knowledge of the information contained therein.

The Court should also refuse to consider the numerous Exhibits attached to Mr. Jaeger's declaration on similar grounds. First, Mr. Jaeger's declaration offers no description of how he obtained the Exhibits such that the Court can be satisfied of their accuracy and authenticity. Rather, Mr. Jaeger simply describes the Exhibits without any explanation of how they were obtained. *See, e.g.,* Jaeger Decl. ¶¶ 3, 4(c), 5(c), 8(e)-(i), 8(l)-(o), 8(s)-(x) (describing Exhibits A-D, F-J, R). Second, at his deposition, Mr. Jaeger was often unable to explain how Exhibits were obtained or to offer any detail about that process. Mr. Jaeger admitted, for example, that although he testified about TaxAct's decommissioned servers and website, he lacked independent knowledge about the server he testified about and didn't even know if the company kept historic versions of the website from which old versions of the terms and conditions could

be pulled and used as exhibits; he also didn't know where his so-called "subject matter experts" obtained the old versions of the website. Jaeger Depo 48:2-5; 53:9-25; 54:2-25; 55:2-16; 57:3-9, 13-19, 21-25; 58:2-4; 59:22-24; 64:18-25; 65:2-9. Similarly, with respect to Exhibit B to his declaration – purportedly a copy of TaxAct's terms and conditions as updated on Jan. 5, 2017 – Mr. Jaeger testified at his deposition that he did not obtain the Exhibit from the TaxAct website, did not review "any TaxAct website or database to confirm the accuracy of this document," and could not recall from whom he received the document. Jaeger Depo., 53:2-3, 53:9-25. *See also, e.g.,* 81:2-18; 21-2510,21 89:16-25; 90:2-8 (admitting he didn't do anything to independently verify information in the Exhibits including failing to verify that data about the Plaintiffs in this case was accurate - outside of looking at the screenshots provided by "subject matter experts").

Thus, whether on the basis of Mr. Jaeger's inadequate declaration or on the basis of his candid deposition testimony in which he revealed that he was not familiar with how the Exhibits were obtained and produced, this Court should reject each of the Exhibits attached to Mr. Jaeger's declaration.

Finally, numerous of the Exhibits contain language apparently written by Counsel for Defendant which is improper sworn testimony. See Exs. D-1, D-8, D-9, D-10, D-11, F-2, G-1, H-1, I-1 to I-4, J-1, K-1 to K-7, L-1, M-1 to M-7, N-1, O-1 to O-8, P-1, Q-1 (each containing improper unsworn statements not made by the declarant); Jaeger Depo. 38:23-25, 39:2-6 (legal counsel prepared the declaration); 39:13-25 (legal counsel prepared exhibits).

These statements are not confined to short titles simply labeling the Exhibits, rather they are intended to support Defendant's Motion. *See, e.g.,* Q-1 ("The following screenshot shows the e-filed submission screen that a taxpayer must complete when jointly e-filing a return with a spouse . . ."). We suggest that the Court may fairly regard this as a blatant attempt to get around the fact that Mr. Jaeger lacked the personal knowledge to make the statements that Counsel for Defendant has added to the relevant Exhibits. Regardless, the addition of unsworn statements to the Exhibits is entirely inappropriate, and, respectfully, the Court should reject all Exhibits containing such statements or, at the least, refuse to consider all such statements.

Given that Mr. Jaeger lacked the requisite personal knowledge for him to make and sign his declaration, we respectfully request that the Court reject it (and its attached Exhibits) in its entirety. Should the Court choose, instead, to reject specific portions of the declaration that do not meet the relevant standards, we address each such paragraph and Exhibit below.

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION | JAEGER DEPOSITION TESTIMONY IN SUPPORT OF OBJECTIONS |
|---|---|---|
| **1. Objection to Dkt. 68-2, Jaeger Declaration (Jaeger Dec.) ¶ 3 and Exh. A**<br><br>Jaeger Dec. at ¶ 3 states:<br>"In March through July 2023, in connection with my job responsibilities, I and my colleagues…reviewed the relevant business records of TaxAct in the ordinary course and, based on my knowledge and review of said records, confirmed the following, including that Plaintiffs accepted the Terms, as described below and as summarized in Exhibit A".<br><br>Dkt. 68-2, Jaeger Declaration (Jaeger Dec.) at Exhibit A-1:<br>"Summary of Record of Terms Presentation and Acceptance from 2018-2023" of the Jaeger Declaration ("Exhibit A") is shown below:<br><br>Dkt. 68-2, Jaeger Dec. at Exhibit A-2 (Footnotes of Exhibit A-1) | 1. **Lack of Foundation/Lack of Personal Knowledge**. Declarant provides no foundation or factual basis to support his statements and lacks personal knowledge. FRE 602. At his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge.<br><br>2. **Hearsay**. Declarant's statements are not based on his personal knowledge. To the extent they are based on out-of-court statements made by other individuals they are inadmissible hearsay. FRE 801, 802.<br><br>3. Lack of Authentication. Exhibit A is not authenticated and thus is inadmissible. | ***Deposition of Mark Jaeger in Chicago Illinois, on August 10, 2023 ("Jaeger Depo")37:20-24, 39:13-20 of the***<br>Q. And I'm going to mark that as Exhibit 3. (MJ Exhibit 3, Declaration of Mark Jaeger in Support of Defendant TaxAct, Inc.'s Motion to Compel Arbitration and Stay Proceedings filed 7/12/23, marked for identification as of this date.)<br>"Q. I'm going to ask you on this Exhibit 3 to turn to Exhibit A. Did you create this table yourself?<br>A. No.<br>Q. Did you look at any of the underlying data that is referenced in this table to confirm its accuracy?<br>A. No.<br>Q. And with respect to all the footnotes that are included in Exhibit A-1 through 15, did you review any of the source material to confirm the accuracy of those footnotes?<br>A. No."<br><br>***38; 23-25, 39; 2-6*** |

