Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772 1200
Facsimile: (415) 772 7400

James W. Ducayet (*pro hac vice*)
jducayet@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Michele L. Aronson (*pro hac vice*)
maronson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736 8000
Facsimile: (202) 736 8711

*Attorneys for Defendant TaxAct, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NICOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES, and JENNY LEWIS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TAXACT, INC.,<br><br>Defendant. | Case No.: 3:23-CV-00830-VC<br>Assigned to: Hon. Vince Chhabria<br><br>**DEFENDANT TAXACT, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS**<br><br>Date: September 21, 2023<br>Time: 10:00 a.m.<br>Place: Courtroom 4, 17th Floor |

# TABLE OF CONTENTS


INTRODUCTION ........ 1

I. TaxAct's Records Demonstrate Plaintiffs' Acceptance of the Terms, Which Contain Arbitration Agreements, and That Evidence Is Admissible. ........ 1

II. Plaintiff Lewis is Bound By the Arbitration Agreement ........ 4

A. The Agency Doctrine Requires Lewis to Arbitrate Her Claims. ........ 4

B. The Doctrine of Equitable Estoppel Requires Lewis to Arbitrate Her Claims. ........ 5

C. Lewis is a Third-Party Beneficiary to Her Husband's Assent to the Terms. ........ 6

III. Any Questions About the Unconscionability of the Arbitration Agreements Are Delegated to the Arbitrator and, in Any Event, The Delegation Clause Is Not Unconscionable. ........ 6

A. Unconscionability Questions Are Delegated to the Arbitrator. ........ 6

B. Plaintiffs Fail to Prove Procedural or Substantive Unconscionability. ........ 8

IV. The Court Should Compel Arbitration and Stay Proceedings. ........ 10

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ....9

*Bentley v. Control Grp. Media Co.*,
No. 19-CV-2437, 2020 WL 3639660 (S.D. Cal. July 6, 2020) ....5

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....7

*Cherewick v. State Farm Fire & Cas.*,
578 F. Supp. 3d 1136 (S.D. Cal. 2022) ....3

*Flores v. Evergreen at San Diego, LLC*,
148 Cal. App. 4th 581 (2007) ....4, 5

*Fraser v. Goodale*,
342 F.3d 1032 (9th Cir. 2003) ....2

*Hansen v. LMB Mortg. Servs.*,
1 F.4th 667 (9th Cir. 2021) ....2

*Hanson Crawford Crum Fam. L. Grp., LLP v. Randall*,
No. 18-CV-03371, 2019 WL 6699802 (N.D. Cal. Dec. 9, 2019) ....2, 3

*Heckman v. Live Nation Entm't, Inc.*,
No. 22-CV-0047, 2023 WL 5505999 (C.D. Cal. Aug. 10, 2023) ....8

*Holley-Gallegly v. TA Operating, LLC*,
74 F.4th 997 (9th Cir. 2023) ....7

*Jensen v. U-Haul Co. of Cal.*,
18 Cal. App. 5th 295 (2017) ....6

*Luckert v. Tesla Energy Operations, Inc.*,
No. 21-CV-03027, 2021 WL 3721967 (N.D. Cal. Aug. 5, 2021) ....10

*Montoya v. Comcast Corp.*,
No. 15-CV-02573, 2016 WL 53406514 (E.D. Cal. Sept. 23, 2016) ....5

*Newcombe-Dierl v. Amgen*,
No. 22-CV-2155, 2022 WL 3012211 (C.D. Cal. May 26, 2022) ....8

*Newton v. Am. Debt Servs., Inc.*,
854 F. Supp. 2d 712 (N.D. Cal. 2012) ....8, 9

*Pillar Project AG v. Payward Ventures, Inc.*,
64 Cal. App. 5th 671 (2021) ....................5, 6

*Poublon v. C.H. Robinson Co.*,
846 F.3d (9th Cir. 2017) ....................9

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................7

*Rogers v. Or. Trail Elec. Consumers Co-op., Inc.*,
No. 3:10–CV–1337–AC, 2012 WL 1635127 (D. Or. May 8, 2012) ....................2

*S.E.C. v. Franklin*,
348 F. Supp. 2d 1159 (S.D. Cal. 2004)....................3

*Sanchez v. Valencia Holding Co.*,
61 Cal. 4th 899 (2015) ....................9, 10

