Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772 1200
Facsimile: (415) 772 7400

James W. Ducayet (*pro hac vice*)
jducayet@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Michele L. Aronson (*pro hac vice*)
maronson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736 8000
Facsimile: (202) 736 8711

*Attorneys for Defendant TaxAct, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NICOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES, and JENNY LEWIS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TAXACT, INC.,<br><br>Defendant. | Case No. 3:23-CV-00830-VC<br>Assigned to Hon. Vince Chhabria<br><br>**DECLARATION OF NICHOLAS ZABOKRTSKY IN SUPPORT OF TAXACT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS** |

**DECLARATION OF NICHOLAS ZABOKRTSKY**

I, Nicholas Zabokrtsky, declare the following:

1. I have personal knowledge of the facts set forth in this declaration, or I have knowledge of such facts based on my review and knowledge of the business records and files of Defendant TaxAct, Inc. ("TaxAct"), and I could testify to the same if called as a witness in this matter. I make this declaration in support of TaxAct's Reply in Support of Motion to Compel Arbitration and Stay Proceedings and Response to Plaintiffs' Evidentiary Objections.

2. I am currently the Manager of Marketing Technology & Website for TaxAct. In my role, I am responsible for optimizing the TaxAct website design and supporting TaxAct marketing needs as it pertains to the tools and technology used to execute online marketing campaigns.

3. In March through August 2023, in connection with my job responsibilities, I reviewed the relevant available business records of TaxAct. These records contain information that is prepared at or about the time of the relevant events, the records are maintained for business purposes, and they are kept in the ordinary course of TaxAct's business. Based on my knowledge and review of these records, I confirmed the following.

4. **TaxAct currently uses Google Tag Manager as its tag management tool, and previously used Conversant Tag Manager.**

a. TaxAct utilizes a tag management tool to manage third-party scripts on its website, TaxAct.com, and to provision access by those third-party scripts to certain data variables.

b. TaxAct used Conversant Tag Manager from 2012 until on or about December 12, 2017, when it completed a transition to Google Tag Manager, the tag management tool currently in use.

c. **Exhibit A** shows an email discussion maintained in my Microsoft Outlook inbox in the regular course of business between TaxAct personnel responsible for implementing the transition to Google Tag Manager, which includes a message requesting confirmation that "the work is done" on December 12, 2017, Ex. A at 1, and a confirmation that the "Conversant container code has been removed from the site as expected," *id.*, the next day, December 13, 2017. To the best of

my knowledge, this email exchange was with regard to decommissioning TaxAct's Conversant Tag Manager tool.

d. The precise date on which TaxAct terminated its use of Conversant Tag Manager is not readily knowable, because TaxAct no longer has access to its instance of Conversant Tag Manager.

e. TaxAct transitioned to using Google Tag Manager as its sole tag management tool in December 2017. Prior to December 2017, Conversant Tag Manager and Google Tag Manager managed third-party scripts on TaxAct.com in parallel.

f. To the best of my knowledge, Google Tag Manager was initially configured to match and extend the configuration in Conversant Tag Manager, so everything that was included in Conversant Tag Manager was carried over to Google Tag Manager during the transition.

5. **A tag management tool is comprised of certain components.**

a. A tag management tool like Google Tag Manager "lets you configure and instantly deploy tags on your website or mobile app from an easy-to-use web-based interface."[1]

b. To utilize a tag management tool on a website, TaxAct must deploy the tag management tool's "container" in the code of the website. The container is a collection of "tags," "triggers," "variables", and their related associations installed on a given website.

c. TaxAct personnel with access to TaxAct's tag management tool account modify this container in a user interface via a web browser, where they can manage and modify the various "tags," "triggers," "variables," and associations that can be defined between each in the container.

d. "Tags" are code that execute certain actions on a website and may include calls to third-party servers (e.g., the Meta Pixel). "Triggers" are events that cause a tag to execute (e.g., clicking a software button on a website). "Variables" are defined data elements from a website or about a user's interaction with a website (e.g., a transformed value from a form field on the

[1] *About Google Tag Manager*, https://developers.google.com/tag-platform/tag-manager (last visited Aug. 29, 2023).

website). Each of these elements exists independently of the others within the container and can be managed and modified independently via the web-browser-based user interface.

e. Each modification to a tag management tool's container is saved in its entirety as a new "version," which includes the most recent configuration of tags, triggers, variables, and related associations in the container.

f. Each version is preserved in a log available in the tag management tool, so a complete historical record, with limited exceptions, is maintained in the tag management tool.

g. TaxAct maintains in its records a full log of each instance of its use of Google Tag Manager going back to December 2017. The log reflects contemporaneous modifications to tags used by TaxAct and is prepared and maintained for business continuity purposes. I understand that the full log has been provided to the Plaintiffs' counsel in this case.

