JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
CHRISTINA TUSAN (SBN 192203)
ctusan@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 601-6766 (Office)
(310) 295-2385 (Fax)

WARREN D. POSTMAN (SBN 330869)
wdp@kellerpostman.com
KELLER POSTMAN LLC
1100 Vermont Avenue, N.W., 12th Floor
Washington, DC 20005
Tel: (312) 741-5220
Fax: (312) 971-3502

*Attorneys for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NICHOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES, and JENNY LEWIS** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**TAXACT, INC.**, an Iowa Corporation,<br><br>Defendant. | **Case No. 3:23-CV-830-VC**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER AND CORRECTIVE NOTICE**<br><br>Hearing Date: February 8, 2024<br>Hearing Time: 10:00 a.m.<br>Judge: Hon Vincent Chhabria |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on February 8, 2024, at 10:00 a.m. in the above-entitled court, Plaintiffs Nicholas C. Smith-Washington, Joyce Mahoney, Jonathan Ames, and Jenny Lewis (collectively, "Plaintiffs") will, and hereby do move the Court for a Protective Order and Corrective Notice under Rule 23(d)(1)(B) of the Federal Rules of Civil Procedure. Plaintiffs seek an order of this Court (1) ordering Defendant TaxAct, Inc. ("Defendant" or "TaxAct") to arrange for the communication, at Defendant's expense, of corrective notice to putative Class Members providing notice of changes TaxAct has made to the Terms of Service and License Agreement ("Updated Terms") on its website, effective December 22, 2023, which purport to affect the claims that have been brought by Plaintiffs in the instant case, (2) enjoining Defendant from enforcing Sections 9, 13, and 14 of the Updated Terms against any and all members of the putative Class, with respect to claims arising during the Class Period in this litigation and/or in arbitration proceedings, (3) prohibiting Defendant from communicating with putative Class Members regarding settlement or resolution of this case or their claims in the instant case without the pre-approval of this Court; and (4) ordering Defendant to provide putative Class Counsel with names and email addresses of the putative Class Members.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities in Support of the Motion, the Declaration of Julian Hammond filed concurrently herewith, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

DATED:   January 3, 2023                               Respectfully submitted,


                                                       /s/ Julian Hammond
                                                       Julian Hammond
                                                       *Attorneys for Plaintiffs and the Putative Classes*

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................ 1

II.  STATEMENT OF ISSUES TO BE DECIDED .................................................... 2

III.  LEGAL STANDARD ..................................................................................................... 2

IV.  BACKGROUND ............................................................................................................. 4

V.  ARGUMENT ................................................................................................................... 8

    A.  Defendant Presented the Updated TOS in a Misleading, Abusive, and Coercive Manner .......................................................................................................... 8

    B.  Defendant's Attempt to Procure Releases is Misleading, Abusive, Coercive, and Potentially Interferes with Putative Class Members' Rights in the Present Action .... 8

    C.  Defendant's Imposition of a Class Action/Joinder Waiver in Litigation and a New Arbitration Regime on Putative Class Members Interferes with their Rights in the Present Action, and is Misleading and Coercive ....................................................... 11

    D.  Defendant Should Be Enjoined from Enforcing Sections 9, 13, and 14 of the Updated Terms of Service Against Putative Class Members Pending the Resolution of This Litigation and From Communicating with Putative Class Members Regarding Settlement or Resolution of This Case or Their Claims in the Instant Case Without Court Approval ..................................................... 13

    E.  Defendant Should Be Required to Send Corrective Notices and to Provide Putative Class Counsel with Contact Information for Putative Class Members ....... 14

VI.  CONCLUSION .............................................................................................................. 15

1

# **TABLE OF AUTHORITIES**

2

**Cases**

3

*Balasanyan v. Nordstrom, Inc.*,
 No. 11-CV-2609-JMWMC, 2012 WL 760566 (S.D. Cal., Mar. 8, 2012) .........................12

*Belt v. Emcare, Inc.*,
 299 F. Supp. 2d 664 (E.D. Tex. 2003) ...........................................................................14

*Casey v. Proctor*,
 59 Cal. 2d 97 (1963) ......................................................................................................9

*Dominguez v. Better Mortgage Corp.*,
 No. 22-55731, 2023 WL 8462458 (9th Cir. Dec. 7, 2023) ..............................................2

*Erhardt v. Prudential Group*,
 629 F.2d 843 (2d Cir. 1980) ..........................................................................................11

*Friedman v. Intervet Inc.*,
 730 F. Supp. 2d 758 (N.D. Ohio 2010) ......................................................................3, 10

*Gonzalez v. Preferred Freezer Services, LBF, LLC*,
 No. 12-CV-03467, 2012 WL 4466605 (C.D. Cal. Sept. 27, 2012) ...........................3, 9, 15

*Gulf Oil Co. v. Bernard*,
 452 U.S. 89 (1981) ..................................................................................................2, 3, 13

*Hampton Hardware v. Cotter & Co.*,
 156 F.R.D. 630 (N.D. Tex. 1994) ..................................................................................10

*In re Currency Conversion Fee Antitrust Litig.*,
 361 F. Supp. 2d 237 (S.D.N.Y. 2005) .....................................................................3, 10, 11, 12

