EXHIBIT 1

1   Julian Hammond (SBN 268489)                      Sheila A.G. Armbrust (SBN 265998)
    Jhammond@Hammondlawpc.com                         sarmbrust@sidley.com
2   Christina Tusan (SBN 192203)                      SIDLEY AUSTIN LLP
    Ctusan@Hammondlawpc.com                           555 California Street, Suite 2000
3   Adrian Barnes (SBN 253131)                        San Francisco, CA 94104
    Abarnes@Hammondlawpc.com                          Telephone: (415) 772 1200
4   Ari Cherniak (SBN 290071)                         Facsimile: (415) 772 7400
    Acherniak@Hammondlawpc.com
5   Polina Brandler (SBN 269086)                      James W. Ducayet (*pro hac vice*)
    Pbrandler@Hammondlawpc.com                        jducayet@sidley.com
6   HAMMONDLAW, P.C.                                  SIDLEY AUSTIN LLP
    1201 Pacific Ave, 6th Floor                       One South Dearborn
7   Tacoma, WA 98402                                  Chicago, IL 60603
    Telephone: (310) 601-6766                         Telephone: (312) 853 7000
8   Facsimile: (310) 295-2385 (Fax)                   Facsimile: (312) 853 7036

9   WARREN D. POSTMAN (SBN 330869)                    Michele L. Aronson (*pro hac vice*)
    wdp@kellerpostman.com                             maronson@sidley.com
10  KELLER POSTMAN LLC                                SIDLEY AUSTIN LLP
    1101 Connecticut Avenue, N.W., Suite 1100         1501 K Street NW
11  Floor Washington, DC 20036                        Washington, DC 20005
    Telephone: (312) 741-5220                         Telephone: (202) 736 8000
12  Facsimile: (312) 971-3502                         Facsimile: (202) 736 8711

13  *Attorneys for Plaintiffs and the Putative Classes*  *Attorneys for Defendant TaxAct, Inc.*

14

**UNITED STATES DISTRICT COURT**

15

**NORTHERN DISTRICT OF CALIFORNIA**

16

**SAN FRANCISCO DIVISION**

17

18  | NICHOLAS C. SMITH-WASHINGTON, | ) | Case No.: 3:23-CV-00830-VC |

19  JOYCE MAHONEY, JONATHAN AMES,    )   Assigned to: Hon. Vince Chhabria
    MATTHEW HARTZ, and JENNY LEWIS, on )
20  behalf of themselves and all others similarly )
    situated,                        )   **CLASS ACTION SETTLEMENT**
21                                    )   **AGREEMENT AND RELEASE**
                    Plaintiffs,       )
22                                    )   Preliminary Approval Hearing Date:
            v.                        )   April 4, 2024
23                                    )
                                      )
    TAXACT, INC.,                     )
24                                    )
                                      )
                    Defendant.        )
25                                    )
                                      )
26  _____)

27

28

DocuSign Envelope ID: 8737C891-549A-489B-8AB7-A60331119348

# TABLE OF CONTENTS

I.      RECITALS ............................................................................................... 1

II.      DEFINITIONS ........................................................................................ 4

III.     SETTLEMENT CLASS CERTIFICATION ..................................... 10

IV.     SETTLEMENT CONSIDERATION ................................................ 11

V.      SUBMISSION OF SETTLEMENT AGREEMENT TO COURT FOR REVIEW AND APPROVAL ........................................................................................ 13

VI.     RELEASES AND DISMISSAL OF ACTION ................................. 17

VII.    MOTION FOR ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS . 19

VIII.   NOTICE AND SETTLEMENT ADMINISTRATION ................... 21

IX.     PLAN OF ALLOCATION ................................................................ 25

X.      OPT-OUTS ........................................................................................... 25

XI.     OBJECTIONS ...................................................................................... 26

XII.    MODIFICATION OR TERMINATION OF SETTLEMENT AND RESERVATION OF RIGHTS ............................................................................................... 28

XIII.   NO ADMISSION OF WRONGDOING OR LIABILITY ............. 29

XIV.   NO DISPARAGEMENT .................................................................... 30

XV.    CAFA NOTICE PURSUANT TO 28 U.S.C. § 1715 ...................... 30

XVI.   TAX MATTERS .................................................................................. 30

XVII.   MISCELLANEOUS PROVISIONS ................................................. 31

**EXHIBIT LIST**

| Exhibit A | Proposed Preliminary Approval Order |
|---|---|
| Exhibit B | Settlement Administration Protocol & Notice Plan (Declaration of Jeanne C. Finegan of Kroll Settlement Administration LLC) |
| Exhibit C | Short-Form Notice |
| Exhibit D | Long-Form Notice |
| Exhibit E | Claim Form |
| Exhibit F | Opt Out Form |
| Exhibit G | Proposed Final Approval Order |
| Exhibit H | Proposed Final Judgment |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release, including Exhibits A-H hereto ("**Settlement Agreement**"), is made and entered into by, between, and among Plaintiffs Nicholas C. Smith-Washington, Joyce Mahoney, Jonathan Ames, Matthew Hartz[1] and Jenny Lewis (together, "**Settlement Class Representatives**"), on behalf of themselves and the Settlement Classes as defined below, and Defendant TaxAct, Inc. ("**Defendant**" or "**TaxAct**"). This Settlement Agreement is subject to Court approval and is intended by the Settlement Class Representatives, the Settlement Classes, and Defendant (collectively, the "**Parties**") to effect a full and final settlement, resolution, and dismissal of this action, *Smith-Washington v. TaxAct, Inc.*, Case No. 3:23-CV-00830-VC (the "**Action**"), upon and subject to the terms and conditions hereof.

**I.      RECITALS**

1.      WHEREAS, on January 24, 2023, Plaintiff Nicholas C. Smith-Washington filed the Action in the Superior Court of California for the County of Alameda (*see* Dkt. No. 1);

2.      WHEREAS, TaxAct is a tax preparation software company that, among other services, offers software to individual tax filers;

3.      WHEREAS, this Action pertains to TaxAct's alleged use of auxiliary services provider technologies;

4.      WHEREAS, on February 23, 2023, Defendant timely removed the Action to this Court;

5.      WHEREAS, on June 20, 2023, Plaintiffs filed a First Amended Complaint (Dkt. No. 56);

6.      WHEREAS, on December 21, 2023, Plaintiffs proposed a Second Amended Complaint (Dkt. No. 101);

7.      WHEREAS, on January 3, 2024, Plaintiffs filed a Motion for Protective Order and Corrective Notice (Dkt. No. 103);

8.      WHEREAS, this Action was vigorously contested and aggressively litigated,

---

[1] Mr. Hartz is represented by Spencer Sheehan of Sheehan & Associates, P.C., in Hartz v. TaxAct, Inc., No. 1:23-cv-04591. Mr. Hartz is represented by Settlement Class Counsel in this matter.

DocuSign Envelope ID: 8737C891-549A-489B-8AB7-A60331119348

including that:

    a.  The Parties engaged in extensive discovery, including production of documents by TaxAct in response to sixty-four requests for production of documents by Plaintiffs

    b.  Plaintiffs deposed two fact witnesses;

    c.  TaxAct responded to thirteen interrogatories;

    d.  The Parties briefed multiple iterations of TaxAct's Motion to Compel Arbitration and Stay Proceedings in response to the Class Action Complaint and First Amended Class Action Complaint, as well as Plaintiffs' Motion for Leave to File Second Amended Complaint;

    9.    WHEREAS, should Defendant's pending Motion to Compel Arbitration and Stay Proceedings succeed, this matter shall proceed through individual arbitration;

    10.    WHEREAS, on November 20, 2023, the Parties mediated their dispute with Hunter Hughes, Esq., in an arm's-length, full-day, contested session, during which the Parties attempted to, but were unable to, negotiate a settlement of their dispute;

    11.    WHEREAS, following the November 20, 2023 mediation session, the Parties continued to negotiate a settlement of their dispute, and ultimately reached an agreement in principle regarding the terms of this Settlement Agreement, culminating in a Memorandum of Understanding that was executed on January 10, 2024;

    12.    WHEREAS, on January 10, 2024, the Parties submitted a Notice of Settlement and requested the Court to stay this Action to allow the parties to focus on finalizing the settlement and preparing the preliminary approval motion (Dkt. No. 106);

    13.    WHEREAS, on January 10, 2024, the Court granted the Parties' request to stay this Action (Dkt. 107);

    14.    WHEREAS, on February 16, 2024, the Parties stipulated to the filing of a Second Amended Complaint (Dkt. 114);

    15.    WHEREAS, on February 20, 2024, the Court granted the Parties' stipulation for leave to file a Second Amended Complaint (Dkt. 116);

    16.    WHEREAS, on February 20, 2024, Plaintiffs filed a Second Amended Complaint

(Dkt. 117);

17.    WHEREAS, before entering into this Settlement Agreement, Settlement Class Counsel conducted a thorough assessment of the relevant law, facts, and allegations to assess the merits and strengths of Settlement Class Representatives' claims, potential remedies, and all defenses thereto, and, based on that assessment, believe that the Settlement Agreement reflects an excellent result for the Settlement Classes and that it is a fair, reasonable, and adequate resolution of the claims, when balanced against the risks associated with continuing to litigate them and the time it would take to secure recovery for the Settlement Classes;

18.    WHEREAS, Defendant denies each of the allegations in the pleadings in the Action, denies that it has engaged in any wrongdoing, denies that the Settlement Class Representatives' allegations state valid claims, denies that Plaintiffs can maintain a class action for purposes of litigation, and vigorously disputes that Settlement Class Representatives and the Settlement Classes are entitled to any relief, but Defendant nevertheless agrees to resolve the Action in this forum, solely for purposes of the Settlement, on the terms set forth in this Settlement Agreement in order to eliminate the uncertainties, burden, expense, and delay of further protracted litigation;

19.    WHEREAS, Defendant has agreed to settlement class action treatment of the claims alleged in this Action pursuant to Fed. R. Civ. P. 23(e) solely for the purpose of compromising and settling those claims on a class-wide basis as set forth herein;

20.    WHEREAS, the Parties agree that the consideration provided to the Settlement Classes and the other terms of the Settlement Agreement were negotiated at arm's length, in good faith by the Parties, and reflect a settlement that was reached voluntarily, after consultation with competent legal counsel, and with the assistance of an independent, neutral mediator;

21.    WHEREAS, the Settlement Class Representatives and Settlement Class Counsel have concluded that the Settlement set forth herein constitutes a fair, reasonable, and adequate resolution of the claims that the Settlement Class Representatives asserted against Defendant, including the claims on behalf of the Settlement Classes, and that it promotes the best interests of the Settlement Classes;

22.    NOW THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO, AND

3

AGREED, by the Settlement Class Representatives, for themselves and on behalf of the Settlement Classes, and by Defendant that, subject to the approval of the Court, the Action shall be settled, and the Released Claims shall be finally and fully settled as to the Released Parties, in the manner and upon the terms and conditions hereafter set forth in this Settlement Agreement.

## II.    DEFINITIONS

23.    In addition to the terms defined elsewhere in the Settlement Agreement, the following terms used in this Settlement Agreement shall have the meanings specified below.

24.    "**Attorneys' Fees and Expenses Award**" means such funds as may be awarded by the Court to Settlement Class Counsel to compensate Settlement Class Counsel for its fees, costs, and expenses in connection with the Action and the Settlement, as described in Section VII.

25.    "**Authorized Claimant**" means a Settlement Class Member or their authorized legal representative who is approved for payment from the Net Settlement Fund and In-Kind Payment in accordance with the requirements established by the Settlement Agreement and the Court.

26.    "**Claim Form**" means the proof of claim form substantially in the form attached as Exhibit E.

27.    "**Claims Submission Deadline**" means the date by which Claim Forms must be postmarked or electronically submitted to be considered timely for participation in any monetary or in-kind benefits of the Settlement. The Claims Submission Deadline shall be 90 days after the Notice Date.

28.    "**Settlement Class Counsel**" means the law firms HammondLaw, P.C. and Keller Postman LLC, including Julian Hammond of HammondLaw, P.C., and Warren D. Postman of Keller Postman LLC, who have the necessary authority and capacity to execute this Settlement Agreement and bind all of the Settlement Class Representatives.

29.    "**Class Notice**" means the Notice of Proposed Settlement of Class Action, which shall include the Short-Form Notice and Long-Form Notice, substantially in the forms attached as Exhibits C and D, respectively, as approved by the Court.

30.    "**Class Period**" means the time period from January 1, 2018, through December 31, 2022, during which Settlement Class Representatives and members of the Settlement Class used

TaxAct's tax preparation services to prepare a tax return.

31.     "**Court**" means the United States District Court for the Northern District of California.

32.     "**Defense Counsel**" means the law firm Sidley Austin LLP and all of Defendant's attorneys of record in the Action.

33.     "**Effective Date**" means the date on which the Final Approval and Final Judgment become Final.

34.     "**Final**" means, with respect to any judicial ruling or order granting the final approval order and/or final judgment, that: (a) if no appeal, motion for reconsideration, reargument and/or rehearing, or petition for writ of certiorari has been filed, the time has expired to file such an appeal, motion, and/or petition; or (b) if an appeal, motion for reconsideration, reargument and/or rehearing, or petition for a writ of certiorari has been filed, the judicial ruling or order has been affirmed with no further right of review, or such appeal, motion, and/or petition has been denied or dismissed with no further right of review. Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any application for attorneys' fees or expenses associated with this Settlement will not in any way delay or preclude the judgment from becoming Final.

35.     "**Final Approval Hearing**" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of: (a) entering a Final Approval Order and Final Judgment and dismissing the Action with prejudice; (b) determining whether the Settlement should be approved as fair, reasonable, and adequate; (c) ruling upon an application for a Service Award by the Settlement Class Representatives; and (d) ruling upon an application by Settlement Class Counsel for an Attorneys' Fees and Expenses Award.

36.     "**Final Approval Motion Deadline**" means the date by which Settlement Class Counsel shall file the motion seeking final approval of the Settlement. The Final Approval Motion Deadline shall be 120 days after the Notice Date, such date being subject to approval or modification by the Court.

37.     "**Final Approval Order**" means the order finally approving the terms of this Settlement Agreement, without material variation from the terms set forth in the proposed order attached as Exhibit G, absent consent of all Parties.

38.     "**Final Judgment**" means a separate judgment to be entered by the Court, pursuant to Federal Rule of Civil Procedure 58(a), dismissing the Action with prejudice.

39.     "**In-Kind Payment**" means the provision of complimentary TaxAct® Xpert Assist ("**Xpert Assist**") to Authorized Claimants to use in connection with preparing a tax return using any TaxAct online do-it-yourself consumer Form 1040 tax return filing product (including TaxAct's free product), applied to tax year 2024. TaxAct will make available to each Authorized Claimant complimentary Xpert Assist. Specifically, upon entering their Social Security number into the TaxAct platform, which occurs at the beginning of the tax return form process, Authorized Claimants will receive a pop-up alerting them to their complimentary Xpert Assist and be able to add and use Xpert Assist immediately.

40.     "**Net Settlement Fund**" means the Qualified Settlement Fund less: (i) the Attorneys' Fees and Expenses Award; (ii) the Service Awards; (iii) any Notice and Administration Costs that are less than Two Million Five Hundred Thousand ($2,500,000.00) U.S. Dollars and zero cents and (iv) such other costs, expenses, or amounts as may be awarded or allowed by the Court.

41.     "**Notice**" or "**Notice Plan**" means the dissemination of notice as described in Section VIII and set forth in Exhibits C and D, attached hereto. In no event shall the Settlement Administrator disseminate notice in any manner materially different from that set forth in the Notice Plan, unless the Parties agree in writing to authorize such forms of notice and the Court so approves.

42.     "**Notice and Administration Costs**" means the reasonable and necessary (i) costs, fees, and expenses that are incurred in connection with providing Notice to the Settlement Class; and (ii) costs, fees, and expenses that are incurred in connection with administering the Claims process and allocating and distributing payments to Settlement Class Members.

43.     "**Notice Date**" means the date upon which the Summary Notice and Class Notice is first disseminated.  Under no circumstances will the Notice Date be prior to April 30, 2024.

44.     "**Objection Deadline**" means the date identified in the Preliminary Approval Order, Summary Notice, and Class Notice by which a Settlement Class Member must serve a written objection, if any, to the Settlement in accordance with Section XI and the other related terms of this Settlement Agreement. Untimely objections and objections not meeting the terms of Section XI will

be deemed overruled. The Objection Deadline shall be 60 days after the Notice Date, such date being subject to approval or modification by the Court.

45. **"Operative Complaint"** means the Second Amended Complaint filed on February 20, 2024.

46. "**Opt-Out Deadline**" means the date identified in the Preliminary Approval Order, Summary Notice, and Class Notice by which a Request to Opt-Out must be filed in writing with the Settlement Administrator in accordance with Section X and the other related terms of this Settlement Agreement in order for a potential Settlement Class Member to be excluded from the Settlement Class. The Opt-Out Deadline shall be 90 days after the Notice Date, such date being subject to approval or modification by the Court.

47. "**Plan of Allocation**" means the proposed plan of allocation of the Net Settlement Fund or such other plan of allocation as the Court may approve.

48. "**Preliminary Approval Order**" means the Order by this Court preliminarily approving the Settlement, providing for Notice to the Settlement Class, and other related matters, without material variation from the terms set forth in the proposed order attached as Exhibit A.

49. "**Qualified Settlement Fund**" means the non-reversionary cash settlement common fund for the benefit of the Settlement Class in the amount of Fourteen Million Nine Hundred and Fifty Thousand U.S. Dollars and Zero Cents ($14,950,000), plus up to Two Million Five Hundred Thousand U.S. Dollars and Zero Cents ($2,500,000) of additional funds set aside to be used towards Notice and Administration Costs with any remainder of unused Notice and Administration Costs funds to be distributed to the Settlement Class.

50. "**Releases," "Released Party," "Releasing Parties,"** and "**Released Claims**" shall have the meanings as set forth in Section VI.

51. "**Request to Opt-Out**" means a written request from a potential Settlement Class Member who seeks to opt out of the Settlement Classes, which is postmarked by the Opt-Out Deadline and complies with all requirements in Section X.

52. "**Service Award(s)**" means the incentive/service awards for the Settlement Class Representatives as approved by the Court, as set forth in Paragraph 94.

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

53.     "**Settlement**" means the settlement embodied in this agreement, including all attached Exhibits (which are an integral part of this agreement and are incorporated in their entirety by reference).

54.     "**Settlement Administrator**" means the firm Kroll Settlement Administration LLC, 2000 Market Street, Suite 2700, Philadelphia, PA 19103, which shall provide Notice in accordance with the approved Notice Plan and administration services pursuant to the terms of the Settlement Agreement.

55.     "**Settlement Classes**" include the Nationwide Settlement Class and the Nationwide Married Filing Jointly Class and the associated California subclasses. Excluded from the Settlement Classes are TaxAct, its current, former and/or future parents, subsidiaries, divisions, affiliates and/or departments, and their employees, officers, directors, management, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies during the Class Period or thereafter; counsel for Plaintiffs and their employees, including but not limited to the undersigned counsel for Plaintiffs and the undersigned counsel's employees; any district judge or magistrate judge to whom this case is or was assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities; customers who only used TaxAct's download do-it-yourself consumer Form 1040 tax return filing product, TaxAct's Professional products, or TaxAct's online do-it-yourself business tax return filing products; and all individuals who have, as of January 9, 2024, filed a demand for arbitration against TaxAct to arbitrate claims that would otherwise be released in accordance with the terms of this Settlement Agreement unless those individuals elect to opt-in to the Settlement Classes by filing a timely Claim Form.

a.     "**Nationwide Class**" includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product during the Class Period, and whose postal address listed on such tax return was in the United States. The Nationwide Class includes the California Subclass.

i.     "**California Subclass**" is a subclass of the Nationwide Class that includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

tax filing product and filed a tax return using the TaxAct online product during the Class Period, and whose postal address listed on such tax return was in California.

b. "**Nationwide Married Filing Jointly Class**" includes all natural persons whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product during the Class Period, and whose postal address listed on such joint tax return was in the United States. The Nationwide Married Filing Jointly Class includes the California Married Filing Jointly Subclass.

i. "**California Married Filing Jointly Subclass**" is a subclass of the Nationwide Married Filing Jointly Class that includes all natural persons residing in California during the Class Period whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product during the Class Period, and whose postal address listed on such joint tax return was in California.

56. "**Settlement Class Member(s)**" means any and all persons who fall within the definitions of the Settlement Classes.

57. "**Settlement Class Representatives**" means Plaintiffs Nicholas C. Smith-Washington, Joyce Mahoney, Jonathan Ames, Matthew Hartz, and Jenny Lewis.

58. "**TaxAct**" or "**Defendant**" means TaxAct, Inc., and refers to the named defendant TaxAct, Inc., as well as all of TaxAct's current and former directors, officers, members, administrators, agents, insurers, beneficiaries, trustees, employee benefit plans, representatives, servants, employees, attorneys, parents, subsidiaries, divisions, branches, units, shareholders, investors, successors, predecessors, and assigns, and all other individuals and entities acting on TaxAct's behalf.

59. "**Taxes**" means all federal, state, or local taxes of any kind imposed on, or measured by reference to or in connection with any income earned by the Qualified Settlement Fund and the expenses and costs incurred in connection with the taxation or tax treatment of the Qualified

Settlement Fund (including, in each case and without limitation, interest, penalties, additions to tax and the reasonable expenses of tax attorneys and accountants).

60. "**Tax Expenses**" means any tax-related expenses and costs incurred in connection with the operation and implementation of this Settlement Agreement (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any tax returns or other tax-related documentation (including those described in Section XIV)).

61. **"Tax Year 2024"** means January 1, 2025, through October 15, 2025, which is the time period when taxpayers can timely file their tax returns for 2024.

62. "**Treas. Reg.**" means the United States Treasury regulations.

63. **"Total Cash Settlement Amount"** means the non-reversionary cash settlement common fund for the benefit of the Settlement Class in the amount of Fourteen Million Nine Hundred and Fifty Thousand U.S. Dollars and Zero Cents ($14,950,000.00) plus up to Two Million Five Hundred Thousand U.S. Dollars and Zero Cents ($2,500,000) of additional funds set aside to be used towards Notice and Administration Costs with any remainder of unused Notice and Administration Costs funds to be distributed to the Settlement Class.

## III.    SETTLEMENT CLASS CERTIFICATION

64. For purposes of settlement only, the Parties agree to seek provisional certification of the Settlement Classes for the Class Period, pursuant to Federal Rules of Civil Procedure 23(e) and 23(b)(3).

65. The Parties further agree that the Court should make preliminary findings and enter the Preliminary Approval Order granting provisional certification of the Settlement Classes subject to the final findings and approval in the Final Approval Order and Final Judgment and appointing the Settlement Class Representatives as the representatives of the Settlement Classes and Settlement Class Counsel as counsel for the Settlement Classes.

66. Defendant does not consent to certification of the Settlement Classes (or to the propriety of class treatment) for any purpose other than to effectuate the settlement of this Action. Defendant's agreement to provisional certification does not constitute an admission of wrongdoing,

fault, liability, or damage of any kind to the Settlement Class Representatives or any of the provisional Settlement Class Members, any admission as to the enforceability of any agreement to arbitrate, or the appropriateness of certification of any class for purposes other than this Settlement.

67.     If this Settlement Agreement is terminated pursuant to its terms, disapproved by any court (including any appellate court), and/or not consummated for any reason, or the Effective Date for any reason does not occur, the Settlement Agreement shall be void, the order certifying the Settlement Classes for purposes of effectuating the Settlement and all preliminary and/or final findings regarding that class certification order shall be automatically vacated upon notice of the same to the Court, the Action shall proceed as though the Settlement Classes had never been certified pursuant to this Settlement Agreement and such findings had never been made, and the Action shall return to the procedural posture on January 9, 2024, in accordance with this Paragraph, including but not limited to reinvigoration of Defendant's Motion to Compel Arbitration, Plaintiff's Motion for Leave to File Second Amended Complaint and Plaintiff's Motion for Protective Order and Corrective Notice. For clarity, should this Settlement Agreement be void, the Parties agree that Defendant has not waived its right to pursue arbitration by entering into this Settlement and Settlement Agreement. No Party nor counsel shall refer to or invoke the vacated findings, order(s), and/or substantive briefing relating to the Settlement or Rule 23 of the Federal Rules of Civil Procedure in connection with the Settlement, if this Settlement Agreement is not consummated and the Action is later litigated and contested by Defendant under Rule 23 of the Federal Rules of Civil Procedure.

## IV.     SETTLEMENT CONSIDERATION

68.     In consideration for the dismissal of the Action with prejudice and the Releases provided in this Settlement Agreement, Defendant agrees to pay the Qualified Settlement Fund, which includes the Notice and Administration Costs), and contribute the In-Kind Payment for the benefit of Settlement Class Members in the manner described in this Section IV of the Settlement Agreement.

### A.  Qualified Settlement Fund

69.     All valid claims paid to Settlement Class Members, Service Awards to the Settlement Class Representatives approved by the Court, the Attorneys' Fees and Expenses Award (in the

11

amount determined by the Court), and any Notice and Administration Costs shall be paid from the Qualified Settlement Fund. In no event shall Defendant be liable under this Settlement Agreement for payment of claims paid to Settlement Class Members, Service Awards to the Settlement Class Representatives, or the Attorneys' Fees and Expenses Award beyond the provision of the In-Kind Payment and the payment of the amount of the Qualified Settlement Fund.

70.    It is estimated that there are 8,263,789 Nationwide Class Members, 2,042,940 Nationwide Married Filing Jointly Class Members (collective, 10,306,729 Class Members), 519,060 California Subclass Members, and 109,096 California Married Filing Jointly Subclass Members. If the total number of Class Members exceeds 10,306,729 by 5% or more, then the Qualified Settlement Fund shall increase by the same percent by which the number of Class Members exceeds 5%, e.g., if the total number of Class Members exceeds 10,306,729 by 7%, the Qualified Settlement Fund shall increase by 2%.

71.    No later than thirty (30) calendar days after the Court's entry of the Final Approval Order, Defendant shall cause to be paid an amount equal to the Qualified Settlement Fund less the sum of the Initial Deposit and any Periodic Payment(s) as set forth in Section IV.B into the Qualified Settlement Fund to be administered by the Settlement Administrator pursuant to the terms of this Settlement Agreement. No appeal shall affect this Paragraph's funding obligation. Aside from the Initial Deposit, the Periodic Payment(s), Taxes, and Tax Expenses, no payments or distributions (whether for claims paid to Settlement Class Members, Service Awards, or Attorneys' Fees and Expenses) will be made from the Qualified Settlement Fund unless and until the Settlement Agreement becomes Final. If this Settlement Agreement is terminated pursuant to its terms, disapproved by any court (including any appellate court), and/or does not become Final for any reason, or the Effective Date for any reason does not occur, then all funds from the Qualified Settlement Fund shall be promptly released and returned to Defendant (along with all accrued interest).

