# COHEN, PLACITELLA &ROTH
## LAW OFFICES

A PROFESSIONAL CORPORATION
TWO COMMERCE SQUARE, 2001 MARKET STREET, SUITE 2900
PHILADELPHIA, PENNSYLVANIA 19103
(215) 567-3500   FAX (215) 567-6019   CPRLAW.COM

March 22, 2024

The Hon. Vince Chhabria, U.S.D.J.
San Francisco Courthouse, Courtroom 4
450 Golden Gate Ave.
San Francisco, CA 94102

RE:   *Smith-Washington, et al. v. TaxAct, Inc.*
       Civil Action No. 23-00830

Dear Judge Chhabria:

     Our firm is counsel to James Kirkham and Matthew Sessoms, the plaintiffs in *Kirkham v. TaxAct, Inc.*, No. 23-3303 (E.D.Pa.). Plaintiffs Kirkham and Sessoms brought that lawsuit on behalf of a putative class of TaxAct's Pennsylvania users—both direct and indirect—and assert claims under the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Pennsylvania Wiretap Act"), 18 Pa. C.S.A. § 5701, *et seq.*, and Sections 6103 and 7431(a)(2) of the Internal Revenue Code. Members of our firm have been appointed as Interim Class Counsel in the Kirkham action by the Hon. Wendy Beetlestone, U.S.D. J. *See* Civil Action No. 23-3303, ECF No. 49.

     By virtue of our appointment as Interim Class Counsel, we have been charged with the "responsibility for protecting the interest of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *See* Manual for Complex Litig. (4th ed.), § 21.11 (Fed. Judicial Ctr. 2004). While our clients intend to formally object to the proposed *Smith-Washington* settlement if this Court grants preliminary approval, in keeping with our role and responsibilities as Interim Class Counsel, we write to Your Honor now to alert the Court to several issues with the proposed settlement.

     The *Smith-Washington* action may have been the first filed case against TaxAct relating to its website's use of pixels and other tracking technologies, but it is not the most advanced case. While counsel for the *Smith-Washington* plaintiffs were negotiating an early settlement with TaxAct, Interim Class Counsel were



March 22, 2024
Page 2

engaged in extensive discovery and have prevailed against TaxAct on several key motions. Plaintiffs Kirkham and Sessoms successfully moved for a protective order in response to TaxAct's efforts to secure a litigation advantage by updating its Terms of Service, which if allowed, would adversely affect the members of the putative Pennsylvania class. Plaintiff Sessoms also defeated TaxAct's motion to compel arbitration with respect to his claims as an indirect user of TaxAct's services.[1]

As for discovery, Interim Class Counsel have deposed four of TaxAct's corporate designees, reviewed thousands of pages of documents, and, with help from expert consultants, reviewed and are continuing to review thousands of lines of computer code. Because much of that discovery has been designated as confidential under the Stipulated Protective Order in *Kirkham*, Interim Class Counsel intend to request a modification of the Stipulated Protective Order to allow for the sharing of the discovery obtained in *Kirkham* with this Court. The point of all this is that the *Kirkham* plaintiffs believe that without the benefit of the more extensive evidentiary record in *Kirkham*, counsel for the *Smith-Washington* plaintiffs have too greatly discounted the strengths of the claims being asserted in *Kirkham* as well as vastly overstate the risks of continued litigation; at least, as to a substantial cohort of TaxAct's Pennsylvania users. The *Kirkham* plaintiffs also intend to present evidence (1) on the vulnerability of the information TaxAct shared to misuse and mischief; (2) how that information can be associated with particular users; and (3) TaxAct's ongoing failure to do anything meaningful to rectify the problem its use of pixels has created.

In urging this Court to grant preliminary approval, counsel to the *Smith-Washington* plaintiffs have moreover improperly discounted the strength and value of the claims of the putative Pennsylvania (and perhaps, as well, the national) class members they seek to represent. They characterize the proposed settlement as an "excellent result" because TaxAct's "pending motion likely would have resulted in

