JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
CHRISTINA TUSAN (SBN 192203)
ctusan@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 601-6766 (Tel.)
(310) 295-2385 (Fax)

*Attorneys for Plaintiffs and the Putative Classes*

*Additional Counsel listed on the next page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICHOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES, MATTHEW HARTZ, and JENNY LEWIS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**TAXACT, INC.**, an Iowa corporation,<br><br>Defendant. | Case No. 3:23-CV-830-VC<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Vince Chhabria |

WARREN D. POSTMAN (SBN 330869)
wdp@kellerpostman.com
KELLER POSTMAN LLC
1101 Connecticut Avenue, N.W., Suite 1100
Washington, DC 20036
(312) 741-5220 (Tel.)
(312) 971-3502 (Fax)

ETHAN H. AMES (SBN 339027)
ethan.ames@kellerpostman.com
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220 (Tel.)
(312) 971-3502 (Fax)

## I. INTRODUCTION

Under the Parties' Plan of Allocation, Authorized Claimants – i.e., Settlement Class Members who submit valid claims – are assigned allocation points according to the Settlement Class or Subclass of which they are a member. And their ultimately monetary recoveries will be proportionate to the allocation points assigned to them. The Parties have proposed to assign allocation points as follows: 3 points to Members of the Nationwide Class; 6 points to Members of the California Subclass; 1 point to Members of the Nationwide Married Filing Jointly Class; and 2 points to Members of the California Married Filing Jointly Subclass. The primary basis for the proposed distribution of points, which provides twice as many points to Californian Class and Subclass Members as their Nationwide counterparts, is the strength of the California-specific claims pursuant to Business & Professions Code § 17530.5 and the Tax Preparation Act (Bus. & Prof. Code §§ 22250, *et seq.*). These tax-preparation-related claims are unique to California, with no analogous statutes in other states with a private right of action, and justify a greater recovery for Californian Class and Subclass Members.[1]

With respect to wiretapping claims, as explained in Plaintiffs' Motion for Preliminary Approval, a considerable part of the maximum potential recovery for all Class Members comes from Defendant's exposure under the federal Electronic Communications Privacy Act ("ECPA") which, at $10,000 per Class Member, is greater than $100 billion. Given the magnitude of this exposure, Plaintiffs assigned little value to the California Invasion of Privacy Act (CIPA) claim in estimating the realistic maximum recovery by California Class Members and designing the Plan of Allocation because they did not believe that a court would permit a fulsome recovery under both the ECPA and under CIPA. On that basis, Plaintiffs also do not believe the release of potential wiretapping claims under the laws of other states requires a different ratio of allocation points than that provided for in the Plan of Allocation.

The Court has noted that, with respect to state wiretapping statutes analogous to the California Invasion of Privacy Act ("CIPA"), Plaintiffs did not provide adequate information in their Motion for

---

[1] Pursuant to Bus. & Prof. Code § 17530.5, Californian Class and Subclass Members are entitled to restitution and disgorgement of profits; pursuant to the Tax Preparation Act (Bus. & Prof. Code §§ 22250, *et seq.*), they are entitled to a civil penalty of $1,000 per individual, for an aggregate total recovery under the TPA of $628 million (628,156 x $1,000). *See* Pltfs' Mot. for Prelim. App. (Dkt. 121), at 23:22-26:21.

Preliminary Approval and supporting briefing for the Court to determine whether the proposed Plan of Allocation is fair. Plaintiffs welcome the opportunity to correct this oversight in this supplemental brief.

## II. POTENTIAL RECOVERY UNDER WIRETAPPING STATUTES

Plaintiffs have diligently reviewed the laws of states other than California and are aware of eight wiretapping statutes that are at least somewhat analogous to CIPA in that they require all parties to a communication to consent to its interception and/or recording under at least some circumstances and they provide a private right of action. However, some of these statutes are, or may be, inapplicable to electronic communications of the type addressed by the instant case or may otherwise be inapplicable to the circumstances of the instant case. Plaintiffs, below, summarize the ECPA, CIPA, and each of these state laws, the respective remedies under each law, and the total potential value of the claims under each law.

### A. ECPA

Pursuant to the ECPA, 18 U.S.C. §§ 2510 *et seq.*, Nationwide Class Members and Nationwide Married Filing Jointly Class Members can recover damages assessed as the greater of the sum of actual damages suffered and any profits made by TaxAct as a result of its violations of the ECPA or statutory damages of whichever is the greater of $100 per day per violation or $10,000. Defendant's exposure based on $10,000 per Class Member, generates a figure of greater than $103 billion.[2] To be clear, damages under the ECPA are discretionary, and Plaintiffs are aware that figures of this magnitude also raise considerable due process concerns.

