Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

James W. Ducayet (*pro hac vice*)
jducayet@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Michele L. Aronson (*pro hac vice*)
maronson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736 8000
Facsimile: (202) 736 8711

*Attorneys for Defendant Tax Act, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NICHOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES, and JENNY LEWIS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

TAXACT, INC.,

Defendant.

Case No. 3:23-CV-00830-VC

Assigned to Hon. Vince Chhabria

**TAXACT, INC.'S RESPONSE TO JAMES KIRKHAM AND MATTHEW SESSOMS' OBJECTIONS TO THE PROPOSED CLASS ACTION SETTLEMENT**

The Plaintiffs in *Kirkham v. TaxAct, Inc.*, No. 23-3303 (E.D. Pa.), James Kirkham and Matthew Sessoms, have objected to the proposed class action settlement in this matter. *See* Dkt. 135. The objection is without merit. In addition to the arguments set forth in class counsel's brief in support of final approval of the class action settlement (Dkt. 146)—which TaxAct agrees with and incorporates here—TaxAct respectfully makes this submission to emphasize two additional points, both of which support overruling the *Kirkham* objection.

*First*, the *Kirkham* Plaintiffs overstate the value of their asserted claims in the Eastern District of Pennsylvania. In that case, the district court stayed Kirkham's claims in favor of arbitration—i.e., in effect holding that claims by "direct" filers, who make up the vast majority of claimants, must be arbitrated. *See* Dkt. 135 at 18-20. Thus, even assuming that the Third Circuit affirms the district court's decision denying TaxAct's motion to compel[1] with respect to the "indirect" filer putative class (i.e., the putative class that consists of "married filing jointly" individuals, representing approximately one-fifth the size of the "direct" filer putative class), rejecting the present settlement in favor of the *Kirkham* matter would leave *all* putative class members in a much worse position than if final approval is granted. This is because the settlement agreement affords all putative class members, which includes both "direct" filers and "indirect" filers, with the opportunity to obtain specific and certain benefits without the need to file individual arbitration claims. That is not true in *Kirkham*, where Eastern District of Pennsylvania *enforced* the

[1] TaxAct believes that the Third Circuit will reverse the district court's decision. The *Kirkham* Plaintiffs' claim that the Third Circuit will conclude that TaxAct's Terms are illusory, *see* Dkt. 135 at 19-20, is based on a misunderstanding of Texas law. In *In re AdvancePCS Health L.P.*, the court held that an arbitration clause was enforceable and "not illusory," even assuming that the other party's mutual promise was illusory when "considered alone," because "the rest of the parties' agreement provide[d] the consideration," 172 S.W.3d 603, 607 (Tex. 2005). The consideration there was "us[ing] PCS's services and network to obtain reimbursements." *Id*. The same is true for TaxAct's arbitration provision because the rest of the contract provides sufficient consideration, rendering the arbitration provision equally enforceable. Similarly, their reliance on *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2016) and *Nelson v. Watch House Int'l, LLC*, 815 F.3d 190, 193-95 (5th Cir. 2016) (Dkt. 135 at 10-11, 19-20), is misplaced because, unlike in those case, TaxAct does not have a unilateral ability to avoid arbitration as users themselves can reject any modifications to the arbitration provision by terminating their use of TaxAct's services. *See Kirkham*, No. 2:23-cv-3303 (E.D. Pa.), Dkt. 55-8 at 2 ("If you do not agree with any such changes, you must immediately discontinue your use of the Services.").

arbitration provision against the "direct" filing class, meaning that those claimants *must* arbitrate their claims to obtain any benefits. No. 2:23-cv-3303 (E.D. Pa.), Dkt. 79, 80.

And even if the Third Circuit were to affirm the district court's holding that Sessoms is not subject to the arbitration provision, there is a significant risk that the putative "indirect" filer class that he aims to represent in *Kirkham* cannot be certified because there are numerous threshold questions about whether indirect filers, for instance, authorized, either expressly or impliedly, the filing and would therefore be bound to the terms and conditions under agency theories. As an example, Sessoms himself is attempting to avoid arbitration (incorrectly) based on a particularly narrow set of allegations: that (a) he instructed his wife to prepare and file his taxes without providing any limitations and with specific awareness that she could use online services; (b) he assisted her in doing so by authenticating his TaxAct account (that she created on his behalf) by responding to a multi-factor authentication request from TaxAct sent to his cell phone, and by providing her with significant personal information necessary to fill out his taxes; and (c) he somehow did all of this without knowledge of TaxAct or its terms and conditions at all. *See Kirkham*, No. 24-1515 (3d Cir.), Dkt. 24 at 1-5, 8-15. If a class or sub-class of indirect filers is not certified, each would have to litigate or arbitrate their claims individually. The proposed settlement here avoids all of those complications to the benefit of all of the putative class members.

