JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
ADRIAN BARNES (253131)
abarnes@hammondlawpc.com
ARI CHERNIAK (290071)
acherniak@hammondlawpc.com
POLINA BRANDLER (269086)
pbrandler@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 601-6766 (Office)
(310) 295-2385 (Fax)

WARREN D. POSTMAN (SBN 330869)
wdp@kellerpostman.com
KELLER POSTMAN LLC
1101 Connecticut Avenue, N.W., Suite 1100
Washington, DC 20036
(312) 741-5220 (Office)
(312) 971-3502 (Fax)

ETHAN H. AMES (SBN 339027)
ethan.ames@kellerpostman.com
KELLER POSTMAN LLC
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220 (Office)
(312) 971-3502 (Fax)

*Attorneys for Plaintiffs and Settlement Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NICHOLAS C. SMITH-WASHINGTON, JOYCE MAHONEY, JONATHAN AMES, MATTHEW HARTZ, and JENNY LEWIS** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**TAXACT, INC.**, an Iowa corporation,<br><br>Defendant. | Case No. 3:23-CV-830-VC<br><br>**DECLARATION OF RICHARD DUBOIS RE: POTENTIAL CY PRES DISTRIBUTION**<br><br>Judge Hon. Vince Chhabria |

I, Richard Dubois, declare as follows:

1. I have personal knowledge of the facts in this Declaration and, if called as a witness, I could and would competently testify to these facts.

2. I am Executive Director of the National Consumer Law Center ("NCLC"). As Executive Director of NCLC, I am responsible for priority setting, project assignments, and quality of work at the organization, and direct all research, policy, and advocacy projects, as well as Center policymaking, hiring, fundraising, and budgetary planning. I have been with NCLC since 1997, having previously served as Deputy Director, as Director of Development and Project Planning, and as an attorney focusing on foreclosure prevention and sustainable homeownership issues. I have also been a co-author or contributing author of a number of NCLC publications, including NCLC's treatise *Consumer Warranty Law*.

3. NCLC is a national 501(c)(3) nonprofit organization dedicated to consumer protection and the promotion of fairness and justice in the marketplace, which also undertakes state-based work as well. NCLC was founded in 1969 with funding from the federal Office of Economic Opportunity as a national support center for legal services organizations. Today, NCLC is a fully independent organization governed by a volunteer national board of directors, including both attorneys and clients from low-income communities, which continues to prioritize providing training, support and case assistance to legal aid and pro bono attorneys representing low-income clients.

4. NCLC has no official or formal relationship (past or present) with either HammondLaw P. C., Keller Postman LLC or Gerstein Harrow LLP. NCLC does have an advisory body – The Partners Council – and a fiduciary governing board – NCLC's Board of Directors – neither of which has any representation from, or connections with, the plaintiffs' law firms or any of their attorneys. NCLC makes the commitment to use the potential *cy pres* funds, if awarded, solely to advance the interest of preventing unauthorized sharing of consumer data.

5. For more than five decades, NCLC has been a leading source of legal and public policy expertise on consumer issues for lawyers, federal and state policymakers, consumer

advocates, journalists, and front-line providers of community services. NCLC has trained and advised tens of thousands of advocates on consumer legal issues, appeared in cases throughout the nation, worked with state and federal commissions and legislatures, written investigative reports, and published leading legal practice manuals and consumer guides. Specific examples of the ways in which NCLC's consumer law expertise is used to support consumer attorneys and directly benefit consumers include the following:

6. **Conferences and Trainings**: Every year, NCLC trains thousands of attorneys and other advocates through workshops, conference presentations, and webinars. These 2-4 day, in-depth trainings benefit consumers nationally by ensuring that practitioners and advocates understand the current state of consumer law and accurately apply existing legal frameworks. NCLC hosts three annual conferences, including the nation's largest annual consumer law conference, the Consumer Rights Litigation Conference (CRLC), which attracts 800-1,000 attorneys annually. Sessions are led by the nation's most successful consumer litigators where questions are asked and answered, ideas on best practice are shared, and powerful consumer law remedies and attorney fee recovery methods are learned. This conference always includes a full roster of sessions on the Fair Credit Reporting Act and other statutes protecting consumers' private financial data. Built within the CRLC, following the main conference, is the *Class Action Symposium* where attorneys learn about cutting-edge issues that confront class action practitioners. The Symposium attracts 150-200 practitioners each year. Featured presenters at the Consumer Class Action Symposium have included Law School Deans Robert Klonoff and Erwin Chemerinsky; Judges Richard Posner and William Young; State Attorney Generals Skip Humphrey and John Kroger; and Professors Richard Daynard, Linda Mullinix, Rick Marcus, Brian Fitzpatrick, and Victoria Sahani. NCLC does not normally cover travel or accommodation costs incurred by session speakers.

7. NCLC also helps organize and run a new joint conference with the National Association of Consumer Attorneys (NACA). The Spring Training conference provides substantive training and in-depth learning across a number of tracks that cover issues related to

-2-

FCRA, FDCPA and Solar – through interactive sessions that allow attorneys to engage with their peers and for litigators to better understand how to improve their legal practices devoted to enforcing laws, and increasing the number of lawyers capable of protecting debtors from unfair and abusive practices. At this conference, one of the conference tracks has usually focused on the Fair Credit Reporting Act and its protections against inaccuracy, wrongful dissemination, and misuse of consumers' private financial data.

8. NCLC also runs a third, smaller Mortgage Training conference, aimed at providing training on TILA/RESPA servicing claims, mortgage relief, home equity theft and foreclosure rescue scams, FCRA issues and more.

