UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLAS C. SMITH-WASHINGTON, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>TAXACT, INC.,<br><br>    Defendant. | Case No. 23-cv-00830-VC<br><br>**ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL**<br><br>Re: Dkt. No. 146 |

  The motion for final approval of the settlement agreement is granted. The Court finds that the proposed settlement is "fair, reasonable, and adequate," even under the "higher level of scrutiny" used to assess settlements, like this one, that are reached before the class is formally certified. Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011).

  Courts considering the fairness of a class action settlement generally must weigh:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Id.* (citing *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

  This settlement agreement is fair, reasonable, and adequate in light of those factors. As to the first three factors, the plaintiffs faced significant tailwinds, including the risk that the claims of the direct-filers would be sent to arbitration or otherwise limited by TaxAct's Terms of Use.

The risk of arbitration and potential appeals also would have impacted both the duration of litigation and the potential difficulty that the putative class would have faced with respect to maintaining class action status. In addition, while the plaintiffs alleged on information and belief that TaxAct's vendors used the information obtained in pursuit of the vendors' own purposes, the difficulty of proving that in cases like this adds further uncertainty. Extensive discovery would be required to determine TaxAct's liability. In addition, the status of the Married Jointly Filed Class members renders their claims even more uncertain, as they were not directly involved with the communications at issue.

Especially in light of the strength of this case, the amount offered is reasonable. The settlement is allocated by point, giving 3 points to the members of the Nationwide Class; 6 points to members of the California Subclass; 1 point to the members of the Nationwide Married Filing Jointly Class; and 2 points to members of the California Married Filing Jointly Subclass. Giving more points to the California class members is reasonable because those members have access to potential claims under to the Business & Professions Code § 17530.5 and the Tax Preparation Act (Bus. & Prof. Code § 22250, et seq.). And prioritizing the nationwide class over the various state subclasses is reasonable due to the statutory maximum of $10,000 per ECPA violation, which was the primary driver behind TaxAct's exposure for privacy violations, especially compared to the statutory maximums for state-law privacy violations. *See* Dkt. No. 133, Plaintiffs' Supplemental Brief (detailing state privacy laws and TaxAct's exposure under each scheme). And the use of $5/month to estimate TaxAct's realistic exposure for ECPA violations was reasonable in light of research showing that this amount is in line with the average consumer's willingness-to-pay for privacy and other class actions. *See, e.g.*, *In re Google Plus Profile Litigation*, No. 5:18-CV-06164-EJD, 2021 WL 242887, at *5 (N.D. Cal. Jan. 25, 2021).

The remaining factors also counsel in favor of finding that this settlement is reasonable. Litigation is at an early stage, with no substantive motions on the merits. While this case has not proceeded to formal discovery, class counsel engaged experts and conducted investigation into TaxAct's use of tracking tools prior to the filing of the complaint. In addition, class counsel

supports the settlement amount. There is no government actor participating in this settlement, but the plaintiffs note that CAFA notice has been provided where needed. Out of the over 10.6 million class members, more than 423,000 people, or 3.96% of the class, have submitted validated claims. Only 1,384 class members have opted out and three objections have been filed. These numbers are in line with other similar class actions that have been approved. *See In re Facebook Internet Tracking Litigation*, No. 5:12-MD-02314-EJD, 2022 WL 16902426, at *5 (N.D. Cal. Nov. 10, 2022), *aff'd sub nom. In re Facebook, Inc. Internet Tracking Litigation*, No. 22-16903, 2024 WL 700985 (9th Cir. Feb. 21, 2024).

In addition, this settlement does not have the warning signs of collusion. Class counsel is not receiving a "disproportionate distribution," and the class members are receiving a monetary distribution. *See In re Bluetooth*, 654 F.3d at 947. Nor does this settlement agreement include a clear sailing provision, and any unawarded fees revert to the net class fund. *Id.*

Three objections were raised at the final approval stage. Scott Dodson's objection was related to the cy pres recipient, National Consumer Law Center (NCLC). He raised concerns about (1) whether any members of the class counsel team have past or future planned relationships with NCLC that could lead to conflicts of interest, and (2) NCLC's mission, which appeared too broad to truly advance the interests of the class. As discussed at the final approval hearing, class counsel do not have any past or future planned relationships with NCLC. 12/5/24 Hearing Transcript at 26–27. And NCLC's Executive Director filed a declaration that any cy pres distribution to NCLC would be earmarked for efforts to "advance the interest of preventing unauthorized sharing of consumer data." Dkt. No. 158, Decl. of Richard DuBois, at ¶ 4. The concerns expressed by Dodson have thus been addressed.