| | | |
|---|---|---|
| | FRE 901. Mr. Jaeger does not assert that the Exhibit is a true and correct copy or provide any information as to how, why, and when it was obtained, or what basis there is for the court to decide that the Exhibit is a true and correct copy.<br><br>4. Lack of Personal Knowledge as to unsworn statements with respect to Exhibit A. The Exhibit contains unsworn statements made by Counsel for Defendant. The declaration provides no factual basis to establish that declarant has personal knowledge of the facts and opinions contained in these statements. FRE 602. Moreover, at his deposition, Mr. Jaeger's testimony established that he did not write these statements, and lacks personal knowledge of the facts and/or opinions contained therein.<br><br>5. **Lack of Foundation/** | Q. And I'm going to ask you the same question I asked about the other declaration, which is: Did you actually prepare the text that is in this declaration yourself?<br>A. No.<br>Q. And was it also prepared by legal counsel?<br>A. Yes.<br><br>***39: 13-25***<br>Q. I'm going to ask you on this Exhibit 3 to turn to Exhibit A. Did you create this table yourself?<br>A. No.<br>Q. Did you look at any of the underlying data that is referenced in this table to confirm its accuracy?<br>A. No.<br>Q. And with respect to all the footnotes that are included in Exhibit A-1 through 15, did you review any of the source material to confirm the accuracy of those footnotes?<br>A. No.<br><br>***43: 2-25, 44: 2-25, 45: 2-25, 46: 2-11***<br>Q. And then 2019 through 2023, it says, "NA." Do you -- can you explain to me why it says "NA" for those provisions?<br>A. I wasn't responsible for the sign-in page with the TaxAct product. So somewhere along the lines, we removed the acknowledgment on the sign-in screens starting in TY2018, but based off what I'm seeing here, this would be from my subject matter experts that provided this information to me. |

| | | |
|---|---|---|
| | **Lack of Personal Knowledge**<br><br>Exhibit A provides no factual basis to establish that declarant has personal knowledge of the Exhibit or its contents. FRE 602. Moreover, at his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge.<br>6. **Inadmissible Expert Opinion**. Declarant's statements constitute inadmissible expert opinions because they are based on technical and other specialized knowledge, offered without personal knowledge, and Mr. Jaeger has provided no basis for him to qualify as an expert. FRE 702. At his deposition, Mr. Jaeger's testimony established that he cannot qualify as an expert on any topic relating to these statements. | Q. Okay. So you don't from any direct knowledge about what happened with the terms of account sign-in over those years; is that right?<br>A. Yes.<br>Q. And with -- with respect to the -- the line above that, "Code requires additional check box acknowledgment of terms at account creation," those have a series of yeses. Did you review any direct source material to confirm the accuracy of those statements, though "yes" statements along that line?<br>A. Yes; in the screenshots that were provided to me from my subject matter experts.<br>Q. But you didn't do the searching yourself with respect to the -- to finding those screenshots on the TaxAct database in any way; is that right?<br>A. That's right.<br>Q. Okay. So you just reviewed some hard copies that were printed out and provided to you, is that accurate?<br>A. By my subject matter experts, yes.<br>Q. Okay. And who are those subject matter experts?<br>A. So it would be a few individuals. So Chuck Kroemer, Chitra Goel, Dustin Moser, Nick Zabokrtsky -- I don't want to say his last name wrong -- and then Jessica Argoe.<br>Q. All right. Do you know which ones of them pulled the data with respect to this particular response? |

| | | |
|---|---|---|
| | | A. This one would typically fall with Chuck Kroemer and Dustin Moser.<br>Q. Okay. But as you sit here today, you wouldn't be able to tell me for certain who would have pulled the information related to that line?<br>A. That's correct.<br>Q. And let's go up one. "Terms contained in the arbitration agreement." There's a series of yeses there. Did you look at the TaxAct database to verify the responses here with respect to "terms contained in the arbitration agreement," those statements?<br>A. No.<br>Q. Okay. Did you do any independent review to determine the accuracy of that statement?<br>A. Outside of reviewing the screenshots, no.<br>Q. And do you know who -- who provided you with those screenshots?<br>A. It would be the same two individuals of Dustin Moser and Chuck Kroemer.<br>Q. But as you sit here today, you don't have an independent recollection of either them providing it directly to you; is that right?<br>A. Yes, that's right.<br>Q. Going up one more, "Terms provide use of service constitutes acceptance." There's a series of yeses there. Did you look at any TaxAct database to determine the accuracy of that statement?<br>A. I did not. |

| | | |
|---|---|---|
| | | Q. And did you -- what did you do to determine the accuracy of that statement, if anything?<br>A. I would ask my subject matter experts to help me confirm this information.<br><br>***46: 20-25, 47: 2-25, 48: 2-5***<br>We were talking about the second line from the top which says, "Terms provide use of service constitutes acceptance." Your last answer indicated your subject matter experts would have provided you information with respect to that. And can you tell me who those subject matter experts were that would have provided you that data, if you know?<br>A. Chuck Kroemer and Dustin Moser.<br>Q. Okay. And do you know as you sit here today which one of them would have provided you with that data?<br>A. No.<br>Q. And going to the -- to the top line where it says, "Terms publicly available on every page of the TaxAct website," and there's a series of yeses, did you actually review the TaxAct database or website or any electronic source to confirm the accuracy of that statement?<br>A. No.<br>Q. And do you have access to all these older versions of TaxAct's website?<br>A. I do not.<br>Q. Do you know if your subject matter experts did?<br>A. Yes.<br>Q. And where did they -- where did they obtain the older website data from? |

| | | |
|---|---|---|
| | | A. I do not know.<br>Q. Do you know if TaxAct actually keeps old versions of its website?<br>A. I do not know.<br><br>***48:8-15, 49:13-25, 50:2-25, 51: 6-25***<br>"Code required additional check box acknowledgment of terms at filing," and there's a series of answers, "NA" and then a series of yeses. Did you do anything to independently confirm the accuracy of that statement?<br>A. Outside of what the subject matter experts told me, no.<br>Q. With respect to the next line, "Plaintiffs' use of service," and there's four names, Smith-Washington, Mahoney, Ames and Lewis, with respect to that -- that line, "Plaintiffs' use of service," did you do anything to independently confirm the accuracy of those statements?<br>A. No.<br>Q. All right. And what -- what is your basis for -- for agreeing that those statements are accurate or stating that those statements are accurate?<br>A. It's my belief and trust in the subject matter experts that they're providing me the proper information.<br>Q. And which subject matter expert provided you with this data?<br>A. It would have been Chuck Kroemer or Dustin Moser.<br>Q. Okay. But as you sit here today, you don't have a recollection of a specific person who provided you with this data; is that right? |