*Serrano Robles v. Cnty. of Los Angeles*,
No. 22-CV-06648, 2022 WL 2802980 (C.D. Cal. July 18, 2022)....................2

*Tompkins v. 23andMe, Inc.*,
No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd*,
840 F.3d 1016 (9th Cir. 2016) ....................10

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ....................8, 9

*Tiri v. Lucky Chances, Inc.*,
226 Cal. App. 4th 231 (2014) ....................9

*United States v. Licavoli*,
604 F.2d 613 (9th Cir. 1979) ....................3

*Vargas v. Delivery Outsourcing, LLC*,
No. 15-CV-03408-JST, 2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ....................10

**STATUTES & RULES**

Fed. Arb. Act, 9 U.S.C. § 3 *et seq*....................10

Fed. R. Evid. 803(6)....................3

Fed. R. Evid. 902(11)....................3

JAMS Streamlined Arbitration Rules & Procedures Rule 8(b) ....................3, 7

JAMS Streamlined Arbitration Rules & Procedures Rule 13....................9

JAMS Streamlined Arbitration Rules & Procedures Rule 17(g) ....................10

## INTRODUCTION

In the face of the evidence that in using TaxAct's services, Plaintiffs entered into contracts with binding Arbitration Agreements that include delegation provisions, Plaintiffs seek to change the subject. Plaintiffs do not dispute, as TaxAct showed, that if they assented to the Terms (which contain the Arbitration Agreements), an arbitrator must decide whether Plaintiffs' claims are subject to arbitration. Instead, Plaintiffs primarily suggest that TaxAct has not proven that Plaintiffs entered contracts with TaxAct through acceptance of the Terms, because TaxAct's evidence is purportedly inadmissible. They then claim the Arbitration Agreements as a whole are unconscionable.

These arguments fail. Plaintiffs' evidentiary challenge is baseless. The evidence in question (and additional evidence) is properly considered here, and establishes that Plaintiffs agreed to the Terms and, thus, to arbitration. Moreover, Plaintiffs' unconscionability attacks are improper—they attack as unconscionable the entire agreement (not just the delegation provision) and therefore must be decided by the arbitrator—and are meritless anyway. Pursuant to Section 3 of the Federal Arbitration Act ("FAA"), this Court should stay proceedings pending arbitration.

## I. TAXACT'S RECORDS DEMONSTRATE PLAINTIFFS' ACCEPTANCE OF THE TERMS, WHICH CONTAIN ARBITRATION AGREEMENTS, AND THAT EVIDENCE IS ADMISSIBLE.

Plaintiffs do not actually challenge what the evidence TaxAct submitted shows, namely that Plaintiffs accepted the Terms, which contain Arbitration Agreements with delegation clauses. The Terms provide that use of TaxAct's Services constitutes acceptance of the Terms, and customers are required to acknowledge their acceptance of the Terms by checking a box at account creation (for every year during the relevant period), acknowledging the Terms at sign-in (through tax year 2017), and checking an additional box at filing (from tax year 2018 on). *See* Jaeger Decl., Ex. A. Rather than address these facts, Plaintiffs attempt to manufacture nonexistent evidentiary issues. *See* Pls.' Evid. Obj. to Decl. of Mark Jaeger, ECF No. 80 ("Evid. Obj.").[1]

[1] Additionally, rather than grapple with the evidence that the Arbitration Agreements were in effect at all times when the relevant conduct took place, Plaintiffs argue that the Court should disregard that evidence as "an attempt to smuggle the merits into a motion to compel." Opp. at 10. Yet that evidence is precisely the sort of discovery that Plaintiffs claim is relevant to this motion (although it principally goes to whether Plaintiff's claims fall within the Arbitration Agreements and therefore is for the arbitrator to weigh). And it shows that TaxAct "first associated defined variables with the Meta Pixel and other similar auxiliary service provider technologies . . . on January 4, 2018," *after*

Plaintiffs claim that the Court should find a lack of contract formation by disregarding the Jaeger Declaration. They contend "[i]t is inadmissible because it is not based upon Mr. Jaeger's personal knowledge, contains double hearsay for which no exception exists, does not provide evidence for which there is or could be a proper foundation laid, and has no indicia of reliability." Pls.' Opp. Br., ECF No. 79 ("Opp.") at 8; *see generally* Evid. Obj. Their argument is a strawman and wrong on its own terms.