6. **Third-party tags do not have direct access to data entered into a tax return form on TaxAct's website.**

a. Third-party tags can only access variables that are defined and assigned to the tag within the tag management tool. TaxAct makes certain information available using a "data layer," a type of software intermediary to which TaxAct affirmatively sends data. Data entered into a user's tax return form on TaxAct's website first passes through TaxAct's servers, and in certain instances is transformed, before it is sent to the data layer and associated with a variable. For example, a taxpayer may enter their adjusted gross income into the tax form on TaxAct.com. That value goes to TaxAct's servers, where it is rounded to the nearest thousand dollars before it is pushed to the data layer and associated with an "AGI" variable. The AGI variable, through the data layer, can then be made available to various tags, including from third parties, when a trigger occurs (e.g., when the user clicks "submit" to electronically file a tax return). No data populates the data layer unless TaxAct sends the data to the data layer and no data from the data layer is shared with third-party scripts unless provisioned to do so.

b. TaxAct previously activated Meta's Automatic Advanced Matching ("AAM") feature on its website. AAM operates, in part, outside of a tag management tool. AAM is a feature of

the Metal Pixel script that automatically collects limited data to enhance attribution from form fields on a publisher's website and is activated from within a website publisher's account in Meta's systems. The AAM data-collection script is not managed by Google Tag Manager (or another tag management tool), except to the extent that TaxAct's Google Tag Manager container applied the Meta Pixel to TaxAct.com. From December 9, 2019 to November 22, 2022, AAM was active on TaxAct.com. The only data that was collected directly from a tax-return form was first name, last name, gender, postal address, email address, and phone number.

c. For the sake of clarity, AAM is not a "tag" as it is defined for purposes of this Declaration, because it is not managed by a tag management tool. As TaxAct configures its tag management tools, tags do not have direct access to data entered into a tax return form on TaxAct.com, as described in subsection (a). Other instances of similar third-party data-collection scripts have been deployed on TaxAct.com, but none—other than AAM—were enabled on the tax-return form. As a result, none of them—other than AAM—had access to data entered into a tax-return form. No similar third-party data-collection scripts are currently deployed on TaxAct.com. To the best of my knowledge there are no examples other than third-party scripts, including data-collection scripts, now or in the past, accessing data from TaxAct.com outside of a tag management tool.

7. **Variables for data from a tax return form were not shared with any third-party scripts until January 4, 2018.**

a. Based on my review of the full historic record of versions in the Google Tag Manager log described above, I can determine the following:

i. Personnel from a third-party agency that TaxAct used for website support at the time set up an initial account and instance of Google Tag Manager for limited testing in November 2015.

ii. TaxAct's instance of Google Tag Manager was used periodically to evaluate its use until February 2017, when TaxAct began to more broadly configure the tool.

iii. In the third and fourth quarters of 2017, TaxAct began to configure multiple third-party tags in Google Tag Manager, including the Meta Pixel, which was first configured on December 5, 2017. **Exhibit B** is a screenshot from version 47 of TaxAct's instance of Google Tag Manager, which shows that the Meta Pixel was first deployed in version 47 and that it was not present in the prior version, version 46. Exhibit B is a true and correct copy of an information screen available in TaxAct's instance of Google Tag Manager. The Meta Pixel was not configured within Google Tag Manager prior to this date and it was not configured in Conversant Tag Manager prior to the transition from Conversant Tag Manager to Google Tag Manager.

iv. Certain third-party tags were and are configured to trigger at different events on TaxAct.com, including at the start and completion of a tax return form.

v. The first instance of any variable associated with data from a tax return form was configured in version 91 on January 4, 2018.

b. Based on the above, prior to January 4, 2018, data from a tax return was not available to any tag.

I hereby declare under penalty of perjury of the laws of the United States that the foregoing statements are true and correct.

Executed on this 7th day of September 2023, in Cedar Rapids, Iowa.

Nicholas Zabokrtsky