*Jimenez v. Menzies Aviation Inc.*,
 No. 15-cv-02392-WHO, 2015 WL 4914727 (N.D. Cal., Oct. 8, 2020) ...........................12

*Kater v. Churchill Downs Inc.*,
 423 F. Supp. 3d 1055 (W.D. Wash. 2019) ......................................................................12

*Leaf v. City of San Mateo*,
 104 Cal. App. 3d 398 (1980) ...........................................................................................9

*Long v. Fid. Water Sys., Inc.*,
 No. C-97-20118 RMW, 2000 WL 989914 (N.D. Cal. May 26, 2000) .............................12

*Masonek v. Wells Fargo Bank*,
 No. SA-CV-091048DOCRNBX, 2009 WL 10672345 (C.D. Cal. Dec. 21, 2009) .......................4, 14

*Mitchell v. Corelogic, Inc.*,
 No. SA CV 17-2274-DOC (DFMx), 2019 WL 7171595 (C.D. Cal., July 19, 2019) ...................14

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013)..........................2, 3, 14

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2014 WL 1760314 (N.D. Cal. May 2, 2014)..........................passim

*Piekarski v. Amedisys Illinois, LLC*,
   No. 12–CV–7346, 2013 WL 605548 (N.D. Ill. Nov. 12, 2013)........................................12

*Ralph Oldsmobile Inc. v. Gen. Motors Corp.*,
   No. 99 Civ. 4567 (AGS), 2001 WL 1035132 (S.D.N.Y., Sept. 7, 2001)..........................10

*Randolph v. PowerComm Constr., Inc.*,
   41 F. Supp. 3d 461 (D. Md. 2014) ...............................................................................13

*Slavkov v. Fast Water Heater Partners I, LP*,
   No. 14-CV-04324-JST, 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) ............................12

*Talavera v. Leprino Foods Co.*,
   No. 1:15-CV-105-AWI-BAM, 2016 WL 880550 (E.D. Cal. Mar. 8, 2016)........................3

*Wang v. Chinese Daily News, Inc.*,
   623 F.3d 743 (9th Cir. 2010) .......................................................................................13

*Winet v. Price*,
   4 Cal. App. 4th 1159 (1992).............................................................................................9

**Statutes**

California Civil Code § 1542 ...............................................................................................9

Fed. R. Civ. Proc. 20 ...........................................................................................................6

Fed. R. Civ. Proc. 23(d)..............................................................................................passim

**Treatises**

Manual for Complex Litigation (3d ed.) § 30.24 ................................................................14

1

## I.      INTRODUCTION

2      On or about December 22, 2023, TaxAct, Inc. ("TaxAct" or "Defendant") changed its Terms

3  of Service and License Agreement ("Updated TOS") by posting them on its website, making them

4  effective immediately, and purportedly making them a legally binding contract with all persons who

5  visit the site. Decl. of Julian Hammond ("Hammond Decl.") ¶ 2, Ex. A. Importantly, the Updated TOS

6  have the potential to interfere with the rights of putative Class Members in this Action because they

7  include new or revised provisions that purport to: (1) release TaxAct from "responsibility, liability,

8  claims, demands, and/or damages of every kind and nature, in any way arising out of or related to the

9  operation, or [use of TaxAct's services] that in any way arise out of or related to the acts or omissions

10  of third parties" (including some of the claims alleged in this Action); (2) with respect to California

11  residents, release TaxAct from all claims of any type; (3) alter the procedural rights of putative Class

12  Members by eliminating the right to permissive joinder and class litigation in court; and (4) alter the

13  rights of putative Class Members in any arbitration proceeding. *Id.*, Ex. A ("Updated TOS"), §§ 9, 13,

14  14.

15      Defendant presented these Updated TOS in a manner that was misleading and coercive,

16  provided no monetary consideration for the ostensible releases from liability sought therein, and

17  provided no information regarding the pendency of this litigation when making these communications.

18      Pursuant to Rule 23(d) of the Federal Rules of Civil Procedure, this Court has the power to

19  remedy these abuses, protect class members, and safeguard the administration of justice and the

20  integrity of the class certification process. Plaintiffs respectfully submit that the Court should (1)

21  enjoin Defendant from enforcing the offending provisions of the Updated TOS against putative Class

22  Members in this litigation and/or in arbitration with respect to claims arising during the Class Period;

23  (2) prohibit Defendant from communicating with putative Class Members regarding settlement or

24  resolution of this case, or their claims in the instant case, without pre-approval; (3) require Defendant

25  to arrange and pay for the emailing and mailing of a corrective notice that informs putative Class

26  Members of the changes made by the Updated TOS, the pendency of this litigation, that Defendant is

27  enjoined from enforcing §§ 9, 13, and 14 of the Updated TOS, and putative class counsel's contact

28  information; (4) require Defendant to prominently post this notice on its website such that it is visible

1   prior to putative Class Members signing back in to their accounts; and, (5) require Defendant to
2   provide putative class counsel with the names and email addresses of all putative Class Members.

3   **II.      STATEMENT OF ISSUES TO BE DECIDED**

4   1.  Did Defendant engage in communications with putative Class Members that (a) sought to have
5       putative Class Members waive or relinquish their rights to remedies or relief in this Action or (b)
6       sought to substantially alter their procedural rights in this Action.