### B. Notice and Administration Costs

72.    Within 30 days after the entry of the Preliminary Approval Order, Defendant shall cause to be paid a sum to be determined and sufficient to effectuate the Notice Plan to the Settlement

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60331119348

Administrator (the "Initial Deposit"). This deadline may be extended by consent of the Parties and the Settlement Administrator.

73.     Following entry of the Preliminary Approval Order, and after payment of the Initial Deposit, Defendant shall cause to be paid all periodic subsequent amounts for Notice and Administration Costs (as invoiced by the Settlement Administrator and approved by Settlement Class Counsel and Defendant) (the "Periodic Payment(s)") (with Notice and Administration Costs in excess of Two Million Five Hundred Thousand ($2,500,000.00) U.S. Dollars and Zero Cents to be deducted from the Net Settlement Fund), within 30 days after the submission of an invoice by the Settlement Administrator. This deadline may be extended by mutual consent of the Parties and the Settlement administrator.

### C. In-Kind Payment

74.     No later than January 1, 2025, the beginning of tax filing season for tax year 2024, TaxAct will make available to each Authorized Claimant complimentary Xpert Assist. Specifically, upon entering their Social Security number into the TaxAct platform, which occurs at the beginning of the tax return form process, Authorized Claimants will receive a pop-up alerting them to their complimentary Xpert Assist and be able to add and use Xpert Assist immediately.

75.     Xpert Assist is an add-on feature TaxAct offers to its customers that provides live advice and assistance from tax experts to customers completing a tax return through TaxAct. Xpert Assist is available for all online do-it-yourself consumer Form 1040 tax filing products. TaxAct currently offers Xpert Assist to customers at a value of $59.99. More information about Xpert Assist can be found on the TaxAct website: https://www.taxact.com/tax-xpert-assist.

76.     The complimentary Xpert Assist will enable the Authorized Claimant to use Xpert Assist in connection with preparing a consumer tax return using any TaxAct online do-it-yourself consumer Form 1040 tax return product, applied to Tax Year 2024.

## V.     SUBMISSION OF SETTLEMENT AGREEMENT TO COURT FOR REVIEW AND APPROVAL

77.     Solely for purposes of implementing this Settlement Agreement and effectuating the proposed Settlement, the Parties agree and stipulate that Settlement Class Counsel shall submit to the

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

Court a motion for preliminary approval of the Settlement together with the Preliminary Approval Order (Exhibit A).

78.     Among other things, Settlement Class Counsel will seek a Preliminary Approval Order that shall:

a.  Approve the Notice Plan and Class Notice, substantially in the form set forth at Exhibits B-D;

b.  Find that the requirements for provisional certification of the Settlement Class have been satisfied, appoint the Settlement Class Representatives as the representatives of the provisional Settlement Classes and Settlement Class Counsel as counsel for the provisional Settlement Classes, and preliminarily approve the Settlement as being within the range of reasonableness such that the Class Notice should be provided pursuant to this Settlement Agreement according to the Notice Plan;

   i.   Plaintiffs Nicholas C. Smith-Washington, Joyce Mahoney, and Jonathan Ames shall be appointed as Settlement Class Representatives of the Nationwide Class and the California Subclass.

   ii.  Plaintiff Matthew Hartz shall be appointed as a Settlement Class Representative of the Nationwide Class.

   iii. Plaintiff Jenny Lewis shall be appointed as Settlement Class Representative of Nationwide Married Filing Jointly Class and the California Married Filing Jointly Subclass.

c.  Find that the CAFA notice sent by the Settlement Administrator complies with 28 U.S.C. § 1715 and all other provisions of the Class Action Fairness Act of 2005;

d.  Determine that the Notice Plan, as set forth in this Settlement Agreement, complies with all legal requirements, including but not limited to the Due Process Clause of the United States Constitution;

e.  Appoint the Settlement Administrator;

f.  Direct that Class Notice shall be given to the Class as provided in Section VIII and the other related terms of this Settlement Agreement;

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60231110348

g.  Provide that Settlement Class Members will have until the Claims Submission Deadline to submit a Claim Form;

h.  Provide that any objections by any Settlement Class Member to the certification of the Settlement Classes and the proposed Settlement contained in this Settlement Agreement, and/or the entry of the Final Approval Order and Final Judgment, shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection Deadline, such objector files with the Court a written objection and notice of the objector's intention to appear, and otherwise complies with the requirements in Section XI and the other related terms of this Settlement Agreement;

i.  Schedule the Final Approval Hearing on a date selected by the Court, to be provided in the Preliminary Approval Order, and in compliance with applicable law, to determine whether the Settlement should be approved as fair, reasonable, and adequate, and to determine whether a Final Approval Order and Final Judgment should be entered dismissing the Action with prejudice except as to such Settlement Class Members who timely file valid written Requests to Opt-Out in accordance with this Settlement Agreement and the Class Notice;

j.  Provide that all Settlement Class Members will be bound by the Final Approval Order and Final Judgment dismissing the Action with prejudice, except Settlement Class Members who timely file valid written Requests to Opt-Out in accordance with this Settlement Agreement and the Class Notice; and

k.  Pending the Final Approval Hearing, stay all proceedings in the Action, other than the proceedings necessary to carry out or enforce the terms and conditions of this Settlement Agreement and Preliminary Approval Order.

79.  Following the entry of the Preliminary Approval Order, the Class Notice shall be given and published in the manner set forth in Section VIII of the Settlement Agreement and approved by the Court.

80.  By the Final Approval Motion Deadline, Settlement Class Counsel shall file a motion

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

seeking final approval of the Settlement. Unless otherwise agreed by the Parties, Settlement Class Counsel shall request entry of a Final Approval Order and Final Judgment that shall, among other things:

    a. Find that the Court has personal jurisdiction over all Settlement Class Members, that the Court has subject matter jurisdiction over the claims asserted in the Action, and that the venue is proper;

    b. Finally approve this Settlement Agreement and the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure;

    c. Certify the Settlement Classes under Federal Rule of Civil Procedure 23(b)(3) and 23(e) for purposes of settlement only;

    d. Find that the Class Notice complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

    e. Incorporate the Releases set forth in this Settlement Agreement and make the Releases effective as of the Effective Date;

    f. Authorize the Parties to implement the terms of the Settlement;

    g. Dismiss the Action with prejudice and enter a separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure;

    h. Determine that the Settlement Agreement and the Settlement provided for herein, and any proceedings taken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, a presumption, concession, or an admission by any Party of liability or nonliability or of the certifiability or non-certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made by any Party; provided, however, that reference may be made to this Settlement Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement, as further set forth in this Settlement Agreement;

    i. Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of this Settlement Agreement, the Final Approval Order and Final

Judgment, any final order approving the Attorneys' Fees and Expenses Award and Service Awards, and for any other necessary purpose; and

j.   Comply with the timing requirement of 28 U.S.C. Section 1715(d).

81.   The Parties agree that the Notice Plan contemplated by this Settlement Agreement is valid and effective, that, if effectuated, it would provide reasonable notice to the Settlement Classes, and that it represents the best practicable notice under the circumstances.

## VI.   RELEASES AND DISMISSAL OF ACTION

82.   "**Releases**" mean the releases and waivers set forth in this Settlement Agreement and in the Final Approval Order and Final Judgment.

83.   "**Released Parties**" means (i) TaxAct; (ii) its current, former and/or future parents, subsidiaries, divisions, affiliates and/or departments; (iii) the current, former and/or future officers, directors, employees, stockholders, partners, members, managers, servants, agents, attorneys, representatives, insurers, reinsurers and/or subrogees of TaxAct and/or any of its current, former and/or future parents, subsidiaries, divisions, affiliates and/or departments; and (iv) all predecessors, successors and/or assigns of any of the foregoing.

84.   "**Released Claims**" means, with respect to Settlement Class Members, who do not timely opt out of the Settlement Classes, any and all liabilities, rights, claims, actions, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any law (including but not limited to federal law, state law, common law, contract, rule, or regulation) or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that arise during the Class Period and are pled or that could have been pled based on, relating to, or arising out of the identical factual predicate in the Operative Complaint, including but not limited to sharing or otherwise making accessible user data in any form with third-party tracking technology providers. The definition of "Released Claims" shall be construed as broadly as possible under Ninth Circuit law to effect complete finality over this Action. For the avoidance of doubt, the Parties agree that nothing in the Plan of Allocation or any other provision contained herein shall in any way limit the scope of the Release.

85.     Upon the Effective Date, the Settlement Class Representatives and each of the Settlement Class Members (and each of their heirs, estates, trustees, principals, beneficiaries, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns) (collectively, "**Releasing Parties**") shall be deemed to have, and by operation of the Final Approval Order and Final Judgment in this Action shall have, fully, finally and forever released, relinquished, and discharged each and every Released Claim, and to have covenanted not to pursue any or all Released Claims against any Released Party, whether directly or indirectly, whether on their own behalf or otherwise, and regardless of whether or not such Settlement Class Member submits a Claim Form (except that the foregoing provision shall not apply to any such representative, spouse, domestic partner, trustee, heir, executor, administrator, successor or assign who independently would be a Settlement Class Member and timely excludes himself, herself or itself).

86.     Nothing in this Settlement Agreement is intended to alter the standard Terms of Service and License Agreement ("Terms") for the use of Defendant's products or services by its users, or Defendant's enforcement of the standard Terms for the use of its products or services. To the extent any conflict exists between the terms and conditions of this Settlement Agreement and the Defendant's standard Terms, the terms and conditions of the Settlement Agreement shall control.

87.     Individuals who have timely and validly opted out of the Settlement by the Opt-Out Deadline do not release their claims and will not obtain any benefits of the Settlement.

88.     After entering into this Settlement Agreement, the Parties may discover facts other than, different from, or in addition to, those that they know or believe to be true with respect to the claims released by this Settlement Agreement. The Released Claims include known and unknown claims as set forth above, and this Settlement Agreement is expressly intended to cover and include all such injuries or damages, including all rights of action thereunder.

89.     The Parties hereby expressly, knowingly, and voluntarily waive any and all provisions, rights, and benefits conferred by California Civil Code Section 1542 ("Section 1542") and any statute, rule, and legal doctrine similar, comparable, or equivalent to Section 1542, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS**

**THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

90.     In connection with such waiver and relinquishment, the Settlement Class Representatives hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims against the Released Parties.

91.     In furtherance of such intention, the Release herein given to the Released Parties shall be and remain in effect as a full and complete general release of the Released Claims notwithstanding the discovery or existence of any such additional different claims or facts. The Settlement Class Representatives expressly acknowledge that they have been advised by their attorneys of the contents and effect of Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits he/she/they may have had pursuant to such section. The Settlement Class Representatives acknowledge, and the Settlement Class Members shall be deemed by operation of the Final Approval Order and Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this Release is a part.

92.     Upon the Effective Date: (a) the Settlement Agreement shall be the exclusive remedy for any and all Released Claims of Settlement Class Representatives and Settlement Class Members; and (b) Settlement Class Representatives and Settlement Class Members stipulate to be and shall be permanently barred from initiating, asserting, or prosecuting against the Released Parties in any federal or state court or tribunal or arbitral forum any and all Released Claims.

## VII.    MOTION FOR ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS

93.     Settlement Class Counsel may apply to the Court for an award of reasonable attorneys' fees incurred in the case as a percentage of the value conferred on the Settlement Classes of no more than 25% of the Total Cash Settlement Amount plus 25% of the redeemed value of the In-Kind Payment up to a maximum redeemed value of $5,800,000. Settlement Class Counsel may also apply

DocuSign Envelope ID: 8737C891-540A-489B-BA87-A60321119348

to the Court for up to $75,000 for reimbursement of litigation costs and expenses. Defendant reserves the right to oppose the application seeking an Attorneys' Fees and Expenses Award. The Attorneys' Fees and Expenses Award determined by the Court will be paid from the Qualified Settlement Fund. The portion of the Attorneys' Fees and Expenses Award awarded based on the dollar amount of the Total Cash Settlement Amount shall be paid from the Qualified Settlement Fund within 30 days after the Effective Date occurs; and the portion of the Attorneys' Fees and Expenses Award awarded based on the In-Kind Payment shall be paid after the time a reasonable valuation of the redeemed value of Xpert Assist is possible because most Authorized Claimants have had an opportunity to redeem their complimentary Xpert Assist, a time no earlier than May 2025.

94.     The maximum Attorneys' Fees and Expenses Award based on the In-Kind Payment – which would be $1,450,000 if the Court awards 25% of the maximum redeemed value of $5,800,000 of the In-Kind Payment – will be held by the Settlement Administrator until such time as a reasonable valuation of the redeemed value of Xpert Assist is possible and the actual amount of attorneys' fees to be based on the basis of the In-Kind Payment can be determined. If any portion of the Attorneys' Fees and Expenses Award based on the In-Kind Payment and held back by the Settlement Administrator is not ultimately distributed as attorneys' fees to Settlement Class Counsel, it will be distributed to National Consumer Law Center as *cy pres* recipient.

95.     Settlement Class Counsel's application for Attorneys' Fees and Expenses Award is subject to Court approval, and a reduction in Attorneys' Fees, Expenses Award, or other settlement enhancements awarded by the Court is not a basis for the Settlement Class Representatives, on their own behalf or on behalf of the Settlement Classes, or Settlement Class Counsel to void, rescind, or terminate this Settlement Agreement.

96.     Settlement Class Counsel shall have the sole and absolute discretion, subject to any orders issued by the Court, to allocate the Attorneys' Fees and Expenses Award amongst Settlement Class Counsel and any other attorneys. Defendant shall have no liability or other responsibility for allocation of any such Attorneys' Fees and Expenses Award. The amount ordered by the Court, which shall be paid from the Qualified Settlement Fund, shall be the sole monetary obligation for attorneys' fees and expenses pursuant to this Settlement Agreement.

DocuSign Envelope ID: 8737C891-540A-489B-BA83-A60321110348

97.     The Parties agree that Settlement Class Counsel may apply on behalf of the Settlement Class Representatives to the Court for a Service Award to each of them not to exceed $10,000 for their services as Settlement Class Representatives. Any Service Award(s) approved by the Court shall be paid from the Qualified Settlement Fund within thirty (30) days after the Effective Date occurs. The Parties agree that the Court has the authority under this Settlement Agreement to issue Service Awards, and that the decision whether or not to award any such payment, and the amount of that payment, rests in the exclusive discretion of the Court. The amount of any such Service Award approved by the Court shall not be grounds for the Settlement Class Representatives to void, rescind, or terminate this Settlement Agreement.

98.     The Settlement was reached following a vigorously-contested settlement negotiation process, including a full-day mediation conducted before a third-party neutral, Hunter Hughes, Esq., and via the Parties' respective legal counsels. The Parties did not negotiate the terms of any service award payments or attorneys' fees and expenses until they had negotiated the material terms of the Qualified Settlement Fund and Total Cash Settlement Amount, and during the negotiations of the Qualified Settlement Fund and Total Cash Settlement Amount, they made no agreements in connection with the Settlement Class Representatives' requests for service award payments or Settlement Class Counsel's attorneys' fees and expenses.

## VIII.   NOTICE AND SETTLEMENT ADMINISTRATION

99.     The Settlement Administrator's fees and costs, including the costs of notice, will be paid as described in Section IV.B of this Settlement Agreement.

100.    The Settlement Administrator will execute a confidentiality and non-disclosure agreement with Defendant and Settlement Class Counsel and will utilize best efforts to ensure that any information provided to it by Settlement Class Members will be kept confidential and secure, and used solely for the purpose of effecting this Settlement.

101.    For purposes of identifying and providing notice to potential Settlement Class Members, the Preliminary Approval Order shall order Defendant to provide or cause to be provided to the Settlement Administrator within 14 days of the date of entry of the Preliminary Approval Order information about the Settlement Class Members required by the Settlement Administrator to effect

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60221119348

the Notice Plan.

102.    In fulfilling its responsibilities in providing notice to the Settlement Class Members, the Settlement Administrator shall be responsible for, without limitation, consulting on and designing the notice to the Settlement Class with the input and approval of Defendant and Settlement Class Counsel. A preview of the contemplated language and form of that communication ("Short-Form Notice") is attached as Exhibit C and a preview of the contemplated language and form of the long-form notice to be posted on the settlement website is attached as Exhibit D ("Long-Form Notice").

103.    The Settlement Administrator shall commence Class Notice under the Notice Plan 30 days after entry of the Preliminary Approval Order, but in no event prior to April 30, 2024 (hereinafter the "Notice Date").

104.    Settlement Class Members who wish to receive a cash payment and In-Kind Payment will be required to submit a Claim Form. The Claim Form shall, among other things, require the Settlement Class Member to provide current name and contact information (i.e., first and last name, email address, phone number, mailing address), as well as the name and contact information (i.e., first and last name, email address, phone number, mailing address) associated with their TaxAct account during the time they used the TaxAct services (if different than current name and contact information), and an indication of whether they filed a tax return on their own behalf or their spouse filed a joint tax return on their behalf.

105.    The Claim Forms shall be submitted to the Settlement Administrator via U.S. mail or electronically. To be valid, Claim Forms must be received by the Settlement Administrator by the Claims Submission Deadline.

106.    The Class Notice shall set forth the procedure detailed in Section X of the Settlement Agreement whereby members of the Settlement Class may exclude themselves from the Settlement by submitting a Request to Opt-Out to the Settlement Administrator. Requests to Opt-Out must be submitted by the Opt-Out Deadline. Any member of the Settlement Class who does not timely and validly Request to Opt-Out shall be bound by the terms of this Settlement. As soon as practicable after the Opt-Out Deadline, the Settlement Administrator shall provide the Court with a list of the individuals who timely and validly requested to opt-out from the Settlement. Any member of the

Settlement Class who submits a timely Request to Opt-Out may not file an objection to the Settlement and shall be deemed to have waived any and all rights and benefits under this Settlement.

107.    The Class Notice shall set forth the procedure detailed in Section XI of the Agreement whereby Settlement Class Members may object to the Settlement. Objections shall be filed with the Court by the Objection Deadline.

108.    The Settlement Administrator shall determine whether a submitted Claim Form meets the requirements set forth in this Settlement Agreement. Each Claim Form shall be submitted to and reviewed by the Settlement Administrator, who shall determine whether each claim shall be allowed. The Settlement Administrator shall use best practices and all reasonable efforts and means to identify and reject duplicate and/or fraudulent claims, including, without limitation, indexing all payments provided to the Settlement Class Members. Cash and In-Kind Payment under this Settlement will only be made to Settlement Class Members who submit Valid Claims, defined as claims approved under Paragraphs 101 and 102.

109.    If a Claim Form does not substantially comply with the formal requirements set forth in this Settlement and/or in the Claim Form instructions, the Settlement Administrator shall promptly notify the claimant of the noncompliance using the contact information provided in the Claim Form. If the claimant fails to cure the noncompliance within 21 days after the Settlement Administrator has notified the claimant of the noncompliance, the Claim Form shall be rejected as not meeting the terms and conditions of this Settlement for receipt of a cash payment from the Qualified Settlement Fund and distribution of In-Kind Payment. Any claimant who does not submit a valid and timely Request to Opt-Out, and whose Claim Form is rejected by the Settlement Administrator, shall be deemed to be a Settlement Class Member upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and Judgments applicable to the Settlement Class(es).

110.    Where a good faith basis exists, the Settlement Administrator may reject a Claim Form for the following reasons: (a) the Claim Form is fraudulent; (b) the Claim Form is duplicative of another Claim Form; (c) the person submitting the Claim Form is not a Settlement Class Member; (d) the person submitting the Claim Form requests that payment be made to a person or entity other than the Settlement Class Member for whom the Claim Form is submitted; (e) the Claim Form is not

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

timely submitted; or (f) the Claim Form otherwise does not meet the requirements of this Settlement Agreement.

111.    Claim Forms that do not meet the terms and conditions of this Settlement for payment from the Qualified Settlement Fund shall be rejected by the Settlement Administrator.  The Settlement Administrator shall have 30 days from the Claims Submission Deadline to exercise the right of rejection. Settlement Class Counsel and Defendant's Counsel shall be provided with copies of all rejection determinations along with information sufficient to permit the parties to analyze the basis for the rejection. If Settlement Class Counsel and Defendant's Counsel believe that any rejection was inappropriate but cannot agree on a resolution of the claimant's claim, the decision of the Settlement Administrator shall be final. No person shall have any claim against Defendant, Defense Counsel, Settlement Class Representatives, Settlement Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

112.    The Settlement Administrator will provide information as agreed between Settlement Class Counsel and the Settlement Administrator, including weekly written reports on the submissions of claims, objections, and Requests to Opt-Out.

113.    As soon as reasonably possible after the Claims Submission Deadline, but no later than 7 days from the Claims Submission Deadline, the Settlement Administrator shall provide Settlement Class Counsel and Defense Counsel with a spreadsheet that contains information sufficient to determine: (a) the number of Settlement Class Members that submitted a claim; (b) the number of submitted Claim Forms that are valid and timely, and the number that are not; (c) the number of Valid Claims; and (d) the number of submitted Claim Forms the Settlement Administrator has rejected. The materials that the Settlement Administrator provides to Settlement Class Counsel pursuant to this Paragraph shall not contain the names, email addresses, mailing addresses, or other personal identifying information of the Settlement Class Members.

114.    Defendant may, in its sole discretion, terminate this Settlement Agreement if more than three percent (3%) of Settlement Class Members submit valid and timely requests to exclude themselves from the Settlement, as agreed to by the Parties and submitted to the Court for in camera

review. If Defendant elects to terminate the Settlement pursuant to this provision of the Settlement Agreement, it shall provide written notice within 25 days following the date the Settlement Administrator informs Defendant of the number of Settlement Class Members who have requested to opt out of the Settlement pursuant to the provisions set forth above. If Defendant rescinds the Settlement pursuant to this section of the Agreement, it shall have no further obligations to pay the Qualified Settlement Fund and shall be responsible for only the fees and expenses actually incurred by the Settlement Administrator, for which the Settlement Class Representatives and Settlement Class Counsel are not liable.

## IX.   PLAN OF ALLOCATION

115.   The Plan of Allocation is set forth in a separate document that will be filed by Plaintiffs at the same time as the Settlement Agreement. The Parties shall mutually agree on the disbursement of any amounts not distributed to Settlement Class Members who submit Valid Claims. Defendant shall otherwise have no liability or other responsibility for the Plan of Allocation.

116.   This is a common fund settlement. There will be no reversion of the Qualified Settlement Fund to Defendant upon the occurrence of the Effective Date irrespective of the number of Claims paid, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

## X.   OPT-OUTS

117.   Any individual who wishes to exclude themselves from the Settlement must submit a written opt-out form to the administrator requesting exclusion, which shall be postmarked or electronically submitted no later than the Opt-Out Deadline.

118.   The Request to Opt-Out must:

    a.   Identify the case name of the Action;

    b.   Identify the name and current address of the individual seeking exclusion from the Settlement;

    c.   Be personally signed by the individual seeking exclusion;

    d.   Include a statement clearly indicating the individual's intent to be excluded from the Settlement;

    e.   Request exclusion only for that one individual whose personal signature appears on the

1      request;

2      f.   Include the contact information (i.e., first and last name, email address, phone number, and mailing address) associated with the TaxAct account of the individual seeking exclusion, or their spouse's TaxAct account if the individual is a Married Filing Jointly Class Member; and

6      g.   Verify that the individual seeking exclusion used TaxAct's services during the Class Period and is part of the Settlement Class.

119.   Opt-out requests seeking exclusion on behalf of more than one individual shall be deemed invalid by the Settlement Administrator.

120.   Any individual who submits a valid and timely Request to Opt-Out in substantial compliance with the requirements described herein shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement.

121.   Any individual who does not substantially comply with the requirements of this Settlement Agreement governing Requests for Opt-Out and otherwise meets the definitional requirements of a Settlement Class Member shall be deemed to be a Settlement Class Member upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

122.   All signatories and counsel must not encourage opt-outs. Counsel for Plaintiffs and Counsel for Defendant specifically agree not to solicit opt-outs, directly or indirectly, through any means, but rather encourage members of the Settlement Class to participate in the settlement.

123.   If more than three percent (3%) of the Settlement Class opt out, Defendant shall have the sole and absolute discretion to terminate the Settlement as described above in Paragraph 111.

## XI.   OBJECTIONS

124.   Any Settlement Class Member who wishes to object to the Settlement must timely submit a written objection to the Court on or before the Objection Deadline, as specified in the Preliminary Approval Order.

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

125.   The objection must include:

    a.   The case name and number of the Action;

    b.   The full name, address, telephone number, and email address of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel;

    c.   The email address associated with the objector's TaxAct account, or the email address associated with their Spouse's TaxAct account if the objector is a Married Filing Jointly Class Member;

    d.   A statement of whether the objection applies only to the objector, to a specific subset of the classes, or to an entire class;

    e.   A statement of the number of times in which the objector (and, where applicable, objector's counsel) has objected to a class action settlement, along with the caption of each case in which the objector has made such objection;

    f.   A statement whether the objector has sold or otherwise transferred the right to their recovery in this Action to another person or entity, and, if so, the identity of that person or entity;

    g.   A statement of the specific grounds for the objection, including any legal and factual support and any evidence in support of the objection;

    h.   A statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel; and

    i.   The objector's signature.

126.   If an objecting Settlement Class Member intends to speak at the Final Approval Hearing (whether *pro se* or through an attorney), these requirements may be excused by the Court upon a showing of good cause.

127.   Any Settlement Class Member who fails to substantially comply with the requirements in this Settlement Agreement governing objections shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement or the terms of this Settlement Agreement by appeal or any other means.

## XII. MODIFICATION OR TERMINATION OF SETTLEMENT AND RESERVATION OF RIGHTS

128.    This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest and approval of the Court; provided, however that, after entry of the Final Approval Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all Exhibits hereto) without further approval by the Court if such changes are consistent with the Court's Final Approval Order and Final Judgment and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Settlement Agreement.

129.    This Settlement Agreement and any Exhibits attached hereto constitute the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized in such documents.