---

[1] Applying Texas law, the court in *Kirkham* granted TaxAct's motion to stay the proceedings with respect to Plaintiff Kirkham. Mr. Kirkham represents the putative class of Pennsylvania taxpayers who directly used TaxAct's website to prepare and/or file their tax returns. Civil Action No. 23-3303, ECF No. 80. While the court noted that the Fifth Circuit has recognized that "even where an arbitration agreement is part of a larger contract, it can still be void if one party can amend it unilaterally[,]" the court went on to stay Mr. Kirkham's claims, reasoning that the Texas Supreme Court had not adopted that exception as the Fifth Circuit had. *Id.*, ECF No. 79, pgs. 12-13 (citing *Nelson v. Watch House International, L.L.C.*, 815 F.3d 190 (5th Cir. 2016)). Plaintiffs Kirkham and Sessoms have since timely moved for reconsideration of that ruling as the Texas Supreme Court has, in fact, recognized that "an arbitration provision that is part of a larger underlying contract . . . remains illusory if the contract permits one party to legitimately avoid its promise to arbitrate such as by unilaterally amending or terminating the arbitration provision and completely escaping arbitration." *Id.*, ECF No. 83 (citing *Royston, Rayzor, Vickery, & Williams, LLP*, 467 S.W.3d 494, 505 (Tex. 2015)).

Since then, the *Kirkham* court has granted TaxAct's motion to stay the proceedings pending its appeal of the ruling that Mr. Sessoms was not bound by TaxAct's Terms of Service's arbitration provision. *Id.*, ECF No. 84.

March 22, 2024
Page 3

Plaintiffs being compelled to individual arbitration of their claims" and because TaxAct's Terms of Service "(i) limit the time in which Class Members can bring claims arising out of or related to TaxAct's services to one-year after such claims arose; and (ii) limit damages recoverable by Class Members to the amounts they paid to TaxAct." Dkt. 121, pg. 12. Whether or not it is fair and appropriate to discount the strength and value of the claims of some members of the putative *Smith-Washington* class on these bases, it is inappropriate to do so with respect to the members of the putative Pennsylvania class in the *Kirkham* action. *See Kim v. Allison*, 8 F.4th 1170, 1179 (9th Cir. 2021) (finding approval of class action settlement constituted an abuse of discretion where it ignored that a subset of the class members were putative members of another class action in which there was more favorable law of the case). Having successfully opposed TaxAct's motion to compel arbitration, Plaintiff Sessoms does not face the same inconvenient forum risk that the *Smith-Washington* plaintiffs do of having to arbitrate his claims. Nor is he subject to the provisions in TaxAct's Terms of Service that limit the time in which claims can be brought against TaxAct or cap the damages he may recover.

Aside from discounting the law of Pennsylvania that is applicable to the claims asserted in *Kirkham*, which greatly supports and benefits Pennsylvania taxpayers such as Plaintiff Sessoms,[2] the proposed *Smith-Washington* settlement suffers from perhaps a more significant defect: it undeservedly treats the members of the putative California sub-classes better than the putative class members from other states. It indeed allocates the members of the putative California sub-classes twice the number of points so that a California resident would receive two times the payout of a similarly situated putative class member from Pennsylvania.

Unlike the plaintiffs in *Smith-Washington*, all of whom are California and Illinois residents, the plaintiffs in *Kirkham* are Pennsylvania residents who bring state law-based privacy claims under the Pennsylvania Wiretap Act and the IRS Code. While counsel for the *Smith-Washington* plaintiffs try to rationalize this unequal treatment by comparing the number of claims they assert under California law to the number brought under federal law, it is not the number of claims that matters but the strength of the claims.

As counsel for the *Smith-Washington* plaintiffs explain, the *Smith-Washington* plaintiffs brought three claims on behalf of all the putative Settlement Class Members and eight claims brought specially on behalf of California residents. They assert that "[a]mong the California-only claims are the Tax Preparation Act claim and the Business and Professions Code § 17530.5 claim, both of which are particularly strong claims, and under the former of which Subclass Members are entitled to significant statutory damages." What is left unsaid is that those causes

---

[2] *See Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022); *Vonbergen v. Liberty Mutual Insurance Company*, __ F. Supp. 3d __, 2023 WL 8569004 (E.D.Pa. Dec. 11, 2023),

March 22, 2024
Page 4

of action turn on whether TaxAct violated the IRS Code.[3] In other words, to establish two of the California causes of action they plead, the *Smith-Washington* plaintiffs would have to establish that TaxAct violated the IRS Code. *See* 26 U.S.C. § 7431(a)(2).[4] It is curious, if not telling, that the *Smith-Washington* plaintiffs did not plead the federal cause of action established under 26 U.S.C. § 7431(a)(2) as the *Kirkham* plaintiffs do, but only the California causes of action. That they then use the fact that they pleaded only the California causes of action instead of the federal cause of action confirms that the *Smith-Washington* plaintiffs and their counsel have failed to adequately represent the members of the Settlement Class from states other than California, including those from Pennsylvania,