### B. CIPA

Plaintiffs' CIPA claim is similar to that under the ECPA, except that CIPA is a so-called two-party or all party consent statute. *See Coulter v. Bank of America*, 28 Cal. App. 4th 923, 928-29 (1994); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) (Section 631(a) requires "the prior consent of all parties to a communication."). Thus, CIPA prohibits one party to a

---

[2] $10,000 x (8,263,789 Nationwide Class Members + 2,042,940 Nationwide Married Filing Jointly Class Members) = $103,067,290,000. All estimates in this supplemental brief (for purposes of Defendant's total exposure) are based on aggregate filed tax return data from TaxAct's systems.

communication from aiding another party in intercepting it without the consent of all parties to the communication. *See* Cal. Penal Code § 631(a).

Similarly to Plaintiffs' Claims under ECPA, the potential recoverable amount, prior to any discounts, and without considering due process, is massive. Pursuant to Penal Code § 637.2, California Subclass Members and California Married Filing Jointly Subclass Members are entitled to the greater of $5,000 <u>per violation</u> or three times the amount of actual damages suffered for violations of CIPA. <u>These damages are mandatory</u>. Even assuming that each Class Member can recover only $5,000 (rather than $5,000 per tax year, or even $5,000 per website visit), Defendant's exposure is $3.14 billion.[3]

Plaintiffs note that CIPA provides for a substantially greater recovery than any analogous state statute for two primary reasons. <u>First</u>, the private right of action under CIPA extends to anyone injured by a violation of the Act; thus, members of the California Married Filing Jointly Subclass can recover under CIPA. The private right of action under each of the other state statutes, except the Washington Privacy Act which requires a plaintiff to allege actual injury, is limited to those whose wire communication is intercepted, disclosed, or used. *See, e.g.,* 18 Pa. Stat. and Consol. Stat. Ann. § 5725 (West) (Private right of action in Pennsylvania limited to "[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter"); Nev. Rev. Stat. Ann. § 200.690 (West) (Private right of action in Nevada limited to "a person whose wire or oral communication is intercepted without his or her consent."). Thus, members of the California Married Filing Jointly Subclass can recover under CIPA, but members of the Nationwide Married Filing Jointly Class cannot recover under any of the other state wiretapping statute except, perhaps, Washington's. Put simply, it was their spouses' communications which were intercepted, disclosed, or used in violation of each respective statute, not their own.

<u>Second</u>, the liquidated or statutory damages available under CIPA are at least five times greater than those available under the next most generous statute. California provides for a recovery of $5,000 <u>per violation</u>, *see* Cal. Penal Code § 637.2, whereas the next most generous statutes provide for recovery of the greater of $100 per violation or $1000, *see, e.g.,* Fla. Stat. Ann. § 934.10 (West); Md. Cts. & Jud.

---

[3] $5,000 x (519,060 California Subclass Members + 109,096 California Married Filing Jointly Subclass Members) = $3,140,780,000.

Proc. Code Ann. § 10-410; N.H. Rev. Stat. Ann. § 570-A:11. Thus, assuming each Class Member can recover for only one violation, Californians will recover $5,000 and their best-compensated peers will recover $1,000. Should the Court permit recovery for each tax return filed, Californians who filed two tax returns will recover $10,000 and their peers will still recover only $1,000. The difference would grow yet further if the Court were to permit recovery for each use of the website by a Class Member. Assuming an average of ten violations per Class Member, the per capita recovery for California Class Members would be $50,000, with the per capita recovery for Floridian Class Members, for example, remaining only $1,000.

### C. Other state wire-tapping laws requiring "two-party" or "all party" consent

We summarize, below, the relevant state laws, the remedies available under those laws, and the total potential value of each state claim. We group the state laws into two categories: (1) state laws that a likely to apply to Class Members' claims in the instant case, and (2) laws where it is uncertain that they apply to the circumstances of the instant case.