Ultimately, contrary to *Kirkham* Plaintiff's assertion that developments in the *Kirkham* case strengthen class claims and were undervalued by class counsel in settlement, the putative class would in fact be in a significantly weaker position should this settlement not be approved as a direct result of the *Kirkham* proceedings. The putative class would not benefit from the settlement funds or in-kind relief and each member would need to individually arbitrate their disputes with TaxAct, as Sessoms' narrow allegations and facts will foreclose class certification.

*Second*, the *Kirkham* Plaintiffs object regarding the lack of injunctive relief in the proposed settlement. *See* Dkt. 135 at 23-25. But injunctive relief is unnecessary because TaxAct has already entered into a Consent Judgment with the Missouri Attorney General that prohibits TaxAct from engaging in the practices challenged by the *Smith-Washington* Plaintiffs in this case. *See* Dkt. 121 at 1; Dkt. 121-4 (Consent Judgment). Although TaxAct maintains that its practices are already

consistent with Section 7216, no information was improperly transmitted to third parties, and TaxAct already took steps to limit certain technology uses on its website, TaxAct agreed to continue its activities with the Missouri Attorney General's oversight and enforcement through the Consent Judgment. The Consent Judgement lays out a number of injunctive requirements, including: prohibiting TaxAct from disclosing to third parties any consumer tax return information collected through the use of tracking technologies unless it has obtained express consumer consent or it is permitted by Section 7216 or any other state or federal law (*id*. ¶ 2); requiring that TaxAct continue to maintain a written, documented Information Security Program consisting of policies and procedures (*id*. ¶¶ 3-5); and ensuring that it continues to provide its consumer privacy notice and update it to make advance notice of material changes to personal information practices (*id*. ¶¶ 6-7).[2] Any injunctive relief ordered by this Court would be duplicative and unnecessary in light of the breadth of the Consent Judgment.

Indeed, despite bombastically claiming that the "agreement is not worth the paper it is written on," the *Kirkham* Plaintiffs in fact make only two narrow arguments regarding the lack of injunctive relief, neither of which has merit. They first claim that Paragraph 2 of the Consent Judgment, which defines "Express Consumer Consent," is contrary to federal law because it allows TaxAct to obtain users' consent "via a banner that presents choices that allow the consumer to consent or not consent to the use of Tracking Technology . . . with the default being not consenting." Dkt. 135 at 24-25 (emphasis omitted). But they do not explain how the use of a banner that "presents choices," especially one that requires a user to affirmatively alter the choice from its default no-consent setting, violates the law or means that users would somehow not be able to knowingly or voluntarily consent. There is nothing in Section 7216 or the applicable guidance or any other federal privacy law that requires or precludes the use of such consent banners, and the *Kirkham* Plaintiffs point to no such requirements or prohibitions. Importantly, TaxAct does not currently have and is not required to have such a banner in place under applicable law and is not currently engaging in the

[2] The "Consent Judgment is not intended to and does not constitute any evidence of or an admission by TaxAct regarding any issue of law or fact allegation in the State's Petition; TaxAct does not admit any liability." *Id.* at 1.

use of tracking technologies that would require a banner under the Consent Judgment. Nevertheless, the *Kirkham* Plaintiffs ignore that the Consent Judgment does not require Express Consumer Consent if the disclosure "is permitted by Section 7216 or any other state or federal law." They also do not contest that the Treasury Regulations promulgated pursuant to Section 7216 permit the disclosure of tax return information without obtaining taxpayer consent in circumstances relevant to the case at hand.

Nor is there any basis for the *Kirkham* Plaintiffs to claim that the Consent Judgment "has had no effect on TaxAct" because TaxAct's corporate designees could not answer questions about the Judgment during their depositions in *Kirkham*. *See* Dkt. 135 at 25. Those 30(b)(6) witnesses were not obligated to testify about that topic because the *Kirkham* Plaintiffs did not include the Missouri Consent Judgment as a "Topic of Inquiry" in their Rule 30(b)(6) deposition notice. *See* Ex. A, Plaintiffs James Kirkham's and Mathew Sessoms' Rule 30(b)(6) Disposition Notice to Defendant TaxAct, Inc. (Nov. 2, 2023). TaxAct, therefore, had no obligation to educate those witnesses for purposes of the 30(b)(6) deposition on that topic. The witnesses' resulting essential non-answers to the questions posed by counsel on a topic that they are well aware was not noticed for the 30(b)(6) deposition can hardly qualify as evidence that TaxAct has not complied with the Judgment and is a gross overreach.

TaxAct will be prepared to discuss all these points, as well as any other questions the Court may have, at the final approval hearing on November 21, 2024.

Date: October 11, 2024

Respectfully submitted,

*By: /s/ James W. Ducayet*

Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772 1200
Facsimile: (415) 772 7400

James W. Ducayet *(pro hac vice)*
jducayet@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853 7000
Facsimile: (312) 853 7036

Michele L. Aronson (*pro hac vice*)
maronson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736 8000
Facsimile: (202) 736 8711
*Attorneys for Defendant TaxAct, Inc.*