9. **Legal Treatises and Consumer Law Publications**: NCLC publishes a comprehensive 21-volume set of legal treatises, widely cited in judicial opinions by courts, including the United States Supreme Court. The American Bar Journal review of NCLC's treatises described the series as "a monumental undertaking comparable to but more practical than the Restatement of Laws." NCLC also produces books and other educational materials intended for consumers themselves, and for our large network of lay advocates and service providers. Written in clear and direct language, and updated regularly in its digital format, these materials give practical advice on consumer rights.

10. One of NCLC's flagship treatises is *Fair Credit Reporting* (10th ed. 2022). This two-volume treatise, comprising over 1400 pages, is the leading resource for practitioners using the Fair Credit Reporting Act to protect consumers from inaccuracy, wrongful dissemination, and misuse of their private financial data. It also addresses the Gramm-Leach-Bliley Act's protections for "nonpublic personal information" about consumers held by financial institutions; the application of the common law tort of invasion of privacy to wrongful disclosure of consumers' financial data; and other state and federal laws that protect consumers' private financial data. Available both in print and digitally, the treatise includes full-text appendices with the relevant statutes and regulations and a host of sample pleadings and practice aids. It is

updated online every year, and NCLC is currently working on the 11th edition, to be published in 2025.

11. **Legal and Policy Analysis**: NCLC's legal and policy experts analyze regulatory proposals; provide expert witness services; and research and write extensive Reports, Policy Briefs, and formal regulatory comments on a wide range of consumer law matters, including on (but not limited to) issues associated with the Fair Credit Reporting Act (FCRA) and the Fair and Accurate Credit Transactions Act (FACTA).

12. **Public Education**: NCLC also responds to requests from journalists for information and disseminates our research on important consumer issues. We are consulted for background information and quoted regularly by *The New York Times*, *The Wall Street Journal*, *USA Today*, *The Los Angeles Times*, *The Washington Post*, National Public Radio, and other major news organizations. We work with the media to alert consumers to potentially misleading business practices, and to provide tips on practical steps that the public can take to obtain relief from (or not be harmed by) improper business conduct.

13. NCLC approves of the approach adopted by the American Law Institute in § 3.07 of its Principles of the Law of Aggregate Litigation regarding the criteria a court should apply to determining whether a proposed *cy pres* distribution is appropriate. NCLC also adheres to, and supports, Guideline 7, *Cy Pres* Awards, of the National Association of Consumer Advocates Standards and Guidelines for Litigating and Settling Consumer Class Actions (3rd Ed. 2014). The procedures set forth in these rules have been endorsed by federal courts as the best way to insure that: (1) there is a maximum distribution to class members; (2) the designation of the remaining funds will be allocated for uses that are most likely to further the interests of absent class members; and (3) the selection process is not tainted by self-interest.

14. NCLC has long been considered by courts across the country to be a worthy and credible recipient of *cy pres* awards. Since 1997, NCLC has been approved by courts to receive over 500 *cy pres* and class action settlement awards, which have been used to promote education, trainings and enhance consumer protections and equal access to justice for consumers

-4-

in need of effective legal representation. NCLC is a national organization and is therefore well tailored for cases that involve national harm. In support of this belief, in a final court order filed February 22, 2016, in *Brandewie v. Wal-Mart*, Case No. 1:14-cv-965 (N.D. Ohio) it was noted that the court "carefully scrutinized the proposed list of recipients and rejected all proposed recipients but one" – NCLC. The judge wrote in a court order filed December 16, 2015 (Doc. 82 in same case) that awarding NCLC residual funds from the case "will further the interest of absent Class Settlement Members". **NCLC's Work on Protecting the Privacy of Consumer Data.** NCLC has a long and deep commitment to protection of consumers' private financial data. If awarded a cy pres in this case, it will use the funds solely to continue and expand this important work, described below.

15. NCLC has advocated for and promoted consumer data privacy for over 50 years, since the passage of the Fair Credit Reporting Act (FCRA) in 1970, the nation's first federal data privacy law. The FCRA protects access to the sensitive financial and other information about consumers held by credit bureaus and other data brokers, limiting disclosure for only certain purposes. As noted above, this work includes extensive training of advocates, and publication of the leading treatise on the FCRA and other federal and state protections for consumers' financial data.

16. NCLC also leads nationwide and state-level policy advocacy on the FCRA. For example, NCLC and a coalition of consumer groups have been deeply involved in an effort by the Consumer Financial Protection Bureau (CFPB) to regulate data brokers under the FCRA. Our plans in 2025 include filing extensive comments to the Bureau's proposed regulation on the issue. We also plan to issue an investigative report on the data privacy problems with private companies that provide identification services to government agencies, such as ID.me. As another example of NCLC's upcoming policy work on date privacy issues, in 2025 NCLC will be defending the best-in-class data privacy protections in the CFPB's Personal Data Rights regulation, which the banking industry has challenged and sued to stop. NCLC has also long been involved in efforts to protect the privacy of taxpayers.

17. On the state level, funds from the cy pres will be used to urge state policymakers to adopt stronger privacy protections, such as laws to keep medical debts off credit reports and to remove over-broad exceptions for financial institutions and data brokers in state privacy laws. NCLC will also be working to protect the privacy of renters as consumers, which is especially critical given the struggles that renters have faced recently. For example, NCLC advocates for consumer consent in the reporting of rental payments to the Big Three credit bureaus, so that renters have control over their own data. NCLC also works to ensure that sealed and expunged eviction and criminal records do not show up in commercial tenant screening reports, so that renters receive the second chance that state laws have decided they should have (although this work is separately funded, so NCLC does not anticipate using cy pres funds for it).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of December 2024, at Boston.

_____
Richard Dubois