Kirkham and Sessoms are plaintiffs in a similar putative class action brought against TaxAct on similar allegations in the Eastern District of Pennsylvania. They first argue that the settlement value falls below the range of reasonableness. But as noted above, the weighting and the realistic exposure calculations were reasonable in light of the evidence presented by class counsel on reasonable valuations of privacy and the strength of the claims.

Kirkham and Sessoms also allege that the settlement value undervalues the claims they are making in their Pennsylvania action. And they contend that the settlement (1) overvalues the claims of the California subclass and (2) undervalues the claims of the Nationwide Married Filing Jointly Subclass. But the Pennsylvania law claims have a much lower statutory damages maximum than the federal maximum for ECPA claims, which was the driving force for a nationwide damages model. As discussed above, the decision to prioritize ECPA damages while calculating the settlement amount was a reasonable approach to valuing the claims at issue here. And the claims of the direct-filers class in the E.D. Pa. action have all been sent to arbitration, leaving only the joint filers in the case. Because the claims of the indirect (joint) filers are more precarious, the settlement is not unreasonable for failing to value those claims more highly. In addition, the California subclass can assert a tax-preparation claim that the other state subclasses do not have. That additional avenue for relief justifies granting a slightly higher weight to the relief of the California subclass.

Kirkham and Sessoms also assert that class counsel has not justified why this settlement is being administered on a claims-made basis, because TaxAct's records could be used to send settlement funds to each affected member of the class. In this case, however, the choice to use a claims-made model was reasonable. The use of a claims-made model increased the likelihood that a substantial amount of the settlement money will be received and redeemed by the class members. Dkt. No. 121, Plaintiffs' Motion for Preliminary Approval, at 43. And class members who are part of the Married Filing Jointly subclasses needed to be confirmed by the settlement administrator.

Finally, Kirkham and Sessoms are concerned that the lack of injunctive relief in the proposed settlement leaves the class members at risk of future harm from TaxAct. But TaxAct is subject to a consent judgment with the Missouri Attorney General barring it from continuing the practices that form the basis of the class's allegations. And the terms of that consent judgment, which bars TaxAct from unlawfully disclosing tax information to third parties without express consumer consent, would seem to ensure that TaxAct will not continue to the challenged

behaviors and continue to harm the class. Dkt. No. 121-4, Consent Judgment at ¶¶ 2–7.

Sessom also objects to the wording of the question collecting contact information for members of the Married Filing Jointly Class. This does not create any significant concerns.[1] As class counsel pointed out, however, the point of the question was merely to ask whether their current contact information is the same or different from the information associated with the TaxAct account. Anyone who answered no was still given the opportunity to provide their contact information and have the Settlement Administrator assess whether they are a part of the class.

For the foregoing reasons, the motion for final approval of class action settlement is granted. Good cause appearing, it is hereby ordered as follows:

1. All terms and definitions used herein have the same meanings as set forth in the Settlement Agreement unless stated otherwise herein or in the Court's Order Granting Preliminary Approval of the Settlement.

2. The Court has jurisdiction over this Action and the Parties.

3. The Court finds that the Notice Plan constituted the best notice practicable under the circumstances to all Settlement Class Members and fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

4. The Court finds that, for purposes of the Settlement only, all prerequisites for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied and certifies the following Settlement Classes:

    a. "Nationwide Class" includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product during the Class Period, and whose postal address listed on such tax return was in the United States. The Nationwide Class includes the

---

[1] Sessoms asked for leave to file this objection, which came after the deadline for objections had run. Dkt. No. 144. Given the higher scrutiny applied to this settlement agreement, leave is granted for purposes of permitting consideration of the objection.