| | | |
|---|---|---|
| | | A. That's right.<br>Q. Going to the next line, "Record capture of Plaintiffs' acknowledgment of terms," and it says "Smith-Washington, Mahoney, Ames and Lewis." Do you have any independent knowledge with respect to the accuracy of the statements that are here?<br>A. Yeah; this information would have been provided by the subject matter experts for this, of which, you know, I trust what they're providing.<br><br>***51:6-25***<br>Q. Do you recall specifically receiving any information directly from them that you reviewed?<br>A. Yes. Yeah, the screenshots.<br>Q. All right. And are those the screenshots that are attached to the exhibit?<br>A. Yes.<br>Q. Were there any other documents you reviewed in connection with -- with this response?<br>A. Not that I recall.<br>Q. All right. With respect to the -- the final line here, "Plaintiffs opt out of arbitration agreement, Smith-Washington, Mahoney, Ames and Lewis," there's a series of answers there. Did you do any -- anything to independently verify whether plaintiffs had opted out of any of the arbitration agreements?<br>A. No.<br><br>***52: 2-4*** |

| | | |
|---|---|---|
| | | Q. Did you review any databases to confirm the accuracy of that statement?<br>A. No.<br><br>***80: 17-25***<br>Q. All right. And again, with respect to -- and I'll ask the question generally so we don't need to go through each paragraph, but with respect to this declaration that's Exhibit 3, you didn't review anything independent to determine the accuracy of this declaration other than what was provided to you by the subject matter experts, is that accurate?<br>A. Yes. |
| COURT'S RULING | ☐ Sustained<br><br>☐ Overruled | |
| **2. Objection to Dkt. 68-2, Jaeger Dec. ¶ 4 and Exh. B**<br>Paragraphs 4 states:<br><br>"TaxAct Customers Must Accept the Terms to Use TaxAct's Services.<br>a. Every visitor or user of TaxAct's websites, mobile applications, online and offline tax return preparation products, and filing services (collectively, the "Services"), is subject to a set of contractual terms and conditions of service (the "Terms"), which are publicly available on the TaxAct website at https://www.taxact.com/legal-notice.<br>b. Since at least 2017, a hyperlink to the Terms has been listed at the footer of every page on the TaxAct website and software, as well as in the emails that TaxAct sent to its customers annually regarding updates to TaxAct's privacy notice.<br>c. TaxAct updated its Terms on January 5, 2017, and on November 17, 2020, which Terms are attached hereto as Exhibit B (the "2017 Terms") and as Exhibit C (the "2020 Terms"), respectively. | 1. **Lack of Foundation/Lack of Personal Knowledge**. Declarant provides no foundation or factual basis to support his statements and lacks personal knowledge. FRE 602. At his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge.<br><br>2. **Hearsay**. Declarant's statements are not based on his personal knowledge. To the extent they are based on out-of-court statements made by other individuals they are inadmissible hearsay. | **Jaeger Depo, *53:9-25, 53: 2-3***<br><br>Q. Okay. We're going to stay on Exhibit 3 and we're going to turn to Exhibit B, please. Do you recognize the Exhibit B that's attached here?<br>A. Yes.<br>Q. Okay. And -- and what is this document?<br>A. It's the TaxAct Terms of Service and License Agreement. Q. All right. Did you pull these documents directly from the TaxAct website?<br>A. No.<br>Q. Did you review any TaxAct website or database to confirm the accuracy of this document?<br>A. No.<br>Q. Okay. And do you recall who you received this document from? |

| | | |
|---|---|---|
| d. The 2017 and 2020 Terms both provide: "You may not use the Services until you have read and agreed to this Agreement. By using the Services, you indicate your unconditional acceptance of this Agreement. If you do not accept this Agreement, you must terminate your use of the Services." Ex. B at 1; Ex. C at 1.<br>e. The 2017 Terms also provide: "This agreement (including any related content on the Services, such as the introductory and welcome pages, and the Legal Notices, which by this reference are incorporated herein) sets forth TaxAct's and the Participating Parties' entire liability<br>and your exclusive remedy with respect to the Services, and is a complete statement of the agreement between you and TaxAct." Ex. B at 4.<br>f. The 2020 Terms also provide: "This Agreement, TaxAct's Privacy Policy, and any terms associated with any particular offer for use of the Services set forth TaxAct's and the Participating Parties' entire liability and your exclusive remedy with respect to the Services, comprise a complete statement of the agreement between you and TaxAct regarding the subject matter thereof, and supersede any prior understandings with regards to such subject matter. In the event of any conflict between the terms of this Agreement and another policy or offer terms, the conflicting terms shall, if possible, be read so as to avoid the conflict, and, should the conflict be unavoidable, the terms of this Agreement shall control." Ex. C at 3."<br><br>Dkt. 68-2, Jaeger Dec. at Exhibit B "TaxAct Terms of Service and License Agreement, dated January 5, 2017". | FRE 801, 802.<br><br>3. **Lack of Authentication**. Exhibit B is not authenticated and thus is inadmissible. FRE 901. Mr. Jaeger does not assert that the Exhibit is a true and correct copy or provide any information as to how, why, and when it was obtained, or what basis there is for the court to decide that the Exhibit is a true and correct copy.<br><br>4. Lack of Personal Knowledge as to unsworn statements with respect to Exhibit B. The Exhibit contains unsworn statements made by Counsel for Defendant. The declaration provides no factual basis to establish that declarant has personal knowledge of the facts and opinions contained in these statements. FRE 602. Moreover, at his deposition, Mr. Jaeger's testimony established that he did not write these statements, and lacks personal | A. Not the specific person, no.<br><br>***46: 20-25, 47: 2-25, 48: 2-5***<br>We were talking about the second line from the top which says, "Terms provide use of service constitutes acceptance." Your last answer indicated your subject matter experts would have provided you information with respect to that. And can you tell me who those subject matter experts were that would have provided you that data, if you know?<br>A. Chuck Kroemer and Dustin Moser.<br>Q. Okay. And do you know as you sit here today which one of them would have provided you with that data?<br>A. No.<br>Q. And going to the -- to the top line where it says, "Terms publicly available on every page of the TaxAct website," and there's a series of yeses, did you actually review the TaxAct database or website or any electronic source to confirm the accuracy of that statement?<br>A. No.<br>Q. And do you have access to all these older versions of TaxAct's website?<br>A. I do not.<br>Q. Do you know if your subject matter experts did?<br>A. Yes.<br>Q. And where did they -- where did they obtain the older website data from?<br>A. I do not know.<br>Q. Do you know if TaxAct actually keeps old versions of its website?<br>A. I do not know. |