Preliminarily, as Plaintiffs note, motions to compel arbitration are treated under a summary judgment standard. Evid. Obj. at 1; *Hansen v. LMB Mortg. Servs.*, 1 F.4th 667, 670 (9th Cir. 2021). "Evidentiary objections in motions for summary judgment are typically unnecessary and not useful." *Serrano Robles v. County of Los Angeles*, No. 22-CV-06648, 2022 WL 2802980, at *3 (C.D. Cal. July 18, 2022). That is because, as the Ninth Circuit has made clear, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its content." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). This means, as this Court has recognized, it is appropriate only to "object to evidence at summary judgment that '*cannot be presented* in a form that would be admissible in evidence.'" *Hanson Crawford Crum Fam. L. Grp., LLP v. Randall*, No. 18-CV-03371, 2019 WL 6699802, at *4 (N.D. Cal. Dec. 9, 2019) (emphasis in original).

Despite this fundamental principle, Plaintiffs mount a full-scale challenge to the admissibility of Mr. Jaeger's declaration *itself*, rather than its underlying content and exhibits, which, in all events, *can be* presented in an admissible form. In doing so, Plaintiffs assert that Mr. Jaeger lacks "personal knowledge" because he did not personally access or independently verify the accuracy of the business records on which he relied. Opp. at 2-4. But "[a]n affiant can obtain personal knowledge of events and actions that the affiant did not personally witness by reviewing pertinent records." *Rogers v. Or. Trail Elec. Consumers Co-op., Inc.*, No. 3:10–CV–1337–AC, 2012 WL 1635127, at *6

---

the Arbitration Agreements were in effect. *Id.* For avoidance of doubt as to what the evidence shows, TaxAct submits the declaration of Nick Zabokrtsky, the Manager of Marketing Technology & Website for TaxAct, who was previously deposed by Plaintiffs. *See* Zabokrtsky Decl. That declaration describes the auxiliary service provider technologies that TaxAct used (including but not limited to the Meta Pixel) and explains that "[v]ariables for data from a tax return form were not shared with any third-party scripts until January 4, 2018." Zabokrtsky Decl. ¶ 7.

(D. Or. May 8, 2012); (citing *Washington Cent. R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993)) ("Based on personal knowledge of the files and records, a declarant may testify to acts that she or he did not personally observe but which are described in the record.")). That is precisely what Mr. Jaeger did. As Vice President of Tax Operations, Mr. Jaeger is "responsible for ensuring TaxAct is operating efficiently and with clarity regarding customers' taxes." Jaeger Decl. ¶ 2. He *personally* reviewed—with the assistance of colleagues—"the relevant available business records of TaxAct kept in the ordinary course" to confirm the facts in his declaration and its underlying exhibits. *See id.* ¶ 3. Mr. Jaeger's Declaration adequately lays the foundation for its content and underlying exhibits. *See Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1155 (S.D. Cal. 2022) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1551 (9th Cir. 1989)). In any event, however, the underlying records showing contract formation could certainly be admitted as business records at trial, both "through the testimony of the custodian of records or other qualified witness" and "with a certification that complies with Rule 902(11) (domestic records)." *SEC v. Franklin*, 348 F. Supp. 2d 1159, 1162 (S.D. Cal. 2004). That is all that is required in this procedural context. *Randall*, 2019 WL 6699802, at *4.

Nonetheless, to dispel any doubt about the sufficiency of the declarations and records, TaxAct submits additional certifications of Mr. Jaeger[2] and his colleagues Chitra Goel and Chuck Kroemer, on whom Mr. Jaeger relied in preparing his initial declaration, pursuant to Fed. R. Evid. 902(11). They address every underlying exhibit to the Jaeger Declaration, *see* Jaeger Decl. II, Goel Decl., Kroemer Decl., and confirm the admissibility of the records under Rule 803(6).[3] The declarants provide evidence as to each Rule 803(6) factor foreach document, and notably, a challenge to untrustworthiness requires "specific facts," none of which are alleged here. *United*

[2] Mr. Jaeger's declaration proffered here also attaches as Exhibit A the JAMS Streamlined Arbitration Rules & Procedures, which are the applicable JAMS Rules expressly incorporated by reference into the Terms. Mr. Jaeger's initial declaration incorrectly attached the JAMS Comprehensive Arbitration Rules & Procedures. The Streamlined Rules (Rule 8(b)) contain the same delegation clause as the Comprehensive Rules (Rule 11(b)).