7   2.  If so, did these communications omit critical information or were they otherwise misleading or
8       coercive.

9   3.  If so, should the Court issue an order that Defendant: (a) be enjoined from enforcing §§ 9, 13, and
10      14 of the Updated TOS against putative Class Members in respect to claims arising during the
11      Class Period in this litigation and/or in arbitration; (b) be enjoined from communicating with
12      putative Class Members regarding settlement or resolution of this case or their claims in the instant
13      case without the approval of this Court; (c) issue a corrective notice to putative Class Members by
14      mail, email, and by posting that notice on its website; and, (d) provide the names and email
15      addresses of putative Class Members to putative class counsel forthwith.

16  **III.     LEGAL STANDARD**

17          While parties are free to communicate with class members, such communications, even at the
18  pre-certification stage, must not be misleading. *See* Fed. R. Civ. Proc. 23(d); *see Dominguez v. Better*
19  *Mortgage Corp.*, No. 22-55731, 2023 WL 8462458, *7 (9th Cir. Dec. 7, 2023) ("The Supreme Court
20  recognizes that district courts have the duty and the power to oversee communications from both
21  defendants and class counsel with potential class members . . . .") (citing *Gulf Oil Co. v. Bernard*, 452
22  U.S. 89, 101 (1981)).

23          "[U]nder Rule 23(d) . . . the inquiry is whether the communication is abusive, misleading,
24  coercive, or otherwise affects the administration of justice in the context of a putative class action
25  lawsuit." *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6407583, at *4 (N.D. Cal.
26  Dec. 6, 2013). "Whether a communication is misleading or coercive—and therefore warrants judicial
27  intervention—often depends not on one particular assertion, but rather the overall message or

28

impression left by the communication." *Talavera v. Leprino Foods Co.*, No. 1:15-CV-105-AWI-BAM, 2016 WL 880550, at *5 (E.D. Cal. Mar. 8, 2016) (citation omitted).

"Courts have . . . found procuring waiver, settlement, or arbitration agreements without providing adequate information about the pending class action are misleading communications which the court may limit." *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2014 WL 1760314, at *7 (N.D. Cal. May 2, 2014) (citing *Gonzalez v. Preferred Freezer Services, LBF, LLC,* No. 12-CV-03467, 2012 WL 4466605, * 1 (C.D. Cal. Sept. 27, 2012) (finding a communication procuring a waiver was misleading where it did not provide sufficient information about the pending action that would "provide the potential plaintiffs with adequate notice of this case in order to make an informed decision regarding waiver of their rights"); *Friedman v. Intervet Inc.,* 730 F. Supp. 2d 758, 763 (N.D. Ohio 2010) (finding a communication procuring a settlement was misleading where the defendant did not inform putative class members that they were possibly giving up participation in the pending putative class action); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 251-52 (S.D.N.Y. 2005) (finding that communication of an arbitration agreement to putative class members was misleading, where the defendant omitted the "critical information" that there was ongoing litigation and that "by failing to reject the arbitration clause, they were forfeiting their rights as potential plaintiffs")).

In determining whether, and how, to exercise control over communications with putative class members, a court must consider whether there is "potential interference" with the rights of those individuals. *O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583, at *5. As the court explained in *O'Connor v. Uber Techs., Inc.*:

> The Supreme Court's articulation of the requisite factual finding for a district court to limit class communications pursuant to Rule 23(d) does not require a finding of actual misconduct:
>
> "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the ***need for a limitation*** and the ***potential interference*** with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing-identifying the potential abuses being addressed-should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances."

2013 WL 6407583, at *4–5 (quoting *Gulf Oil Co.*, 452 U.S., at 101-02 (emphasis added)). As a method of controlling communications, "curative notices from the court, at the expense of those at

1  fault, may be appropriate where class members have received communications containing

2  misinformation or misrepresentations." *Masonek v. Wells Fargo Bank*, No. SA-CV-

3  091048DOCRNBX, 2009 WL 10672345, at *2 (C.D. Cal. Dec. 21, 2009) (citing Manual for Complex

4  Litigation (3d ed.) § 30.24); *see also O'Connor v. Uber Techs., Inc.*, 2014 WL 1760314, *7 ("Courts

5  may require corrective notices to remedy improper communications already made." (citations

6  omitted)).

7  **IV.    BACKGROUND**

8          On January 24, 2023, Plaintiff Smith-Washington filed this putative class action alleging

9  various causes of action relating to TaxAct's use of third-party tracking tools on its website that

10 disclosed confidential personal and financial information to unauthorized third parties. Moreover, a

11 number of those causes of action relate to or arise out of those unauthorized third parties intercepting

12 communications between putative Class Members and TaxAct through those same tracking tools.