130.    In the event the terms or conditions of this Settlement Agreement are modified by (or are modified to comply with) any court order as described in this Paragraph, any Party in its sole discretion to be exercised within 14 days after such modification may declare this Settlement Agreement null and void. For purposes of this Paragraph, modifications include any material changes including but not limited to (a) the definition of the Settlement Classes, Settlement Class Members, Released Parties, or Released Claims; and/or (b) the terms of the Settlement Consideration described in Section IV; and/or (c) the Notice Plan, including methods of distributing notice, to the Settlement Classes. In the event of qualifying modification by any court, and in the event the Parties do not exercise their unilateral option to withdraw from this Settlement Agreement pursuant to this Paragraph, the Parties shall meet and confer within 21 days of such ruling to attempt to reach an agreement as to how best to effectuate the court-ordered modification.

131.    In the event that a Party exercises his/her/their option to withdraw from and terminate this Settlement Agreement, then the Settlement proposed herein shall become null and void and shall have no force or effect, the Parties shall not be bound by this Settlement Agreement, and the Parties

1   will be returned to their respective positions existing on January 9, 2024.

2        132.    The Parties agree that the effectiveness of this Settlement Agreement is not contingent

3   upon the Court's approval of the payment of any Attorneys' Fees or Expenses or Service Awards. If

4   the Court declines to approve, in whole or in part, a request for Attorneys' Fees or Expenses or Service

5   Awards, all remaining provisions in this Settlement Agreement shall remain in full force and effect.

6   No decision by the Court, or modification or reversal or appeal of any decision by the Court,

7   concerning the payment of Attorneys' Fees or Expenses or Service Awards, or the amount thereof,

8   shall be grounds for cancellation or termination of this Settlement Agreement.

9   **XIII.   NO ADMISSION OF WRONGDOING OR LIABILITY**

10       133.    Defendant denies the material factual allegations and legal claims asserted in the

11  Action, including any and all charges of wrongdoing or liability arising out of any of the conduct,

12  statements, acts or omissions alleged, or that could have been alleged, in the Action. Similarly, this

13  Settlement Agreement provides for no admission of wrongdoing or liability by any of the Released

14  Parties. This Settlement is entered into solely to eliminate the uncertainties, burdens, and expenses of

15  protracted litigation.

16       134.    The Parties understand and acknowledge that this Settlement Agreement constitutes a

17  compromise and settlement of disputed claims. No action taken by the Parties, whether previously or

18  in connection with the negotiations or proceedings connected with the Settlement or this Agreement,

19  shall be deemed or construed to be an admission of the truth or falsity of any allegations, claims, or

20  defenses heretofore made, or an acknowledgment or admission by any party of any fact, fault,

21  liability, or wrongdoing of any kind whatsoever.

22       135.    Neither the Settlement, nor any act performed or document executed pursuant to or in

23  furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or

24  evidence of, the validity of any claim made by the Plaintiffs or Settlement Class Members, or of any

25  wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as,

26  an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or

27  in any proceeding in any court, administrative agency or other tribunal; or construed as an admission

28  by Plaintiffs regarding the validity of any allegation or claim asserted in this Action or that Plaintiff

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60231119348

has waived any allegation or claim asserted in the Action.

**XIV.   NO DISPARAGEMENT**

136.    The Parties agree that they will not make or publish written statements which are disparaging to the reputation of the other or their current or former corporate parents and affiliates.

**XV.    CAFA NOTICE PURSUANT TO 28 U.S.C. SECTION 1715**

137.    The Settlement Administrator shall serve notice of the Settlement Agreement that meets the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, on the appropriate federal and state officials no later than ten  days following the filing of this Settlement Agreement and related Preliminary Approval Motion with the Court.

**XVI.   TAX MATTERS**

138.    The Released Parties and their counsel shall have no liability or responsibility for any Taxes, Tax Expenses, or tax-related reporting or compliance with respect to the Qualified Settlement Fund or any other matter contemplated by this Settlement Agreement. Without limiting the generality of the preceding sentence, (i) all Taxes and Tax Expenses shall be paid solely out of the Qualified Settlement Fund and (ii) all Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Qualified Settlement Fund and shall be timely paid as instructed by the Settlement Administrator, out of the Qualified Settlement Fund without the need for any further authorization (including an order from the Court).

139.    The Settlement Administrator shall comply with all legal requirements regarding tax withholding, tax reporting, and tax compliance (including filing all Tax returns and other returns). Settlement Class Counsel shall provide such assistance as the Settlement Administrator reasonably requests to enable the Settlement Administrator to comply with the preceding sentence. All returns filed by the Settlement Administrator shall be consistent with this Section XIV (including with respect to the election described in Paragraph 138).

140.    Notwithstanding anything in this Settlement Agreement to the contrary, the Settlement Administrator is hereby authorized and instructed to deduct and/or withhold from distribution to Authorized Claimants any (i) taxes required to be deducted or withheld by law (including under Treas. Reg. §1.468B-2(l)(2), if applicable) and (ii) any funds necessary to pay Taxes or Tax Expenses

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

(including the establishment of adequate reserves for any Taxes and Tax Expenses). Any amount deducted or withheld in accordance with this Paragraph shall be treated as having been paid to the person in respect of whom such deduction or withholding was made.

141.    The Parties agree to treat the Qualified Settlement Fund at all times as a qualified settlement fund for U.S. federal income tax purposes within the meaning of Treas. Reg. Sections 1.468B-1 through 1.468B-5. The Parties and the Settlement Administrator shall, and shall cause their affiliates to, take any action reasonably necessary to ensure the Qualified Settlement Fund satisfies the requirements of Treas. Reg. Sections 1.468B-1 through 1.468B-5 (including the requirement to ensure that economic performance occurs at the time of the transfer to the Qualified Settlement Fund pursuant to Treas. Reg. Section 1.468B-3(c)). The Settlement Administrator shall be, and hereby is, appointed the "administrator" within the meaning of Treas. Reg. Section 1.468B-2(k)(3). If the Settlement Administrator cannot or will not serve as the administrator in accordance with the preceding sentence, the administrator shall be such other professional settlement administrator firm as the Parties shall reasonably select.

142.    The Parties agree that TaxAct shall not have any liability or responsibility for the taxes or the tax expenses related to the Qualified Settlement Fund other than those paid from the Qualified Settlement Fund.

143.    The Parties agree to cooperate with the Settlement Administrator (and any person other than the Settlement Administrator that serves as the administrator of the Qualified Settlement Fund as described in Paragraph 138), each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Settlement Agreement.

## XVII.  MISCELLANEOUS PROVISIONS

144.    Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

<u>To the Settlement Class Representatives and the Settlement Class:</u>
Julian Hammond

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60221119348

Christina Tusan
HammondLaw P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402

To Counsel for TaxAct:
James W. Ducayet
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603

With a Copy to TaxAct:
Willa Kalaidjian
Chief Legal Officer and General Counsel
3200 Olympus Blvd., Suite 150
Dallas, TX 75019

145.    All of the Exhibits to this Settlement Agreement are an integral part of the Settlement and are incorporated by reference as though fully set forth herein.

146.    The Parties agree that the Recitals are contractual in nature and form a material part of this Settlement Agreement.

147.    No extrinsic evidence or parol evidence shall be used to interpret, explain, construe, contradict, or clarify this Settlement Agreement, its terms, the intent of the Parties or their counsel, or the circumstances under which this Settlement Agreement was made or executed. This Settlement Agreement supersedes all prior negotiations and agreements, including the Memorandum of Understanding executed on January 10, 2024. The Parties expressly agree that the terms and conditions of this Settlement Agreement will control over any other written or oral agreements.

148.    Unless otherwise noted, all references to "days" in this Settlement Agreement shall be to calendar days. In the event any date or deadline set forth in this Settlement Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

149.    The Settlement Agreement, the Settlement, all documents, orders, and other evidence relating to the Settlement, the fact of their existence, any of their terms, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement, the Settlement, their existence, or their terms, any negotiations, proceedings, acts performed, or documents drafted or executed pursuant to or in furtherance of the Settlement Agreement or the Settlement shall not be offered, received, deemed to be, used as, construed as, and do not constitute a presumption,

concession, admission, or evidence of (i) the validity of any Released Claims or of any liability, culpability, negligence, or wrongdoing on the part of the Released Parties; (ii) any fact alleged, defense asserted, or any fault, misrepresentation, or omission by the Released Parties; (iii) the propriety of certifying a litigation class or any decision by any court regarding the certification of a class, and/or (iv) whether the consideration to be given in this Settlement Agreement represents the relief that could or would have been obtained through trial in the Action, in any trial, civil, criminal, administrative, or other proceeding of the Action or any other action or proceeding in any court, administrative agency, or other tribunal.

150.    The Parties to this Action and any other Released Parties shall have the right to file the Settlement Agreement and/or the Final Approval Order and Final Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

151.    To the extent permitted by law, all agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Settlement Agreement. TaxAct reserves the right to disclose the settlement in connection with its customary engagement with regulators and financial reporting practices.

152.    The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

153.    This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument. Signatures submitted by email, PDF via DocuSign, or facsimile shall also be considered originals. The date of execution shall be the latest date on which any Party signs this Settlement Agreement.

154.    The Parties hereto and their respective counsel agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Settlement Agreement, including to obtain a Final Approval Order and Final Judgment approving the Settlement.

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60221119348

155. This Settlement Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize, each of which is entitled to enforce this Settlement Agreement.

156. This Settlement Agreement was jointly drafted by the Parties. Settlement Class Representatives, Settlement Class Members, and Defendant shall not be deemed to be the drafters of this Settlement Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the *contra proferentem* canon of construction. Accordingly, this Settlement Agreement should not be construed in favor of or against one Party as the drafter, and the Parties agree that the provisions of California Civil Code Section 1654 and common law principles of construing ambiguities against the drafter shall have no application.

157. This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to any conflict of laws principles that would result in applying the substantive law of a jurisdiction other than the State of California.

158. The headings used in this Settlement Agreement are inserted merely for the convenience of the reader and shall not affect the meaning or interpretation of this Settlement Agreement.

159. In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

160. The provision of the confidentiality agreement entered into with respect to the mediation process concerning this Action is waived for the limited purpose of permitting the Parties to confirm that they participated in the mediation and that the mediation process was successful in advancing final settlement of this Action.

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound hereby, have duly executed this Settlement Agreement as of the date set forth below.

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60331119348

Dated: February 21, 2024

By: _____
*Julian Hammond*

*On behalf of Plaintiffs and the Putative Classes*

Julian Hammond (SBN 268489)
Jhammond@Hammondlawpc.com
Christina Tusan (SBN 192203)
Ctusan@Hammondlawpc.com
Adrian Barnes (SBN 253131)
Abarnes@Hammondlawpc.com
Ari Cherniak (SBN 290071)
Acherniak@Hammondlawpc.com
Polina Brandler (SBN 269086)
Pbrandler@Hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
Telephone: (310) 601-6766
Facsimile: (310) 295-2385 (Fax)

WARREN D. POSTMAN (SBN 330869)
wdp@kellerpostman.com
KELLER POSTMAN LLC
1101 Connecticut Avenue, N.W., Suite 1100
Washington, DC 20005
Telephone: (312) 741-5220
Facsimile: (312) 971-3502

*Attorneys for Plaintiffs and the Putative Classes*

Dated: February 21, 2024

By: _____
*Sheila Armbrust*

*On behalf of TaxAct, Inc.*

Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772 1200
Facsimile: (415) 772 7400

James W. Ducayet (*pro hac vice*)
jducayet@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Michele L. Aronson (*pro hac vice*)
maronson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736 8000
Facsimile: (202) 736 8711

*Attorneys for Defendant TaxAct, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A:**

**Proposed Preliminary Approval Order**

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| NICHOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES, MATTHEW HARTZ, and JENNY LEWIS on behalf of themselves and all other similarly situated,<br><br>           Plaintiffs,<br><br>     v.<br><br>TAXACT, INC.,<br><br>          Defendant. | Case No. 3:23-CV-00830-VC<br>Assigned to Hon. Vince Chhabria<br><br>**[PROPOSED] ORDER CERTIFYING SETTLEMENT CLASSES; GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(e)(1); AND APPROVING FORM AND CONTENT OF CLASS NOTICE** |

WHEREAS, Plaintiffs Nicholas C. Smith Washington, Joyce Mahoney, Jonathan Ames, Matthew Hartz, and Jenny Lewis (together, "Settlement Class Representatives"), and Defendant TaxAct, Inc. ("TaxAct") (collectively "Parties"), entered into a Settlement Agreement on February __, 2024 (ECF. No.___), which, together, with the exhibits and appendices thereto, sets forth the terms and conditions for a proposed resolution of this Action and for its dismissal with prejudice;

WHEREAS, this Court has reviewed the Settlement entered into by the Parties, all exhibits thereto, the record in this case, and the Parties' arguments;

WHEREAS, this Court preliminarily finds, for the purpose of settlement only, that the Settlement Classes meet all the prerequisites of Federal Rule of Civil Procedure 23(a) for class certification—numerosity, commonality, typicality, and adequacy—and meets the requirements of Federal Rule of Civil Procedure 23(b)(3)—predominance of common issues, and superiority;

GOOD CAUSE APPEARING, IT IS HEREBY ORDERED AS FOLLOWS:[2]

**Preliminary Certification of Settlement Classes for Purpose of Settlement Only and**

**Appointment of Class Counsel and Settlement Class Representatives**

---

[2] All terms and definitions used herein have the same meanings as set forth in the Settlement Agreement.

1.  The Settlement is hereby preliminarily approved as fair, reasonable, and adequate such that notice thereof should be given to members of the Settlement Classes.  Under Federal Rule of Civil Procedure 23(b)(3), the Settlement Classes, as set forth in Paragraph 51 of the Settlement Agreement and defined as follows, are preliminarily certified for the purpose of settlement only:[3]

    a.  "Nationwide Class" includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product during the Class Period, and whose postal address listed on such tax return was in the United States. The Nationwide Class includes the California Subclass.

        i.  "California Subclass" includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product during the Class Period, and whose postal address listed on such tax return was in California.

    b.  "Nationwide Married Filing Jointly Class" includes all natural persons whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product during the Class Period, and whose postal address listed on such joint tax return was in the United States. The Nationwide Married Filing Jointly Class includes the California Married Filing Jointly Subclass.

        i.  "California Married Filing Jointly Subclass" includes all natural persons residing in California during the Class Period whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint

---

[3] "Class Period," as set forth in Paragraph 27 of the Settlement Agreement, means the time period from January 1, 2018, through December 31, 2022, during which Settlement Class Representatives and members of the Settlement Class used TaxAct's tax preparation services to prepare a tax return.

tax return using the TaxAct online product during the Class Period, and whose postal address listed on such joint tax return was in California.

2.      Excluded from the Settlement Classes are: TaxAct, its current, former and/or future parents, subsidiaries, divisions, affiliates and/or departments, and their employees, officers, directors, management, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies during the Class Period or thereafter; counsel for Plaintiffs and their employees, including but not limited to the undersigned counsel for Plaintiffs and the undersigned counsel's employees; any district judge or magistrate judge to whom this case is or was assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities; customers who only used TaxAct's download do-it-yourself consumer Form 1040 tax return filing product, TaxAct's Professional products, or TaxAct's online do-it-yourself business tax return filing products; and all individuals who have, as of January 9, 2024, filed a demand for arbitration against TaxAct to arbitrate claims that would otherwise be released in accordance with the terms of this Settlement Agreement unless those individuals elect to opt-in to the Settlement Classes by filing a timely Claim Form.

3.      Plaintiffs Nicholas C. Smith-Washington, Joyce Mahoney, Jonathan Ames and Matthew Hartz shall be appointed as Settlement Class Representatives of the Nationwide Class and the California Subclass.  Plaintiff Jenny Lewis shall be appointed as Settlement Class Representative of Nationwide Married Filing Jointly Class and the California Married Filing Jointly Subclass.

4.      The Court preliminarily finds, for purposes of settlement only, that the proposed Settlement Classes as defined above meets the numerosity requirement of Rule 23(a)(1) such that joinder would be impractical; that there are questions of law and fact common to the Settlement Class as required by Rule 23(a)(2); that these common questions predominate over individual questions as required by Rule 23(b)(3); and that the claims of the proposed Settlement Class Representatives are typical of the claims of the Settlement Classes under Rule 23(a)(3).

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60221119348

5.      In addition, the Court preliminarily finds that the Class Counsel and Settlement Class Representatives will fairly and adequately represent the interests of the Settlement Classes under Rule 23(a)(4), have done so, and meet the requirements of Rule 23(g) and, therefore, appoints them as Class Counsel and Settlement Class Representatives under Rules 23(c)(1)(B) and 23(g).

6.      If the Settlement Agreement is not finally approved by this Court, or if such final approval is reversed or materially modified on appeal by any court, this Order (including but not limited to the certification of the Settlement Classes) shall be vacated, null and void, and of no force or effect, and TaxAct and Settlement Class Representatives shall be entitled to make any arguments for or against certification for litigation purposes.

7.      Class Counsel and the Settlement Class Representatives are appointed as adequate representatives of the Settlement Classes.

**Notice to Settlement Classes**

8.      By _____ __, **2024,** [(30) calendar days after the issuance of this Order], TaxAct shall cause to be paid a portion a sum to be determined and sufficient to effectuate the Notice Plan to the Settlement Administrator (the "Initial Deposit"). This deadline may be extended by consent of the Parties and the Settlement Administrator.

9.      Following issuance of this Order, and after payment of the Initial Deposit, TaxAct shall cause to be paid all periodic subsequent amounts for Class Notice and Administration Costs (as invoiced by the Settlement Administrator and approved by Settlement Class Counsel and TaxAct) (the "Periodic Payments") (with Notice and Administration Costs in excess of Two Million Five Hundred Thousand ($2,500,000.00) U.S. Dollars and Zero Cents to be deducted from the Net Settlement Fund) within thirty (30) calendar days after the submission of an invoice by the Settlement Administrator.  The deadline may be extended by mutual consent of the Parties and the Settlement Administrator.

10.     By _____ __, **2024,** [(14) calendar days after the issuance of this Order], TaxAct shall provide or cause to be provided to the Settlement Administrator information about the Settlement Class Members required by the Settlement Administrator to effectuate the Notice Plan.

11.     The Court Finds that Approve the Notice Plan and Class Notice, substantially in the form set forth at Exhibits B-D of the Settlement Agreement, complies with 28 U.S.C. § 1715 and all other provisions of the Class Action Fairness Act of 2005.

12.     The Settlement Administrator and TaxAct shall provide Class Notice consistent with the Notice Plan outlined in Exhibit B, and Class Notice shall be disseminated to Settlement Class Members beginning on the Notice Date, _____, ___ **2024,** [(45) calendar days after the provision of data pursuant to the Order].

13.     The Court appoints Kroll Settlement Administration LLC, ("Kroll") located at 2000 Market Street, Suite 2700, Philadelphia, PA 19103, to serve as the Settlement Administrator.  Kroll shall establish the Net Settlement Fund as a  Qualified Settlement Fund as for U.S. federal income tax purposes within the meaning of Treas. Reg. Sections 1.468B-1 through 1.468B-5, as set forth in the Settlement Agreement, supervise and administer the notice procedures, establish and operate the settlement website, administer the claims processes, distribute cash payments according to the processes and criteria set forth in the Settlement Agreement, and perform any other duties that are reasonably necessary and/or provided for in the Settlement Agreement.

14.     The Settlement Administrator shall make all necessary efforts and precautions to ensure the security and privacy of Settlement Class Member information and protect it from loss, misuse, unauthorized access and disclosure, and to protect against any reasonably anticipated threats or hazards to the security of Settlement Class Member information; not using the information provided by TaxAct or Class Counsel in connection with the Settlement or this Notice Plan for any purposes other than providing Class Notice or conducting claims administration; and not sharing Settlement Class Member information with any third parties without advance consent from the Parties.

15.     Settlement Class Members who wish to make a claim must do so by submitting a Claim Form by _____, __ **2024** [ninety days after the Notice Date], (the "Claims Submission Deadline"), in accordance with the instructions contained therein.  The Settlement Administrator shall determine the eligibility of claims submitted and allocate the Net Settlement Fund in accordance with the Settlement Agreement.

16.     Settlement Class Members who wish to object to the Settlement must object in writing, and must include: (a) case name and number of the Action: (b) the full name, address, telephone number, and email address of the objecting Settlement Class Member and, if represented by counsel, of his/her counsel; (c) the email address associated with the objector's TaxAct account, or the email address associated with their Spouse's TaxAct account if the objector is a Married Filing Jointly Class Member; (d) a statement of whether the objection applies only to the objector, to a specific subset of the classes, or to an entire class; (e) a statement of the number of times in which the objector (and, where applicable, objector's counsel) has objected to a class action settlement, along with the caption of each case in which the objector has made such objection; (f) a statement whether the objector has sold or otherwise transferred the right to their recovery in this Action to another person or entity, and, if so, the identity of that person or entity; (g) a statement of the specific grounds for the objection, including any legal and factual support and any evidence in support of the objection; (h) a  statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel; and (i) The objector's signature.  If an objecting Settlement Class Member intends to speak at the Final Approval Hearing (whether *pro se* or through an attorney), these requirements may be excused by the Court upon a showing of good cause.  Objections must be filed with the Court or post-marked or electronically submitted to the Settlement Administrator no more than sixty days from the Notice Date (the "Objection Deadline").

17.     Any Settlement Class Member who seeks to be excluded from the Settlement Classes must submit a written request for exclusion that shall be submit a written opt-out form to the administrator requesting exclusion, which shall be postmarked or electronically submitted no later than ninety (90) days from the Notice Date (the "Opt-Out Deadline").  To be an effective and valid

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321110348

written request for exclusion, the request must: (a) identify the case name and number of the Action:
(b) identify the full name and current address of the individual seeking exclusion from the Settlement;
(c) be personally signed by the individual seeking exclusion; (d) include a statement clearly indicating
the individual's intent to be excluded from the Settlement; (e) request exclusion only for that one
individual whose personal signature appears on the request; (f) include the contact information (i.e.,
first and last name, email address, phone number, and mailing address) associated with the TaxAct
account of the individual seeking exclusion, or their spouse's TaxAct account if the individual is a
Married Filing Jointly Class Member; and (g) verify that the individual seeking exclusion used
TaxAct's services during the Class Period and is part of the Settlement Class.  Any member of the
Settlement Class who does not file a valid and timely request for exclusion shall be bound by the final
judgment dismissing the Action on the merits with prejudice.

### Final Approval Hearing

18.     The Final Approval Hearing shall be held by the Court on _____, __ **2024**,
beginning at _____, to determine whether the requirements for certification of the Settlement
Classes have been met; whether the proposed settlement of the Action on the terms set forth in the
Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Settlement
Class Members; whether Class Counsel's motion or application for an Attorneys' Fees and Expenses
Award and application for the Service Awards should be approved; and whether final judgment
approving the Settlement and dismissing the Action on the merits with prejudice against the
Settlement Class Representatives and all other Settlement Class Members should be entered. The
Final Approval Hearing may, without further notice to the Settlement Class Members (except to those
who have filed timely and valid objections and requested to speak at the Final Approval Hearing), be
continued or adjourned by order of the Court.

19.     Any objector who timely submits an objection has the option to appear and request to
be heard at the Final Approval Hearing, either in person or through the objector's counsel. Any
objector wishing to appear and be heard at the Final Approval Hearing must include a notice of
intention to appear in the body of the objector's objection. Objectors who fail to submit or include

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321110348

such timely notice of intention to appear may not speak at the Final Approval Hearing without permission of the Court.

20.     By _____, __ **2024**, [(84) days after the issuance of this Order] Class Counsel shall file all papers in support of the application for Attorneys' Fees and in support of an Expenses Award and/or for Service Awards.  All opposition papers shall be filed by _____, __ **2024**, [(114) days after the issuance of this Order] and any reply papers shall be filed by _____, __ **2024** [(128) days after the issuance of this Order].

21.     By _____, __ **2024** [one hundred twenty (120) days after the Notice Date], Class Counsel shall file all papers in support of the application for the Final Approval Order and Final Judgment.  Any reply papers regarding objections to the settlement and to update the Court regarding notice and administration shall be filed by _____, __ **2024** [one hundred and thirty-four (134) days after the Notice Date].

22.     Class Counsel's motion or application for Attorneys' Fees and an Expenses Award and for Service Awards will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.  Any appeal from any order relating solely to Class Counsel's motion for Attorneys' Fees and an Expenses Award, and/or for Service Awards, or any reversal or modification of any such order, shall not operate to terminate, vacate, or cancel the Settlement.

23.     Defense Counsel and Class Counsel are hereby authorized to utilize all reasonable procedures in connection with the administration of the Settlement which are not materially inconsistent with either this Order or the Settlement Agreement.

IT IS SO ORDERED.

DATED: _____                    _____
                                                    The Honorable Vince Chhabria
                                                    United States District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit B:**

**Settlement Administration Protocol & Notice Plan**

**(Declaration of Jeanne C. Finegan of Kroll Settlement Administration LLC)**

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

Julian Hammond (SBN 268489)
Jhammond@Hammondlawpc.com
Christina Tusan (SBN 192203)
Ctusan@Hammondlawpc.com
Adrian Barnes (SBN 253131)
Abarnes@Hammondlawpc.com
Ari Cherniak (SBN 290071)
Acherniak@Hammondlawpc.com
Polina Brandler (SBN 269086)
Pbrandler@Hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
Telephone: (310) 601-6766
Facsimile: (310) 295-2385 (Fax)

WARREN D. POSTMAN (SBN 330869)
wdp@kellerpostman.com
KELLER POSTMAN LLC
1101 Connecticut Avenue, N.W., Suite 1100
Floor Washington, DC 20036
Telephone: (312) 741-5220
Facsimile: (312) 971-3502

*Attorneys for Plaintiffs and the Putative Classes*

Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772 1200
Facsimile: (415) 772 7400

James W. Ducayet (*pro hac vice*)
jducayet@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Michele L. Aronson (*pro hac vice*)
maronson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736 8000
Facsimile: (202) 736 8711

*Attorneys for Defendant TaxAct, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| NICHOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES, MATTHEW HARTZ and JENNY LEWIS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>TAXACT, INC.,<br><br>          Defendant. | Case No.:  3:23-CV-00830-VC<br><br>Assigned to: Hon. Vince Chhabria<br><br><u>CLASS ACTION</u><br><br>**DECLARATION OF JEANNE C. FINEGAN, APR OF KROLL SETTLEMENT ADMINISTRATION LLC IN CONNECTION WITH PRELIMINARY APPROVAL OF SETTLEMENT** |

DocuSign Envelope ID: 8737C891-540A-489B-8A87-A60321119348

**INTRODUCTION**

1.       I am the Managing Director and Head of Kroll Notice Media Solutions ("Kroll Media"),[1] a business unit of Kroll Settlement Administration LLC ("Kroll"). This declaration (the "Declaration") is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising media and communications.