While counsel for the *Smith-Washington* plaintiffs acknowledge that some states have "wiretapping statutes analogous to the California Invasion of Privacy Act," they "assigned little value to [California Invasion of Privacy Act ("CIPA")] in estimating the value of each claim because they did not believe that a court would permit a fulsome recovery under the ECPA and under CIPA." Aside from offering no basis for their belief that recovery can be obtained only under one sovereign's laws, counsel for the *Smith-Washington* plaintiffs overlook that the Federal Wiretap Act gives courts the "discretion to decline to award damages" while statutory damages are mandatory under the Pennsylvania Wiretap Act. *See DirecTV, Inc. v. Rawlins*, 523 F.3d 318, 325 (4th Cir. 2008); *compare also* 18 U.S.C. § 2520 ("the court may assess . . . damages"), with 18 Pa. C.S.A. § 5725 ("shall be entitled to recover . . . [a]ctual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher"). Counsels' discounting of the value of wiretap claims like those raised by Plaintiffs Kirkham and Sessoms appears even less credible when one considers that unlike the Federal Wiretap Act, the Pennsylvania Wiretap Act requires that both parties to a communication consent to its interception, disclosure and use. 18 Pa. C.S.A. § 5725; *see also Popa*, 52 F.4th at 125-26 (noting that the Pennsylvania Wiretap Act "operates in conjunction and as a supplement to the Federal Wiretap Act").

Besides overly discounting the value of the claims asserted in *Kirkham*, the proposed settlement reflects a discount based upon the number of national class claimants. The proposed settlement's distribution plan features a claims form process and bases the amount of the common fund to be established and paid by TaxAct on the assumption that there will be only a 5% claims rate. While the

---

[3] *See* Ca. Bus. & Prof. Code § 22253 ("It is a violation of this chapter for a tax preparer to do or commit . . . any of the following: . . . [v]iolate Section 7216 of Title 26 of the United States Code"); Ca. Bus. & Prof. Code § 15630.5 (it is a misdemeanor for anyone "in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns . . . unless the disclosure is . . . [e]xpressly authorized by state or federal law").
[4] Based on the deposition testimony of TaxAct's four corporate designees, the *Kirkham* plaintiffs can establish that TaxAct did not obtain "knowing and voluntary" consent from its users to disclose their tax return information to third-parties such as Meta and that none of the exceptions to the "knowing and voluntary" consent requirement under 26 C.F.R. § 301-7216-2 apply.

March 22, 2024
Page 5

proposed settlement has been described as a common fund settlement, in reality, it is more akin to a reversionary claims-made type settlement in which only 5% of the putative settlement class members end up participating. While TaxAct's liability to fund the settlement would be $14,950,000 if fewer than 5% of the putative Settlement Class Members participate, the converse is also true. If more than 5% of the putative Settlement Class Members participate, TaxAct's liability to fund the common fund remains capped at $14,950,000. In that case, each qualifying Settlement Class Member would receive even less, and perhaps significantly so. To be sure, counsel for the *Smith-Washington* plaintiffs have professed a belief in their moving papers that "a slightly higher-than-average estimated claims rate is reasonable." ECF No. 121, pg. 44. Should that come to pass, qualifying Settlement Class Members would receive less than the predicted average share of the Net Settlement Fund, which counsel estimate to be $18.65.

The *Kirkham* plaintiffs also question why a claims form is necessary in the first place. While there are a great many cases in which the use of claims forms is necessary, this does not appear to be one of them. To the contrary, with the information TaxAct has about each putative Settlement Class Member, as we have learned in discovery, no claims form should be necessary here as TaxAct should in most, if not all, cases have the requisite information to identify the putative Settlement Class Members as one would expect of a tax return preparer. Indeed, as even counsel to the *Smith-Washington* plaintiffs acknowledge, TaxAct has the email addresses for a "substantial majority of Settlement Class Members." ECF No. 121, pg. 44. Thus, in view of the information available to TaxAct about the Settlement Class Members, this is not the sort of case in which claims forms are necessary to verify the members of the putative Settlement Class. It appears rather that the claims process is being used for another purpose: to tamp down the number of claimants to the Settlement Fund thereby inflating the average share of the payments from the Fund.

Thank you for your kind consideration of this matter.

Respectfully submitted,

By: */s/ James P. Goslee*
James P. Goslee (CA Bar ID No. 267579)

Cc: All Counsel of Record (via ECF)