#### 1. Summary Chart

| | **Nationwide** | | | | | |
|---|---|---|---|---|---|---|
| | **Damages Available** | **Mandatory?** | **Value Per CM** | **Total Value** | **Good Faith Exception/ Defense?** | **Notes** |
| Nationwide - ECPA | Actual damages plus profits made by the violator as a result of the violation or the greater of $100 a day for each day of violation or $10,000 | No | Est. $10,000 | $103 billion | No | |
| | **CIPA** | | | | | |
| **State** | **Damages Available** | **Mandatory?** | **Value Per CM** | **Total Value** | **Good Faith Exception/ Defense?** | **Notes** |
| California | The greater of three times the amount of actual damages or $5,000 per violation | Yes | Est. $5,000 | $3.14 billion | No | |
| | **Category One – Likely to Apply to Class Members' Claims** | | | | | |

| State | Damages Available | Mandatory? | Value Per CM | Total Value | Good Faith Exception/ Defense? | Notes |
|---|---|---|---|---|---|---|
| Florida | Actual damages, but not less than liquidated damages of $100 a day for each day of violation or $1,000 (whichever is higher), and punitive damages | Yes | Est. $1,000 | $641 million | Yes | |
| Maryland | Actual damages, but not less than liquidated damages of $100 a day for each day of violation or $1,000 (whichever is higher), and punitive damages | Yes | Est. $1,000 | $160 million | Yes | |
| Nevada | Actual damages, but not less than liquidated damages of $100 a day for each day of violation or $1,000 (whichever is higher), and punitive damages | Yes | Est. $1,000 | $78 million | No | |
| New Hampshire | Actual damages, but not less than liquidated damages of $100 a day for each day of violation or $1,000 (whichever is higher), and punitive damages | Yes | Est. $1,000 | $41 million | Yes | |
| Penn. | Actual damages, but not less than liquidated damages of $100 a day for each day of violation or $1,000 (whichever is higher), and punitive damages | Yes | Est. $1,000 | $364 million | Yes | |

| | Category Two – Uncertain if Recovery Possible for Class Members | | | | | |
|---|---|---|---|---|---|---|
| **State** | **Damages Available** | **Mandatory?** | **Value Per CM** | **Total Value** | **Good Faith Exception/ Defense?** | **Notes** |
| Wash. | Actual damages, or liquidated damages of $100 a day for each day of violation, **not to exceed $1,000** | Yes | Est. $100 (per Class Member per tax year in which return filed) | $43.8 million | No | Unclear if any recovery is possible |
| Mass. | Actual damages, but not less than liquidated damages of $100 a day for each day of violation or $1,000 (whichever is higher), and punitive damages | Yes | Est. $1,000 | $164 million | No | Unclear if any recovery is possible |
| Michigan | Actual damages and punitive damages | Yes | Unknown | Unknown | No | Unclear if any recovery is possible |

2. **Category One – <u>Likely to Apply to Class Members' Claims</u> – Florida, Maryland, Nevada, New Hampshire, and Pennsylvania**

   a. <u>Florida</u>

Florida law provides that it is unlawful for any person to intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept any wire, oral, or electronic communication. Fla. Stat. Ann. § 934.03 (West). It is, however, lawful "for a person to intercept a wire, oral, or electronic communication when all of the parties to the communication have given prior consent to such interception." *Id.* at § 934.03(2)(d). Section 934.10 provides for a private right of action and that a person whose wire communication is intercepted, disclosed, or used in violation of the statute "shall be entitled to recover . . . such relief as may be appropriate, including: . . . (b) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher; (c) Punitive damages; and (d) A reasonable attorney's fee and other litigation costs

reasonably incurred." Fla. Stat. Ann. § 934.10 (West). These remedies are mandatory. Additionally, unlike CIPA, the Florida Statute has the following good faith exception: "[a] good faith determination that Florida or federal law, other than 18 U.S.C. s. 2511(2)(d), permitted the conduct complained of shall constitute a complete defense to any civil or criminal, or administrative action arising out of such conduct under the laws of this state." Fla. Stat. Ann. § 934.10(c).

Assuming that each Floridian Class Member recovers $1,000, and excluding any punitive damages, the total aggregate value of their claims under Florida's wiretapping law is $641 million.[4]

b. Maryland

The Maryland Wiretapping and Electronic Surveillance Act holds that it is unlawful for any person to:

> (1) Willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
>
> (2) Willfully disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle; or
>
> (3) Willfully use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle.

Md. Cts. & Jud. Proc. Code Ann. § 10-402. It further provides that:

> It is lawful under this subtitle for a person to intercept a wire, oral, or electronic communication where the person is a party to the communication and where all of the parties to the communication have given prior consent to the interception unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State.