        California Subclass.

            i. "California Subclass" is a subclass of the Nationwide Class that includes all natural persons who used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a tax return using the TaxAct online product during the Class Period, and whose postal address listed on such tax return was in California.

    b. "Nationwide Married Filing Jointly Class" includes all natural persons whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product during the Class Period, and whose postal address listed on such joint tax return was in the United States. The Nationwide Married Filing Jointly Class includes the California Married Filing Jointly Subclass.

            i. "California Married Filing Jointly Subclass" is a subclass of the Nationwide Married Filing Jointly Class that includes all natural persons residing in California during the Class Period whose spouse used a TaxAct online do-it-yourself consumer Form 1040 tax filing product and filed a joint tax return using the TaxAct online product during the Class Period, and whose postal address listed on such joint tax return was in California.

5. Excluded from the Settlement Classes are: TaxAct, its current, former and/or future parents, subsidiaries, divisions, affiliates and/or departments, and their employees, officers, directors, management, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies during the Class Period or thereafter; counsel for Plaintiffs and their employees, including but not limited to the undersigned counsel for Plaintiffs and the undersigned counsel's employees; any district judge or magistrate judge to whom this case is or was assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all

governmental entities; customers who only used TaxAct's download do-it-yourself consumer Form 1040 tax return filing product, TaxAct's Professional products, or TaxAct's online do-it-yourself business tax return filing products; and all individuals who have, as of January 9, 2024, filed a demand for arbitration against TaxAct to arbitrate claims that would otherwise be released in accordance with the terms of this Settlement Agreement unless those individuals elect to opt-in to the Settlement Classes by filing a timely Claim Form.

6. Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby grants final approval of the Settlement and finds that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class Members based on the following factors, among other things:

   a. There is no evidence of fraud or collusion underlying this Settlement, and it was reached as a result of a mediation session with a respected mediator and extensive arm's length negotiations. *See, e.g.*, *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Bluetooth*, 654 F.3d at 948 (presence of a neutral mediator is a factor weighing in favor of a finding of noncollusiveness). Despite the mediator's presence, as discussed above, the Court has performed its own, independent analysis of the Settlement's fairness, reasonableness, and adequacy pursuant to Federal Rule of Civil Procedure 23(e)(2*). See Briseño v. Henderson*, 908 F.3d 1014, 1021 (9th Cir. 2021).

   b. The complexity, expense, and likely duration of the litigation favor settlement— which provides meaningful benefits on a shorter time frame than otherwise possible—on behalf of the Settlement Class Members. *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) (affirming the district court's approval of a settlement where class counsel "reasonably concluded that the immediate benefits represented by the Settlement outweighed the possibility—

perhaps remote—of obtaining a better result at trial"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). Based on the stage of the proceedings and the amount of investigation and discovery completed, the Parties have developed a sufficient factual record to evaluate their chances of success at trial and the proposed Settlement.

    c. The support of Class Counsel and the Settlement Class Representatives, who have participated in this litigation and evaluated the proposed Settlement, also favor final approval. *See Class Plaintiffs*, 955 F.2d at 1294; *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

    d. The Settlement provides meaningful relief to the Settlement Classes and falls within the range of reasonable possible recoveries by the Settlement Class Members.

7. Upon the Effective Date: (i) the Settlement Agreement shall be the exclusive remedy for any and all Released Claims of Settlement Class Representatives and Settlement Class Members; and (ii) Settlement Class Representatives and Settlement Class Members stipulate to be and shall be permanently barred from initiating, asserting, or prosecuting against the Released Parties in any federal or state court or other tribunal any and all Released Claims. Likewise, upon the Effective Date, Defendant and each of the other Released Parties shall be deemed by operation of law to have released, waived, discharged and dismissed each and every claim relating to the institution or prosecution of the Action by Settlement Class Representatives, Class Counsel and the Settlement Class. Accordingly, the Settlement shall terminate the Action.