| | | |
|---|---|---|
| | knowledge of the facts and/or opinions contained therein.<br><br>5. **Lack of Foundation/ Lack of Personal Knowledge**<br><br>Exhibit B provides no factual basis to establish that declarant has personal knowledge of the Exhibit or its contents. FRE 602. Moreover, at his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge. | ***48:8-15, 49:13-25, 50:2-25, 51: 6-25***<br>"Code required additional check box acknowledgment of terms at filing," and there's a series of answers, "NA" and then a series of yeses. Did you do anything to independently confirm the accuracy of that statement?<br>A. Outside of what the subject matter experts told me, no.<br>Q. With respect to the next line, "Plaintiffs' use of service," and there's four names, Smith-Washington, Mahoney, Ames and Lewis, with respect to that -- that line, "Plaintiffs' use of service," did you do anything to independently confirm the accuracy of those statements?<br>A. No. |
| COURT'S RULING | ☐ Sustained<br><br>☐ Overruled | |
| **3. Dkt. 68-2, Jaeger Dec. ¶ 4(d) and ¶ 4(f) and Exh. C**<br>The Jaeger Dec. at paragraph 4(d) and 4(f) states:<br>"[t]he 2017 and 2020 Terms both provide: "You may not use the Services until you have read and agreed to this Agreement. By using the services, you indicate your unconditional acceptance of this Agreement…the 2020 Terms also provide: "This agreement…set[s] forth TaxAct's and the Participating Parties' entire liability and your exclusive remedy with respect to the Services, and is a complete statement of the agreement between you and TaxAct…and supersede any prior understandings with regards to such subject matter."<br><br>Dkt. 68-2, Jaeger Dec. at Exhibit C "TaxAct Terms of Service and License Agreement, dated November 17, 2020". | 1. **Lack of Foundation/ Lack of Personal Knowledge**. Declarant provides no foundation or factual basis to support his statements and lacks personal knowledge. FRE 602. At his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge. | ***54: 4-16***<br>Q. All right. And I see there is another document, Exhibit C. If you'll look at that that follows. See Exhibit C? Are the answers the same for Exhibit C? Did you -- did you actually pull this from the TaxAct website or any TaxAct database?<br>A. No.<br>Q. All right. And did you do anything to confirm the accuracy of this document as it was given to you?<br>A. Outside of what the subject matter experts gave me, no.<br>. And let's go up one. "Terms contained in the arbitration agreement." There's a series of |

| | | |
|---|---|---|
| | 2. **Hearsay**. Declarant's statements are not based on his personal knowledge. To the extent they are based on out-of-court statements made by other individuals they are inadmissible hearsay. FRE 801, 802.<br><br>3. **Lack of Authentication** Exhibit C is not authenticated and thus is inadmissible. FRE 901. Mr. Jaeger does not assert that the Exhibit is a true and correct copy or provide any information as to how, why, and when it was obtained, or what basis there is for the court to decide that the Exhibit is a true and correct copy.<br><br>4. **Lack of Foundation/Lack of Personal Knowledge**<br><br>Exhibit C provides no factual basis to establish that declarant has personal knowledge of the Exhibit or its contents. FRE 602. Moreover, at his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge. | yeses there. Did you look at the TaxAct database to verify the responses here with respect to "terms contained in the arbitration agreement," those statements?<br>A. No.<br>Q. Okay. Did you do any independent review to determine the accuracy of that statement?<br>A. Outside of reviewing the screenshots, no.<br>Q. And do you know who -- who provided you with those screenshots?<br>A. It would be the same two individuals of Dustin Moser and Chuck Kroemer.<br>Q. But as you sit here today, you don't have an independent recollection of either them providing it directly to you; is that right?<br>A. Yes, that's right.<br>Q. Going up one more, "Terms provide use of service constitutes acceptance." There's a series of yeses there. Did you look at any TaxAct database to determine the accuracy of that statement?<br>A. I did not.<br>Q. And did you -- what did you do to determine the accuracy of that statement, if anything?<br>A. I would ask my subject matter experts to help me confirm this information.<br><br>***46: 20-25, 47: 2-25, 48: 2-5***<br>We were talking about the second line from the top which says, "Terms provide use of service constitutes acceptance." Your last answer indicated your subject matter experts would |

| | | |
|---|---|---|
| | | have provided you information with respect to that. And can you tell me who those subject matter experts were that would have provided you that data, if you know?<br>A. Chuck Kroemer and Dustin Moser.<br>Q. Okay. And do you know as you sit here today which one of them would have provided you with that data?<br>A. No.<br>Q. And going to the -- to the top line where it says, "Terms publicly available on every page of the TaxAct website," and there's a series of yeses, did you actually review the TaxAct database or website or any electronic source to confirm the accuracy of that statement?<br>A. No.<br>Q. And do you have access to all these older versions of TaxAct's website?<br>A. I do not.<br>Q. Do you know if your subject matter experts did?<br>A. Yes.<br>Q. And where did they -- where did they obtain the older website data from?<br>A. I do not know.<br>Q. Do you know if TaxAct actually keeps old versions of its website?<br>A. I do not know.<br><br>***48:8-15, 49:13-25, 50:2-25, 51:6-25***<br>"Code required additional check box acknowledgment of terms at filing," and there's a series of answers, "NA" and then a series of yeses. Did you do anything to independently |

| | | |
|---|---|---|
| | | confirm the accuracy of that statement?<br>A. Outside of what the subject matter experts told me, no.<br>Q. With respect to the next line, "Plaintiffs' use of service," and there's four names, Smith-Washington, Mahoney, Ames and Lewis, with respect to that -- that line, "Plaintiffs' use of service," did you do anything to independently confirm the accuracy of those statements?<br>A. No.<br>Q. All right. And what -- what is your basis for -- for agreeing that those statements are accurate or stating that those statements are accurate?<br>A. It's my belief and trust in the subject matter experts that they're providing me the proper information.<br>Q. And which subject matter expert provided you with this data?<br>A. It would have been Chuck Kroemer or Dustin Moser.<br>Q. Okay. But as you sit here today, you don't have a recollection of a specific person who provided you with this data; is that right?<br>A. That's right. |
| COURT'S RULING | ☐ Sustained<br>☐ Overruled | |
| 4. **Objection to Dkt. 68-2, Jaeger Dec. at ¶ 5(c)**<br>The Jaeger Dec. at paragraph 5(c) states:<br><br>¶ 5(c) "The Arbitration Agreement requires that most disputes with TaxAct be resolved solely through individual arbitration in accordance with the | 1. **Lack of Foundation/Lack of Personal Knowledge**<br><br>Declarant provides no factual basis to establish that declarant has personal | ***68: 19-25, 69: 2-25***<br>Q. Okay. All right. And if we'll turn to page 5, at paragraph C, which is -- I guess this will be paragraph 8-C, which is on page 5, it talks about TaxAct's source creation code being stored on the server that's been |