[3] That rule provides that records of regularly conducted activities are not hearsay when the opponent cannot show the source of information or the method of preparation indicate a lack of trustworthiness, and a custodian testifies that: (1) "the record was made at or near the time by . . . someone with knowledge"; (2) "the record was kept in the course of a regularly conducted activity of business"; and (3) "making the record was a regular practice of that activity." Fed. R. Evid. 803(6).

*States v. Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979). Plaintiffs' evidentiary objections should be rejected. Rejecting those objections means that TaxAct has shown that Plaintiffs (including Plaintiff Lewis, *infra* § II) have entered contracts containing arbitration agreements, and thus all remaining issues are for the arbitrator in light of the delegation clause.

## II. PLAINTIFF LEWIS IS BOUND BY THE ARBITRATION AGREEMENT

Aside from the admissibility challenge, Plaintiffs' only contract formation argument is extremely limited and affects Plaintiff Lewis alone. That challenge is meritless for many reasons.

### A. The Agency Doctrine Requires Lewis to Arbitrate Her Claims.

Although Lewis acknowledges that her spouse assented to the Terms and used the Services to file their joint tax return, she contends that she is not bound by the Terms because her spouse did not act as her agent in doing so. *See* Opp. at 5-7. That contention misunderstands agency and ignores basic facts. Lewis does not dispute—and admits—that she gave her husband authority to both file her taxes and to do so in any way that he wished. Lewis Decl. (ECF No. 79-9) ¶ 5 ("My husband is, and has been throughout the time he used TaxAct's services, responsible for the filing of our joint taxes. It makes no difference to me whether my husband does our taxes himself by hand or whether he uses TaxAct software—or any other tax filing software—to assist him. Because my husband is fully responsible for completing our taxes by whatever means he chooses. . . ."). As such, Lewis admits that she granted her husband authority to use any means he deemed fit to file her taxes, which would clearly include the use of TaxAct's Services (and attendant agreement to the Terms). While Lewis may now wish that she did not so-authorize her husband to enter into a contract with TaxAct, that she granted him permission to use any service constitutes the "words or conduct" by her, as the principal, necessary to create the requisite agency relationship—particularly given that courts recognize that "less evidence is required to establish a principal and agent relationship between husband and wife than between nonspouses." *Flores v. Evergreen at San Diego, LLC*, 148 Cal. App. 4th 581, 588-89 (2007). Moreover, Lewis ignores TaxAct's showing that she must have provided her tax return information to her husband for him to file taxes on her behalf—again, conduct supporting the existence of an agency relationship. *See* Mot. at 11; Am. Compl. ¶¶ 160-61.

Rather than wrestle with the above facts, Lewis instead makes a convoluted argument about

whether the Arbitration Agreement in the Terms is "separate" from an alleged agreement related to "Self-Select Pins." Opp. at 5-6. Setting aside that the self-created PIN is only one aspect of the information that Lewis provided to her husband (such as adjusted gross income, *see* Mot. at 11) so he could file their joint taxes, Plaintiff's argument rests on an incorrect application of *Flores*. Unlike here, the *Flores* court discussed that the arbitration provisions are subject to "heightened requirements . . . in nursing home contracts," and that the California "Legislature has required that arbitration agreements be separate from the rest of the admission contract and contain separate signatures." 148 Cal. App. 4th at 823. As such, the required "separation" between arbitration agreements and other contractual provisions was based on a statutory requirement in *Flores* related to nursing home contracts. That is not the case here.

**B. The Doctrine of Equitable Estoppel Requires Lewis to Arbitrate Her Claims.**

Lewis is wrong that equitable estoppel is inapplicable, arguing her claims do not depend on the Terms and because she did not receive a direct benefit from the Terms. Opp. at 3. First, Lewis's claims are unequivocally "dependent upon, or inextricably intertwined with, the obligations imposed by" the Terms. *Bentley v. Control Grp. Media Co.*, No. 19-CV-2437, 2020 WL 3639660, at *3 (S.D. Cal. July 6, 2020). All her claims arise out of her husband's use of the Services, which he could *only* do if he repeatedly accepted the Terms. For instance, her husband could not have inputted the tax return information unless he first agreed to the Terms. *See* Jaeger Decl. ¶ 14.b-c. That is, Lewis's claims could not exist but for her husband (1) agreeing to the Terms and (2) using the Services. As such, Plaintiff's claims "presume the existence of the underlying contract." *Montoya v. Comcast Corp.*, No. 15-CV-02573, 2016 WL 53406514, at *6 (E.D. Cal. Sept. 23, 2016).