13         Throughout the pendency of this litigation, TaxAct has maintained the position that two

14 versions of the Terms of Service were in effect during the relevant period, the "2017 Terms," effective

15 January 5, 2017, and the "2020 Terms," effective November 17, 2020. *See* Dkt. 50, Def's Motion to

16 Compel Arbitration (June 8, 2023), at 3:3-5; Hammond Decl., Exs. D, E. That all changed on

17 December 22, 2023, when TaxAct posted the Updated TOS on its website.

18         The Updated TOS state:

19         This Terms of Service and License Agreement (this "**Agreement**") is a legally-binding
           contract between TaxAct ("**TaxAct**", "**we**", "**us**", or "**our**") and you ("**you**", "**your**", or "**user**"),
20         a visitor or user of TaxAct's websites, mobile applications, online and offline tax return
           preparation products, and related services, and, if selected by you, TaxAct's electronic filing
21         services along with any of our other services which link to this Agreement (collectively, the
           "**Services**").
22

23 Hammond Decl., Ex. A ("Updated TOS"), opening paragraphs. The Updated TOS further provide:

24         You may not use the Services until you have read and agreed to this Agreement. BY
           DOWNLOADING, ACCESSING OR USING THE SERVICES, YOU INDICATE YOUR
25         UNCONDITIONAL ACCEPTANCE OF THIS AGREEMENT. IF YOU DO NOT ACCEPT
           THIS AGREEMENT, YOU MUST TERMINATE YOUR USE OF THE SERVICES.
26

27 *Id.* Thus, the Updated TOS purport to apply to any individual who visits or uses TaxAct's website.

28 This would include putative Class Members, in the instant case, who visit or use TaxAct's website at

   any time after December 22, 2023.

On or about December 22, 2023, TaxAct also changed its sign-in page for returning users. On the sign-in page, available at https://www.taxact.com/auth/, TaxAct states that, "By signing in, you agree to the Terms of Service, and you have read and acknowledge the Privacy Notice (updated December 22, 2023)." Hammond Decl. ¶ 3. The words "Terms of Service" are a hyperlink that, when clicked on, takes a customer to the Updated TOS. *Id*. Nowhere on the sign-in page is there any indication that the Terms of Service have been updated. *Id.*, Ex. B.

The Updated Terms of Service include several new or amended provisions which purport to affect the rights of putative Class Members to participate in the instant case:

First, the previous Terms of Service, the 2020 Terms, were limited in effect, by their own terms, to the "then-current tax filing year." *Id*., Ex. D, opening paragraph. In contrast, the Updated TOS contain no such limitation and, thus, apply retroactively to prior tax filing years. *Id*, Ex. A. Thus, if enforced, the Updated TOS would apply to the Class Period in the instant case (i.e., claims arising on or prior to November 23, 2022).

Second, the Updated TOS purport to eliminate the right of all putative Class Members to recover under several causes of action in the instant case and in any arbitration. Section 9 provides: "you release TaxAct from responsibility, liability, claims, demands, and/or damages of every kind and nature, in any way arising out of or related to the operation, or your use, of the Services or any Content that in any way arise out of or related to the acts or omissions of third parties." Updated TOS, § 9. No analogous or equivalent provision was in the previous versions of the Terms of Service. *See Id.*, Exs. D & E. This newly-added provision, if enforced, could potentially prevent Plaintiffs from seeking statutory penalties and other relief from TaxAct on behalf of customers subject to the Updated TOS where Plaintiffs' claims are based, at least in part, on the actions of third parties, such as Google and Meta, including Plaintiffs' putative class claims under the ECPA, CIPA, and CCDAFA.

With respect to putative Class Members who are residents of California, Section 9 purports to go further and appears to seek a general release, stating:

YOU HEREBY WAIVE ANY RIGHTS YOU MAY HAVE ARISING OUT OF THESE TERMS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH SAYS "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY

HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY." YOU ALSO WAIVE ANY RIGHTS YOU MAY HAVE WITH RESPECT TO THIRD PARTY DISPUTES UNDER ANY OTHER STATUTE OR COMMON LAW PRINCIPLES THAT WOULD OTHERWISE LIMIT THE COVERAGE OF THIS RELEASE TO INCLUDE ONLY THOSE CLAIMS WHICH YOU MAY KNOW OR SUSPECT TO EXIST IN YOUR FAVOR AT THE TIME OF AGREEING TO THIS RELEASE.

Updated TOS, § 9 (uppercase in original).

Third, the Updated TOS, in the event any putative Class Member brings a case in court (if he or she opts out of arbitration), seek to eliminate the right to permissive joinder under Rule 20 of the Federal Rules of Civil Procedure, and the right to bring a class action in court pursuant to Rule 23. *See* Updated TOS, § 14 ("Any dispute between the Parties that is not subject to Arbitration…will be resolved on an individual basis exclusively in the state or federal courts of Texas…").

Fourth, while the previous versions of the Terms of Service contained arbitration provisions, the arbitration provisions in the Updated TOS differ materially. The new arbitration provisions eliminate JAMS as the arbitration provider, and in fact do not appoint any provider. Updated TOS, § 13. By eliminating the incorporation by reference of the JAMS Rules into the 2020 Terms and 2017 Terms, the new arbitration provisions also eliminate the delegation clause found in the prior arbitration provisions, which purported to delegate issues regarding the unconscionability or scope of the arbitration agreement to the arbitrator. *Id.*; Ex. D, p. 6; Ex. E, p. 5. Moreover, the new arbitration provisions provide that any arbitration shall be administered pursuant to JAMS Streamlined Arbitration Rules and Procedures "or other comparable rules to which you and we agree." *Id.* Ex. A, Updated TOS, § 13. Prior versions of the Terms of Service did not include the language in quotes. *Id.*, Exs. D & E. The updated TOS also provide that if the parties are unable to agree on an arbitrator, the parties may petition the state or federal courts in Dallas County, Texas to appoint an arbitrator. *Id.* Ex. A, Updated TOS, § 13. This provision was not included in the prior Terms of Service. *Id.*, Exs. D & E.