2.       Kroll has been designated by the Parties as the Settlement Administrator to develop and implement a proposed legal notice program as part of the Parties' proposed class action settlement in the above captioned case, as reflected in that certain Class Action Settlement Agreement and Release, dated as of February 21, 2024 (the "Settlement Agreement").

3.       Kroll has extensive experience in class action matters, having provided services in class action settlements involving antitrust, securities, labor and employment, consumer and government enforcement matters.  Kroll has provided class action services in over 3,000 settlements varying in size and complexity over the past 50 years. Based on this experience, Kroll is prepared to provide a full complement of notification and claims administration services in connection with the Settlement Agreement, including notice of the Settlement by mail, email, publication, and through the use of a settlement website to be created in connection with this matter.

4.       This Declaration describes my experience in designing and implementing notices and notice programs, as well as my credentials to opine on the overall adequacy of notice effort.  This Declaration will also describe the proposed Notice Plan and address how this comprehensive proposed program is consistent with other best practicable court-approved notice programs and the requirements of Fed. Civ. P. 23(c)(2)(B) and the Federal Judicial Center guidelines[2] for best practicable due process notice.

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Settlement Agreement (as defined below).

[2] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.  The guide suggests that the minimum threshold for adequate notice is 70%.  *See id.* at pp. 1, 3.

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60221119348

## QUALIFICATIONS

5.      My credentials, expertise, and experience that qualify me to provide an expert opinion and advice regarding notice class action cases include more than 30 years of communications and advertising experience, specifically in class action and bankruptcy notice context.  My Curriculum Vitae delineating my experience is attached hereto as **Exhibit A**.

6.      In summary, I have served as an expert and have been directly responsible for the design and implementation of numerous notice programs, including some of the largest and most complex programs ever implemented in the United States as well as globally in over 140 countries and thirty-seven (37) languages.  I have been recognized by numerous courts in the United States as an expert on notification and outreach.

7.      During my career, I have planned and implemented over 1,000 complex notice programs for a wide range of class action, bankruptcy, regulatory, and consumer matters. The subject matters of which have included product liability, construction defect, antitrust, asbestos, medical, pharmaceutical, human rights, civil rights, telecommunications, media, environmental, securities, banking, insurance and bankruptcy.

8.      I have provided testimony before the United States Congress on issues of notice.[3]  I have lectured, published, and been cited extensively on various aspects of legal noticing, product recall, and crisis communications.  I have served the Consumer Product Safety Commission ("CPSC") as an expert to determine ways in which the CPSC can increase the effectiveness of its product recall campaigns. Additionally, I have published and lectured extensively on various aspects of legal

---

[3] *See*, *e.g.*, Report on the Activities of the Committee on the Judiciary of the House of Representatives: "Notice" Provision in the *Pigford v. Glickman* Consent Decree: Hearing Before Subcommittee on the Constitution, 108th Cong. 2nd Sess. 805 (2004) (statement of Jeanne C. Finegan); *Pigford v. Glickman & U.S. Dep't of Agric.*, 185 F.R.D. 82, 102 (D.D.C. Apr. 14, 1999) (J. Finegan provided live testimony and was cross-examined before Congress in connection with a proposed consent decree settling a class action suit against the U.S. Department of Agriculture.  In the court opinion that followed, the Honorable Paul L. Friedman approved the consent decree and commended the notice program, stating, "The [c]ourt concludes that class members have received more than adequate notice . . . the timing and breadth of notice of the class settlement was sufficient . . . The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations.")

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321110348

noticing and taught continuing education courses for Jurists and lawyers alike on best practice methods for providing notice in various contexts.

9.      I worked with the Special Settlement Administrator's team to assist with the outreach strategy for the historic Auto Airbag Settlement.  *In re Takata Airbag Prods. Liab. Litig.*, No. 15-MD-2599-FAM (S.D. Fla.).  I was extensively involved as a lead contributing author for *"Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions"* published by Duke University School of Law

10.     Among others, my relevant experience includes *In re: Yahoo! Inc. Customer Data Security Breach Litigation,* Case No. 5:16-MD-02752 (N.D. Cal. 2016). Further, I have been recognized as being at the forefront of modern notice practices,[4] and I was one of the first notice experts to integrate digital media,[5] social media and influencers[6] into court-approved legal notice programs.

11.     In evaluating the adequacy and effectiveness of my notice programs, courts have repeatedly recognized my work as an expert.  For example:

a.      ***Yahoo! Inc. Customer Data Security Breach Litigation,*** No. 5:16-MD-02752 (N.D. Cal. 2010). In the Order of Preliminary Approval, dated July 20, 2019, para 21, the Honorable Lucy Kho stated:

> The Court finds that the Approved Notices and Notice Plan set forth in the Amended Settlement Agreement satisfy the requirements of due process and Federal Rule of Civil Procedure 23 and provide the best notice practicable under the circumstances.

b.      ***Hill's Pet Nutrition, Inc., Dog Food Products Liability Litigation,*** Case No. 19-MD-2887 (D. Kan. 2021). In the Preliminary Approval Transcript, February 2, 2021 p. 28-29, the Honorable Julie A. Robinson stated:

> I was very impressed in reading the notice plan and very educational, frankly to me, understanding the communication, media platforms, technology, all of that continues to evolve rapidly and the ability to not only target consumers, but to target people that could rightfully receive notice continues to improve all the time.

---

[4] *See, e.g.*, Deborah R. Hensler et al., *Class Action Dilemmas, Pursuing Public Goals for Private Gain*, RAND (2000).

[5] *See In re Louisiana-Pacific Inner-Seal Siding Litig.*, Nos. 879-JE, 1453-JE (D. Or. 1995).

[6] *See In Re: PG&E Corporation*, No . 19-30088 Bankr. (N.D. Cal. 2019)

DocuSign Envelope ID: 8737C891-540A-489B-BA87-A60321119348

1

2

3

4        c.      ***In re Purdue Pharma L.P.,*** No. 19-23649 (Bankr. S.D.N.Y. 2019). Omnibus

Hearing, Motion Pursuant to 11 U.S.C. §§ 105(a) and 501 and Fed. R. Bankr. P. 2002 and

3003(c)(3) for Entry of an Order (I) Extending the General Bar Date for a Limited Period

and (II) Approving the Form and Manner of Notice Thereof, June 3, 2020, transcript p. 88:10,

the Honorable Robert Drain stated:

5

6    > The notice here is indeed extraordinary, as was detailed on page 8 of Ms.
> Finegan's declaration in support of the original bar date motion and then in her
> supplemental declaration from May 20th in support of the current motion, the
> notice is not only in print media, but extensive television and radio notice,
> community outreach, -- and I think this is perhaps going to be more of a trend,
> but it's a major element of the notice here -- online, social media, out of home,
> i.e. billboards, and earned media, including bloggers and creative messaging.
> That with a combined with a simplified proof of claims form and the ability to
> file a claim or first, get more information about filing a claim online -- there
> was a specific claims website -- and to file a claim either online or by mail.
> Based on Ms. Finegan's supplemental declaration, it appears clear to me that
> that process of providing notice has been quite successful in its goal in
> ultimately reaching roughly 95 percent of all adults in the United States over
> the age of 18 with an average frequency of message exposure of six times, as
> well as over 80 percent of all adults in Canada with an average message
> exposure of over three times.

7

8

9

10

11

12

13

14        d.      ***In Re: PG&E Corporation,*** No. 19-30088 Bankr. (N.D. Cal. 2019). Hearing

Establishing, Deadline for Filing Proofs of Claim, (II) establishing the Form and Manner of

Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other

Information to all Creditors and Potential Creditors PG&E. June 26, 2019, Transcript of

Hearing pp. 21:1, 201:20, the Honorable Dennis Montali stated:

15

16

17    > "…the technology and the thought that goes into all these plans is almost
> incomprehensible… Ms. Finegan has really impressed me today…"

18

19    ## NOTICE PROGRAM

20

21    12.    It is Kroll's understanding that it will be provided with a list of Settlement Class Members

covered under the Settlement Agreement, and the Settlement Class Member list is to contain a

combination of names, addresses, email addresses, Settlement Classes identifier and other data

elements pertinent to the administration of the Settlement.  Direct notice will be sent to the entire

class (both direct filers and married joint filers) by either email or mailed notice.

22

23

24

25    13.    Based upon information provided by Defendant, and assuming the data received is relatively

up to date, Kroll estimates an average undeliverable rate of no more than 9% and thus projects direct

notice will likely reach an estimated 91% of the proposed Settlement Class Members. These

26

27

28

DECLARATION OF JEANNE C. FINEGAN IN CONNECTION WITH PRELIMINARY APPROVAL

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

assumptions are subject to the accuracy and quality of the data received. This estimated Settlement Class Member reach is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[7]

14.     To reach those class members not reached by direct methods, and consistent with numerous settlement notice plans, the robust direct outreach may be supplemented, as agreed to by the Parties, through digital publication notice, employing online display ads, key word search, and social media. Indeed, at the conclusion of this extensive outreach effort, we anticipate the final analysis may well report even greater results.

## CAFA Notice

15.     On behalf of the Defendant, Kroll will provide notice of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) (the "CAFA Notice"). At Defense Counsel's direction, Kroll will send the CAFA Notice, containing access to certain documents relating to the Settlement, via first-class certified mail to (i) the Attorney General of the United States and (ii) the applicable state Attorneys General. The CAFA Notice will direct the recipients to the website www.CAFANotice.com, a site that will contain all the documents relating to the Settlement.

## Notice by Email

16.     In preparation for disseminating notices by email, Kroll will work with Settlement Class Counsel and Defense Counsel (collectively "Counsel") to finalize the language for the email form of the Short-Form Notice. Once the email form of the Short-Form Notice is approved, Kroll will create an email notice template in preparation for the email campaign. In consultation with Counsel, Kroll will run the email addresses through an email cleanse process. Kroll will then prepare a file with all appropriate Settlement Class Member email addresses and upload the file to an email campaign platform. Kroll will prepare email proofs for Counsel's review and approval, which will include the body of the email and subject line. Once these proofs are approved, the email campaign will begin

---

[7] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010).

1  as directed in the Settlement.

2  17.     Kroll will track and monitor emails that are rejected or "bounced back" as undeliverable.  At

3  the conclusion of the email campaign, Kroll will provide a report with the email delivery status of

4  each record.  The report will include the number of records that had a successful email delivery, and

5  a count of the records where delivery failed.  Kroll will also update its administration database with

6  the appropriate status of the email campaign for each of the Settlement Class Member records.

7  18.     If the email Short-Form Notice was delivered successfully, no further action will be taken

8  with respect to the particular potential Settlement Class Member record.

9  19.     Email Short-Form Notices rejected or "bounced back" as undeliverable will be sent a Short-

10  Form Notice via mail if a physical mailing address is available.

11  **Notice by Mail**

12  20.     Kroll will work with Counsel to draft and format the Short-Form Notice for hardcopy mailing.

13  Upon approval, Kroll will coordinate the preparation of Short-Form Notice hardcopy proofs for

14  Counsel to review and approve.

15  21.     As required under the Notice Plan, Kroll will send the Short-Form Notices to the physical

16  addresses of Settlement Class Members: 1) who only have a physical mailing address (and no email

17  address) in the Settlement Class Member data to be provided; and 2) whose email bounced and a

18  mailing address is included in the Settlement Class Member data.

19  22.     Notices by mail will be sent by first-class mail to all physical addresses as noted above.  In

20  preparation for the notice mailing, Kroll will send the Settlement Class Member data through the

21  United States Postal Service's ("USPS") National Change of Address ("NCOA") database.  The

22  NCOA process will provide updated addresses for Settlement Class Members who have submitted a

23  change of address with the USPS in the last 48 months, and the process will also standardize the

24  addresses for mailing.  Kroll will then prepare a mail file of Settlement Class Members that are to

25  receive the notice via first-class Mail.

26  23.     As required under the Settlement Agreement, mailed Short-form Notices returned by the

27  USPS with a forwarding address will be automatically re-mailed to the updated address provided by

28

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60331119348

the USPS.

24.     As required under the Settlement Agreement, mailed Short-form Notices returned by the USPS undeliverable as addressed without a forwarding address will be sent through an advanced address search process in an effort to find a more current address for the record.  If an updated address is obtained through the advanced search process, Kroll will re-mail the notice to the updated address.

### Reminder Notice

25.     In consultation with Counsel, Kroll will also coordinate the sending of a reminder notice via email to all Settlement Class Members for whom email addresses are available, and who have not already filed a Claim Form under the Settlement.

### Supplemental Publication Notice

26.     While the proposed notice program as outlined in the Settlement Agreement is expected to provide direct notice to reach the vast majority of Settlement Class Members, the parties may agree to employ a scaled supplemental effort to reach those who may not have been reached through direct means. The scope of the supplemental publication notice will be determined based on the final analysis of the results of the direct portions of the Notice Plan, but will likely include:

- Online display and keyword search ads on Google Ads will target adults over the age of 18. These online ads will appear in both English and Spanish.

- Additional social media outreach through ads on Facebook and Instagram will target adults over the age of 18.

The total impressions employed in this program will be scaled as needed to supplement the results of the direct outreach efforts.  A full report on the number of impressions employed will be provided to Class Counsel upon completion of these outreach efforts.

27.     A press release may also be distributed over PR Newswire's US1 Newsline in English and Spanish.  PR Newswire distributes to thousands of print and broadcast newsrooms nationwide, as well as websites, data bases and online services.  Kroll intends to monitor various media channels for subsequent news articles and various social mentions as a result of the press release efforts.  A complete report on the results will be filed with the Court upon completion of the notice program.

DECLARATION OF JEANNE C. FINEGAN IN CONNECTION WITH PRELIMINARY APPROVAL

### Settlement Website

28.     Kroll will work with counsel to create a dedicated Settlement website. The website URL will be determined and approved by Counsel. The Settlement website will contain a summary of the Settlement, will enable online Claim Form filing, will allow Settlement Class Members to contact the Settlement Administrator with any questions or changes of address, provide notice of important dates, such as the Final Approval Hearing, Claims Submission Deadline, Objection Deadline, Opt-Out Deadline, and provide Settlement Class Members who file Claim Forms online the opportunity to select an electronic payment method, including Venmo, Zelle, PayPal, e-Mastercard, ACH, or payment by check. The Settlement website will also contain relevant case documents including the Operative Complaint, the Settlement Agreement, the Long-Form Notice, Plaintiffs' motion for preliminary approval, and the Preliminary Approval Order.  Lastly, the Settlement website will contain the Kroll privacy policy, including the policy for California Consumer Privacy Act.

### Toll-Free Telephone Number

29.     Kroll has established a toll-free telephone number for the Settlement, which will allow Settlement Class Members to call and obtain information about the Settlement through an interactive voice response system and/or by being connected to a live operator.  The toll-free number will be available twenty-four hours a day, seven days a week.

### Post Office Box

30.     Kroll will designate a post office box with the mailing address *Smith-Washington v TaxAct Settlement*, c/o Kroll Settlement Administration, PO Box 225391, New York, NY 10150-5391 in order to receive Requests to Opt-Out, Claim Forms, and correspondence from Settlement Class Members.

### Data Use Limitation

31.     Kroll will solely use Settlement Class Member data for notice and Settlement administration, award calculations, and issuing Settlement payments to Authorized Claimants.

### Technical Controls, Data Security

32.     Kroll is an industry leader in data security.  Kroll is CCPA, HIPAA, and GDPR compliant and maintains numerous industry certifications related to data security, including SOC2 and ISO 2700

DECLARATION OF JEANNE C. FINEGAN IN CONNECTION WITH PRELIMINARY APPROVAL

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

certification.  Kroll has technical, physical, and procedural protocols and safeguards in place to ensure the security and privacy of Settlement Class Member data. These include standards related to data retention and document destruction; fully redundant environmental systems and redundant storage; regular audits; and documented plans for both incident and crisis response, including breach protocols and physical controls. Kroll's information security program includes vulnerability management, compliance, security monitoring and security engineering supported by a team of information security professionals, including a Chief Information Security Officer and Chief Privacy Officer.

**Business/Liability Insurance**

33.    Kroll maintains standard business insurance, including professional liability insurance, cyber insurance, and crime insurance.

**Administrative and Ethical policies**

34.    Kroll has employee administrative and ethical polices that all employees are required to follow. These include, but are not limited to:

- Pre-hire background checks;
- Controls for accessing systems, data and applications, along with processes for assigning access;
- Annual Code of Ethics training and certification;
- Annual Information Security training and certification; and
- HIPAA training for all staff.

**Crisis and Risk Management**

35.    Kroll has defined and tested incident response and disaster recovery plans that it employs across the organization.  Should an incident occur, Kroll will take immediate action, which will include notification to clients and claimants of the incident consistent with privacy laws and regulations or as otherwise provided in any contractual agreements with its clients.  Kroll also has detailed vendor on-boarding and management policies.

**Physical Access Controls**

36.    Security keycard access is required to enter Kroll's facilities.  Additionally, keycard access is required for employees to use the facility elevators and to enter Kroll's office spaces.

**Data Collection, Retention and Destruction**

37.     Kroll only requires the collection of data necessary to effectively administer the Settlement. If personally identifiable information ("PII") (e.g., Social Security Numbers, account information, dates of birth, etc.) are not necessary for administration, Kroll will not request such PII.  Kroll does not and will not share Settlement Class Member data with third parties unless authorized or directed to do so by Counsel or the Court.  Internally, access to data is limited to only those employees working on the particular matter.  In addition, Kroll has standard practices for data retention and destruction. However, to the extent there are data retention and destruction requirements specific to the Settlement that differ from Kroll's standard policies, Kroll will follow the Settlement guidelines.

**Administration Cost**

38.     Based on Kroll's current understanding of the Settlement Class size and requested Settlement administration services, estimated Notice and Administration Costs are between approximately $1,900,000 and $2,300,000 for fees, costs and other expenses incurred for Settlement administration pursuant to the Settlement Agreement.  The current estimate is subject to change depending on factors such as the actual Settlement Class size and/or any Settlement Administration scope change not currently under consideration

**Conclusion**

39.     In my opinion, the outreach efforts described above reflect a particularly appropriate, highly targeted, and contemporary way to employ notice to this class.  In my opinion, the efforts to be used in this proposed notice program are consistent with best practicable court-approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach.

40.     I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

41.     Executed on February 21, 2024 in Tigard, Oregon.


JEANNE C. FINEGAN

DECLARATION OF JEANNE C. FINEGAN IN CONNECTION WITH PRELIMINARY APPROVAL

# Exhibit A



# JEANNE C. FINEGAN, APR



Jeanne Finegan, APR, is the Managing Director and Head of Kroll Notice Media. She is a member of the Board of Directors for the prestigious Alliance for Audited Media (AAM) and was named by *Diversity Journal* as one of the "Top 100 Women Worth Watching." She is a distinguished legal notice and communications expert with more than 30 years of communications and advertising experience.

She was a lead contributing author for Duke University's School of Law, *"Guidelines and Best Practices Implementing Amendments to Rule 23 Class Action Settlement Provisions."* And more recently, she has been involved with New York School of Law and The Center on Civil Justice (CCJ) assisting with a class action settlement data analysis and comparative visualization tool called the *Aggregate Litigation Project*, designed to help judges make decisions in aggregate cases on the basis of data as opposed to anecdotal information. Moreover, her experience also includes working with the Special Settlement Administrator's team to assist with the outreach strategy for the historic Auto Airbag Settlement, In re: *Takata Airbag Products Liability Litigation* MDL 2599.

During her tenure, she has planned and implemented over 1,000 high-profile, complex legal notice communication programs. She is a recognized notice expert in both the United States and in Canada, with extensive international notice experience spanning more than 170 countries and over 40 languages.

Ms. Finegan has lectured, published and has been cited extensively on various aspects of legal noticing, product recall and crisis communications. She has served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns. Further, she has planned and implemented large-scale government enforcement notice programs for the Federal Trade Commission (FTC) and the Securities and Exchange Commission (SEC).

Ms. Finegan is accredited in Public Relations (APR) by the Universal Accreditation Board, which is a program administered by the Public Relations Society of America (PRSA),and is also a recognized member of the Canadian Public Relations Society (CPRS). She has served on examination panels for APR candidates and worked *pro bono* as a judge for prestigious PRSA awards.

Ms. Finegan has provided expert testimony before Congress on issues of notice, and expert testimony in both state and federal courts regarding notification campaigns. She has conducted numerous media audits of proposed notice programs to assess the adequacy of those programs under Fed R. Civ. P. 23(c)(2) and similar state class action statutes.

She was an early pioneer of plain language in notice (as noted in a RAND study,[1]) and continues to set the standard for modern outreach as the first notice expert to integrate social and mobile media into court approved legal notice programs.

In the course of her class action experience, courts have recognized the merits of, and admitted expert testimony based on, her scientific evaluation of the effectiveness of notice plans. She has designed legal notices for a wide range of class actions and consumer matters that include product liability, construction defect, antitrust, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, government enforcement actions, securities, banking, insurance, mass tort, restructuring and product recall.

---

1 Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN. RAND (2000).

DocuSign Envelope ID: 8737C891-540A-489B-BAB3-A60321119348



## JUDICIAL COMMENTS AND LEGAL NOTICE CASES

In evaluating the adequacy and effectiveness of Ms. Finegan's notice campaigns, courts have repeatedly recognized her excellent work. The following excerpts provide some examples of such judicial approval.

***In re Purdue Pharma L.P.,*** No. 19-23649 (Bankr. S.D.N.Y. 2019). Omnibus Hearing, Motion Pursuant to 11 U.S.C. §§ 105(a) and 501 and Fed. R. Bankr. P. 2002 and 3003(c)(3) for Entry of an Order (I)Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof, June 3, 2020, transcript p. 88:10, the Honorable Robert Drain stated:
> *"The notice here is indeed extraordinary, as was detailed on page 8 of Ms. Finegan's declaration in support of the original bar date motion and then in her supplemental declaration from May 20th in support of the current motion, the notice is not only in print media, but extensive television and radio notice, community outreach, -- and I think this is perhaps going to be more of a trend, but it's a major element of the notice here -- online, social media, out of home, i.e. billboards, and earned media, including bloggers and creative messaging. That with a combined with a simplified proof of claims form and the ability to file a claim or first, get more information about filing a claim online -- there was a specific claims website -- and to file a claim either online or by mail. Based on Ms. Finegan's supplemental declaration, it appears clear to me that that process of providing notice has been quite successful in its goal in ultimately reaching roughly 95 percent of all adults in the United States over the age of 18 with an average frequency of message exposure of six times, as well as over 80 percent of all adults in Canada with an average message exposure of over three times."*

***In Re: PG&E Corporation*** Case No . 19-30088 Bankr. (N.D. Cal. 2019). Hearing Establishing, Deadline for Filing Proofs of Claim, (III) establishing the Form and Manner of Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar Date and Other Information to all Creditors and Potential Creditors PG&E. *June 26, 2019, Transcript of Hearing p. 21:1, the Honorable Dennis Montali stated:*
> *…the technology and the thought that goes into all these plans is almost incomprehensible. He further stated, p. 201:20 … Ms. Finegan has really impressed me today…*

***Yahoo! Inc. Customer Data Security Breach Litigation,*** Case No. 5:16-MD-02752 (ND Cal 2016). In the Order Preliminary Approval, dated July 20, 2019, the Honorable Lucy Kho stated, para 21,
> *"The Court finds that the Approved Notices and Notice Plan set forth in the Amended Settlement Agreement satisfy the requirements of due process and Federal Rule of Civil Procedure 23 and provide the best notice practicable under the circumstances."*

***Hill's Pet Nutrition, Inc., Dog Food Products Liability Litigation,*** Case No. 19-MD-2887 (U.S. District Court, District Kansas 2021). *In the Preliminary Approval Transcript, February 2, 2021 p. 28-29, the Honorable Julie A. Robinson stated:*
> *"I was very impressed in reading the notice plan and very educational, frankly to me, understanding the communication, media platforms, technology, all of that continues to evolve rapidly and the ability to not only target consumers, but to target people that could rightfully receive notice continues to improve all the time."*

***In re: The Bank of New York Mellon ADR FX Litigation,*** 16-CV-00212-JPO-JLC (S.D.N.Y. 2019). In the Final Order and Judgement, dated June 17, 2019, para 5, the Honorable J. Paul Oetkin stated:
> *"The dissemination of notice constituted the best notice practicable under the circumstances."*

***Simerlein et al., v. Toyota Motor Corporation,*** Case No. 3:17-cv-01091-VAB (District of CT 2019). In the Ruling and Order on Motion for Preliminarily Approval, dated January 14, 2019, p. 30, the Honorable Victor Bolden stated:
> *"In finding that notice is sufficient to meet both the requirements of Rule 23(c) and due process, the Court has reviewed and appreciated the high-quality submission of proposed Settlement Notice Administrator Jeanne C. Finegan. See Declaration of Jeanne C. Finegan, APR, Ex. G to Agrmt., ECF No. 85-8."*

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60231119348



***Fitzhenry- Russell et al., v. Keurig Dr. Pepper Inc.,*** Case No. :17-cv-00564-NC, (ND Cal). In the Order Granting Final Approval of Class Action Settlement, Dated April 10, 2019, the Honorable Nathanael Cousins stated:

> *"…the reaction of class members to the proposed Settlement is positive. The parties anticipated that 100,000 claims would be filed under the Settlement (see Dkt. No. 327-5 ¶ 36)—91,254 claims were actually filed (see Finegan Decl ¶ 4). The 4% claim rate was reasonable in light of Heffler's efforts to ensure that notice was adequately provided to the Class."*

***Pettit et al., v. Procter & Gamble Co.,*** Case No. 15-cv-02150-RS ND Cal**.** In the Order Granting Final Approval of the Class Action Settlement and Judgement, Dated March 28, 2019, p. 6, the Honorable Richard Seeborg stated:
> *"The Court finds that the Notice Plan set forth in the Settlement Agreement, and effectuated pursuant to the Preliminary Approval Order, constituted the best notice practicable under the circumstances and constituted due and sufficient notice to the Settlement Class. …the number of claims received equates to a claims rate of 4.6%, which exceeds the rate in comparable settlements."*

***Carter v Forjas Taurus S.S., Taurus International Manufacturing***, Inc., Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:
> *"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. …There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers… Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. …The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members."*

Additionally, in January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz, noted:

> *"I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class."*

***Cook et. al., v. Rockwell International Corp. and the Dow Chemical Co.,*** No. 90-cv-00181- KLK *(D.Colo. 2017)., aka, Rocky Flats Nuclear Weapons Plant Contamination***.** In the Order Granting Final Approval, dated April 28, 2017, p.3, the Honorable John L. Kane said:
> *The Court-approved Notice Plan, which was successfully implemented by*
> *[HF Media- emphasis added] (see Doc. 2432), constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice Plan that was implemented, as set forth in Declaration of Jeanne C. Finegan, APR Concerning Implementation and Adequacy of Class Member Notification (Doc. 2432), provided for individual notice to all members of the Class whose identities and addresses were identified through reasonable efforts, … and a comprehensive national publication notice program that included, inter alia, print, television, radio and internet banner advertisements. …Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court finds that the Notice Plan provided the best notice practicable to the Class.*

***In re: Domestic Drywall Antitrust Litigation,*** MDL. No. 2437, in the U.S. District Court for the Eastern District of Pennsylvania. For each of the four settlements, Finegan implemented and extensive outreach effort including traditional, online, social, mobile and advanced television and online video. In the Order Granting Preliminary Approval to the IPP Settlement, Judge Michael M. Baylson  stated:
> *"The Court finds that the dissemination of the Notice and summary Notice constitutes the best notice practicable under the circumstances; is valid, due, and sufficient notice to all persons… and complies fully with the requirements of the Federal rule of Civil Procedure."*



**Warner v. Toyota Motor Sales, U.S.A. Inc., Case No 2:15-cv-02171-FMO FFMx (C.D. Cal. 2017).** In the Order Re: Final Approval of Class Action Settlement; Approval of Attorney's Fees, Costs & Service Awards, dated May 21, 2017, the Honorable Fernando M. Olguin stated:

> *Finegan, the court-appointed settlement notice administrator, has implemented the multiprong notice program. …the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. (See Dkt. 98, PAO at 25-28).*

**Michael Allagas, et al., v. BP Solar International, Inc., et al., BP Solar Panel Settlement**, Case No. 3:14-cv-00560- SI (N.D. Cal., San Francisco Div. 2016). In the Order Granting Final Approval, Dated December 22, 2016, The Honorable Susan Illston stated:

> *Class Notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and d. fully satisfied the requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.*

**Foster v. L-3 Communications** EOTech, Inc. et al (6:15-cv-03519), Missouri Western District Court. In the Court's Final Order, dated July 7, 2017, The Honorable Judge Brian Wimes stated: *"The Court has determined that the Notice given to the Settlement Class fully and accurately informed members of the Settlement Class of all material elements of the Settlement and constituted the best notice practicable."*

**In re: Skechers Toning Shoes Products Liability Litigation**, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

> *… The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.*

**Brody v. Merck & Co., Inc., et al,** No. 3:12-cv-04774-PGS-DEA (N.J.) (Jt Hearing for Prelim App, Sept. 27, 2012, transcript page 34). During the Hearing on Joint Application for Preliminary Approval of Class Action, the Honorable Peter G. Sheridan acknowledged Ms. Finegan's work, noting:

> *Ms. Finegan did a great job in testifying as to what the class administrator will do. So, I'm certain that all the class members or as many that can be found, will be given some very adequate notice in which they can perfect their claim.*

**Quinn v. Walgreen Co., Wal-Mart Stores Inc.,** 7:12 CV-8187-VB (NYSD) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41). During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti stated:

> *"The notice plan was the best practicable under the circumstances. … [and] "the proof is in the pudding. This settlement has resulted in more than 45,000 claims which is 10,000 more than the Pearson case and more than 40,000 more than in a glucosamine case pending in the Southern District of California I've been advised about. So the notice has reached a lot of people and a lot of people have made claims."*

**In Re: TracFone Unlimited Service Plan Litigation,** No. C-13-3440 EMC (ND Ca). In the Final Order and Judgment Granting Class Settlement, July 2, 2015, the Honorable Edward M. Chen noted:

> *"…[D]epending on the extent of the overlap between those class members who will automatically receive a payment and those who filed claims, the total claims rate is estimated to be approximately 25-30%. This is an excellent result...*



*In Re: Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation*, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015), (Hearing for Final Approval, May 19, 2016 transcript p. 49).  During the Hearing for Final Approval, the Honorable Rodney Sippel said:

> *It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations.*

*DeHoyos, et al., v. Allstate Ins. Co.*, No. SA-01-CA-1010 (W.D.Tx. 2001).  In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> *[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African American and Hispanic class members.  Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts.  Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish.*

*In Re: Reebok Easytone Litigation*, No. 10-CV-11977 (D. MA. 2011).  The Honorable F. Dennis Saylor IV stated in the Final Approval Order:

> *The Court finds that the dissemination of the Class Notice, the publication of the Summary Settlement Notice, the establishment of a website containing settlement-related materials, the establishment of a toll-free telephone number, and all other notice methods set forth in the Settlement Agreement and [Ms. Finegan's] Declaration and the notice dissemination methodology implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order… constituted the best practicable notice to Class Members under the circumstances of the Actions.*

**Bezdek v. Vibram USA and Vibram FiveFingers** LLC, No 12-10513 (D. MA) The Honorable Douglas P. Woodlock stated in the Final Memorandum and Order:

> *…[O]n independent review I find that the notice program was robust, particularly in its online presence, and implemented as directed in my Order authorizing notice. …I find that notice was given to the Settlement class members by the best means "practicable under the circumstances." Fed.R.Civ.P. 23(c)(2).*

*Gemelas v. The Dannon Company Inc.,* No. 08-cv-00236-DAP (N.D. Ohio).  In granting final approval for the settlement, the Honorable Dan A. Polster stated:

> *In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, [Ms. Finegan] caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members. … The distribution of Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.*

*Pashmova v. New Balance Athletic Shoes, Inc.*, 1:11-cv-10001-LTS (D. Mass.). The Honorable Leo T. Sorokin stated in the Final Approval Order:

> *The Class Notice, the Summary Settlement Notice, the web site, and all other notices in the Settlement Agreement and the Declaration of  [Ms Finegan], and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Actions, the terms of the Settlement and their rights under the settlement … met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.*

DocuSign Envelope ID: 8737C891-540A-489B-BA97-A60221119348



***Hartless v. Clorox Company***, No. 06-CV-2705 (CAB) (S.D.Cal.).  In the Final Order Approving Settlement, the Honorable Cathy N. Bencivengo found:
> *The Class Notice advised Class members of the terms of the settlement; the Final Approval Hearing and their right to appear at such hearing; their rights to remain in or opt out of the Class and to object to the settlement; the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Class. The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

***McDonough et al., v. Toys 'R' Us et al,*** No. 09:-cv-06151-AB (E.D. Pa.).  In the Final Order and Judgment Approving Settlement, the Honorable Anita Brody stated:
> *The Court finds that the Notice provided constituted the best notice practicable under the circumstances and constituted valid, due and sufficient notice to all persons entitled thereto.*

***In re: Pre-Filled Propane Tank Marketing & Sales Practices Litigation,*** No. 4:09-md-02086-GAF (W.D. Mo.)  In granting final approval to the settlement, the Honorable Gary A. Fenner stated:
> *The notice program included individual notice to class members who could be identified by Ferrellgas, publication notices, and notices affixed to Blue Rhino propane tank cylinders sold by Ferrellgas through various retailers. ... The Court finds the notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process and provided to the Class the best notice practicable under the circumstances.*

***Stern v. AT&T Mobility Wireless***, No. 09-cv-1112 CAS-AGR (C.D.Cal. 2009).  In the Final Approval Order, the Honorable Christina A. Snyder stated:
> *[T]he Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.*

***In re: Processed Egg Prods. Antitrust Litig.***, MDL No. 08-md-02002 (E.D.P.A.).  In the Order Granting Final Approval of Settlement, Judge Gene E.K. Pratter stated:
> *The Notice appropriately detailed the nature of the action, the Class claims, the definition of the Class and Subclasses, the terms of the proposed settlement agreement, and the class members' right to object or request exclusion from the settlement and the timing and manner for doing so.… Accordingly, the Court determines that the notice provided to the putative Class Members constitutes adequate notice in satisfaction of the demands of Rule 23.*

***In re Polyurethane Foam Antitrust Litigation***, 10- MD-2196 (N.D. OH). In the Order Granting Final Approval of Voluntary Dismissal and Settlement of Defendant Domfoam and Others, the Honorable Jack Zouhary stated:
> *The notice program included individual notice to members of the Class who could be identified through reasonable effort, as well as extensive publication of a summary notice. The Notice constituted the most effective and best notice practicable under the circumstances of the Settlement Agreements, and constituted due and sufficient notice for all other purposes to all persons and entities entitled to receive notice.*

***Rojas v Career Education Corporation***, No. 10-cv-05260 (N.D.E.D. IL) In the Final Approval Order dated October 25, 2012, the Honorable Virginia M. Kendall stated:
> *The Court Approved notice to the Settlement Class as the best notice practicable under the circumstance including individual notice via U.S. Mail and by email to the class members whose addresses were obtained from each Class Member's wireless carrier or from a commercially reasonable reverse cell phone number look-up service, nationwide magazine publication, website publication, targeted on-line advertising, and a press release.  Notice has been successfully implemented and satisfies the requirements of the Federal Rule of Civil Procedure 23 and Due Process.*



*Golloher v Todd Christopher International, Inc. DBA Vogue International (Organix)*, No. C 1206002 N.D CA.  In the Final Order and Judgment Approving Settlement, the Honorable Richard Seeborg stated:
> *The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

*Stefanyshyn v. Consolidated Industries*, No. 79 D 01-9712-CT-59 (Tippecanoe County Sup. Ct., Ind.). In the Order Granting Final Approval of Settlement, Judge Randy Williams stated:
> *The long and short form notices provided a neutral, informative, and clear explanation of the Settlement. … The proposed notice program was properly designed, recommended, and implemented … and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all applicable legal requirements. … The comprehensive class notice educated Settlement Class members about the defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.*

*McGee v. Continental Tire North America, Inc. et al*, No. 06-6234-(GEB) (D.N.J.).

> *The Class Notice, the Summary Settlement Notice, the web site, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.*

*Varacallo, et al. v. Massachusetts Mutual Life Insurance Company, et al.*, No. 04-2702 (JLL) (D.N.J.). The Court stated that:
> *[A]ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices. … By working with a nationally syndicated media research firm, [Finegan's firm] was able to define a target audience for the MassMutual Class Members, which provided a valid basis for determining the magazine and newspaper preferences of the Class Members.  (Preliminary Approval Order at p. 9).  . . .  The Court agrees with Class Counsel that this was more than adequate.  (Id. at § 5.2).*

*In Re: Nortel Network Corp., Sec. Litig.*, No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (S.D.N.Y.).  Ms. Finegan designed and implemented the extensive United States and Canadian notice programs in this case.  The Canadian program was published in both French and English, and targeted virtually all investors of stock in Canada.   *See* www.nortelsecuritieslitigation.com.  Of the U.S. notice program, the Honorable Loretta A. Preska stated:
> *The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement … constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

Regarding the B.C. Canadian Notice effort: *Jeffrey v. Nortel Networks*, [2007] BCSC 69 at para. 50, the Honourable Mr. Justice Groberman said:
> *The efforts to give notice to potential class members in this case have been thorough.  There has been a broad media campaign to publicize the proposed settlement and the court processes. There has also been a direct mail campaign directed at probable investors.  I am advised that over 1.2 million claim packages were mailed to persons around the world.  In addition, packages*

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60221119348



*have been available through the worldwide web site nortelsecuritieslitigation.com  on the Internet. Toll-free telephone lines have been set up, and it appears that class counsel and the Claims Administrator have received innumerable calls from potential class members. In short, all reasonable efforts have been made to ensure that potential members of the class have had notice of the proposal and a reasonable opportunity was provided for class members to register their objections, or seek exclusion from the settlement.*

***Mayo v. Walmart Stores and Sam's Club***, No. 5:06 CV-93-R (W.D.Ky.).  In the Order Granting Final Approval of Settlement, Judge Thomas B. Russell stated:

*According to defendants' database, the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail. The Settlement Administrator … has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'… The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members.*

***Fishbein v. All Market Inc***., (d/b/a **Vita Coco**) No. 11-cv-05580  (S.D.N.Y.).  In granting final approval of the settlement, the Honorable J. Paul Oetken stated:

*"The Court finds that the dissemination of Class Notice pursuant to the Notice Program…constituted the best practicable notice to Settlement Class Members under the circumstances of this Litigation … and was reasonable and constituted due, adequate and sufficient notice to all persons entitled to such notice, and fully satisfied the requirements of the Federal Rules of Civil Procedure, including Rules 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable laws."*

***Lucas, et al. v. Kmart Corp***., No. 99-cv-01923 (D.Colo.), wherein the Court recognized Jeanne Finegan as an expert in the design of notice programs, and stated:

*The Court finds that the efforts of the parties and the proposed Claims Administrator in this respect go above and beyond the "reasonable efforts" required for identifying individual class members under F.R.C.P. 23(c)(2)(B).*

***In Re: Johns-Manville Corp.*** **(Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement)**, No 82-11656, 57, 660, 661, 665-73, 75 and 76 (BRL) (Bankr. S.D.N.Y.).  The nearly half-billion dollar settlement incorporated three separate notification programs, which targeted all persons who had asbestos claims whether asserted or unasserted, against the Travelers Indemnity Company.  In the Findings of Fact and Conclusions of a Clarifying Order Approving the Settlements, slip op. at 47-48 (Aug. 17, 2004), the Honorable Burton R. Lifland, Chief Justice, stated:

*As demonstrated by Findings of Fact (citation omitted), the Statutory Direct Action Settlement notice program was reasonably calculated under all circumstances to apprise the affected individuals of the proceedings and actions taken involving their interests, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), such program did apprise the overwhelming majority of potentially affected claimants and far exceeded the minimum notice required. . . The results simply speak for themselves.*

***Pigford v. Glickman and U.S. Department of Agriculture***, No. 97-1978. 98-1693 (PLF) (D.D.C.). This matter was the largest civil rights case to settle in the United States in over 40 years. The highly publicized, nationwide paid media program was designed to alert all present and past African-American farmers of the opportunity to recover monetary damages against the U.S. Department of Agriculture for alleged loan discrimination.  In his Opinion, the Honorable Paul L. Friedman commended the parties with respect to the notice program, stating;

*The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television*

DocuSign Envelope ID: 8737C891-540A-489B-8A87-A60231119348



*stations. . . The Court concludes that class members have received more than adequate notice and have had sufficient opportunity to be heard on the fairness of the proposed Consent Decree.*

***In Re: Louisiana-Pacific Inner-Seal Siding Litig.***, Nos. 879-JE, and 1453-JE (D.Or.).  Under the terms of the Settlement, three separate notice programs were to be implemented at three-year intervals over a period of six years.  In the first notice campaign, Ms. Finegan implemented the print advertising and Internet components of the Notice program.  In approving the legal notice communication plan, the Honorable Robert E. Jones stated:

> *The notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign.*

Additionally, with regard to the third-year notice program for Louisiana-Pacific, the Honorable Richard Unis, Special Master, commented that the notice was:

> *…well formulated to conform to the definition set by the court as adequate and reasonable notice. Indeed, I believe the record should also reflect the Court's appreciation to Ms. Finegan for all the work she's done, ensuring that noticing was done correctly and professionally, while paying careful attention to overall costs.  Her understanding of various notice requirements under Fed. R. Civ. P. 23, helped to insure that the notice given in this case was consistent with the highest standards of compliance with Rule 23(d)(2).*

***In Re: Expedia Hotel Taxes and Fees Litigation***, No. 05-2-02060-1 (SEA) (Sup. Ct. of Wash. in and for King County).  In the Order Granting Final Approval of Class Action Settlement, Judge Monica Benton stated:

> *The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances. All of these forms of Notice directed Class Members to a Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement.  The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled to such notice, and said notice fully satisfied the requirements of CR 23 and due process.*

***Thomas A. Foster and Linda E. Foster v. ABTco Siding Litigation***, No. 95-151-M (Cir. Ct., Choctaw County, Ala.).  This litigation focused on past and present owners of structures sided with Abitibi-Price siding.  The notice program that Ms. Finegan designed and implemented was national in scope and received the following praise from the Honorable J. Lee McPhearson:

> *The Court finds that the Notice Program conducted by the Parties provided individual notice to all known Class Members and all Class Members who could be identified through reasonable efforts and constitutes the best notice practicable under the circumstances of this Action.  This finding is based on the overwhelming evidence of the adequacy of the notice program.  … The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11) The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign.*

***Wilson v. Massachusetts Mut. Life Ins. Co.***, No. D-101-CV 98-02814 (First Judicial Dist. Ct., County of Santa Fe, N.M.). This was a nationwide notification program that included all persons in the United States who owned, or had owned, a life or disability insurance policy with Massachusetts Mutual Life Insurance Company and had paid additional charges when paying their premium on an installment basis. The class was estimated to exceed 1.6 million individuals. www.insuranceclassclaims.com.  In granting preliminary approval to the settlement, the Honorable Art Encinias found:

> *[T]he Notice Plan [is] the best practicable notice that is reasonably calculated, under the circumstances of the action.  …[and] meets or exceeds all applicable requirements of the law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law.*



*Sparks v. AT&T Corp.*, No. 96-LM-983 (Third Judicial Cir., Madison County, Ill.). The litigation concerned all persons in the United States who leased certain AT&T telephones during the 1980's. Ms. Finegan designed and implemented a nationwide media program designed to target all persons who may have leased telephones during this time period, a class that included a large percentage of the entire population of the United States. In granting final approval to the settlement, the Court found:

> *The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements.*

*In Re: Georgia-Pacific Toxic Explosion Litig.*, No. 98 CVC05-3535 (Ct. of Common Pleas, Franklin County, Ohio).  Ms. Finegan designed and implemented a regional notice program that included network affiliate television, radio and newspaper.  The notice was designed to alert adults living near a Georgia-Pacific plant that they had been exposed to an air-born toxic plume and their rights under the terms of the class action settlement.  In the Order and Judgment finally approving the settlement, the Honorable Jennifer L. Bunner stated:

> *[N]otice of the settlement to the Class was the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The Court finds that such effort exceeded even reasonable effort and that the Notice complies with the requirements of Civ. R. 23(C).*

*In Re: American Cyanamid*, No**.** CV-97-0581-BH-M (S.D.Al.).  The media program targeted Farmers who had purchased crop protection chemicals manufactured by American Cyanamid.  In the Final Order and Judgment, the Honorable Charles R. Butler Jr. wrote:

> *The Court finds that the form and method of notice used to notify the Temporary Settlement Class of the Settlement satisfied the requirements of Fed. R. Civ. P. 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all potential members of the Temporary Class Settlement.*

*In Re: First Alert Smoke Alarm Litig.*, No. CV-98-C-1546-W (UWC) (N.D.Al.).  Ms. Finegan designed and implemented a nationwide legal notice and public information program.  The public information program ran over a two-year period to inform those with smoke alarms of the performance characteristics between photoelectric and ionization detection.  The media program included network and cable television, magazine and specialty trade publications.  In the Findings and Order Preliminarily Certifying the Class for Settlement Purposes, Preliminarily Approving Class Settlement, Appointing Class Counsel, Directing Issuance of Notice to the Class, and Scheduling a Fairness Hearing, the Honorable C.W. Clemon wrote that the notice plan:

> *…constitutes due, adequate and sufficient notice to all Class Members; and (v) meets or exceeds all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Alabama State Constitution, the Rules of the Court, and any other applicable law.*

*In Re: James Hardie Roofing Litig.,* No. 00-2-17945-65SEA (Sup. Ct. of Wash., King County). The nationwide legal notice program included advertising on television, in print and on the Internet.  The program was designed to reach all persons who own any structure with JHBP roofing products.  In the Final Order and Judgment, the Honorable Steven Scott stated:

> *The notice program required by the Preliminary Order has been fully carried out… [and was] extensive.  The notice provided fully and accurately informed the Class Members of all material elements of the proposed Settlement and their opportunity to participate in or be excluded from it; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with Civ. R. 23, the United States Constitution, due process, and other applicable law.*

*Barden v. Hurd Millwork Co. Inc., et al,* No. 2:6-cv-00046 (LA) (E.D.Wis.)

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60221119348



*"The Court approves, as to form and content, the notice plan and finds that such notice is the best practicable under the circumstances under Federal Rule of Civil Procedure 23(c)(2)(B) and constitutes notice in a reasonable manner under Rule 23(e)(1).")*

**Altieri v. Reebok**, No. 4:10-cv-11977 (FDS) (D.C.Mass.)
*"The Court finds that the notices … constitute the best practicable notice...The Court further finds that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices."*

**Marenco v. Visa Inc.,** No. CV 10-08022 (DMG) (C.D.Cal.)
*"[T]he Court finds that the notice plan…meets the requirements of due process, California law, and other applicable precedent.  The Court finds that the proposed notice program is designed to provide the Class with the best notice practicable, under the circumstances of this action, of the pendency of this litigation and of the proposed Settlement's terms, conditions, and procedures, and shall constitute due and sufficient notice to all persons entitled thereto under California law, the United States Constitution, and any other applicable law."*

**Palmer v. Sprint Solutions, Inc.,** No. 09-cv-01211 (JLR) (W.D.Wa.)
*"The means of notice were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to be provide3d with notice."*

**In Re: Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation**, No. 1:08-md-01982 RDB (D. Md. N. Div.)
*"The notice, in form, method, and content, fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled to notice of the settlement."*

**Sager v. Inamed Corp. and McGhan Medical Breast Implant Litigation**, No. 01043771 (Sup. Ct. Cal., County of Santa Barbara)
*"Notice provided was the best practicable under the circumstances."*

**Deke, et al. v. Cardservice Internat'l,** Case No. BC 271679, slip op. at 3 (Sup. Ct. Cal., County of Los Angeles)
*"The Class Notice satisfied the requirements of California Rules of Court 1856 and 1859 and due process and constituted the best notice practicable under the circumstances."*

**Levine, et al. v. Dr. Philip C. McGraw, et al**., Case No. BC 312830 (Los Angeles County Super. Ct., Cal.)
*"[T]he plan for notice to the Settlement Class … constitutes the best notice practicable under the circumstances and constituted due and sufficient notice to the members of the Settlement Class … and satisfies the requirements of California law and federal due process of law."*

**In re: Canadian Air Cargo Shipping Class Actions**, Court File No. 50389CP, Ontario Superior Court of Justice, Supreme Court of British Columbia, Quebec Superior Court
*"I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA and the proposed method of notice is appropriate."*

**Fischer et al v. IG Investment Management, Ltd. et al**, Court File No. 06-CV-307599CP, Ontario Superior Court of Justice.

**In re: Vivendi Universal, S.A. Securities Litigation**, No. 02-cv-5571 (RJH)(HBP) (S.D.N.Y.).

**In re: Air Cargo Shipping Services Antitrust Litigation**, No. 06-MD-1775 (JG) (VV) (E.D.N.Y.).

**Berger, et al., v. Property ID Corporation, et al.**, No. CV 05-5373-GHK (CWx) (C.D.Cal.).



*Lozano v. AT&T Mobility Wireless*, No. 02-cv-0090 CAS (AJWx) (C.D.Cal.).

*Howard A. Engle, M.D., et al., v. R.J. Reynolds Tobacco Co., Philip Morris, Inc., Brown & Williamson Tobacco Corp.,* No. 94-08273 CA (22) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Royal Dutch/Shell Transport Securities Litigation,* No. 04 Civ. 374 (JAP) (Consolidated Cases) (D. N.J.).

*In re: Epson Cartridge Cases, Judicial Council Coordination Proceeding*, No. 4347 (Sup. Ct. of Cal., County of Los Angeles).

*UAW v. General Motors Corporation*, No: 05-73991 (E.D.MI).

*Wicon, Inc. v. Cardservice Intern'l, Inc.*, BC 320215 (Sup. Ct. of Cal., County of Los Angeles).

*In re: SmithKline Beecham Clinical Billing Litig.*, No. CV. No. 97-L-1230 (Third Judicial Cir., Madison County, Ill.).
> Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning billings for clinical laboratory testing services.

*MacGregor v. Schering-Plough Corp.,* No. EC248041 (Sup. Ct. Cal., County of Los Angeles).
> This nationwide notification program was designed to reach all persons who had purchased or used an aerosol inhaler manufactured by Schering-Plough.  Because no mailing list was available, notice was accomplished entirely through the media program.

*In re: Swiss Banks Holocaust Victim Asset Litig.*, No. CV-96-4849 (E.D.N.Y.).
> Ms. Finegan managed the design and implementation of the Internet site on this historic case.  The site was developed in 21 native languages.  It is a highly secure data gathering tool and information hub, central to the global outreach program of Holocaust survivors.  www.swissbankclaims.com.

*In re: Exxon Valdez Oil Spill Litig.*, No. A89-095-CV (HRH) (Consolidated) (D. Alaska).
> Ms. Finegan designed and implemented two media campaigns to notify native Alaskan residents, trade workers, fisherman, and others impacted by the oil spill of the litigation and their rights under the settlement terms.

*In re: Johns-Manville Phenolic Foam Litig.*, No. CV 96-10069 (D. Mass).
> The nationwide multi-media legal notice program was designed to reach all Persons who owned any structure, including an industrial building, commercial building, school, condominium, apartment house, home, garage or other type of structure located in the United States or its territories, in which Johns-Manville PFRI was installed, in whole or in part, on top of a metal roof deck.

*Bristow v Fleetwood Enters Litig.*, No Civ 00-0082-S-EJL (D. Id).
> Ms. Finegan designed and implemented a legal notice campaign targeting present and former employees of Fleetwood Enterprises, Inc., or its subsidiaries who worked as hourly production workers at Fleetwood's housing, travel trailer, or motor home manufacturing plants. The comprehensive notice campaign included print, radio and television advertising.

*In re: New Orleans Tank Car Leakage Fire Litig.*, No 87-16374 (Civil Dist. Ct., Parish of Orleans, LA) (2000).
> This case resulted in one of the largest settlements in U.S. history.  This campaign consisted of a media relations and paid advertising program to notify individuals of their rights under the terms of the settlement.



***Garria Spencer v. Shell Oil Co.***, No. CV 94-074 (Dist. Ct., Harris County, Tex.).
    The nationwide notification program was designed to reach individuals who owned real property or structures in the United States, which contained polybutylene plumbing with acetyl insert or metal insert fittings.