*Id.* at §10-402(c)(3).

Finally, § 10-410 provides that "[a]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this subtitle shall have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use the

---

[4] 641,406 unique customers x $1,000 = $641,406,000.

communications . . . ." Thus, as applied to the instant case, the Maryland law is an all-party consent statute analogous to CIPA with a private right of action.

Pursuant to § 10-410, the available remedies are:

> (1) Actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;
>
> (2) Punitive damages; and
>
> (3) A reasonable attorney's fee and other litigation costs reasonably incurred.

Md. Cts. & Jud. Proc. Code Ann. § 10-410. These remedies are mandatory. This statute also has the following good faith exception, "A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this subtitle or under any other law." Md. Code Ann., Cts. & Jud. Proc. § 10-410 (b)

Assuming that each Marylander Class Member recovers $1,000, and excluding any punitive damages, the total aggregate value of their claims under Maryland's wiretapping law is $160 million.[5]

### c. Nevada

Nevada law prohibits the interception of any wire communication unless the interception is "made with the prior consent of one of the parties to the communication" and "[a]n emergency situation exists and it is impractical to obtain a court order as required by NRS 179.410 to 179.515, inclusive, before the interception . . . ." Nev. Rev. Stat. Ann. § 200.620 (West). Thus, it is, in almost all circumstances, and certainly with respect to the instant case, a two-party consent statute. *See Lane v. Allstate Ins. Co.*, 114 Nev. 1176 (1998). Moreover, "a person whose wire or oral communication is intercepted without his or her consent" can recover, in a civil action:

> (1) Actual damages or liquidated damages of $100 per day of violation but not less than $1,000, whichever is greater;
>
> (2) Punitive damages; and
>
> (3) His or her costs reasonably incurred in the action, including a reasonable attorney's fee . . .

Nev. Rev. Stat. Ann. § 200.690 (West). These remedies are mandatory.

---

[5] 159,918 unique customers x $1,000 = $159,918,000.

Assuming that each Nevadan Class Member recovers $1,000, and excluding any punitive damages, the total aggregate value of their claims under Nevada's wiretapping law is $78 million.[6]

### d. New Hampshire

New Hampshire law provides that it is unlawful if a person "without the consent of all parties to the communication," "willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any telecommunication or oral communication." N.H. Rev. Stat. Ann. § 570-A:2. Section 570-A:11 provides a private right of action and that a person whose wire communication is intercepted, disclosed, or used in violation of the statute shall "be entitled to recover . . . : (a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher; (b) punitive damages; and (c) a reasonable attorney's fee and other litigation costs reasonably incurred. N.H. Rev. Stat. Ann. § 570-A:11. These remedies are mandatory. There is a limited good faith exception for "[g]ood faith reliance on a court order or on a representation made by the attorney general, deputy attorney general or a county attorney shall constitute a complete defense to any civil or criminal action brought under this chapter." *Id.*

Assuming that each New Hampshirite Class Member recovers $1,000, and excluding any punitive damages, the total aggregate value of their claims under New Hampshire's wiretapping law is $41 million.[7]

### e. Pennsylvania[8]

The Pennsylvania's Wiretapping and Electronic Surveillance Control Act prohibits the (1) intentional interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of

---

[6] 78,200 unique customers x $1,000 = $78,200,000.
[7] 41,006 unique customers x $1,000 = $41,006,000.
[8] As the Court is aware, Plaintiffs in *Kirkham v. TaxAct, Inc.*, No. 2:23-CV-3303-WB (E.D. Pa.) seek to represent a Pennsylvania Class on a claim under Pennsylvania's wiretapping statute. On March 15, 2024, unable to compel arbitration of Plaintiff Kirkham's claims in another district, the *Kirkham* court granted TaxAct's Motion to Stay with respect to his claims. Plaintiff Kirkham is the proposed class representative for the proposed class of direct filers in that case. *See Kirkham v. TaxAct, Inc.*, No. 2:23-CV-3303-WB (E.D. Pa.), Dkt. 80. On April 10, 2024, the *Kirkham* court denied Plaintiffs' Motion for Reconsideration of its March 15, 2024, Order. *Id.* at Dkt. 90.

a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. 18 Pa. Stat. and Consol. Stat. Ann. § 5703 (West). It is an all-party consent statute. *Id.* § 5704. The Act provides a private right of action, under which:

> [a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter . . . shall be entitled to recover . . . :
>
> (1) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher.
>
> (2) Punitive damages.
>
> (3) A reasonable attorney's fee and other litigation costs reasonably incurred.