8. The Court finds that an award of attorneys' fees and expenses is appropriate pursuant to Federal Rule of Civil Procedure 23(e)(2)(C)(iii) and therefore approves such award in an amount, manner, and timing as set forth in the Court's separate Order on Class Counsel's

motion for Attorneys' Fees and Expenses Award and Service Awards.

9. The Court finds that the payment of Service Awards to the Settlement Class Representatives is fair and reasonable and therefore approves such payment as set forth in the Court's separate Order on Class Counsel's motion for Attorneys' Fees and Expenses Award and Service Awards.

10. Ten percent of Class Counsel's attorneys' fees awarded as a percentage of the Qualified Settlement Fund shall remain in the Qualified Settlement Fund until after Class Counsel files a Notice of Completion of Duties and the Court authorizes the release to Class Counsel of the attorneys' fees remaining in the Qualified Settlement Fund. Class Counsel shall file the Notice of Completion of Duties only after substantially all of the Qualified Settlement Fund has been distributed to the Class and administration of the Settlement is substantially complete. The Notice of Completion of Duties shall generally describe the results of the Settlement administration process, including the total cost of administration, noting the portion of these costs paid by TaxAct.

11. The Action, and all claims asserted therein, is settled and dismissed on the merits with prejudice.

12. Consummation of the Settlement shall proceed as described in the Settlement Agreement, and the Court reserves jurisdiction over the subject matter and each Party to the Settlement with respect to the interpretation and implementation of the Settlement for all purposes, including enforcement of any of the terms thereof at the instance of any Party and resolution of any disputes that may arise relating to the implementation of the Settlement or this Order.

13. In the event that any applications for relief are made, such applications shall be made to the Court. To avoid doubt, the Final Judgment applies to and is binding upon the Parties, the Settlement Class Members, and their respective heirs, successors, and assigns.

14. The Settlement and this Order are not admissions of liability or fault by TaxAct or the Released Parties, or a finding of the validity of any claims in the Action or of any

       wrongdoing or violation of law by TaxAct or the Released Parties. To the extent permitted by law, neither this Order, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceeding to establish any liability of, or admission by, the Released Parties.

15. Notwithstanding the foregoing, nothing in this Order shall be interpreted to prohibit the use of this Order in a proceeding to consummate or enforce the Settlement or this Order, or to defend against the assertion of released claims in any other proceeding, or as otherwise required by law.

16. As provided in the Settlement Agreement, the parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements within 21 days after the distribution of the Net Settlement Fund, and payment of Attorneys' Fees or Expenses and/or Service Awards to Class Settlement Representatives, if any. The Court sets a compliance deadline of 231 days after the Effective Date to verify timely filing of the post-distribution accounting. The Parties may request a continuance of this deadline if the Net Settlement fund has not been distributed 14 days before the compliance deadline.

**Chart of Significant Future Settlement Administration Dates**

| Event | Date |
| --- | --- |
| Final Approval Hearing | December 5, 2024 |
| Payment of Qualified Settlement Fund | 30 calendar days after the Court's entry of the Final Approval Order |
| Effective Date | If no appeal, motion for reconsideration, reargument and/or rehearing, or petition for writ of certiorari has been filed, upon expiration of the time to file such an appeal, motion, and/or petition.<br><br>If an appeal, motion for reconsideration, reargument and/or rehearing, or petition for a writ of certiorari has been filed, when the judicial ruling or order has been affirmed with |

|  | no further right of review, or such appeal, motion, and/or petition has been denied or dismissed with no further right of review |
|---|---|
| Estimated date of commencement of distribution of Qualified Settlement Fund | 45 days after the Effective Date |
| In-Kind Payment available to Authorized Claimants | Available for the Tax Year 2024 filing season, starting within five (5) business days after this order. |
| Estimated date for parties to submit proposal for distribution/treatment of Residual Funds to Court | 180 days after the Effective Date |
| Estimated deadline for distribution of Residual Funds to either *cy pres* or Authorized Claimants | 210 days after the Effective Date |
| Estimated deadline for parties to file post- distribution accounting and release of 10% attorneys' fees holdback | 231 days after the Effective Date |

**IT IS SO ORDERED.**

Dated: December 30, 2024

_____
VINCE CHHABRIA
United States District Judge