| | | |
|---|---|---|
| Streamlined Arbitration Rules and Procedures of the Judicial Arbitration and Mediation Services ("JAMS Rules"), which are attached hereto as **Exhibit R**. JAMS Rule 11(b) provides: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *Id.* at 8. | knowledge of the Exhibit or its contents. FRE 602. Moreover, at his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge.<br><br>2. **Relevance**<br>Exhibit R is not the set of rules referenced in TaxAct's terms and conditions or in 5c so discussion of those rules is irrelevant. **FRE 401-402**<br><br>3. **Lack of Authentication**<br>Exhibit R is not authenticated and thus is inadmissible. FRE 901. Mr. Jaeger does not assert that the Exhibit is a true and correct copy or provide any information as to how, why, and when it was obtained, or what basis there is for the court to decide that the Exhibit is a true and correct copy. | decommissioned. We talked about that earlier. You don't have any independent understanding about that decommissioned server; is that right?<br><br>A. Correct.<br>Q. Okay. And it says -- it says that TaxAct's practice has been to require acceptance of the terms. Do you have any independent knowledge to support that, that statement about TaxAct's practices?<br>A. Just from what the subject matter experts have provided me.<br>Q. All right. And it doesn't give a timeframe. Do you understand what the timeframe is that's referenced in the statement about TaxAct's practice based on any independent information you have?<br>A. My understanding was that this is really in relation to what's happened in TY27 -- TY2017 and later.<br>Q. All right. But you don't have any documents you could directly point to right now to support this referenced practice?<br>A. No.<br>74:4-22<br>So if we go to G, here it says there 24 is a required check -- check box with -- that 25 refers to the terms of service, "I have read and acknowledged the privacy statement," and there is a hyperlink there. Did you check to actually confirm what hyperlink was associated with this check box? |

| | | |
|---|---|---|
| | | A. I've reviewed the screenshots that the subject matter experts provided, but I haven't done any checking of the database to verify how things work.<br>Q. Okay. With respect to Section H - again, we're on page 6 now -- Screenshot of Account Creation page for 2020 is Exhibit D, and this refers again to a click box here and a hyperlink. Did you -- two hyperlinks, one for terms of service and one for the privacy statement. Did you review anything to confirm that those -- the hyperlinked information contained in the exhibit is the actual hyperlinks that were utilized in tax year 2020?<br>A. Outside of the screenshots provided me by the subject matter experts, that's been it. |
| COURT'S RULING | ☐ Sustained<br>☐ Overruled | |
| **5. Objection to Dkt. 68-2, Jaeger Dec. at ¶ 5(e)**<br>The Jaeger Dec. at paragraph 5(e) states: "Opting out of arbitration does not result in account termination or termination without a refund. Users are not otherwise penalized for opting out of arbitration." | 1. **Lack of Foundation/Lack of Personal Knowledge**. Declarant provides no foundation or factual basis to support his statements and lacks personal knowledge. FRE 602. At his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge. | ***71: 19-25, 72: 2-24, 73: 10-22***<br>Q. All right. If we look at Section E of the declaration -- again, we're still on page 5, paragraph 8 -- it says, "The individual can either click 'accept and create' or 'I do not accept.'" Do you see that?<br>A. That's 14 and 15? Slide 14 and 15?<br>Q. It's the last sentence of -- on page 5. It says, "The individual can either click 'accept and create' or 'I do not accept.'"<br>A. I see it, yes.<br>Q. Right. So the customer does have the option to not accept the terms?<br>A. As it relates to the creating an account –<br>Q. Right. |

| | | |
|---|---|---|
| | 2. **Hearsay**. Declarant's statements are not based on his personal knowledge. To the extent they are based on out-of-court statements made by other individuals they are inadmissible hearsay. FRE 801, 802. | A. -- they have -- it looks like there's an option to "I do not accept."<br>Q. All right. And with respect to Section F on the same page, it says there's the prompt to scroll to the privacy hyperlink and, again, here there is an option to -- to click a box that says, "I do not accept." Is that accurate?<br>A. Yes.<br>Q. All right. So a customer could move forward with the experience by -- and not accept it?<br>A. That's not my understanding of how that worked.<br><br>Q. Sure. What -- do you have any independent documentation to confirm what would happen if a customer clicked on "I do not accept"?<br>A. I would have to ask the subject matter experts to confirm what happens when they click "I do not accept."<br>Q. Okay. But you haven't independently reviewed any -- any online programming or code or anything of that nature to confirm what would happen when "I do not accept" is clicked for either tax year 2017 or 2018; is that right?<br>A. That's correct. |
| COURT'S RULING | ☐ Sustained<br><br>☐ Overruled | |
| **6. Objection to Dkt. 68-2, Jaeger Dec.¶ 7**<br>The Jaeger Dec. at Paragraph 7 includes the following text:<br>¶ 7 Heading: "On January 4, 2018, TaxAct Configured Google Tag Manager to Better Support Its Marketing and User Data Analytics."<br>¶ 7(a): "In support of TaxAct's efforts to use data analytics for marketing, TaxAct | 1. **Lack of Foundation/ Lack of Personal Knowledge**. Declarant provides no foundation or factual basis to support his statements and lacks personal | Jaeger Depo, 66:24-25; 67:2-25, and 68:2-4.<br><br>"Q. Okay. And when I asked you earlier about all of your duties and responsibilities, I didn't hear you list anything related to Google Tag Manager or data analytics. Do you have any experience with Google Tag Manager? |