Lewis's argument that she did not receive a "direct benefit" from the contract (i.e., the Terms) is even weaker. Lewis obviously benefitted from the Terms and her husband's resulting use of the Services: her taxes were filed. Indeed, Lewis does not dispute that she received a benefit, but instead quibbles that it was "at most indirect." Opp. at 4. But the only case that she cites, *Pillar Project AG v. Payward Ventures, Inc.*, 64 Cal. App. 5th 671 (2021), undermines her position. The *Pillar* court found no direct benefit because there were "two distinct contracts [at issue]: the contract between Defendant and [a third party], and the contract between [that third party] and Plaintiff." *Id.*

at 680. Because there was an "intervening contract . . . any benefits Plaintiff received from the earlier agreement between Defendant and [the third party] are more remote." *Id.* But there is no such intervening contract here between Lewis and her husband, undercutting her reliance on *Pillar*.

Moreover, in denying the application of equitable estoppel, the *Pillar* court found it "noteworthy that in the three cases relied on by Defendant, the plaintiff had a close, personal relationship with the signatory party, as a spouse or a sibling." *Id.* at 680 n.7. Here, such a "close personal relationship" *does* exist between the Lewises; the signatory is Lewis's spouse, and she is bound just as in the equitable estoppel cases the defendant in *Pillar* cited.

**C. Lewis is a Third-Party Beneficiary to Her Husband's Assent to the Terms.**

Lewis claims that she is not a third-party beneficiary to her husband's agreement to the Terms because she "did not benefit from her husband's alleged contract with TaxAct" and because she does not have a right to sue under the agreement. Opp. at 7. Neither argument passes muster. First, again, Lewis benefited from her husband's use of the Services (her taxes were filed), which required his agreement to the Terms. Further, the Terms anticipated that users would use the Services on behalf of others and outlined a user's responsibilities for third party data. For instance, the Terms provide: "You acknowledge and agree that are solely responsible for all content, data, and information submitted by your user identification into the Service, including, without limitation, content, data, and information relating to third parties." Jaeger Decl., Ex. C at 2. Therefore, the Terms reflect the intent that the Services could be used to benefit a third party, such as Lewis. *See Jensen v. U-Haul Co. of Cal.*, 18 Cal. App. 5th 295, 301 (2017) ("The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract.") (citation omitted).[4]

**III. ANY QUESTIONS ABOUT THE UNCONSCIONABILITY OF THE ARBITRATION AGREEMENTS ARE DELEGATED TO THE ARBITRATOR AND, IN ANY EVENT, THE DELEGATION CLAUSE IS NOT UNCONSCIONABLE.**

**A. Unconscionability Questions Are Delegated to the Arbitrator.**

Plaintiffs do not dispute that the Arbitration Agreements delegate questions of

[4] Lewis is also wrong in claiming that she is prohibited from suing to enforce the Terms. *See* Opp. at 7-8. Nothing in the Terms explicitly prohibits a third-party beneficiary from suing.

unconscionability to the arbitrator.[5] Instead they argue implicitly and explicitly that the entirety of the Arbitration Agreements, including the delegation provision, is unconscionable. *See* Opp. at 11-15. But that too is a challenge that must go to the arbitrator. The Supreme Court and the Ninth Circuit repeatedly have admonished that courts cannot entertain arguments about the unconscionability of the arbitration agreement as a whole, because the party opposing arbitration must "challenge[ ] the delegation provision specifically" for any court to decide the issue. *See, e.g.*, *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010) (arbitrator is to decide unconscionability challenges that apply "to the contract as a whole" and not to the "delegation provision specifically"); *Brennan v. Opus Bank*, 796 F.3d 1125, 1133 (9th Cir. 2015) (because plaintiff failed to make any arguments specific to the delegation provision, the arbitrator must decide unconscionability).

Plaintiffs nominally claim that their primary argument about unconscionability goes to the delegation clause. *See* Opp. at 11-15 (§ IV.C: "The Delegation Clause is both Procedurally and Substantively Unconscionable."). Yet Plaintiffs' objections are not really to that clause specifically, but rather to the Arbitration Agreements as a whole, including claiming that TaxAct changed the Terms to include the Arbitration Agreements (*id.* at 12), and that the Arbitration Agreements lack mutuality (*id.* at 13), include a waiver provision (*id.*), include a one-year time bar (*id.* at 14), and require an expensive and distant arbitral forum (*id.*). Plaintiffs do not explain how any of this "has any bearing on whether the delegation of arbitrability to the arbitrator would be unconscionable." *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1003 (9th Cir. 2023).