Fifth, the Updated TOS provide for the treatment of individual arbitrations as "Coordinated Disputes." *Id.* Ex. A, § 13. Under this provision, if twenty-five (25) or more similar disputes are asserted against TaxAct at or around the same time, TaxAct may, in its sole discretion, require the disputes to proceed in a court of competent jurisdiction in Dallas County, Texas. *Id.* If TaxAct opts to proceed in court, its class and collective action waivers still apply, *i.e.*, the consumer will not be able

to represent anyone besides themselves in the litigation. *Id.* The terms regarding coordinated disputes are entirely new to the Terms of Service as updated on December 22, 2023. No equivalent, analogous, or even similar terms were included in prior versions of the Terms of Service. *Id.*, Exs. D & E.

Sixth, should TaxAct decide not to proceed in court, the Updated TOS now provide for "batching procedures" which are designed to "reduce the costs and gain efficiencies associated with litigating multiple cases." *Id.*, Ex. A, § 13. These batching procedures provide for a staged process in which twenty-six (26) cases are selected to proceed first. No other disputes are permitted to proceed to arbitration until the conclusion of the initial 26 cases, and no arbitration fees are assessed in connection with disputes other than the original 26. After the original 26 disputes conclude, the parties must participate in a "global mediation session." *Id.* If that mediation is not successful, the batching procedure is repeated, with another 26 disputes selected for arbitration, followed by mediation, repeated until all disputes have been resolved or a settlement is reached. *Id.* The terms regarding batching procedures are entirely new to the Updated TOS. No equivalent, analogous, or even similar terms were included in prior versions of the Terms of Service. *Id.*, Exs. D & E.

Nowhere on the TaxAct website, including on the sign-in page, other than in the Updated TOS themselves, does TaxAct give any indication that the Terms of Service have been updated. Hammond Decl. ¶ 4. Moreover, nowhere on the website, including in the Updated TOS themselves, is there any indication to putative Class Members that they are potentially part of the instant pending class action. Nor is there any indication given that the Updated TOS purport to interfere, or may potentially interfere, with the rights of putative Class Members to participate in the instant Action. *Id.*

The Parties have made substantial efforts to meet and confer regarding the issues raised in the instant Motion. Defendant has indicated a willingness to agree "not to seek to enforce the [Updated TOS] against . . . those who are members of the class [Plaintiffs] seek to represent, should that class be certified" and not to seek to enforce §§ 9, 13, and 14 "against any TaxAct customer who may have a claim that arose during the putative class period until such time as [Defendant's motion to compel arbitration and Plaintiffs' forthcoming motion for class certification] are ruled upon." *Id.* ¶ 16, Ex. M. This was not the agreement sought by Plaintiffs and would not preclude Defendant from seeking to enforce §§ 9, 13, and 14 of the Updated TOS against Plaintiffs or putative Class Members either in

arbitration or in court proceedings after an unsuccessful motion for class certification. Indeed, it appears that Defendant is intent on enforcing §§ 9, 13, and 14 against absent Class Members if this Action is compelled to arbitration and/or is not certified. Despite repeated requests from Plaintiffs, Defendant simply will not agree not to seek to enforce these sections of the Updated TOS against putative Class Members with respect to claims arising during the Class Period in this litigation and/or in arbitration. *See id.* ¶¶ 10-16, Exs. F-M. Accordingly, Plaintiffs seek relief from the Court in order to protect the rights and interests of putative Class Members.

## V. ARGUMENT

### A. Defendant Presented the Updated TOS in a Misleading, Abusive, and Coercive Manner

Defendant presented the Updated TOS in a misleading, abusive and coercive manner. On its sign-in page, TaxAct states: "By signing in, you agree to the <u>Terms of Service</u>, and you have read and acknowledge the <u>Privacy Notice</u> (updated December 22, 2023)." Hammond Decl. ¶ 3. The use of the parenthetical phrase "(updated December 22, 2023)" after the phrase "Privacy Policy," implies that the phrase and date therein refer only to TaxAct's Privacy Policy. As such, a reasonable putative Class Member would understand that the Privacy Policy had been updated and not the Terms of Service. In fact, as detailed above, the Updated TOS were materially changed in ways that could jeopardize putative Class Members' ability to participate in the class action filed by Plaintiffs on their behalf.

Rather than apprise putative Class Members of these important changes and their potential implications for putative Class Members' rights in the instant case, Defendant has given no indication anywhere on its website, or in any other communication, that putative Class Members are potentially part of the instant case, or that changes in the Terms of Service might, potentially, interfere with their rights. Lacking critical information and seeking to cause putative Class Members to unwittingly, potentially, jeopardize their rights in the instant case, are precisely the kinds of communications that courts have found to be misleading. *See O'Connor v. Uber Techs., Inc.*, 2014 WL 1760314, at *7.