***In re: Hurd Millwork Heat Mirror™ Litig.***, No. CV-772488 (Sup. Ct. of Cal., County of Santa Clara).
    This nationwide multi-media notice program was designed to reach class members with failed heat mirror seals on windows and doors, and alert them as to the actions that they needed to take to receive enhanced warranties or window and door replacement.

***Laborers Dist. Counsel of Alabama Health and Welfare Fund v. Clinical Lab. Servs., Inc***, No. CV–97-C-629-W (N.D. Ala.)
    Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning alleged billing discrepancies for clinical laboratory testing services.

***In re: StarLink Corn Prods. Liab. Litig.***, No. 01-C-1181 (N.D. Ill)
    Ms. Finegan designed and implemented a nationwide notification program designed to alert potential class members of the terms of the settlement.

***In re: MCI Non-Subscriber Rate Payers Litig.***, MDL Docket No. 1275, 3:99-cv-01275 (S.D.Ill.).
    The advertising and media notice program, found to be "more than adequate" by the Court, was designed with the understanding that the litigation affected all persons or entities who were customers of record for telephone lines presubscribed to MCI/World Com, and were charged the higher non-subscriber rates and surcharges for direct-dialed long distance calls placed on those lines. www.rateclaims.com.

***In re: Albertson's Back Pay Litig.***, No. 97-0159-S-BLW (D.Id.).
    Ms. Finegan designed and developed a secure Internet site, where claimants could seek case information confidentially.

***In re: Georgia Pacific Hardboard Siding Recovering Program***, No. CV-95-3330-RG (Cir. Ct., Mobile County, Ala.)
    Ms. Finegan designed and implemented a multi-media legal notice program, which was designed to reach class members with failed G-P siding and alert them of the pending matter. Notice was provided through advertisements, which aired on national cable networks, magazines of nationwide distribution, local newspaper, press releases and trade magazines.

***In re: Diet Drugs* (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., Nos. 1203, 99-20593.
    Ms. Finegan worked as a consultant to the National Diet Drug Settlement Committee on notification issues.  The resulting notice program was described and complimented at length in the Court's Memorandum and Pretrial Order 1415, approving the settlement.

Ms. Finegan designed the Notice programs for multiple state antitrust cases filed against the Microsoft Corporation. In those cases, it was generally alleged that Microsoft unlawfully used anticompetitive means to maintain a monopoly in markets for certain software, and that as a result, it overcharged consumers who licensed its MS-DOS, Windows, Word, Excel and Office software. The multiple legal notice programs designed by Jeanne Finegan and listed below targeted both individual users and business users of this software. The scientifically designed notice programs took into consideration both media usage habits and demographic characteristics of the targeted class members.

***In re: Florida Microsoft Antitrust Litig. Settlement***, No.  99-27340 CA 11 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).



***In re: Montana Microsoft Antitrust Litig. Settlement***, No. DCV 2000 219 (First Judicial Dist. Ct., Lewis & Clark Co., Mt.).

***In re: South Dakota Microsoft Antitrust Litig. Settlement***, No. 00-235(Sixth Judicial Cir., County of Hughes, S.D.).

***In re: Kansas Microsoft Antitrust Litig. Settlement***, No. 99C17089 Division No. 15 Consolidated Cases (Dist. Ct., Johnson County, Kan.)
> *"The Class Notice provided was the best notice practicable under the circumstances and fully complied in all respects with the requirements of due process and of the Kansas State. Annot. §60-22.3."*

***In re: North Carolina Microsoft Antitrust Litig. Settlement***, No. 00-CvS-4073 (Wake) 00-CvS-1246 (Lincoln) (General Court of Justice Sup. Ct., Wake and Lincoln Counties, N.C.).

***In re: ABS II Pipes Litig.***, No. 3126 (Sup. Ct. of Cal., Contra Costa County).
> The Court approved regional notification program designed to alert those individuals who owned structures with the pipe that they were eligible to recover the cost of replacing the pipe.

***In re: Avenue A Inc. Internet Privacy Litig.***, No: C00-1964C (W.D. Wash.).

***In re: Lorazepam and Clorazepate Antitrust Litig.***, No. 1290 (TFH) (D.C.C.).

***In re: Providian Fin. Corp. ERISA Litig.***, No C-01-5027 (N.D. Cal.).

***In re: H & R Block., et al Tax Refund Litig.***, No. 97195023/CC4111 (MD Cir. Ct., Baltimore City).

***In re: American Premier Underwriters, Inc, U.S. Railroad Vest Corp.***, No. 06C01-9912 (Cir. Ct., Boone County, Ind.).

***In re: Sprint Corp. Optical Fiber Litig.***, No: 9907 CV 284 (Dist. Ct., Leavenworth County, Kan).

***In re: Shelter Mutual Ins. Co. Litig.***, No. CJ-2002-263 (Dist.Ct., Canadian County. Ok).

***In re: Conseco, Inc. Sec. Litig.***, No: IP-00-0585-C Y/S CA (S.D. Ind.).

***In re: Nat'l Treasury Employees Union, et al.***, 54 Fed. Cl. 791 (2002).

***In re: City of Miami Parking Litig.***, Nos. 99-21456 CA-10, 99-23765 – CA-10 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

***In re: Prime Co. Incorporated D/B/A/ Prime Co. Personal Comm.***, No. L 1:01CV658 (E.D. Tx.).

***Alsea Veneer v. State of Oregon A.A.***, No. 88C-11289-88C-11300.



## INTERNATIONAL EXPERIENCE

*In re Purdue Pharma L.P., No. 19-23649* (Bankr. S.D.N.Y. 2019).

*Imerys Talc America, Inc.* No. 19-10289 Bankr. D.Del 20201

*Bell v. Canadian Imperial Bank of Commerce*, et al, Court File No.: CV-08-359335 *(Ontario Superior Court of Justice); (2016).*

*In re: Canadian Air Cargo Shipping Class Actions (Ontario Superior Court of Justice, Court File No. 50389CP, Supreme Court of British Columbia.*

*In re: Canadian Air Cargo Shipping Class Actions (Québec Superior Court).*

*Fischer v. IG Investment Management LTD., No. 06-CV-307599CP (Ontario Superior Court of Justice).*

*In Re Nortel I & II Securities Litigation, Civil Action No. 01-CV-1855 (RMB), Master File No. 05 MD 1659 (LAP) (S.D.N.Y. 2006).*

*Frohlinger v. Nortel Networks Corporation et al., Court File No.: 02-CL-4605 (Ontario Superior Court of Justice).*

*Association de Protection des Épargnants et Investissuers du Québec v. Corporation Nortel Networks, No.: 500-06-0002316-017 (Superior Court of Québec).*

*Jeffery v. Nortel Networks Corporation et al., Court File No.: S015159 (Supreme Court of British Columbia).*

*Gallardi v. Nortel Networks Corporation, No. 05-CV-285606CP (Ontario Superior Court).*

*Skarstedt v. Corporation Nortel Networks, No. 500-06-000277-059 (Superior Court of Québec).*

## SEC ENFORCEMENT NOTICE PROGRAM EXPERIENCE

*SEC v. Vivendi Universal, S.A., et al.,* Case No. 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y.).
The Notice program included publication in 11 different countries and eight different languages.

*SEC v. Royal Dutch Petroleum Company*, No.04-3359 (S.D. Tex.)

## FEDERAL TRADE COMMISSION NOTICE PROGRAM EXPERIENCE

*FTC v. TracFone Wireless, Inc., Case* No. 15-cv-00392-EMC.

*FTC v. Skechers U.S.A., Inc.,* No. 1:12-cv-01214-JG (N.D. Ohio).

*FTC v. Reebok International Ltd.*, No. 11-cv-02046 (N.D. Ohio)

*FTC v. Chanery and RTC Research and Development LLC [Nutraquest]*, No :05-cv-03460 (D.N.J.)

## BANKRUPTCY EXPERIENCE

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60231119348



Ms. Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.  A sample case list includes the following:

**In Re: PG&E Corporation** Case No . 19-30088 Bankr. N.D. Cal. 2019). Hearing Establishing, Deadline for Filing Proofs of Claim, (II) establishing the  Form and Manner of  Notice Thereof, and (III) Approving Procedures fr Providing Notice of Bar  Date and Other Information to all Creditors and Potential  Creditors PG&E.  *June 26, 2019,  Transcript of Hearing  p. 21:1,* the Honorable Dennis Montali stated:
> *…the technology and the thought that goes into all these plans is almost incomprehensible.  He further stated,   p. 201:20 … Ms. Finegan has really impressed me today…*

*Imerys Talc America, Inc.* No. 19-10289 Bankr. D.Del 20201.

*In re AMR Corporation [American Airlines], et al.,* No. 11-15463 (SHL) (Bankr. S.D.N.Y.)
> *"due and proper notice [was] provided, and … no other or further notice need be provided."*

*In re Jackson Hewitt Tax Service Inc.,* et al., No 11-11587 (Bankr. D.Del.) (2011).
> The debtors sought to provide notice of their filing as well as the hearing to approve their disclosure statement and confirm their plan to a large group of current and former customers, many of whom current and viable addresses promised to be a difficult (if not impossible) and costly undertaking. The court approved a publication notice program designed and implemented by Finegan and the administrator, that included more than 350 local newspaper and television websites, two national online networks (24/7 Real Media, Inc. and Microsoft Media Network), a website notice linked to a press release and notice on eight major websites, including CNN and Yahoo. These online efforts supplemented the print publication and direct-mail notice provided to known claimants and their attorneys, as well as to the state attorneys general of all 50 states. The *Jackson Hewitt* notice program constituted one of the first large chapter 11 cases to incorporate online advertising.

*In re: Nutraquest Inc.,* No. 03-44147 (Bankr. D.N.J.)

*In re: General Motors Corp. et al,* No. 09-50026 (Bankr. S.D.N.Y.)
> This case is the 4th largest bankruptcy in U.S. history. Ms. Finegan and her team worked with General Motors restructuring attorneys to design and implement the legal notice program.

*In re: ACandS, Inc.,* No. 0212687 (Bankr. D.Del.) (2007)
> *"Adequate notice of the Motion and of the hearing on the Motion was given."*

*In re: United Airlines*, No. 02-B-48191 (Bankr. N.D Ill.)
> Ms. Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs.  The notice was published in 11 countries and translated into 6 languages. Ms. Finegan worked closely with legal counsel and UAL's advertising team to select the appropriate media and to negotiate the most favorable advertising rates. www.pd-ual.com.

*In re: Enron*, No. 01-16034 (Bankr. S.D.N.Y.)
> Ms. Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

*In re: Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.)
> Ms. Finegan originally designed the information website.  This Internet site is a major information hub that has various forms in 15 languages.

*In re: Harnischfeger Inds.,* No. 99-2171 (RJW) Jointly Administered (Bankr. D. Del.)
> Ms. Finegan designed and implemented 6 domestic and international notice programs for this case. The notice was translated into 14 different languages and published in 16 countries.

*In re: Keene Corp.,* No. 93B 46090 (SMB), (Bankr. E.D. MO.)



DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60221110348

Ms. Finegan designed and implemented multiple domestic bankruptcy notice programs including notice on the plan of reorganization directed to all creditors and all Class 4 asbestos-related claimants and counsel.

*In re: Lamonts*, No. 00-00045 (Bankr. W.D. Wash.)
Ms. Finegan designed an implemented multiple bankruptcy notice programs.

*In re: Monet Group Holdings*, Nos. 00-1936 (MFW) (Bankr. D. Del.)
Ms. Finegan designed and implemented a bar date notice.

*In re: Laclede Steel Co.*, No. 98-53121-399 (Bankr. E.D. MO.)
Ms. Finegan designed and implemented multiple bankruptcy notice programs.

*In re: Columbia Gas Transmission Corp.*, No. 91-804 (Bankr. S.D.N.Y.)
Ms. Finegan developed multiple nationwide legal notice notification programs for this case.

*In re: U.S.H. Corp. of New York, et al*. (Bankr. S.D.N.Y)
Ms. Finegan designed and implemented a bar date advertising notification campaign.

*In re: Best Prods. Co., Inc.,* No. 96-35267-T, (Bankr. E.D. Va.)
Ms. Finegan implemented a national legal notice program that included multiple advertising campaigns for notice of sale, bar date, disclosure and plan – confirmation.

*In re: Lodgian, Inc., et al.*, No. 16345 (BRL) Factory Card Outlet – 99-685 (JCA), 99-686 (JCA) (Bankr. S.D.N.Y).

*In re: Internat'l Total Servs, Inc., et al.*, Nos. 01-21812, 01-21818, 01-21820, 01-21882, 01-21824, 01-21826, 01-21827 (CD) Under Case No: 01-21812 (Bankr. E.D.N.Y).

*In re: Decora Inds., Inc. and Decora, Incorp.*, Nos. 00-4459 and 00-4460 (JJF) (Bankr. D. Del.).

*In re: Genesis Health Ventures, Inc., et al*, No. 002692 (PJW) (Bankr. D. Del.).

*In re: Tel. Warehouse, Inc., et al*, No. 00-2105 through 00-2110 (MFW) (Bankr. D. Del.).

*In re: United Cos. Fin. Corp., et al*, No. 99-450 (MFW) through 99-461 (MFW) (Bankr. D. Del.).

*In re: Caldor, Inc. New York, The Caldor Corp., Caldor, Inc. CT, et al.*, No. 95-B44080 (JLG) (Bankr. S.D.N.Y).

*In re: Physicians Health Corp., et al.*, No. 00-4482 (MFW) (Bankr. D. Del.).

*In re: GC Cos., et al.*, Nos. 00-3897 through 00-3927 (MFW) (Bankr. D. Del.).

*In re: Heilig-Meyers Co., et al.*, Nos. 00-34533 through 00-34538 (Bankr. E.D. Va.).

## MASS TORT EXPERIENCE AND PRODUCT RECALL

*In Re: PG&E Corporation* Case No . 19-30088 Bankr. N.D. Cal. 2019).

*In re Purdue Pharma L.P.,* No. 19-23649 (Bankr. S.D.N.Y. 2019).

*Imerys Talc America, Inc.* No. 19-10289 Bankr. D.Del 2021.



**Reser's Fine Foods.** Reser's is a nationally distributed brand and manufacturer of food products through giants such as Albertsons, Costco, Food Lion, WinnDixie, Ingles, Safeway and Walmart. Ms. Finegan designed an enterprise-wide crisis communication plan that included communications objectives, crisis team roles and responsibilities, crisis response procedures, regulatory protocols, definitions of incidents that require various levels of notice, target audiences, and threat assessment protocols. Ms. Finegan worked with the company through two nationwide, high profile recalls, conducting extensive media relations efforts.

**Gulf Coast Claims Facility Notice Campaign.** Finegan coordinated a massive outreach effort throughout the Gulf Coast region to notify those who have claims as a result of damages caused by the Deep Water Horizon Oil spill. The notice campaign included extensive advertising in newspapers throughout the region, Internet notice through local newspaper, television and radio websites and media relations. The Gulf Coast Claims Facility (GCCF) was an independent claims facility, funded by BP, for the resolution of claims by individuals and businesses for damages incurred as a result of the oil discharges due to the Deepwater Horizon incident on April 20, 2010.

**City of New Orleans Tax Revisions, Post-Hurricane Katrina.** In 2007, the City of New Orleans revised property tax assessments for property owners. As part of this process, it received numerous appeals to the assessments. An administration firm served as liaison between the city and property owners, coordinating the hearing schedule and providing important information to property owners on the status of their appeal. Central to this effort was the comprehensive outreach program designed by Ms. Finegan, which included a website and a heavy schedule of television, radio and newspaper advertising, along with the coordination of key news interviews about the project picked up by local media.

### ARTICLES/ SOCIAL MEDIA

Interview, "How Marketers Achieve Greater ROI Through Digital Assurance," Alliance for Audited Media ("AAM"), white paper, January 2021.

Tweet Chat: Contributing Panelist #*Law360SocialChat*, A live Tweet workshop concerning the benefits and pit-falls of social media, Lexttalk.com, November 7, 2019.

Author, "Top Class Settlement Admin Factors to Consider in 2020" Law360, New York, (October 31, 2019, 5:44 PM ET).

Author, "Creating a Class Notice Program that Satisfies Due Process" Law360, New York, (February 13, 2018 12:58 PM ET).

Author, "3 Considerations for Class Action Notice Brand Safety" Law360, New York, (October 2, 2017 12:24 PM ET).

Author, "What Would Class Action Reform Mean for Notice?" Law360, New York, (April 13, 2017 11:50 AM ET).

Author, "Bots Can Silently Steal your Due Process Notice." Wisconsin Law Journal, April 2017.

Author, "*Don't Turn a Blind Eye to Bots.* Ad Fraud and Bots are a Reality of the Digital Environment." LinkedIn article March 6, 2107.

Co-Author, "Modern Notice Requirements Through the Lens of *Eisen* and *Mullane"* – Bloomberg - BNA Class Action Litigation Report, 17 CLASS 1077, (October 14, 2016).

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60331119348



Author, "Think All Internet Impressions Are The Same? Think Again" – Law360.com, New York (March 16, 2016, 3:39 ET).

Author, "Why Class Members Should See an Online Ad More Than Once" – Law360.com, New York, (December 3, 2015, 2:52 PM ET).

Author, 'Being 'Media-Relevant' — What It Means and Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, (November 2011).

Quoted Expert,  "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review,  (2011), 53 S.C.L.R. (2d).

Co-Author, with Hon. Dickran Tevrizian – "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, May 27, 2011.

Co-Author, with Hon. Dickran Tevrizian, Your Insight, "Expert Opinion: It's More Than Just a Report -Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," TXLR, Vol. 26, No. 21, May 26, 2011.

Quoted Expert, "Analysis of the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Guide:  A New Roadmap to Adequate Notice and Beyond," BNA Class Action Litigation Report, 12 CLASS 165, February 25, 2011.

Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, April, 9, 2010 Vol. 11, No. 7 p. 343.

Quoted Expert, "Communication Technology Trends Pose Novel Notification Issues for Class Litigators," BNA Electronic Commerce and Law, 15 ECLR 109 January 27, 2010.

Author, "Legal Notice: R U ready 2 adapt?" BNA Class Action Report, Vol. 10 Class 702, July 24, 2009.

Author, "On Demand Media Could Change the Future of Best Practicable Notice," BNA Class Action Litigation Report, Vol. 9, No. 7, April 11, 2008, pp. 307-310.

Quoted Expert, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," Warranty Week, warrantyweek.com/archive/ww20070228.html/ February 28, 2007.

Co-Author, "Approaches to Notice in State Court Class Actions," For The Defense, Vol. 45, No. 11, November, 2003.

Citation, "Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior," U.S. Consumer Product Safety Commission, CPSC-F-02-1391, p.10, Heiden Associates, July 2003.

Author, "The Web Offers Near, Real-Time Cost Efficient Notice," American Bankruptcy Institute, ABI Journal, Vol. XXII, No. 5., 2003.

Author, "Determining Adequate Notice in Rule 23 Actions," For The Defense, Vol. 44, No. 9  September, 2002.

Author, "Legal Notice, What You Need to Know and Why," Monograph, July 2002.

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321110348



Co-Author, "The Electronic Nature of Legal Noticing," The American Bankruptcy Institute Journal, Vol. XXI, No. 3, April 2002.

Author, "Three Important Mantras for CEO's and Risk Managers," - International Risk Management Institute, irmi.com, January 2002.

Co-Author, "Used the Bat Signal Lately," The National Law Journal, Special Litigation Section, February 19, 2001.

Author, "How Much is Enough Notice," Dispute Resolution Alert, Vol. 1, No. 6. March 2001.

Author, "Monitoring the Internet Buzz," The Risk Report, Vol. XXIII, No. 5, Jan. 2001.

Author, "High-Profile Product Recalls Need More Than the Bat Signal," - International Risk Management Institute, irmi.com, July 2001.

Co-Author, "Do You Know What 100 Million People are Buzzing About Today?" Risk and Insurance Management, March 2001.

Quoted Article, "Keep Up with Class Action," Kentucky Courier Journal, March 13, 2000.

Author, "The Great Debate - How Much is Enough Legal Notice?" American Bar Association – Class Actions and Derivatives Suits Newsletter, winter edition 1999.

### SPEAKER/EXPERT PANELIST/PRESENTER

| | |
|---|---|
| Chief Litigation Counsel Association (CLCA) | Speaker, "Four Factors Impacting the Cost of Your Class Action Settlement and Notice," Houston TX, May 1, 2019 |
| CLE Webinar | "Rule 23 Changes to Notice, Are You Ready for the Digital Wild, Wild West?" October 23, 2018,  https://bit.ly/2RIRvZq |
| American Bar Assn. | Faculty Panelist, 4th Annual Western Regional CLE Class Actions, "Big Brother, Information Privacy, and Class Actions: How Big Data and Social Media are Changing the Class Action Landscape" San  Francisco, CA  June, 2018. |
| Miami Law Class Action & Complex Litigation Forum | Faculty Panelist, " Settlement and Resolution of Class Actions," Miami, FL December 2, 2016. |
| The Knowledge Group | Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org, October 2016. |
| ABA National Symposium | Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA, March 2016. |
| S.F. Banking Attorney Assn. | Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA, May 2015. |
| Perrin Class Action Conf. | Faculty Panelist, "Being Media Relevant, What It Means and Why It Matters – The Social Media Evolution: Trends, Challenges and Opportunities," Chicago, IL May 2015. |
| Bridgeport Continuing Ed. | Speaker, Webinar "Media Relevant in the Class Notice Context." July, 2014. |



Bridgeport Continuing Ed.          Faculty Panelist, "Media Relevant in the Class Notice Context."
                                   Los Angeles, California, April 2014.

CASD 5th Annual                    Speaker, "The Impact of Social Media on Class Action Notice."
                                   Consumer Attorneys of San Diego Class Action Symposium, San Diego,
                                   California, September 2012.

Law Seminars International         Speaker, "Class Action Notice: Rules and Statutes Governing FRCP
                                   (b)(3) Best Practicable… What constitutes a best practicable notice?
                                   What practitioners and courts should expect in the new era of online and
                                   social media." Chicago, IL, October 2011.  ***Voted by attendees as one
                                   of the best presentations given.***

CASD 4th Annual                    Faculty Panelist, "Reasonable Notice - Insight for practitioners on the
                                   FJC's *Judges' Class Action Notice and Claims Process Checklist and
                                   Plain Language Guide.* Consumer Attorneys of San Diego Class Action
                                   Symposium, San Diego, California, October 2011.

CLE International                   Faculty Panelist, Building a Workable Settlement Structure, CLE
                                   International, San Francisco, California May, 2011.

CASD                               Faculty Panelist, "21st Century Class Notice and Outreach." 3nd Annual
                                   Class Action Symposium CASD Symposium, San Diego, California,
                                   October 2010.

CASD                               Faculty Panelist, "The Future of Notice." 2nd Annual Class Action
                                   Symposium CASD Symposium, San Diego California, October 2009.

American Bar Association           Speaker, 2008 Annual Meeting, "Practical Advice for Class Action
                                   Settlements:  The Future of Notice In the United States and
                                   Internationally – Meeting the Best Practicable Standard."
                                   Section of Business Law Business and Corporate Litigation Committee –
                                   Class and Derivative Actions Subcommittee, New York, NY, August
                                   2008.

Women Lawyers Assn.  Faculty Panelist, Women Lawyers Association of Los Angeles
                                   "The Anatomy of a Class Action." Los Angeles, CA, February, 2008.

Warranty Chain Mgmt.               Faculty Panelist, Presentation Product Recall Simulation.  Tampa,
                                   Florida, March 2007.

Practicing Law Institute.          Faculty Panelist, CLE Presentation, 11th Annual Consumer Financial
                                   Services Litigation. Presentation: Class Action Settlement Structures –
                                   Evolving Notice Standards in the Internet Age.  New York/Boston
                                   (simulcast), NY March 2006; Chicago, IL April 2006 and San Francisco,
                                   CA, May 2006.

U.S. Consumer Product              Ms. Finegan participated as an invited expert panelist to the CPSC
Safety Commission                  to discuss ways in which the CPSC could enhance and measure the
                                   recall process. As a panelist, Ms Finegan discussed how the CPSC
                                   could better motivate consumers to take action on recalls and how
                                   companies could scientifically measure and defend their outreach efforts.
                                   Bethesda, MD, September 2003.

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321110348



| | |
|---|---|
| Weil, Gotshal & Manges | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." New York, June 2003. |
| Sidley & Austin | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." Los Angeles, May 2003. |
| Kirkland & Ellis | Speaker to restructuring group addressing "The Best Practicable Methods to Give Notice in a Tort Bankruptcy." Chicago, April 2002. |
| Georgetown University Law | Faculty, CLE White Paper: "What are the best practicable methods to Center Mass Tort Litigation give notice? Dispelling the communications myth – A notice Institute disseminated is a notice communicated," Mass Tort Litigation Institute. Washington D.C. |
| American Bar Association | Presenter, "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits. Chicago, IL, August 6, 2001. |
| McCutchin, Doyle, Brown | Speaker to litigation group in San Francisco and simulcast to four other McCutchin locations, addressing the definition of effective notice and barriers to communication that affect due process in legal notice.  San Francisco, CA, June 2001. |
| Marylhurst University | Guest lecturer on public relations research methods. Portland, OR, February 2001. |
| University of Oregon | Guest speaker to MBA candidates on quantitative and qualitative research for marketing and communications programs. Portland, OR, May 2001. |
| Judicial Arbitration & Mediation Services (JAMS) | Speaker on the definition of effective notice.  San Francisco and Los Angeles, CA, June 2000. |
| International Risk Management Institute | Past Expert Commentator on Crisis and Litigation Communications. www.irmi.com. |
| The American Bankruptcy Institute Journal (ABI) | Past Contributing Editor – Beyond the Quill. www.abi.org. |

## BACKGROUND

Ms. Finegan's past experience includes working in senior management for leading Class Action Administration firms including The Garden City Group (GCG) and Poorman-Douglas Corp., (EPIQ). Ms. Finegan co-founded Huntington Advertising, a nationally recognized leader in legal notice communications.  After Fleet Bank purchased her firm in 1997, she grew the company into one of the nation's leading legal notice communication agencies.

Prior to that, Ms. Finegan spearheaded Huntington Communications, (an Internet development company) and The Huntington Group, Inc., (a public relations firm).  As a partner and consultant, she has worked on a wide variety of client marketing, research, advertising, public relations and Internet programs.  During her tenure at the Huntington Group, client projects included advertising (media planning and buying), shareholder meetings, direct mail, public relations (planning, financial communications) and community outreach programs. Her past client list includes large public and privately held companies: Code-A-Phone Corp., Thrifty-Payless Drug Stores, Hyster-Yale, The Portland Winter Hawks Hockey Team, U.S. National Bank, U.S. Trust Company, Morley Capital Management, and Durametal Corporation.