*Id.* § 5725. These remedies are mandatory. There is also a good faith exception available to defendants. This exception states that, "It is a defense to an action brought pursuant to subsection (a) that the actor acted in good faith reliance on a court order or the provisions of this chapter." *Id.* § 5725(d).

Assuming that each Pennsylvanian Class Member recovers $1,000, and excluding any punitive damages, the total aggregate value of their claims under Pennsylvania's wiretapping law is $364 million.[9]

### 3. Category Two – <u>Uncertain if Recovery Possible for Class Members</u> – Washington, Massachusetts, Michigan

#### a. Washington

The Washington Privacy Act provides that "it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any ... [p]rivate communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication." Wash. Rev. Code § 9.73.030. Thus, similar to CIPA, it is an "all-party consent" statute. It is not clear, however, that the statute applies to the communications in the instant case. In *In re Meta Pixel Tax Filing Cases*, the

---

[9] 363,535 unique customers x $1,000 = $363,535,000.

court concluded, while inviting further briefing on the issue, that "Section 9.73.030 does not apply to communications between an individual and a business entity's automated system." No. 22-CV-07557-PCP, 2024 WL 1251350, at *8 (N.D. Cal. Mar. 25, 2024). A review of relevant Washington decisions does not resolve the issue. Washington courts have applied § 9.73.030 to emails, texts, and "real time client-to-client" internet messages. *See State v. Townsend*, 147 Wash. 2d 666, 672-75 (2002); *State v. Roden*, 179 Wash. 2d 893, 900 (2014) ("Text messages encompass many of the same subjects as phone conversations and e-mails, which have been protected under the act." (citations omitted)). However, Plaintiffs are unaware of a decision in which a court has found interactions with a website, such as those alleged in the instant case, to be covered by § 9.73.030.

If § 9.73.030 could apply to the instant case, it is distinguishable from CIPA in that the Washington law requires a showing of actual harm for an individual to be able to bring a civil action. A plaintiff must "claim[] that a violation of th[e] statute has injured his or her business, his or her person, or his or her reputation." Wash. Rev. Code Ann. § 9.73.060. In contrast, under CIPA, "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Penal Code § 637.2(c). In one respect, however, the Washington Privacy Act is more like CIPA than the other state laws discussed herein. The private right of action under the Washington law extends to "any . . . person" claiming a violation of the statute has caused actual injury, rather than being limited to a person whose communications where intercepted, disclosed, or used. Thus, Washingtonian members of the Nationwide Married Filing Jointly Class would potentially be able to recover despite never having, themselves, communicated with TaxAct.

In terms of remedies, pursuant to § 9.73.060 an injured person is entitled to "actual damages, including mental pain and suffering endured by him or her on account of violation of the provisions of this chapter, or liquidated damages computed at the rate of one hundred dollars a day for each day of violation, not to exceed one thousand dollars, and a reasonable attorney's fee and other costs of litigation." Wash. Rev. Code Ann. § 9.73.060. These remedies are mandatory.

We note that the Washington Privacy Act differs from several of the other state statutes discussed herein, in that the $1,000 figure for liquidated damages serves as a cap rather than a minimum. Thus, if recovery is possible in the instant case under the Washington Privacy Act, we would assume that

Washingtonian Class Members could recover $100 for each tax year in which they were a customer; the total aggregate value of their claims is $43.8 million.[10]

### b. Massachusetts

Pursuant to the Massachusetts Wiretap Act ("MWA"), it is illegal, *inter alia*, to willfully intercept, attempt to intercept, or procure any other person to intercept or attempt to intercept a wire or oral communication. Mass. Gen. Laws Ann. ch. 272, § 99(C)(1) (West). The term "wire communication" is defined to mean "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception. *Id.* at § 99(B)(1). It is an all-party consent statute. *Id.* at § 99(B)(4). At present, the issue of whether the MWA applies to interactions between a natural person and a website is before the Supreme Judicial Court of Massachusetts who granted direct judicial review of superior court opinions and orders in two cases in which the trial court found that the MWA does apply to such interactions and denied motions to dismiss. *See Kathleen Vita v. New England Baptist Hospital & another*, SJC-13542 (Mass.) (oral argument held Apr. 3, 2024), https://www.ma-appellatecourts.org/docket. The primary argument advanced by the appellants is that, while the MWA has been applied to wire communications technologies that did not exist when it was enacted, in 1968, that has always been in the context of interpersonal communications. *See* Defendants-Appellants' Amended Opening Brief, *Vita* v. New England Baptist Hospital, SJC-13542 (Mass.).[11] It is, thus, similar to that advanced by Defendant in *In re Meta Pixel Tax Filing Cases* against the Washington Privacy Act, discussed above.