| | | |
|---|---|---|
| uses Google Tag Manager.<br>¶ 7(b): "Google Tag Manager includes a "data layer" that TaxAct utilizes to make certain data variables accessible for use with other auxiliary service provider technologies, including the Meta Pixel and Google Campaign Manager (which comprises various Google products, including the product formerly known as Google DoubleClick)."<br>¶ 7(c): "Google Tag Manager allows its users, including TaxAct, to separately define variables in the tool and deploy tags. Variables can then be associated with one or many tags.<br>¶ 7(d): "TaxAct first began to define variables for use with other auxiliary service provider technologies, including Google Campaign Manager, on January 4, 2018."<br>¶ 7(e) "TaxAct first associated defined variables with the Meta Pixel and other similar auxiliary service provider technologies, including Google Campaign Manager, on January 4, 2018." | knowledge. FRE 602. At his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge.<br><br>2. **Hearsay**. Declarant's statements are not based on his personal knowledge. To the extent they are based on out-of-court statements made by other individuals they are inadmissible hearsay. FRE 801, 802.<br><br>3. **Inadmissible Expert Opinion**. Declarant's statements constitute inadmissible expert opinions because they are based on technical and other specialized knowledge, offered without personal knowledge, and Mr. Jaeger has provided no basis for him to qualify as an expert. FRE 702. At his deposition, Mr. Jaeger's testimony established that he cannot qualify as an expert on any topic relating to these statements. | A. No.<br>Q. Do you have any experience with data analytics with respect to TaxAct at all?<br>A. No.<br>Q. Okay. So the discussion in paragraph 7, do you have any independent knowledge about the information contained in paragraph 7?<br>A. Outside of what the subject matter experts gave me, no.<br>Q. Okay. Have you ever reviewed any Google Tag Manager documents from TaxAct?<br>A. No.<br>Q. Have you ever had any experience with the data layer that TaxAct utilizes?<br>A. No.<br>Q. Can you define what that is, the data layer?<br>A. Only at a high level with what's provided in the -- in the declaration.<br>Q. All right. But prior to the did you have an understanding as to what the data layer was?<br>A. No.<br><br>***86: 14-25, 87: 1***<br><br>Q. I'm going to have you turn to Exhibit J, and this is going to be on Exhibit 2 -- Exhibit J to Exhibit 2, and this is Document 50-11. Do you see that document, J-1? It says 115, 121 and 188 at the top of the document?<br>A. Yes.<br>Q. Do you recognize this document?<br>A. No.<br>Q. Okay. Do you have any understanding about what this document represents?<br>A. No.<br>Q. So we'll start with -- I'll start with a general question about the pages on H-2 to Exhibit 3, and that is, with respect to the snippets of code that are on these pages, did you do anything |

| | | |
|---|---|---|
| | | to independently confirm, first, what time periods these -- these codes were on the TaxAct website?<br>A. No.<br>Q. Okay. And did you do anything to independently verify if in fact these were the codes that were on the TaxAct website at all?<br>A. No |
| COURT'S RULING | ☐ Sustained<br>☐ Overruled | |
| 1. **Objection to Dkt. 68-2, Jaeger Dec.¶ 8(a)**<br>The Jaeger Dec. at Paragraph 8(a) includes the following heading and text:<br><br>¶ 8(a) "TaxAct began enabling users to create a persistent account, i.e., an online account that they could return to in subsequent years, beginning in the tax year 2014 filing season. Before that time, users were required to create a new TaxAct account each year." | 1. **Lack of Foundation/ Lack of Personal Knowledge**. Declarant provides no foundation or factual basis to support his statements and lacks personal knowledge. FRE 602. At his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge.<br><br>2. **Hearsay**. Declarant's statements are not based on his personal knowledge. To the extent they are based on out-of-court statements made by other individuals they are inadmissible hearsay. FRE 801, 802. | ***74: 23-25, 75: 2-22***<br>Q. All right. And with respect to account creation, for consumers who had previously created accounts, they wouldn't need to see this Account Creation page; isn't that right?<br>A. Well, that will depend on the tax year.<br>Q. All right.<br>A. So starting in 2014 is when we had those persistent accounts starting.<br>Q. All right. So a customer who was a repeat customer from 2014 forward wouldn't be engaging in a New Account Creation page; is that right?<br>A. If they remembered their user name and password from last year, then yes.<br>Q. So these sections about account creation that we have just discussed are reasonably only applicable to customers -- more current customers, is that right, during those years or within the time period in which this new policy was implemented; is that correct?<br>A. Newer customers or individuals who forgot their user name and password. |

| | | |
|---|---|---|
| | | |
| COURT'S RULING | ☐ Sustained<br>☐ Overruled | |
| **2. Objection to Dkt. 68-2, Jaeger Dec.¶ 8(b)**<br>The Jaeger Dec. at Paragraph 8(b) includes the following text:<br><br>¶ 8(b) "In addition to records of use of the Services, beginning in TY 2017,[2] individuals who create an account on the TaxAct website are required to acknowledge their acceptance of the Terms on the account creation page." | 1. **Lack of Foundation/ Lack of Personal Knowledge**. Declarant provides no foundation or factual basis to support his statements and lacks personal knowledge. FRE 602. At his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge.<br><br>2. **Hearsay**. Declarant's statements are not based on his personal knowledge. To the extent they are based on out-of-court statements made by other individuals they are inadmissible hearsay. FRE 801, 802. | ***74: 23-25, 75: 2-22***<br>Q. All right. And with respect to account creation, for consumers who had previously created accounts, they wouldn't need to see this Account Creation page; isn't that right?<br>A. Well, that will depend on the tax year.<br>Q. All right.<br>A. So starting in 2014 is when we had those persistent accounts starting.<br>Q. All right. So a customer who was a repeat customer from 2014 forward wouldn't be engaging in a New Account Creation page; is that right?<br>A. If they remembered their user name and password from last year, then yes.<br>Q. So these sections about account creation that we have just discussed are reasonably only applicable to customers -- more current customers, is that right, during those years or within the time period in which this new policy was implemented; is that correct?<br>A. Newer customers or individuals who forgot their user name and password. |
| COURT'S RULING | ☐ Sustained<br>☐ Overruled | |

| | | |
|---|---|---|
| **3. Objection to Dkt. 68-2, Jaeger Dec.¶ 8(j) and Exh. H**<br>¶ 8(j) "Moreover, the code required returning TaxAct users to additionally acknowledge the Terms as they used the Services".<br><br>Dkt. 68-2, Jaeger Dec. at Exhibit H: "The following code snippets show the underlying logic behind the form submission page, which is presented after a user has completed their tax return form and as they are either e-filing to the IRS or printing to send through physical mail. Each snippet of code shows that checking a checkbox to consent to the Terms was a necessary statement in an "if clause" in the code. The code snippets are from TaxAct's internal historical repository of website code". | 1. **Lack of Foundation/Lack of Personal Knowledge**. Declarant provides no foundation or factual basis to support his statements and lacks personal knowledge. FRE 602. At his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge.<br><br>2. **Hearsay**. Declarant's statements are not based on his personal knowledge. To the extent they are based on out-of-court statements made by other individuals they are inadmissible hearsay. FRE 801, 802.<br><br>3. **Lack of Authentication** Exhibit H is not authenticated and thus is inadmissible. FRE 901. Mr. Jaeger does not assert that the Exhibit is a true and correct copy or provide any information as to how, why, and when it was obtained, or what basis there | ***83: 22-25, 84: 2-24***<br>Q. And in this document, it says -- in 23 the middle of the page, it looks to say, "I 24 agree to the," and then it says, "TALink, id terms, key terms, legal notice, external true, co-branded false, target blank." Do you see that?<br>A. Yes.<br>Q. All right. And below, it says, "I have read and acknowledged the," and then it says, "privacy policy, true, false, privacy statement." You provided code and you provided information in your declaration to suggest that there is a particular code that is included in the website to indicate that a consumer cannot move forward with the process whether it's a sign-in or whether it's actually submitting the taxes without agreeing to the terms and services, and some of that documentation said things like "and if." And that's Exhibit H-2 that I'm referring to that's sort of an "and if" code. Is there any such code that you recognize in this document to suggest that a consumer could not go forward if it didn't agree to this?<br><br>A. Not that I can see on this one. |