The only part of Plaintiffs' unconscionability challenge even arguably specifically directed at the delegation provision is that "Plaintiffs [had] to determine the contours of a complicated and difficult-to-find delegation clause in a long and complex set of terms." Opp. at 12; *see id.* n.23 (calling the JAMS Rules "extremely difficult to find"). That argument primarily seems to be about where the Arbitration Agreement is found within the entire contract (toward the end), not where the delegation clause is located (near the beginning of the Arbitration Agreement). Therefore, it is not

---

[5] JAMS Streamlined Rule 8(b) provides: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *See* Jaeger Decl. II, Ex. A.

specific to delegation. And to the extent Plaintiffs' argument is about the Arbitration Agreement's incorporation of the JAMS Rules, that also is not specific to delegation because those Rules cover other subjects. *See Newcombe-Dierl v. Amgen*, No. 22-CV-2155, 2022 WL 3012211, at *4 (C.D. Cal. May 26, 2022) (unconscionability challenge "applies more broadly than to just the delegation provision" given claim "that the delegation provision is unconscionable because the JAMS Rules in which it is contained were not provided to her"). But even if the attack could be considered specific to delegation, it would be meritless. *See, e.g.*, *id.* (rejecting unconscionability argument and stating that "[t]he Agreement does not attach the full rules, but it includes a link to where they can be found online. Courts have held this is sufficient.").

**B. Plaintiffs Fail to Prove Procedural or Substantive Unconscionability.**

Even if the Court could consider Plaintiffs' arguments regarding unconscionability, they fail. An agreement must be procedurally *and* substantively unconscionable to be invalidated. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016). Plaintiffs fail to show either.

Procedural Unconscionability. Procedural unconscionability focuses on oppression and unfair surprise. *See Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 722 (N.D. Cal. 2012). Nothing about the Arbitration Agreement (let alone the delegation clause within) was a surprise. The Terms have long contained the Arbitration Agreements—always displaying them prominently—and users have repeatedly been given notice of the Terms. Hyperlinks to the Terms containing the Arbitration Agreements appear in the footer of each webpage throughout the TaxAct website. Jaeger Decl. ¶ 4.b. Users must affirmatively check the checkbox agreeing to the Terms at account creation and again prior to filing their tax returns, Jaeger Decl. ¶ 8.q-jj, Exs. G & H, and Plaintiffs in fact *did* check them, *id.* ¶¶ 10-14, Exs. I, K, M, & O. The inclusion of the Arbitration Agreement beginning in 2017 did not amount to the sort of significant changes to terms of use in *Heckman v. Live Nation Entertainment, Inc.*, which were made "in the midst of ongoing litigation," "to be applied retroactively to already accrued claims," and "while burying the true nature of this change in . . . difficult-to-parse Rules." No. 22-CV-0047, 2023 WL 5505999, at *6 (C.D. Cal. Aug. 10, 2023). The Arbitration Agreement, which incorporates the delegation clause, is plainly visible, conspicuous, and straightforward. *See* Jaeger Decl., Exs. B at 5, C at 4. It is clearly denoted in the Terms by a large,

bold heading stating: "Dispute Resolution; Binding Arbitration." *Id.* It also states, in bold: "You and TaxAct agree that any dispute arising out of or related to these Terms or our Services is personal to you and TaxAct and that any dispute will be resolved solely through individual arbitration and will not be brought as a class arbitration, class action or any other type of representative proceeding." *Id.* It goes on to say that all disputes relating to TaxAct's Services will be resolved through arbitration in accordance with the JAMS Streamlined Rules, and it provides a hyperlink to the JAMS website, which includes the JAMS rule with the delegation provision. *Id.* Plaintiffs also cannot claim oppression, given the express opt-out provision in the Arbitration Agreement that clearly explains how to opt out of binding arbitration. *Id.* ¶ 5. Plaintiffs do not allege that they opted out, or attempted to opt out of the Arbitration Agreements, nor did they do so, although they could have done so without any sort of penalty. *Id.* ¶ 5.e.