### B. Defendant's Attempt to Procure Releases is Misleading, Abusive, Coercive, and Potentially Interferes with Putative Class Members' Rights in the Present Action

Through the Updated TOS, Defendant is attempting to procure releases from unwitting putative Class Members in relation to some or all of the causes of action in the instant case. As noted

above, Section 9 of the Updated TOS purports to effect a release by putative Class Members of TaxAct's liability on Plaintiffs' claims in the instant case, that are based, at least in part, on the actions of third parties, such as Google and Meta, including, at a minimum, Plaintiffs' putative class claims under the ECPA, CIPA, and the CCDAFA. With respect to California residents, § 9 appears to go further, waiving such residents' rights under California Civil Code § 1542 and potentially seeking a general release of all claims. Updated TOS, § 9. Even if the relevant language applies only to California residents' claims arising from or related to the acts or omissions of third parties, the purported release of California residents' rights under § 1542 evinces Defendant's desire to obtain broad releases without adequate notice to the affected individuals. Section 1542 is intended to "prevent a releasor from inadvertently waiving unknown claims merely by signing a general release." *Winet v. Price*, 4 Cal. App. 4th 1159, 1170 (1992) (citing *Casey v. Proctor*, 59 Cal. 2d 97, 108-09 (1963)). To whit, "mere recital . . . that the protection of [§ 1542] is waived, or that the release covers unknown claims or unknown parties is not controlling." *Leaf v. City of San Mateo*, 104 Cal. App. 3d 398, 411 (1980). Rather, it must be that the releasors actually intended to waive the protections of § 1542. *See id.* No such intention can be found where putative Class Members have received no notice of the addition of the § 1542 waiver or the potential general release to the Terms of Service.

Defendant's attempts to obtain such releases were misleading because Defendant: (i) sought to obtain them without putative Class Members being aware that such releases were, now, part of the Terms of Service; (ii) did not provide any information to putative Class Members about the pendency of this Action, including, but not limited to the causes of action alleged; (iii) did not offer an indication that the Updated TOS may impact putative Class Members' claims in this Action; (iv) did not provide putative class members any monetary consideration for the purported releases; and, (v) did not provide the contact information for putative class counsel so that putative Class Members could seek clarity regarding the implications of Defendant's changes to the Terms of Service.

"Courts have . . . found procuring waiver, settlement, or arbitration agreements without providing adequate information about the pending class action are misleading communications which the court may limit." *O'Connor v. Uber Techs., Inc.*, 2014 WL 1760314, at *7 (citing *Gonzalez v. Preferred Freezer*, 2012 WL 4466605, *1 (finding that a communication procuring a waiver was

misleading, where it only mentioned that a former employee had brought a lawsuit against the defendants, and did not provide further information that would "provide the potential plaintiffs with adequate notice of this case in order to make an informed decision regarding waiver of their rights"); *Friedman v. Intervet Inc.,* 730 F. Supp. 2d at 763 (finding that a communication procuring a settlement was misleading, where the defendant did not inform putative class members that they were possibly giving up participation in the pending putative class action).

In addition to being misleading, Defendant's communications with putative Class Members are potentially coercive because they are part of an ongoing business relationship between Defendant and those putative Class Members who choose to visit or use Defendant's website after December 22, 2023. *See Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994) (noting that because defendant and potential class members were involved in on-going business relationships, there was potential for coercion); *Ralph Oldsmobile Inc. v. Gen. Motors Corp.*, No. 99 Civ. 4567 (AGS), 2001 WL 1035132, at *4 (S.D.N.Y., Sept. 7, 2001) ("[A] finding of potential coercion is warranted here," because "the potential class members depend upon the defendant for information, supplies, and credit."). Indeed, many putative Class Members are likely to return to use Defendant's services because of the ease of returning to use the same tax preparation service (which retains information from prior year returns). Hammond Decl. ¶ 6. Moreover, putative Class Members have no other "realistic source of information regarding this litigation." *In re Currency Conversion*, 361 F. Supp. 2d at 253 (finding communications to be "potentially coercive and improper" in light of putative class members' "dependence on defendants for their future credit needs and information.").

Defendant may argue that it is simply engaging in business communications rather than a class communication subject to Rule 23(d). This same argument was made by defendant in *O'Connor v. Uber Techs., Inc.*, 2014 WL 1760314, at *7. In that case, the court correctly held that "the touchstone under Rule 23(d) is not whether the communication is of an ordinary business nature; rather, the inquiry is whether the communication is abusive, misleading, coercive, or otherwise affects the administration of justice in the context of a putative class action lawsuit." *Id*., at *4. Moreover, it does not matter whether Defendant intended to interfere with putative Class Members' rights in the instant lawsuit; "Willful misconduct on the defendant's part is not required so long as the effect is to interfere

1    with class members' rights." *Id.* at *5.

2    **C.   Defendant's Imposition of a Class Action/Joinder Waiver in Litigation and a New**

3    **Arbitration Regime on Putative Class Members Interferes with their Rights in the**

4    **Present Action, and is Misleading and Coercive**

5    Defendant also purports to eliminate putative Class Members' rights to permissive joinder and

6    to proceed as a class action, and imposes new arbitration provisions, all of which would materially

7    alter putative Class Members' rights. First, § 14 of the Updated TOS provides that proceedings in

8    Court are to be conducted on "an individual basis" only, thereby eliminating putative Class Members'

9    rights afforded to them under Federal Rules of Civil Procedure 20 and 23. Updated TOS, § 14.