Prior to Huntington Advertising, Ms. Finegan worked as a consultant and public relations specialist for a West Coast-based Management and Public Relations Consulting firm.

Additionally, Ms. Finegan has experience in news and public affairs. Her professional background includes being a reporter, anchor and public affairs director for KWJJ/KJIB radio in Portland, Oregon, as well as reporter covering state government for KBZY radio in Salem, Oregon. Ms. Finegan worked as an assistant television program/promotion manager for KPDX directing $50 million in programming.  She was also the program/promotion manager at KECH-22 television.

Ms. Finegan's multi-level communication background gives her a thorough, hands-on understanding of media, the communication process, and how it relates to creating effective and efficient legal notice campaigns.

**MEMBERSHIPS, PROFESSIONAL CREDENTIALS**

**APR**     Accredited. Universal Board of Accreditation Public Relations Society of America
- **Member of the Public Relations Society of America**
- **Member Canadian Public Relations Society**

**Board of Directors - Alliance for Audited Media**
Alliance for Audited Media ("AAM") is the recognized leader in cross-media verification. It was founded in 1914 as the Audit Bureau of Circulations (ABC) to bring order and transparency to the media industry. Today, more than 4,000 publishers, advertisers, agencies and technology vendors depend on its data-driven insights, technology certification audits and information services to transact with trust.

---

**SOCIAL MEDIA**

***LinkedIn:*** *www.linkedin.com/in/jeanne-finegan-apr-7112341b*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit C:**

**Short-Form Notice**

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60321119348

*THIS IS A COURT APPROVED LEGAL NOTICE. YOU ARE NOT BEING SUED.*

*THIS IS NOT A SOLICITATION FROM A LAWYER.*

United States District Court for the Northern District of California
*Smith-Washington et al. v. TaxAct, Inc.*
Case No. 3:23-cv-00830-VC
www.TaxActClassSettlement.com

## NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

**If you used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product at any time between January 1, 2018, and December 31, 2022, or your spouse filed a joint tax return using the TaxAct online product during that same period, you should read this notice as you may be entitled to a cash payment and the free use of TaxAct® Xpert Assist for your tax year 2024 return.**

### What Is the Lawsuit About?

This lawsuit was brought on behalf of TaxAct users who allege that TaxAct, Inc. ("TaxAct") purportedly shared or otherwise made accessible to third parties (including but not limited to Facebook (now Meta Platforms, Inc.) and Google) certain of its users' personal and financial information, without permission. TaxAct expressly denies any liability or wrongdoing.

### Who Is Part of the Settlement Classes?

There are two Settlement Classes. The Nationwide Class includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product at any time between January 1, 2018, and December 31, 2022, and whose postal address listed on their tax return was in the United States. The Nationwide Class includes a California Subclass of members whose postal address listed on their tax returns was in California. The Nationwide Married Filing Jointly Class includes all natural persons whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product at any time between January 1, 2018, and December 31, 2022, and whose postal address listed on such joint tax return was in the United States. The Nationwide Married Filing Jointly Class also includes a California Married Filing Jointly Subclass of members of whose postal address listed on the joint tax return was in California.

If, as of January 9, 2024, you filed a demand for arbitration against TaxAct to arbitrate claims that would otherwise be released in accordance with the terms of this Settlement Agreement, you are excluded from both Settlement Classes unless you elect to opt-in to the Settlement Classes by filing a timely Claim Form.

### What Does the Settlement Provide?

**If the Settlement is approved by the Court, TaxAct will establish a Qualified Settlement Fund of fourteen million, nine hundred and fifty thousand U.S. dollars ($14,950,000.00) plus up to two million five hundred thousand U.S. dollars ($2,500,000.00) of additional funds set aside to be used towards Notice and Administration Costs with any remainder of unused Notice and Administrative funds to be distributed to the Settlement Class. The Qualified Settlement Fund will**

DocuSign Envelope ID: 8737C891-540A-489B-BA87-A60231119348

be used to pay all valid claims submitted by Settlement Class Members (estimated to be approximately $\$\_\_$ each based on a $\_\_$ % claim rate), as well as notice and administration expenses, attorneys' fees and costs (up to 25% of the cash value of the Settlement Fund plus up to 25% of the value of Xpert Assist redeemed, up to a maximum redeemed value of Five Million Eight Thousand US Dollars and Zero Cents ($5,800,000.00) by approved Settlement Class Members, as well as reasonable expenses), and Service Awards (up to $10,000 each) for the Settlement Class Representatives. **TaxAct will also provide Xpert Assist to all Settlement Class Members who submit a valid claim form and who return to prepare a 2024 tax year tax return on TaxAct's website using any TaxAct online do-it yourself consumer Form 1040 tax return filing product (including TaxAct's free product).**

**How Do I Submit a Claim and Get a Cash Payment and Xpert Assist?**

Claim Forms may be submitted online at **www.TaxActClassSettlement.com** by 11:59 p.m. PST on [**INSERT CLAIMS SUBMISSION DEADLINE**] or printed from the Settlement Website and mailed to the Settlement Administrator at: **[INSERT ADDRESS]** postmarked **by [INSERT CLAIMS SUBMISSION DEADLINE].** You may also contact the Settlement Administrator to request a Claim Form by telephone [INSERT PHONE NUMBER], by email **[INSERT EMAIL]**, or by U.S. mail at **[INSERT ADDRESS].**

**Do I Have a Lawyer in the Case?**

The Court has appointed Julian Hammond and Christina Tusan of HammondLaw, P.C. and Warren D. Postman of Keller Postman LLC to represent the Settlement Class as Class Counsel.

**Your Other Options**

If you are a Settlement Class Member and you do nothing, your rights will be affected, and you will not receive a Settlement payment or Xpert Assist from this Settlement. If you do not want to be legally bound by the Settlement, you must exclude yourself from it by opting out. The deadline to exclude yourself is **[INSERT OPT OUT DEADLINE].**

Unless you exclude yourself, you will give up any right to sue TaxAct based on the legal and factual issues that this Settlement resolves. If you exclude yourself, you cannot get a payment or Xpert Assist from this Settlement. Settlement Class Members agree to release all claims based on, relating to, or arising out of the identical factual predicate in the operative complaint.

If you stay in the Settlement (i.e., do not exclude yourself), you can ask the Court to deny approval by filing an objection to the Settlement or Class Counsel's fees by **[INSERT OBJECTION DEADLINE].** You can give reasons why you think the Court should not approve it. The Court will consider your views. You can't ask the Court to order a different Settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no Settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object.

Any objection to the proposed settlement must be in writing. Please check the settlement website for all requirements associated with filing a written objection. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case and number (*Smith-Washington et al. v. TaxAct, Inc.*, Case No. 3:23-cv-00830-VC), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for

DocuSign Envelope ID: 8737C891-540A-489B-BA87-A60321119348

the Northern District of California, or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, San Francisco Division, and (c) be filed or postmarked on or before **[INSERT OBJECTION DEADLINE].**

More information can be found in the Frequently Asked Questions and Class Action Settlement Agreement and Release, which are available at **www.TaxActClassSettlement.com**. If you have additional questions, you may contact the Settlement Administrator or Class Counsel.

**The Court's Final Approval Hearing**
The Court has scheduled a Final Approval Hearing at **[INSERT TIME]** PST on **[INSERT FINAL APPROVAL HEARING DATE]**. The hearing may proceed by video conference. If so, a link to the video conference will appear at the following address: https://www.cand.uscourts.gov/judges/chhabria-vince-vc/. Please check the Settlement Website often to confirm the date, time, and location. At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and whether to approve it. The Court will also consider whether to approve Class Counsel's request for an award of attorneys' fees and expenses, as well as the Settlement Class Representatives' Service Awards. If there are objections, the Court will consider them.

**This Notice is only a summary of the proposed Settlement. For the precise terms of the Settlement, please see the Settlement Agreement by calling [INSERT PHONE NUMBER], visiting www.TaxActClassSettlement.com, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, [insert appropriate Court location here], between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.**

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit D:**

**Long-Form Notice**

DocuSign Envelope ID: 8737C891-540A-489B-BA87-A60331119348

*THIS IS A COURT APPROVED LEGAL NOTICE. YOU ARE NOT BEING SUED.*
*THIS IS NOT A SOLICITATION FROM A LAWYER.*

United States District Court for the Northern District of California
*Smith-Washington et al. v. TaxAct, Inc.*
Case No. 3:23-cv-00830-VC
www.TaxActClassSettlement.com

## NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

**If you used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product at any time between January 1, 2018, and December 31, 2022, or your spouse filed a joint tax return using the TaxAct online product during that same period, you should read this notice as you may be entitled to a cash payment and the free use of TaxAct® Xpert Assist for your tax year 2024 return.**

- A Settlement[4] has been reached between Defendant TaxAct, Inc. ("TaxAct" or "Defendant") and Plaintiffs in a class action lawsuit pending in the United States District Court for the Northern District of California.

- You are included in this Settlement as a Settlement Class Member if you are a member of either or both of the following two Settlement Classes:

  o  The Nationwide Class: this Class includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product at any time between January 1, 2018, and December 31, 2022, and whose postal address listed on their tax return was in the United States. The Nationwide Class includes a California Subclass of members whose postal address listed on their tax returns was in California.

  o  The Nationwide Married Filing Jointly Class: this Class includes all natural persons whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product at any time between January 1, 2018, and December 31, 2022, and whose postal address listed on such joint tax return was in the United States. The Nationwide Married Filing Jointly Class also includes a California Married Filing Jointly Subclass of members of whose postal address listed on the joint tax return was in California.

  o  If, as of January 9, 2024, you filed a demand for arbitration against TaxAct to arbitrate claims that would otherwise be released in accordance with the terms of this

---

[4] All capitalized terms not defined in this document have the same meaning as in the Settlement Agreement, which can be viewed at www.TaxActClassSettlement.com.

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60231119348

Settlement Agreement, you are excluded from both Settlement Classes unless you elect to opt-in to the Settlement Classes by filing a timely Claim Form.

- This lawsuit is known as *Smith-Washington, et al. v. TaxAct, Inc.,* Case No. 3:23-cv-00830 (N.D. California). Defendant denies that it violated any law but has agreed to the Settlement to avoid the costs and risks associated with continuing this case.

- Your rights are affected whether you act or don't act. Please read this Notice carefully.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive a cash payment from this Settlement and the free use of TaxAct® Xpert Assist for your tax year 2024 return is by submitting a timely and properly completed Claim Form that obtains approval from the Settlement Administrator.  The Claim Form must be submitted no later than **_____, 2024.**<br><br>You can submit your Claim Form online at www.TaxActClassSettlement.com or download the Claim Form from the Settlement Website and mail it to the Settlement Administrator. You may also call the Settlement Administrator to receive a paper copy of the Claim Form.<br><br>As a Settlement Class Member, regardless of whether you submit a Claim Form, provided that you do not opt out of the Settlement, if the Settlement is approved by the Court you will give up the right to sue the Defendant in a separate lawsuit about the legal claims or factual allegations this Settlement resolves.<br><br>For more information see **Question 10.**<br><br>However, if, as of January 9, 2024, you filed a demand for arbitration against TaxAct to arbitrate claims that would otherwise be released in accordance with the terms of this Settlement Agreement, you are excluded from both Settlement Classes unless you elect to opt-in to a Settlement Class by filing a timely Claim Form. | **_____, 2024** |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the Settlement and receive no payment or free use of TaxAct® Xpert Assist. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims and factual allegations resolved by this Settlement. You can choose to hire your own legal counsel at your own expense. | **_____, 2024** |

| | For more information see **Question 16.** | |
|---|---|---|
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the Settlement, you may object to it by writing to the Court about why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also file a Claim Form.<br><br>For more information see **Question 17.** | **____, 2024** |
| **DO NOTHING** | Unless you opt out of the Settlement, you are automatically part of the Settlement. If you do nothing, you will not get a payment or free use of TaxAct® Xpert Assist from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims or factual allegations resolved by this Settlement. | No Deadline |

- These rights and options—and the deadlines to exercise them—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

- This Notice summarizes the proposed Settlement. For the precise terms of the Settlement, please see the Settlement Agreement available at www.TaxActClassSettlement.com, by contacting class counsel, whose contact information is listed in Question 13 below, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at http://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the of the Court for the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

- **PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

<table>
<tr><td colspan="2" align="center">**WHAT THIS NOTICE CONTAINS**</td></tr>
</table>

**XVIII.**

BASIC INFORMATION .......................................................................................... 54

WHO IS IN THE SETTLEMENT? ........................................................................... 55

THE SETTLEMENT BENEFITS .............................................................................. 56

HOW TO GET A PAYMENT, VOUCHER - MAKING A CLAIM.............................. 58

THE LAWYERS REPRESENTING YOU ................................................................. 59

EXCLUDING YOURSELF FROM THE SETTLEMENT ................................................... 60

COMMENTING ON OR OBJECTION TO THE SETTLEMENT BENEFIT ....................................... 61

THE COURT'S FINAL APPROVAL HEARING ........................................................ 62

IF I DO NOTHING........................................................................ 62

GETTING MORE INFORMATION ............................................................ 62

## BASIC INFORMATION

### 1. Why was this Notice Issued?

A federal court authorized this Notice because you have a right to know about the proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

For information on how to determine if you are a Settlement Class Member, and therefore eligible for benefits under this settlement, see **Question 5.**

### 2. What is this lawsuit about?

This lawsuit was brought on behalf of TaxAct users who allege that TaxAct purportedly shared or otherwise made accessible to third parties (including but not limited to Facebook (now Meta Platforms, Inc.) and Google) certain of its users' personal and financial information, without permission. TaxAct expressly denies any liability or wrongdoing. The Honorable Vince Chhabria of the United States District Court for the Northern District of California was appointed to oversee this lawsuit.  The people that filed this lawsuit are called the "Plaintiffs" and the company they sued, TaxAct, is called the "Defendant."

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are known as "class representatives." Together, the people included in the class action are called a "class" or "class members." One court resolves the lawsuit for all class members, except for those who opt out from a settlement. In this Settlement, the Settlement Class Representatives are Plaintiffs Nicholas C. Smith-Washington, Joyce Mahoney, Jonathan Ames, Matthew Hartz, and Jenny Lewis.

### 3. Why is there a Settlement?

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60231119348

The Court did not decide in favor of Plaintiffs or Defendant. Defendant denies all claims and that it violated any law. Plaintiffs and Defendant agreed to a Settlement to avoid the costs and risks of further litigation, and to allow the Settlement Class Members to receive cash payments and relief in the form of complementary use of TaxAct® Xpert Assist. The Settlement Class Representatives and their attorneys think the Settlement is best for all Settlement Class Members.

## WHO IS IN THE SETTLEMENT?

| | |
|---|---|
| **4.   Am I part of the Settlement?** | |

There are two Settlement Classes.  If you fall within one of these definitions and have not filed a demand for arbitration, you are in the Settlement Class.

(1)      The **Nationwide Class** includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product at any time between January 1, 2018, and December 31, 2022, and whose postal address listed on their tax return was in the United States. The Nationwide Class includes a **California Subclass** of members whose postal address listed on their tax returns was in California.

(2)      The **Nationwide Married Filing Jointly Class** includes all natural persons whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product at any time between January 1, 2018, and December 31, 2022, and whose postal address listed on such joint tax return was in the United States. The Nationwide Married Filing Jointly Class also includes a **California Married Filing Jointly Subclass** of members of whose postal address listed on the joint tax return was in California.

However, if, as of January 9, 2024, you filed a demand for arbitration against TaxAct to arbitrate claims that would otherwise be released in accordance with the terms of this Settlement Agreement, you are excluded from both Settlement Classes unless you elect to opt-in to the Settlement Classes by filing a timely Claim Form.

| | |
|---|---|
| **5.   Are there exceptions to being included?** | |

**Yes.**  The Settlement does not include: (i) TaxAct, its current, former and/or future parents, subsidiaries, divisions, affiliates and/or departments, and their employees, officers, directors, management, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies during the period from January 1, 2018, through to and including December

31, 2022; (ii) counsel for Plaintiffs and their employees, including but not limited to the undersigned counsel for Plaintiffs and the undersigned counsel's employees; (iii) any district judge or magistrate judge to whom this case is or was assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities; (iv) customers who only used TaxAct's download do-it-yourself consumer Form 1040 tax return filing product, TaxAct's Professional products, or TaxAct's online do-it-yourself business tax return filing products; (v) and all individuals who have, as of January 9, 2024, filed a demand for arbitration against TaxAct to arbitrate claims that would otherwise be released in accordance with the terms of the Settlement unless those individual elect to opt-in to the Settlement Classes by filing a timely Claim Form.

If you are not sure whether you are included in the Settlement Class, you can ask for free help by emailing the Settlement Administrator at info@TaxActClassSettlement.com or calling the Settlement Administrator at 1-XXX-XXX-XXXX. You may also view the Settlement Agreement at www.TaxActClassSettlement.com.

## THE SETTLEMENT BENEFITS

| **6.   What does the Settlement provide?** |
| --- |

If the Settlement is approved by the Court, TaxAct will establish a Settlement Fund of fourteen million, nine hundred and fifty thousand U.S. dollars ($14,950,000.00) plus up to two million five hundred thousand U.S. dollars ($2,500,000) of additional funds set aside to be used towards Notice and Administration Costs with any remainder of unused Notice and Administration Costs funds to be distributed to the Settlement Class. The Settlement Fund will be used to pay all valid claims submitted by Settlement Class Members (approximately $ __each), as well as notice and administration expenses, attorneys' fees and costs (up to 25% of the cash value of the Settlement Fund plus up to 25% of the value of Xpert Assist redeemed by approved Settlement Class Members, up to a maximum redeemed value of Five Million Eight Thousand US Dollars and Zero Cents ($5,800,000.00), as well as reasonable expenses), and Service Awards (up to $10,000 each) for the Settlement Class Representatives. TaxAct will also provide Xpert Assist to all Settlement Class Members who submit a valid claim form and who return to prepare a 2024 tax year return on TaxAct's website using any TaxAct online do-it yourself consumer Form 1040 tax return filing product (including TaxAct's free product).

| **7.   How much will my payment be, and what else will I receive?** |
| --- |

The answer depends on how many Settlement Class Members submit valid claims. It also depends on of which Settlement Class and Subclass you are a member.

DocuSign Envelope ID: 8737C891-540A-489B-BAB7-A60221119348

First, the total amount distributed will be the Qualified Settlement Fund minus any amount awarded by the Court as fees and costs to Class Counsel, any Service Awards to the Settlement Class Representatives, and Notice and Administration Costs, and such other costs, expenses, or amounts as may be awarded or allowed by the Court. The resulting amount is called the "Net Settlement Fund." The Net Settlement Fund is the amount of money available to be distributed to Settlement Class Members.

Next, the Net Settlement Fund will be allocated to Settlement Class Members who submit valid claims, also called "Authorized Claimants." If an Authorized Claimant was a member of one Class or a Subclass during a portion of the Class Period and was a member of a different Class or Subclass during a different portion of the Class Period, the Authorized Claimant will be assigned allocation points for the Class or Subclass to which the Authorized Claimant belonged that has the highest number of allocation points.  Allocation points shall be assigned as follows:  Where you used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product, and the postal address listed on your tax return was in California (i.e., you are a California Subclass Member) you will be assigned 6 points. Where you used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product, and the postal address listed on your tax return was elsewhere in the United States (i.e., you are a Nationwide Class Member and not a California Subclass Member), you will be assigned 3 points. Where your spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product, and the postal address listed on the joint tax return was in California (i.e., you are a California Married Filing Jointly Subclass Member), you will be assigned 2 points. Finally, where your spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product, and the postal address listed on the joint tax return was elsewhere in the United States (i.e., you are a Nationwide Married Filing Jointly Class Member and not a California Married Filing Jointly Subclass Member), you will be assigned 1 point.

After the deadline for submitting a claim (see **Question 11** below), the Settlement Administrator will add up all the points assigned to all the Authorized Claimants and divide the Net Settlement Amount by that number. The result will be the amount of the Net Settlement Fund available for each point. Each Authorized Claimant will receive that per-point amount multiplied by the number of points they were assigned.

In addition to the cash payment, all Authorized Claimants who return to prepare their tax year 2024 return using any TaxAct online do-it-yourself consumer Form 1040 tax return filing product (including TaxAct's free product), will be provided with complimentary Xpert Assist. Specifically, upon entering their Social Security number into the TaxAct platform, which occurs at the beginning of the tax return form process, Authorized Claimants will receive a pop-up alerting them to their complimentary Xpert Assist and be able to add and use XpertAssist immediately.  Xpert

Assist provides one-on-one advice over the phone from real tax experts and allows for personalized tax advice.

### 8. What claims am I releasing if I stay in the Settlement Classes?

Unless you opt out of the Settlement, you cannot sue, continue to sue, or be part of any other lawsuit or arbitration against the Defendant about any of the legal claims this Settlement resolves. The "Released Claims" section in the Settlement Agreement describes the legal claims that you give up ("release") if you remain in the Settlement Class. Released Claims include claims that are pled or could have been pled based on, relating to, or arising out of the identical factual predicate in the operative complaint. The Settlement Agreement and operative complaint can be found at www.TaxActClassSettlement.com.

### HOW TO GET A PAYMENT AND XPERT ASSIST - MAKING A CLAIM

### 9. How do I submit a claim and get a cash payment and Xpert Assist?

Claim Forms may be submitted online at www.TaxActClassSettlement.com or printed from the website and mailed to the Settlement Administrator at: TaxAct Consumer Pixel Settlement Administrator, **[INSERT ADDRESS]**. You may also contact the Settlement Administrator to request a Claim Form by telephone 1-XXX-XXX-XXXX, by email Info@taxactclasssettlement.com, or by U.S. mail at TaxAct Consumer Pixel Settlement Administrator, **[INSERT ADDRESS]**.

### 11. What is the deadline for submitting a claim?

If you submit a claim by U.S. mail, the completed and signed Claim Form must be postmarked by ____, 2024. If submitting a Claim Form online, you must do so by 11:59 p.m. PST on _____, 2024.

### 12. When will I get my payment and Xpert Assist?

The Court has scheduled a Final Approval Hearing for the Settlement of this case on _____, 2024 at __ a.m. PST to consider: (1) whether to approve the Settlement; (2) any objections; (3) the requests for awards to the Settlement Class Representatives; and (4) the request for an award of attorneys' fees and costs to Settlement Class Counsel for their work in this litigation. If the Court approves the Settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement payments will be distributed as soon as possible if the Court grants Final Approval of the Settlement and after any appeals are resolved.

DocuSign Envelope ID: 8737C891-540A-489B-8A87-A60231110348

After January 1, 2025, Xpert Assist will be provided to Authorized Claimants upon entering their Social Security number into the TaxAct platform, which occurs at the beginning of the tax return form process, Authorized Claimants will receive a pop-up alerting them to their complimentary Xpert Assist and be able to add and use XpertAssist immediately for preparation of their 2024 tax year return.   The briefs and declarations in support of the Final Approval of the Settlement and the requests described above will be posted on the Settlement Website, www.TaxActClassSettlement.com after they are filed. You may ask to appear at the hearing but you do not have to appear. The date and time of the Final Approval Hearing is also subject to modification by the Court. Please review the Settlement Website for any updated information regarding the final hearing.

### THE LAWYERS REPRESENTING YOU

### 13. Do I have lawyers in the case?

Yes. The Court has appointed Julian Hammond and Christina Tusan of HammondLaw, P.C. and Warren D. Postman of Keller Postman LLC to represent the Settlement Class as Class Counsel:

Julian Hammond
Christina Tusan
HammondLaw, P.C.
1201 Pacific Ave., 6th Floor
Tacoma, WA 98402
310-807-1666
www.hammondlawpc.com

Warren D. Postman
Keller Postman LLC
1100 Vermont Avenue, N.W., 12th Floor
Washington, DC 20005

<u>You will not be charged for their services.</u>

### 14. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel works for you. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 15. How will my lawyers get paid?

Class Counsel will ask the Court for an award of attorneys' fees not to exceed 25% of the Qualified Settlement Fund plus up to 25% of the value of the Xpert Assist redeemed by Authorized Claimants, up to a maximum redeemed value of Five Million Eight Thousand US Dollars and Zero Cents ($5,800,000.00), as well as reasonable expenses incurred in the litigation. They will also ask the Court to approve a service award for each of the Settlement Class Representatives not to exceed

$10,000 each. The Court may award less than these amounts. If approved, these fees, costs and awards will be paid from the Qualified Settlement Fund.  The portion of the attorneys' fees that will be paid based on the value of the redemption of Xpert Assist will not be paid before May 2025, which allows time for a reasonable valuation of the redeemed value of Xpert Assist.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

**16. How do I opt out of the Settlement?**

If you do not want to receive any benefits from the Settlement, and you want to keep your right, if any, to separately sue the Defendant about the legal issues in this case, you must take steps to exclude yourself from the Settlement Class. This is called "opting out" of the Settlement Class. The deadline for requesting exclusion from the Settlement is _____, 2024.

To exclude yourself from the Settlement, you must submit a complete opt-out form at www.TaxActClassSettlement.com or by U.S. mail at the below address. Alternatively, you may submit a written opt-out request that includes the following information: (i) the case name of the Action, *Smith-Washington, et al. v. TaxAct, Inc.,* Case No. 3:23-cv-00830 (N.D. Cal.); (ii) your first and last name and current address; (iii) first and last name, email address, phone number, and mailing address associated your TaxAct account or of your spouse's TaxAct account if you are a member of the Married Filing Jointly Class; (iv) your personal signature; and, (v) a statement clearly indicating your intent to be excluded from the Settlement. The request for exclusion must be made only for the individual whose personal signature appears on the request.

If you exclude yourself, you are stating to the Court that you do not want to be part of the Settlement. You will not be eligible to receive a payment or the complementary use of Xpert Assist from this Settlement if you exclude yourself. You may only exclude yourself – not any other person. Opt-out requests seeking exclusion on behalf of more than one individual will be found invalid by the Settlement Administrator.

If submitted electronically, at www.TaxActClassSettlement.com, the opt-out form or any written request to opt-out must be submitted and verified no later than 11:59 p.m. PST on _____ , 2024.

If submitted by U.S. mail, at the below address, the opt-out form or any written request to opt-out must be postmarked no later than _____, 2024.