In terms of remedies, the MWA provides, in pertinent part, that:

> [any person whose] wire communications were intercepted, disclosed or used except as permitted or authorized by this section . . . shall have a civil cause of action against any person who so intercepts, discloses or uses such communications . . ., and shall be entitled to recover from any such person—
>
> 1. actual damages but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1000, whichever is higher;

---

[10] 438,381 total customers (counting repeat customers more than once) x $100 = $43,838,100.
[11] Available at: https://www.ma-appellatecourts.org/pdf/SJC-13542/SJC-13542_01_Appellant_New_England_Baptist_Hospital_Amended_Brief.pdf

        2. punitive damages; and

        3. a reasonable attorney's fee and other litigation disbursements reasonably incurred . . . .

*Id.* at § 99(Q). These remedies are mandatory.

    If recovery is possible in the instant case under the MWA, and assuming that Massachusettsan Class Members each receive $1,000 in liquidated damages, and excluding punitive damages, the total aggregate value of their claims is $164 million.[12]

        c. <u>Michigan</u>

    Michigan's eavesdropping statute prohibits any person "who is present or who is not present during a private conversation [from] willfully us[ing] any device to eavesdrop upon the conversation without the consent of <u>all parties</u> thereto, or [ ] knowingly aid[ing], employ[ing] or procur[ing] another person to do the same in violation of this section." Mich. Comp. Laws Ann. § 750.539c (West) (emphasis added). The Michigan Court of Appeals has held that because the statutory term "eavesdrop" refers only to overhearing or recording the private conversations of others, a participant in a communication has the right to record the same. *See Sullivan v. Gray,* 117 Mich. App. 476, 482 (Mich. App. 1982). Thus, the Michigan law, as applied, is not an all-party consent statute in all situations. However, the Court of Appeal did find that "while a participant may record a conversation, he apparently may not employ third parties to do so for him." *Id.* Thus, applied to the instant case, it is possible, but not certain, that a court would find that TaxAct violated Michigan's eavesdropping statute when it permitted Meta to intercept Class Members' communications with TaxAct's website. It is also possible, however, that a court would find that because TaxAct actively placed the Meta Pixel on its website, it was TaxAct that "eavesdropped" on the communications between itself and Class Members; thus, its conduct was lawful.

    To the extent recovery is possible, the following remedies are mandatory:

        (a) An injunction by a court of record prohibiting further eavesdropping.

        (b) All actual damages against the person who eavesdrops.

        (c) Punitive damages as determined by the court or by a jury.

Mich. Comp. Laws Ann. § 750.539h (West)

---

[12] 163,937 unique customers x $1,000 = $163,937,000.

If recovery is possible in the instant case under Michigan's eavesdropping statute, given that monetary remedies are limited to actual damages and punitive damages, it is hard to estimate the value of the Michiganian Class Members' claims. The lack of any statutory or liquidated damages certainly renders them considerably less valuable than those in peer states.

## III. CONCLUSION

The overall potential value of the ECPA claim is approximately $103 billion. This figure is so massive that it unquestionably raises due process concerns and Plaintiffs do not believe that it would be awarded in its entirety against Defendant. Moreover, given that the Court would likely award the maximum feasible amount for Plaintiffs' wiretapping claims in response to Plaintiffs' ECPA claim, Plaintiffs do not believe that the Court would award additional amounts on the basis of state wiretapping claims, including CIPA. To be clear, the Parties' Plan of Allocation provides for the award of greater allocation points to Californian Class Members on the basis of tax-preparation-related state law claims that are unique to California: Despite the CIPA claim being at least five times as valuable per Class Member as any other state wiretapping claim, this was not the basis for any difference in the allocation of points.

Plaintiffs continue to believe that the Parties' Plan of Allocation is fair and respectfully request that the Court approves it and grants their motion for preliminary approval of the Parties' class action Settlement.

DATED: April 12, 2024                    Respectfully submitted,

                                             s/ Julian Hammond
                                         Julian Hammond
                                         *Attorneys for Plaintiffs and Proposed Class Counsel*