| | | |
|---|---|---|
| | is for the court to decide that the Exhibit is a true and correct copy.<br><br>4. **Lack of Foundation/Lack of Personal Knowledge**<br><br>Exhibit H provides no factual basis to establish that declarant has personal knowledge of the Exhibit or its contents. FRE 602. Moreover, at his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge. | |
| COURT'S RULING | ☐ Sustained<br><br>☐ Overruled | |
| 4. **Objection to Dkt. 68-2, Jaeger Dec.¶ 8(e)**<br><br>**¶ 8(ee) "**A screenshot of the "Paper filing - Review our terms and conditions" paper filing page for TY 2021 is attached hereto as **Exhibit G** at 2, which includes a required checkbox that reads: "I agree to the terms and conditions [hyperlinked]." If a user clicks "Continue" without checking that checkbox, the user is presented with the following error message: "Alert! You must agree to the terms and conditions," and is prompted to click "OK" and return to the page." | 1. **Lack of Foundation/ Lack of Personal Knowledge**. Declarant provides no foundation or factual basis to support his statements and lacks personal knowledge. FRE 602. At his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge.<br><br>2. **Hearsay**. Declarant's statements are not based on his | ***81: 2-18, 21-25, 82: 2-3, 5-25, 83: 2-7***<br>Q. Okay. I'd like to have you turn to Exhibit -- Exhibit G, please, to Exhibit -- to Exhibit 3. Exhibit G. It says, "TY2019 Print Submission," and at the top it says, "The following screenshot is taken from an internal presentation describing our taxpayer who would file a return using TaxAct services during tax year 2019." Do you see that page?<br>A. Yes.<br>Q. And it says that it's from an internal presentation. Is there a reason that you didn't submit any documentation directly from an actual screenshot from what the TaxAct website looked like in 2019? |

| | | |
|---|---|---|
| | personal knowledge. To the extent they are based on out-of-court statements made by other individuals they are inadmissible hearsay. FRE 801, 802.<br><br>3. **Lack of Authentication** Exhibit G is not authenticated and thus is inadmissible. FRE 901. Mr. Jaeger does not assert that the Exhibit is a true and correct copy or provide any information as to how, why, and when it was obtained, or what basis there is for the court to decide that the Exhibit is a true and correct copy.<br><br>4. **Lack of Foundation/ Lack of Personal Knowledge**<br><br>Exhibit G provides no factual basis to establish that declarant has personal knowledge of the Exhibit or its contents. FRE 602. Moreover, at his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge. | A. I don't recall why the subject matter expert took a screenshot of this -- this internal presentation versus actually in the database itself. I would -- I can make an assumption that they couldn't get access to it, but that would just be an assumption.<br>Q. All right. Do you have any independent knowledge of the -- how the website looked in 2019 in terms of any types of documentation to support -- to support this, again, other than the document that's in front of you?<br>A. We would have snippets of the code, the tax code, to see what an interview question looks like to basically back up what the text in the check box says on the screen during that time period.<br>Q. Did you independently review any of that code on TaxAct's website or any other database?<br>A. Not that I recall.<br>Q. And if you'll look at G-2, the next page over from where we're looking, it says, "TY2021 Print Submission," and at the bottom it says, "Alert: You must agree to the terms and conditions." Do you see that?<br>A. Yes.<br>Q. All right. I would ask you -- well, is there -- is there any reason that you know of why that information -- that type of a screenshot was not included for any prior years?<br>A. I do not recall. |

| | | |
|---|---|---|
| | | |
| COURT'S RULING | ☐ Sustained<br>☐ Overruled | |
| 5. **Objection to Dkt. 68-2, Jaeger Dec.¶ 8(ff.)**<br><br>**¶ 8(ff.) "**A screenshot of the backend code for the "Paper filing - Review our terms and conditions" paper filing page for TY 2021 is attached hereto as **Exhibit H** at 12, which shows that the user must check the checkbox acknowledging their acceptance of the Terms in order to continue." | 1. **Lack of Foundation/ Lack of Personal Knowledge**. Declarant provides no foundation or factual basis to support his statements and lacks personal knowledge. FRE 602. At his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge.<br><br>2. **Hearsay**. Declarant's statements are not based on his personal knowledge. To the extent they are based on out-of-court statements made by other individuals they are inadmissible hearsay. FRE 801, 802.<br><br>3. **Lack of Authentication** Exhibit H is not authenticated and thus is inadmissible. FRE 901. Mr. | ***83: 22-25, 84: 2-24***<br>Q. And in this document, it says -- in 23 the middle of the page, it looks to say, "I 24 agree to the," and then it says, "TALink, id terms, key terms, legal notice, external true, co-branded false, target blank." Do you see that?<br>A. Yes.<br>Q. All right. And below, it says, "I have read and acknowledged the," and then it says, "privacy policy, true, false, privacy statement." You provided code and you provided information in your declaration to suggest that there is a particular code that is included in the website to indicate that a consumer cannot move forward with the process whether it's a sign-in or whether it's actually submitting the taxes without agreeing to the terms and services, and some of that documentation said things like "and if." And that's Exhibit H-2 that I'm referring to that's sort of an "and if" code. Is there any such code that you recognize in this document to suggest that a consumer could not go forward if it didn't agree to this?<br>A. Not that I can see on this one. |

| | | |
|---|---|---|
| | Jaeger does not assert that the Exhibit is a true and correct copy or provide any information as to how, why, and when it was obtained, or what basis there is for the court to decide that the Exhibit is a true and correct copy.<br><br>4. **Lack of Foundation/ Lack of Personal Knowledge**<br><br>Exhibit H provides no factual basis to establish that declarant has personal knowledge of the Exhibit or its contents. FRE 602. Moreover, at his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge. | |
| COURT'S RULING | ☐ Sustained<br><br>☐ Overruled | |
| 6. **Objection to Dkt. 68-2, Jaeger Dec.¶ 10(c)**<br><br>**¶ 10(c)** "Screenshots of TaxAct's internal records showing that Nicolas Smith- Washington signed into his TaxAct account on dozens of occasions, including multiple times each tax year for TY 2015 through TY 2021, are attached hereto as **Exhibit J.**" | 1. **Lack of Foundation/ Lack of Personal Knowledge**. Declarant provides no foundation or factual basis to support his statements and lacks personal knowledge. | ***77: 2-5, 22-25, 78: 2-15***<br>Q. The J refers to -- it says, "Moreover, the code requiring tax IDs is to additionally acknowledge the terms as they use the service."<br>BY MS. TUSAN:<br>Q. Can you -- yeah, can you tell me what documents would form the basis for the statement in J? |

| | | |
|---|---|---|
| | FRE 602. At his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge.<br><br>2. **Hearsay**. Declarant's statements are not based on his personal knowledge. To the extent they are based on out-of-court statements made by other individuals they are inadmissible hearsay. FRE 801, 802.<br>3. **Lack of Authentication** Exhibit J is not authenticated and thus is inadmissible. FRE 901. Mr. Jaeger does not assert that the Exhibit is a true and correct copy or provide any information as to how, why, and when it was obtained, or what basis there is for the court to decide that the Exhibit is a true and correct copy.<br><br>4. **Lack of Foundation/ Lack of Personal Knowledge**<br><br>Exhibit J provides no factual basis to | A. I believe we had that in Exhibit A, listing out the different options for in-product experience terms and conditions, and sign-in experience terms and conditions in one chart or one table.<br>Q. All right. And in Section K, we talk -- it talks about the sign-in page again, and it talks about a consumer can click "sign-in" and, you know, agreeing to the terms in Section L. Did you review the hyperlink that's referenced here to confirm its accuracy?<br>A. Outside of the screenshots provided by the subject matter experts, no. |

| | | |
|---|---|---|
| | establish that declarant has personal knowledge of the Exhibit or its contents. FRE 602. Moreover, at his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge. | |
| COURT'S RULING | ☐ Sustained<br>☐ Overruled | |
| **Objection to Exhibits A-R (ECF: 68-1 through 68-19)** | 1. **Lack of Authentication**<br><br>Exhibits A-R are not authenticated and are thus inadmissible. FRE 901. Mr. Jaeger does not assert that the Exhibit is a true and correct copy or provide any information as to how, why, and when it was obtained, or what basis there is for the court to decide that the Exhibit is a true and correct copy.<br><br>2. **Lack of Foundation/ Lack of Personal Knowledge**<br><br>Declarant provides no factual basis to establish that declarant has personal knowledge of the Exhibits A-R or their contents. FRE 602. | ***Jaeger Depo, 84: 9-24, 86: 5-12***<br>Q. all right…You provided code and you provided information in your declaration to suggest that there is a particular code that is included in the website to indicate that a consumer cannot move forward with the process whether it's a sign-in or whether it's actually submitting the taxes without agreeing to the terms and 16 services, and some of that documentation said things like "and if." And that's Exhibit H-2 that I'm referring to that's sort of an "and if" code. Is there any such code that you recognize in this document to suggest that a consumer could not go forward if it didn't agree to this?<br>A. Not that I can see on this one.<br>Q. Button type, "I do not accept." Do you see anything on that -- on this document to suggest that a person could not go forward if they clicked the "I do not accept" button?<br>A. So the programming language behind this one isn't what I recognize or know, so I won't be able to answer that.<br><br>***79: 2-20*** |

| | | |
|---|---|---|
| | Moreover, at his deposition, Mr. Jaeger's testimony established that he lacks such personal knowledge. | Q. All right. So with respect to the sign-in pages, again, which are referred to in the following paragraphs -- sign-in is discussed in paragraphs L through O, I believe -- with respect to those, every time there is a reference to hyperlinks, is it accurate to say you didn't actually directly check to confirm the accuracy of the hyperlinks but relied upon documents that were provided to you by subject matter experts?<br>A. Yes, that's right.<br>Q. All right. And aside from the hyperlinks, with respect to the -- to the statements themselves and their appearance on the websites, you didn't do anything to independently verify that other than looking at the screenshots provided by subject matter experts, is that accurate too?<br>A. Yes.<br><br>***85; 17-25, P86; 2-12***<br>All right. I'm going to show you another document I'm going to mark as Exhibit 11.<br>(MJ Exhibit 11, Document Bates-stamped SWTA-0001789, marked for identification as of this date.)<br>BY MS. TUSAN:<br>Q. On Exhibit 11, there's a reference to an "I do not accept" button. Do you see that sort of, I don't know, a quarter of the way down on the page?<br>A. Yes.<br>Q. Button type, "I do not accept." Do you see anything on that -- on this document to suggest that a person could not |

| | | |
|---|---|---|
| | | go forward if they clicked the "I do not accept" button?<br>A. So the programming language behind this one isn't what I recognize or know, so I won't be able to answer that.<br><br>***87: 17-25, 88: 2-13***<br>Q. So if you could turn to Exhibit H of Exhibit 3, please. All right. If you look at page H-2, and then, in the interest of time, if you could just look from H-2 to H-13. Take a look at those pages. All right?<br><br>A. Yeah.<br>Q. So we'll start with -- I'll start with a general question about the pages on H-2 to Exhibit 3, and that is, with respect to the snippets of code that are on these pages, did you do anything to independently confirm, first, what time periods these -- these codes were on the TaxAct website?<br>A. No.<br>Q. Okay. And did you do anything to independently verify if in fact these were the codes that were on the TaxAct website at all?<br>A. No.<br><br>***89: 16-25, 90: 2-8***<br>Q. I know we talked about the declaration itself and whether you had done anything independent to verify the information there, but speaking of the exhibits -- exhibits to Exhibit 3, did you do anything to independently verify the accuracy of the exhibits contained in the exhibits to Exhibit 3? |

| | | |
|---|---|---|
| | | A. I mean, outside of using the program myself, no.<br>Q. Okay. But, for example, with respect to the information about the specific plaintiffs in this case, did you do anything to independently verify that the data about them was accurate?<br>A. Outside of the screenshots provided to me from the subject matter experts, no. |
| COURT'S RULING | ☐ Sustained<br>☐ Overruled | |