Substantive Unconscionability. "Substantive unconscionability focuses on 'the effects of the contractual terms and whether they are overly harsh or one-sided.'" *Newton*, 854 F. Supp. 2d at 724 (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). Because Plaintiffs have not shown procedural unconscionability, the amount of substantive unconscionability they are required to establish here is "high"—that is, Plaintiffs' agreement must be "overly harsh" or "shock the conscience." *Poublon v. C.H. Robinson Co.*, 846 F.3d, 1251, 1261 (9th Cir. 2017) (quoting *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 911 (2015)). Plaintiffs complain that the Arbitration Agreements purportedly lack mutuality. But as in *Tiri v. Lucky Chances, Inc.*, the Arbitration Agreements are mutual because both TaxAct and its users are "bound by [them] equally." 226 Cal. App. 4th 231, 246-47 (2014); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 120 (2000) (agreement required both parties "to arbitrate all claims arising out of the same transaction or occurrence"). Plaintiffs' other arguments regarding substantive unconscionability are similarly without merit. A "one-year statute of limitations . . . does not make the arbitration provision itself unconscionable under California law." *Tompkins*, 840 F.3d at 1032. The JAMS Rules provide limited discovery and a process by which discovery disputes may be resolved. *See* Jaeger Decl. II, Ex. A (JAMS Rule 13).[6]

[6] To the extent Plaintiff is requesting the Court to hold that such a discovery framework is

Finally, the arbitral forum is not unduly expensive or burdensome such that it would have a "substantial deterrent effect." *See Sanchez*, 61 Cal. 4th at 920. As the JAMS Demand for Arbitration Form provides: "For matters involving consumers, the consumer is only required to pay $250." Brandler Decl., Ex. 1 (ECF 79-2) at 2. The Ninth Circuit has held that forum selection clauses are "valid and may be given effect, in the court's discretion, in the absence of a showing that enforcement of such a clause would be unreasonable." *Tompkins*, 840 F.3d at 1027 (internal quotation marks omitted). "[R]equiring arbitration 'at the location of a defendant's principal place of business' is 'presumptively enforceable.'" *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *16 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (citation omitted). Dallas County, Texas is Defendant's principal place of business and is thus presumptively enforceable.[7] Plaintiff speculates that he would have to pay travel expenses and hire local counsel to participate in JAMS arbitration, both of which are unnecessary under the JAMS Rules, which permit arbitrators to conduct hearings "in person or virtually by conference call, videoconference or using other communications technology with participants in one or more geographical places, or in a combined form." Jaeger Decl. II, Ex. A (JAMS Rule 17(g)).

## IV. THE COURT SHOULD COMPEL ARBITRATION AND STAY PROCEEDINGS.

Plaintiffs argue that the Court does not have the power to compel arbitration in Texas. *See* Opp. at 15. To the extent that the Court agrees, it should nevertheless stay—rather than dismiss—proceedings while arbitration may be pursued in an appropriate forum, as is required by Section 3 of the FAA, and as would permit the arbitration to take place without delay. *See* Mot. at 1.

## CONCLUSION

For the foregoing reasons, TaxAct requests that the Court compel arbitration and stay proceedings pursuant to Section 3 of the Federal Arbitration Act.

---

unconscionable, Plaintiff is in effect asking the Court to invalidate the JAMS Rules themselves, which are a widely used and recognized arbitration standard. *See generally Luckert v. Tesla Energy Operations, Inc.*, No. 21-CV-03027, 2021 WL 3721967, at *1 (N.D. Cal. Aug. 5, 2021).

[7] Even if this Court, not the arbitrator, had the ability to decide whether Dallas is an unconscionable forum and so held, it should sever the forum selection provision and leave the rest of the Arbitration Agreement intact. *See Vargas v. Delivery Outsourcing, LLC*, No. 15-CV-03408-JST, 2016 WL 946112, at *11-12 (N.D. Cal. Mar. 14, 2016) (severing choice of law and forum selection clauses for Florida and compelling arbitration in San Francisco).

Date: September 7, 2023

Respectfully submitted,

By: /s/ Sheila A.G. Armbrust
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772 1200
Facsimile: (415) 772 7400

James W. Ducayet *(pro hac vice)*
jducayet@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Michele L. Aronson (*pro hac vice*)
maronson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736 8000
Facsimile: (202) 736 8711

*Attorneys for Defendant TaxAct, Inc.*