10   Second, TaxAct removed JAMS as the mandatory arbitration provider (without replacement),

11   removed the JAMS rules regarding the appointment of an arbitrator (now providing that if agreement

12   is not reached, either party can seek the appointment of an arbitrator from the courts located in Dallas),

13   provides for a new coordinated arbitration procedure that requires batching of arbitrations, and gives

14   TaxAct the right, in its sole discretion, to opt out of arbitration. *See* Updated TOS, § 13.

15   Courts have routinely found that attempts by a party to encourage putative class members in a

16   pending lawsuit to agree to a new or materially different arbitration agreement or to waive some of

17   their claims being advanced in the pending lawsuit constitute misleading communications. In *In re*

18   *Currency Conversion*, for example, the court found that defendants who modified their cardholder

19   agreements to include arbitration provisions during the pendency of the litigation engaged in

20   "improper" communications with putative class members, within the meaning of Rule 23(d), because

21   they sought to eliminate putative class members' rights in pending litigation, without appropriate

22   notice of the pending litigation or the potential effect of the changes to the agreements. 361 F.Supp.2d,

23   at 254. The court noted: "[o]ne policy of Rule 23 is the protection of class members from 'misleading

24   communications from the parties or their counsel.'" *Id.* at 252 (citing *Erhardt v. Prudential Group*,

25   629 F.2d 843, 846 (2d Cir. 1980)). And found "[t]hat same policy concern applies where a party

26   misleads class members by omitting critical information from its communications." *Id.* at 252.

27   Similarly, in *Balasanyan v. Nordstrom, Inc.*, the district court found it sufficient to justify the

28   exercise of control under Rule 23(d) where defendant's failure to disclose pending litigation when it

1   circulated its arbitration agreement for approval "create[d] an incentive to engage in misleading

2   behavior." No. 11-CV-2609-JMWMC, 2012 WL 760566, *3 (S.D. Cal., Mar. 8, 2012). The court in

3   *Balasanyan* noted that one purpose of Rule 23 is to "prevent improper contacts that could jeopardize

4   the rights of the class members," including inducing putative class members from participating in the

5   class action. *Id. See also*, *Slavkov v. Fast Water Heater Partners I, LP*, No. 14-CV-04324-JST, 2015

6   WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015) ("Courts in this district have limited communications, as

7   well as invalidated agreements that resulted from those communications, when they omitted critical

8   information or were otherwise misleading or coercive." (collecting cases)); *see also Piekarski v.*

9   *Amedisys Illinois, LLC*, No. 12–CV–7346, 2013 WL 605548, at *2 (N.D. Ill. Nov. 12, 2013) (finding

10   improper, abusive, and misleading arbitration program implemented during pendency of action which

11   involved onerous opt-out procedure that likely prevented participation in the class action).

12       In this case, Defendant is attempting to impose a new arbitration regime and litigation

13   provisions on putative Class Members. As in *In re Currency Conversion*, this Court should hold that

14   the unsupervised communications with putative Class Members were improper because Defendant

15   sought to eliminate putative Class Members' rights in this litigation, and that the arbitration and class

16   action waiver/joinder provisions may not be enforced against putative Class Members. *See Long v.*

17   *Fid. Water Sys., Inc.*, No. C-97-20118 RMW, 2000 WL 989914, at *3 (N.D. Cal. May 26, 2000)

18   (refusing to require arbitration where the agreement was modified after the filing of a putative class

19   action); *Balasanyan*, 2012 WL 760566, at *4 ("[B]ecause Nordstrom's communication constituted an

20   improper attempt to alter the pre-existing arbitration agreement with putative class members during the

21   litigation, this court invalidates the . . . agreement as to putative class members."); *Kater v. Churchill*

22   *Downs Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019) ("Many courts have found that a

23   defendant's attempt to foist a new arbitration provision on putative class members is an improper

24   communication."); *Jimenez v. Menzies Aviation Inc.*, No. 15-cv-02392-WHO, 2015 WL 4914727, *6

25   (N.D. Cal., Oct. 8, 2020) (determining new arbitration policy was invalid as applied to putative class

26   members who were not informed of the pending lawsuit).

27   ///

28   ///

**D. Defendant Should Be Enjoined from Enforcing Sections 9, 13, and 14 of the Updated Terms of Service Against Putative Class Members Pending the Resolution of This Litigation and From Communicating with Putative Class Members Regarding Settlement or Resolution of This Case or Their Claims in the Instant Case Without Court Approval**

"Because of the potential for abuse, [this Court] has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*, 452 U.S. 89 at 100. "Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010). "The prophylactic power accorded to the court presiding over a putative class action under Rule 23(d) is broad; the purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but to safeguard generally the administering of justice and the integrity of the class certification process." *O'Connor v. Uber Techs., Inc.*, 2014 WL 1760314, at *3.

Here, the behavior of Defendant, in seeking a release of several of the claims in the pending litigation without due notice to putative Class Members, and for no monetary consideration, is an outrageous abuse. As noted above, Defendant has offered to enter into various stipulations, each of which would leave Defendant open to take advantage of its misleading conduct and to seek to enforce §§ 9, 13, and 14 of the Updated TOS against Plaintiffs or putative Class Members either in arbitration or in court proceedings should no class ultimately be certified. To prevent this unfair outcome, Defendant should be enjoined from enforcing §§ 9, 13, and 14 in this litigation and/or in arbitration against putative Class Members with respect to claims arising during the Class Period.

The Court should further enjoin Defendant from communicating with putative Class Members regarding settlement, resolution of this case, or their claims in the instant case, absent Court approval of the proposed communication. This will prevent Defendant from repeating its misleading and abusive behavior and is within the range of relief appropriately granted by this Court. *See, e.g., Randolph v. PowerComm Constr., Inc.*, 41 F. Supp. 3d 461, 467 (D. Md. 2014) (granting plaintiffs' motion for a protective order prohibiting defendant from communicating with absent class members about the pending lawsuit); *Mitchell v. Corelogic, Inc.*, No. SA CV 17-2274-DOC (DFMx), 2019 WL

7171595, at *1 (C.D. Cal., July 19, 2019) (ordering that defendant may not communicate with absent class members without first obtaining written permission from the court). Moreover, the Court should enter such an Order forthwith, because tax season is about to begin, and users, including putative Class Members, will start to return to use TaxAct's website to prepare their tax returns. Hammond Decl. ¶ 7.

**E.  Defendant Should Be Required to Send Corrective Notices and to Provide Putative Class Counsel with Contact Information for Putative Class Members**

Defendant's conduct can only be fully remedied with corrective notices. Even if this Court enjoins Defendant from enforcing §§ 9, 13, and 14, of the Updated TOS in litigation or in arbitration against putative Class Members' claims arising during the Class Period – as Plaintiffs believe it should - those putative Class Members who return to visit or use Defendant's website after December 22, 2023, may still believe that their rights and interests in the instant case have been compromised under the Updated TOS and/or may believe that they cannot participate in the instant case. Moreover, should this Court not fully enjoin Defendant from enforcing the offending provisions of the Updated TOS against putative Class Members, a corrective notice is critical to inform those individuals of the threat to their rights and interests posed by the Updated TOS.

It is within this Court's discretion to require "the issuance of corrective notices and action to ameliorate confusing or misleading communications." *O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583, at *7 (citing *Belt v. Emcare, Inc.,* 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) (requiring defendant to issue corrective notice to inform potential class members of their right to join a putative class action, where defendant sent letter discouraging participation in pending class action)). *See also Masonek*, 2009 WL 10672345, at *2 ("[C]urative notices from the court, at the expense of those at fault, may be appropriate where class members have received communications containing misinformation or misrepresentations." (citing Manual for Complex Litigation (3d ed.) § 30.24)).

Plaintiffs request that Defendant be required to arrange and pay for the mailing and emailing of a corrective notice that informs putative Class Members of the changes made by the Updated TOS, the pendency of this litigation, that Defendant is enjoined from enforcing §§ 9, 13, and 14 of the Updated TOS, and putative class counsel's contact information. Plaintiffs also respectfully request that Defendant be required to prominently post this notice on its website such that it is visible prior to

putative Class Members signing in to their existing account.

Plaintiffs further request that the Court require Defendant to provide the names and email addresses of all putative Class Members to putative Class Counsel, as the court in *Gonzalez v. Preferred Freezer Services* did. *See* 2012 WL 4466605, at *3. In *Preferred Freezer*, the defendant sought releases from putative class members without giving them adequate information about the pending lawsuit. *Id.* at *1 (waiver tendered to employees was misleading because it "did not include any information regarding [pending] class action, except that a former employee had brought lawsuit," "did not attach the Complaint, any information on when the case was filed, nor any information regarding the essence of the case," and "also did not include [plaintiff's] counsel's contact information."). Here, Defendant has provided absolutely no information at all about the pending lawsuit and, thus, has, unquestionably, "misleadingly failed to provide the [putative Class Members with adequate notice of this case in order to make an informed decision regarding waiver of their rights." *Id.* Accordingly, Defendant should be required to provide Plaintiffs with names and email addresses of putative Class Members so that Plaintiffs have an opportunity to ensure that putative Class Members are fully informed about the instant lawsuit.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs motion should be granted, and Defendant should be (1) enjoined from enforcing the offending provisions of the Updated TOS against putative Class Members with respect to claims arising during the Class Period in this litigation and/or in arbitration; (2) prohibited from communicating with putative Class Members regarding settlement or resolution of this case or their claims in the instant case without the pre-approval of this Court; (3) required to arrange and pay for the emailing and mailing of a corrective notice that informs putative Class Members of the changes made by the Updated TOS, the pendency of this litigation, that Defendant is enjoined from enforcing §§ 9, 13, and 14 of the Updated TOS, and putative class counsel's contact information; (4) required to prominently post this notice on its website such that it is visible prior to putative Class Members signing back in to their accounts; and, (5) required to provide putative class counsel with the name and email addresses of all putative Class Members.

DATED:   January 3, 2023                          Respectfully submitted,

/s/ Julian Hammond
Julian Hammond
*Attorneys for Plaintiffs and the Putative Classes*