TaxAct Pixel Settlement Administrator
Attn: Opt-Out Request, Kroll Settlement Administration LLC
2000 Market Street, Suite 2700
Philadelphia, PA 19103

**COMMENTING ON OR OBJECTING TO THE SETTLEMENT BENEFIT**

### 17. How do I tell the court if I like or do not like the Settlement?

If you are a Settlement Class Member, you can choose to object to the Settlement if you do not like it or a portion of it. You can ask the Court to deny approval by filing an objection. You can give reasons why you think the Court should not approve it. The Court will consider your views. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, complementary Xpert Assist will not be provided to Authorized Claimants, and the lawsuit will continue. If that is what you want to happen, you should object. Any comments or objections from Settlement Class Members regarding the proposed Settlement Agreement must be submitted in writing to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California; or by filing them in person at any location of the United States District Court for the Northern District of California, and they must be filed or postmarked on or before _____, 2024.

**Class Action Clerk**
**United States District Court for the Northern District of California**
**450 Golden Gate Avenue, Box 36060**
**San Francisco, CA 94102-3489**

Your objection must include: (i) the case name and number: *Smith-Washington, et al. v. TaxAct, Inc.,* Case No. 3:23-cv-00830 (N.D. Cal.); (ii) your full name, address, telephone number, and email address; (iii) the email address associated with the objector's TaxAct account, or the email address associated with their Spouse's TaxAct account if the objector is a Married Filing Jointly Class Member (iv) a statement of whether your objection applies only to you, to a specific subset of a class or subclass, to an entire class or subclass, or to all members of both Settlement Classes; (iv) a statement of the number of times in which you (and, where applicable, your counsel) have objected to a class action settlement, along with the caption of each case in which you (or your counsel) made such objection; (v) a statement of whether the objector has sold or otherwise transferred the right to their recovery in this Action to another person or entity, and, if so, the identity of that person or entity; (vi) a statement of the specific grounds for the objection, including any legal or factual support and any evidence in support of the objection; (vii) a statement of whether you intend to appear at the Final Approval Hearing, and if so, whether personally or through counsel; and (viii) your signature. These requirements may be excused by the Court upon a showing of good cause. You or your attorney may speak at the Final Approval Hearing about your objection. To do so, you must include a statement in your objection indicating whether you or your attorney intend to appear at the Final Approval Hearing. This requirement may be excused upon a showing of good cause. You may also appear at the Final Approval Hearing without submitting a written objection upon a showing of good cause.

### 18. What is the difference between opting out and objecting?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself

from the Settlement is opting out and stating to the Court that you do not want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because the Settlement no longer affects you.

### THE COURT'S FINAL APPROVAL HEARING

### 19. When is the Court's Final Approval Hearing?

The Court has scheduled a Final Approval Hearing at [**INSERT TIME**] **PST on [Insert Final Approval Hearing Date], 2024.** If the hearing proceeds **in person**, it will be held at the San Francisco Courthouse, Courtroom 4 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102. If the Court holds the hearing **by video conference**, you will find a link to the video conference at the following address: https://www.cand.uscourts.gov/judges/chhabria-vince-vc/.

At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider whether to approve Class Counsel's request for an award of attorneys' fees and expenses, as well as the Settlement Class Representatives' Service Awards. If there are objections, the Court will consider them. Judge Chhabria will listen to people who have asked to speak at the hearing (see **Question 17** above). After the hearing, the Court will decide whether to approve the Settlement.

The date or time of the Final Approval Hearing may change. Please check the Settlement Website, www.TaxActClassSettlement.com, for any updates, and to find out whether the Final Approval Hearing will be held in person or by video conference.

### 20. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you file an objection, you do not have to come to the Final Approval Hearing to talk about it. If you file your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but such attendance is not necessary for the Court to consider your objection if it was filed on time.

### IF I DO NOTHING

### 21. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will give up the rights explained in **Question 9**, including your right to start a lawsuit, continue a lawsuit, or be part of any other lawsuit or arbitration against the Defendant and the Released Parties about the legal issues or factual allegations resolved by this Settlement. In addition, you will not receive a payment or get access to complementary Xpert Assist from this Settlement.

### GETTING MORE INFORMATION

DocuSign Envelope ID: 8737C891-549A-489B-8AB7-A60231119348

## 22. How do I get more information?

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at the Settlement Website, www.TaxActClassSettlement.com.

If you have additional questions, you may contact the Settlement Administrator by email, phone, or mail:

Email: info@taxactclasssettlement.com

Toll-Free: 1-XXX- XXX XXXX

Mail: TaxAct Consumer Pixel Litigation, c/o Settlement Administrator, **[INSERT ADDRESS]**

Publicly filed documents can also be obtained by:
- accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov;
- visiting the office of the Clerk of the United States District Court for the Northern District of California at: Office of the Clerk, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102-3489 between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

***Please do not telephone the Court, the Clerk's Office, or TaxAct to inquire about the Settlement or the Claims Process.***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit E:**

**Claim Form**

DocuSign Envelope ID: 8737C891-549A-489B-8AB7-A60231119348

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**
*Smith-Washington, et al. v. TaxAct, Inc.,* Case No. 3:23-cv-00830-VC
www.TaxActClassSettlement.com

## CLAIM FORM INSTRUCTIONS

This Claim Form is for Settlement Class Members. The Settlement Class Members includes members in either of the two following Classes: (1) <u>Nationwide Class</u> – all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product at any time between January 1, 2018 and December 31, 2022, and whose postal address listed on such tax return was in the United States; or (2) <u>Nationwide Married Filing Jointly Class</u> – all natural persons whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product at any time between January 1, 2018 and December 31, 2022, and whose postal address listed on such joint tax return was in the United States.

**TO RECEIVE A PAYMENT FROM THE SETTLEMENT AND TO RECEIVE TAXACT®
XPERT ASSIST YOU MUST COMPLETE AND SUBMIT THIS FORM**

If, as of January 9, 2024, you filed a demand for arbitration against TaxAct to arbitrate claims that would otherwise be released in accordance with the terms of this Settlement Agreement, you are <u>excluded from both Settlement Classes unless you elect to opt-in to the Settlement Classes by filing a timely Claim Form</u>.

## How To Complete This Claim Form

1. There are two ways to submit this Claim Form to the Settlement Administrator: (a) online at www.TaxActClassSettlement.com; or (b) by U.S. mail to the following address: Smith-Washington, et al. v. TaxAct, Inc., c/o Kroll Settlement Administration LLC, 2000 Market Street, Suite 2700, Philadelphia, PA 19103.

2. **Deadline:** If you submit your Claim Form by U.S. Mail, the completed and signed Claim Form must be postmarked by _____, **2024**. If you submit your Claim Form online, you must do so by 11:59 p.m. PDT on _____, **2024**.

3. You must complete the entire Claim Form. Please type or write your responses legibly.

4. If your Claim Form is incomplete or missing information, the Settlement Administrator may contact you for additional information. If you do not respond by the deadline provided by the Settlement Administrator for you to supply any such additional information, your claim will not be processed, and you will waive your right to receive money and Xpert Assist under the Settlement.

5. You may only submit one Claim Form. You must only submit the Claim Form on your own behalf or on behalf of someone for whom you are an authorized legal representative.

6. Submission of the Claim Form does not guarantee payment or receipt of Xpert Assist. Your Claim Form must be approved by the Settlement Administrator.

7. If you have any questions, please contact the Settlement Administrator by email at _____, by chat available at _____, by telephone at _____, or by U.S. mail at the address listed above.

8.  **You must notify the Settlement Administrator if your contact or payment information changes after you submit your Claim Form.  If you do not, even if you submit a valid claim under the Settlement, you may not receive your Settlement payment.**

DocuSign Envelope ID: 8737C891-549A-489B-BAB7-A60231119348

**Your claim must be submitted online or postmarked by: _____, 2024**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
*Smith-Washington, et al. v. TaxAct, Inc.,*
Case No. 3:23-cv-00830-VC
www.TaxActClassSettlement.com

# Claim Form

## I.     YOUR CONTACT INFORMATION

Provide your name and current contact information. You must notify the Settlement Administrator if your contact information changes after you submit this form. NOTE: The personal information you provide below will be processed only for purposes of effectuating the Settlement.

| | |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

| | | |
|---|---|---|
| **City** | **State** | **Zip Code** |

| | |
|---|---|
| **Current Phone Number** | **Email Address** |

**I filed a:    _____  Individual Return        _____ Joint Tax Return**

If your contact information above is the same as the information associated with your TaxAct account at the time you used Tax Act services, continue to Section II.  If different, please provide the contact information associated with your TaxAct account below:

| | |
|---|---|
| **First Name** | **Last Name** |

DocuSign Envelope ID: 8737C891-549A-489B-9AB7-A60331119348

**Street Address**

**City**          **State**          **Zip Code**

**Phone Number**          **Email Address**

---

**II.    METHOD OF RECEIVING PAYMENT (choose one)**

---

Please select **one** of the following payment options for the cash component of the Settlement. Please make sure the email or phone number you provide to receive payment matches your contact information above.

☐    **PayPal -** Enter your **PayPal email address:** _____

☐    **Venmo -** Enter the **mobile number** associated with your Venmo account: __ __ __-__ __ __-__

☐    **Zelle** - Enter the **email address or mobile number** associated with your Zelle account:

_____

☐    **Physical Check** – Payment will be mailed to the address provided above.

---

**III.    VERIFICATION AND ATTESTATION UNDER OATH**

---

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that I am the person identified above and the information provided in this Claim Form is true and correct.

_____    Date:_____
Your signature                                              MM       DD       YYYY

_____
Your name

**REMINDER CHECKLIST**

1. Please make sure you completed all three parts of the Claim Form. Be sure to select only **one** payment option.

2. Please make sure that you signed and dated the Claim Form.

3. Please keep a copy of your completed claim form for your own records.

4. Please submit your completed Claim Form online OR by mail by _____, 2024 to: Smith-Washington, et al. v. TaxAct, Inc. c/o Settlement Administrator, [INSERT Address]

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit F:**

**Opt-Out Form**

DocuSign Envelope ID: 8737C891-549A-489B-8AB7-A60231119348

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*Smith-Washington, et al. v. TaxAct, Inc.,* Case No. 3:23-cv-00830-VC
www.TaxActClassSettlement.com

## OPT-OUT FORM INSTRUCTIONS

This Opt-Out Form is for Settlement Class Members who wish to exclude themselves from the benefits of the Settlement. The Settlement Class Members includes members in either of the two following Classes: (1) <u>Nationwide Class</u> – all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product at any time between January 1, 2018 and December 31, 2022, and whose postal address listed on such tax return was in the United States; or (2) <u>Nationwide Married Filing Jointly Class</u> – all natural persons whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product at any time between January 1, 2018 and December 31, 2022, and whose postal address listed on such joint tax return was in the United States.

**ANY INDIVIDUAL WHO WISHES TO EXCLUDE THEMSELVES FROM THE SETTLEMENT MUST SUBMIT THIS FORM ONLINE OR A REQUEST FOR EXCLUSION TO THE SETTLEMENT ADMINISTRATOR, WHICH SHALL BE POSTMARKED NO LATER THAN [OPT-OUT DEADLINE]. IF YOU FILL OUT THIS OPT-OUT FORM YOU WILL BE EXCLUDED FROM THE SETTLEMENT AND ANY OF ITS BENEFITS.**

## How To Complete This Opt-Out Form

1. To submit this Opt-Out Form, complete the online form **here** or print this form and mail it to following address: Smith-Washington, et al. v. TaxAct, Inc., c/o Kroll Settlement Administration LLC, 2000 Market Street, Suite 2700, Philadelphia, PA 19103. The completed and signed Opt-Out Form must be postmarked by **_____, 2024**.

2. You must complete the entire Opt-Out Form. Please type or write your responses legibly.

3. You must only submit the Opt-Out Form on your own behalf or on behalf of someone for whom you are an authorized legal representative.

4. If you have any questions, please contact the Settlement Administrator by email at _____, by chat available at _____, by telephone at _____, or by U.S. mail at the address listed above.

1
2
3
4
5
6
7
8
9
10
...28

<table>
<tr><td>**Your opt-out form must be postmarked by: _____, 2024**</td><td>**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA** *Smith-Washington, et al. v. TaxAct, Inc.,* Case No. 3:23-cv-00830-VC www.TaxActClassSettlement.com</td><td></td></tr>
</table>

**Opt-Out Form**
**IF YOU COMPLETE THIS FORM YOU WILL BE EXCLUDED FROM THE SETTLEMENT AND ITS BENEFITS**

**IV.    YOUR CONTACT INFORMATION**

Provide your name and contact information. NOTE: The personal information you provide below will be processed only for purposes of effectuating the Settlement.

**First Name**                                      **Last Name**

**Street Address**

**City**                          **State**                          **Zip Code**

**Current Phone Number**                              **Email Address**

I filed a:  ____ Individual Return  _____Married Filing Jointly Return

**V.    CONTACT INFORMATION ASSOCIATED WITH TAXACT ACCOUNT**

If different from above, please provide the contact information associated with your TaxAct account at the time of filing, or your spouse's TaxAct account at the time of filing if you are a Married Filing Jointly Class Member.

___:  My TaxAct account information is the same as above.

|  |  |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

|  |  |  |
|---|---|---|
| **City** | **State** | **Zip Code** |

|  |  |
|---|---|
| **Phone Number** | **Email Address** |

---

## VI.    VERIFICATION AND ATTESTATION UNDER OATH

---

By signing below and submitting this Opt-Out Form, I hereby swear under penalty of perjury that I am used TaxAct's services during the Class Period and am part of the Settlement Class.

_____     Date:_____
Your signature                                              MM        DD        YYYY

_____
Your name

## <u>REMINDER CHECKLIST</u>

1. Please make sure you completed all three parts of the Opt-Out Form.

2. Please make sure that you signed and dated the Opt-Out Form.

3. Please keep a copy of your completed Opt-Out Form for your own records.

4. Please submit your completed Opt-Out Form online or by mail by _____, 2024 to: Smith-Washington, et al. v. TaxAct, Inc. c/o Kroll Settlement Administration LLC, 2000 Market Street, Suite 2700, Philadelphia, PA 19103.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit G:**

**Proposed Final Approval Order**

DocuSign Envelope ID: 8737C891-549A-489B-8AB7-A60231119348

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NICHOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES, MATTHEW HARTZ, and JENNY LEWIS on behalf of themselves and all other similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>TAXACT, INC.,<br><br>    Defendant. | Case No. 3:23-CV-00830-VC<br>Assigned to Hon. Vince Chhabria<br><br>**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(E)(2); AWARDING ATTORNEYS' FEES, EXPENSES, AND NAMED PLAINTIFF SERVICE AWARDS** |

WHEREAS, Plaintiffs Nicholas C. Smith Washington, Joyce Mahoney, Jonathan Ames, Jenny Lewis, and Matthew Hartz (together, "Settlement Class Representatives"), and Defendant TaxAct, Inc. ("TaxAct") (collectively "Parties"), entered into a Settlement Agreement on February __, 2024 (ECF No.___), which, together with the exhibits and appendices thereto, sets forth the terms and conditions for a proposed resolution of this Action and for its dismissal with prejudice;

WHEREAS, by order dated _____, 2024, the Court granted preliminary approval of the Settlement between the parties in the Action, ordering notice to Settlement Class Members, and providing Settlement Class Members with an opportunity either to exclude themselves from the Settlement Class or to object to the Settlement (ECF No. ___);

WHEREAS, by order dated _____, 2024, the Court also provisionally certified the Settlement Class for settlement purposes only, finding that the Settlement Class meets all the prerequisites of Federal Rule of Civil Procedure 23 for class certification, including numerosity, commonality, typicality, predominance of common issues, superiority, and that the Settlement Class Representatives and Class Counsel are adequate representatives of the Settlement Class (*id.*);

WHEREAS, the Court held a Final Approval Hearing on_____, 2024, to consider approval of this Settlement;

DocuSign Envelope ID: 8737C891-549A-489B-8AB7-A60231119348

WHEREAS, the Court has considered the Settlement Agreement, the record in this Action, and the Parties' arguments and authorities;

GOOD CAUSE APPEARING, IT IS HEREBY ORDERED AS FOLLOWS:

1.      All terms and definitions used herein have the same meanings as set forth in the Settlement Agreement unless stated otherwise herein or in the Court's Order Granting Preliminary Approval of the Settlement.

2.      The Court has jurisdiction over this Action and the Parties.

3.      The Court finds that the Notice Plan constituted the best notice practicable under the circumstances to all Settlement Class Members and fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

4.      The Court finds that, for purposes of the Settlement only, all prerequisites for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied and certifies the following Settlement Classes:

a.      "Nationwide Class" includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product during the Class Period, and whose postal address listed on such tax return was in the United States. The Nationwide Class includes the California Subclass.

i.      "California Subclass" is a subclass of the Nationwide Class that includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product during the Class Period, and whose postal address listed on such tax return was in California.

b.      "Nationwide Married Filing Jointly Class" includes all natural persons whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed

DocuSign Envelope ID: 8737C891-549A-489B-8AB7-A60331119348

a joint tax return using the TaxAct online product during the Class Period, and whose postal address listed on such joint tax return was in the United States. The Nationwide Married Filing Jointly Class includes the California Married Filing Jointly Subclass.

    i.   "California Married Filing Jointly Subclass" is a subclass of the Nationwide Married Filing Jointly Class that includes all natural persons residing in California during the Class Period whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product during the Class Period, and whose postal address listed on such joint tax return was in California.

5.    Excluded from the Settlement Classes are: TaxAct, its current, former and/or future parents, subsidiaries, divisions, affiliates and/or departments, and their employees, officers, directors, management, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies during the Class Period or thereafter; counsel for Plaintiffs and their employees, including but not limited to the undersigned counsel for Plaintiffs and the undersigned counsel's employees; any district judge or magistrate judge to whom this case is or was assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities; customers who only used TaxAct's download do-it-yourself consumer Form 1040 tax return filing product, TaxAct's Professional products, or TaxAct's online do-it-yourself business tax return filing products; and all individuals who have, as of January 9, 2024, filed a demand for arbitration against TaxAct to arbitrate claims that would otherwise be released in accordance with the terms of this Settlement Agreement unless those individuals elect to opt-in to the Settlement Classes by filing a timely Claim Form.

6.    Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby grants final approval of the Settlement and finds that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class Members based on the following factors, among other things:

DocuSign Envelope ID: 8737C891-549A-489B-8AB7-A60231119348

a.  There is no fraud or collusion underlying this Settlement, and it was reached as a result of a mediation session with a respected mediator and extensive arm's length negotiations. *See, e.g., Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (presence of a neutral mediator is a factor weighing in favor of a finding of noncollusiveness). Despite the mediator's presence, the Court has performed its own, independent analysis of the Settlement's fairness, reasonableness, and adequacy pursuant to Federal Rule of Civil Procedure 23(e)(2*). See Briseño v. Henderson*, 908 F.3d 1014, 1021 (9th Cir. 2021).

b.  The complexity, expense, and likely duration of the litigation favor settlement—which provides meaningful benefits on a shorter time frame than otherwise possible—on behalf of the Settlement Class Members. *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) (affirming the district court's approval of a settlement where class counsel "reasonably concluded that the immediate benefits represented by the Settlement outweighed the possibility—perhaps remote—of obtaining a better result at trial"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). Based on the stage of the proceedings and the amount of investigation and discovery completed, the Parties have developed a sufficient factual record to evaluate their chances of success at trial and the proposed Settlement.

c.  The support of Class Counsel and the Settlement Class Representatives, who have participated in this litigation and evaluated the proposed Settlement, also favor final approval. *See Class Plaintiffs*, 955 F.2d at 1294; *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

d.  The Settlement provides meaningful relief to the Settlement Classes and falls within the range of reasonable possible recoveries by the Settlement Class Members.

7.  Upon the Effective Date: (i) the Settlement Agreement shall be the exclusive remedy for any and all Released Claims of Settlement Class Representatives and Settlement Class Members; and (ii) Settlement Class Representatives and Settlement Class Members stipulate to be and shall be permanently barred from initiating, asserting, or prosecuting against the Released Parties in any federal or state court or other tribunal any and all Released Claims.  Likewise, upon the Effective Date, Defendant and each of the other Released Parties shall be deemed by operation of law to have released, waived, discharged and dismissed each and every claim relating to the institution or prosecution of the Action by Settlement Class Representatives, Class Counsel and the Settlement Class. Accordingly, the Settlement shall terminate the Action.

8.  The Court finds that an award of attorneys' fees and expenses is appropriate pursuant to Federal Rule of Civil Procedure 23(e)(2)(C)(iii) and therefore approves such award in an amount, manner and timing as set forth in the Court's separate Order on Class Counsel's motion for Attorneys' Fees and Expenses Award and Service Awards.

9.  The Court finds that the payment of Service Awards to the Settlement Class Representatives is fair and reasonable and therefore approves such payment as set forth in the Court's separate Order on Class Counsel's motion for Attorneys' Fees and Expenses Award and Service Awards.

10.  Ten percent of Class Counsel's awarded attorneys' fees shall remain in the Qualified Settlement Fund until after Class Counsel files a Notice of Completion of Duties and the Court authorizes the release to Class Counsel of the attorneys' fees remaining in the Qualified Settlement Fund.  Class Counsel shall file the Notice of Completion of Duties only after substantially all of the Qualified Settlement Fund has been distributed to the Class and administration of the Settlement is substantially complete.  The Notice of Completion of Duties shall generally describe the results of

the Settlement administration process, including the total cost of administration, noting the portion of these costs paid by TaxAct.

11.    The Action, and all claims asserted therein, is settled and dismissed on the merits with prejudice.

12.    Consummation of the Settlement shall proceed as described in the Settlement Agreement, and the Court reserves jurisdiction over the subject matter and each Party to the Settlement with respect to the interpretation and implementation of the Settlement for all purposes, including enforcement of any of the terms thereof at the instance of any Party and resolution of any disputes that may arise relating to the implementation of the Settlement or this Order.

13.    In the event that any applications for relief are made, such applications shall be made to the Court.  To avoid doubt, the Final Judgment applies to and is binding upon the Parties, the Settlement Class Members, and their respective heirs, successors, and assigns.

14.    The Settlement and this Order are not admissions of liability or fault by TaxAct or the Released Parties, or a finding of the validity of any claims in the Action or of any wrongdoing or violation of law by TaxAct or the Released Parties.  To the extent permitted by law, neither this Order, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceeding to establish any liability of, or admission by, the Released Parties.

15.    Notwithstanding the foregoing, nothing in this Order shall be interpreted to prohibit the use of this Order in a proceeding to consummate or enforce the Settlement or this Order, or to defend against the assertion of released claims in any other proceeding, or as otherwise required by law.

16.    As provided in the Settlement Agreement, the parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements within 21 days after the distribution of the Net Settlement Fund, and payment of Attorneys' Fees or

Expenses and/or Service Awards to Class Settlement Representatives, if any. The Court SETS a compliance deadline of [INSERT COMPLIANCE DEADLINE] to verify timely filing of the post-distribution accounting.  The Parties may request a continuance of this deadline if the Net Settlement fund has not been distributed 14 days before the compliance deadline.

17. [CHART OF SETTLEMENT ADMINISTRATION DEADLINES TO BE INSERTED]

IT IS SO ORDERED.

DATED: _____

_____
The Honorable Vince Chhabria
United States District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit H:**

**Proposed Final Judgement**

DocuSign Envelope ID: 8737C891-549A-489B-8AB7-A60231119348

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NICHOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES, MATTHEW HARTZ, and JENNY LEWIS on behalf of themselves and all other similarly situated, | Case No. 3:23-CV-00830-VC<br>Assigned to Hon. Vince Chhabria |
| Plaintiffs, | **[PROPOSED] FINAL JUDGEMENT** |
| v. | |
| TAXACT, INC., | |
| Defendant. | |

On _____, the Court signed and entered its Order Granting Final Approval of Class Action Settlement and its Order on Class Counsel's Motion for Attorneys' Fees and Expenses and Service Awards (ECF Nos. ___) (the "Final Approval Order" and the "Order on Motion for Attorneys' Fees and Expenses and Service Awards") in the above-captioned matter as to the following classes of persons:

"**Nationwide Class**" includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product during the Class Period, and whose postal address listed on such tax return was in the United States. The Nationwide Class includes the California Subclass.

"**California Subclass**" includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product during the Class Period, and whose postal address listed on such tax return was in California.

"**Nationwide Married Filing Jointly Class**" includes all natural persons whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product during the Class Period, and whose postal address

DocuSign Envelope ID: 8737C891-549A-489B-8AB7-A60231119348

listed on such joint tax return was in the United States. The Nationwide Married Filing Jointly Class includes the California Married Filing Jointly Subclass.

"**California Married Filing Jointly Subclass**" includes all natural persons residing in California during the Class Period whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product during the Class Period, and whose postal address listed on such joint tax return was in California.

JUDGMENT IS HEREBY ENTERED, pursuant to Federal Rule of Civil Procedure 58, as to the specified class of persons (excluding the individuals who validly and timely requested exclusion from the Settlement Class, as identified in the Final Approval Order); Settlement Class Representatives Nicholas C. Smith Washington, Joyce Mahoney, Jonathan Ames, Jenny Lewis, and Matthew Hartz; and TaxAct, Inc. ("TaxAct") on the terms and conditions of the Settlement Agreement approved by the Court's Final Approval Order.

1. For purposes of this Order, the Court adopts the terms and definitions set forth in the Settlement Agreement unless otherwise defined in the Preliminary Approval Order or Final Approval Order.

2. Payments to Settlement Class Members under the Settlement Agreement shall be made as outlined in the Final Approval Order and Settlement Agreement.

3. Upon the Effective Date: (i) the Settlement Agreement shall be the exclusive remedy for any and all Released Claims of Settlement Class Representatives and Settlement Class Members; and (ii) Settlement Class Representatives and Settlement Class Members stipulate to be and shall be permanently barred from initiating, asserting, or prosecuting against the Released Parties in any federal or state court or other tribunal any and all Released Claims.

4. Likewise, upon the Effective Date, Defendant and each of the other Released Parties. hall be deemed by operation of law to have released, waived, discharged and dismissed each and

every claim relating to the institution or prosecution of the Action by Settlement Class Representatives, Class Counsel and the Settlement Classes.

5.      This Action is settled and dismissed on the merits with prejudice.

6.      Without affecting the finality of this Judgment, the Court reserves jurisdiction over the Settlement Class Representatives, the Settlement Classes, Class Counsel, and Defendant as to all matters concerning administration, consummation, and enforcement of the Settlement Agreement.

JUDGEMENT APPROVED AS TO FORM.


_____
The Honorable Vince Chhabria
United States District Judge


JUDGEMENT ENTERED_____, 2024

By: CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA